## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 21-30710 |
| CASTEX ENERGY 2005 HOLDCO, | § | |
| LLC, *et al.*, | § | Chapter 11 |
| | § | |
| Debtors. [1] | § | (Joint Administration Requested) |

### DEBTORS' EMERGENCY MOTION FOR ENTRY OF
### AN ORDER (I) AUTHORIZING PAYMENT OF LEASE OPERATING
### COSTS AND EXPENSES; (II) AUTHORIZING PAYMENT OF PREPETITION
### CRITICAL THIRD-PARTY VENDORS; (III) AUTHORIZING FINANCIAL
### INSTITUTIONS TO RECEIVE, PROCESS, HONOR, AND PAY ALL CHECKS
### PRESENTED FOR PAYMENT AND TO HONOR ALL FUNDS TRANSFER REQUESTS
### <u>RELATED TO SUCH OBLIGATIONS; AND (IV) GRANTING RELATED RELIEF</u>

**EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON MARCH 2, 2021 AT 4:00 P.M. IN COURTROOM 404, 4th FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002.  YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AUDIO/VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY.  YOU MAY ACCESS THE FACILITY AT (832) 917-1510.  YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES.  ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**

**YOU MAY VIEW VIDEO VIA GOTOMEETING.  TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION.  TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING.  TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU.  SELECT "JUDGES' PROCEDURES" THEN "VIEW HOME PAGE" FOR JUDGE**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Castex Energy 2005 Holdco, LLC (6832); Castex Energy 2005, LLC (6832); Castex Energy Partners, LLC (6832); and Castex Offshore, Inc. (8432).  The Debtors' mailing address is One Memorial City Plaza, 800 Gessner Rd., Suite 925, Houston, Texas 77024.

ISGUR.   UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS, AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING.  OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

RELIEF IS REQUESTED NOT LATER THAN MARCH 2, 2021.

Castex Energy 2005 Holdco, LLC, *et al*., the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby file this *Emergency Motion for an Order (I) Authorizing Lease Operating Costs and Expenses; (II) Authorizing Payment of Prepetition Critical Third-Party Vendors; (III) Authorizing Financial Institutions to Receive, Honor, Process and Pay All Checks Presented for Payment and to Honor All Funds Transfer Requests Related to Such Obligations; and (IV) Granting Related Relief* (the "Motion"), and in support hereof, respectfully state as follows:

## I.   JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested in this Motion are sections 105(a), 363(b), 503(b), 541, 1107, and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended and modified, the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 4002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

## II.     BACKGROUND

A.     **In General**

3.        On February 26, 2021 (the "Petition Date"), the Debtors filed voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

4.        Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their property as debtors in possession. No official committee has been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or examiner.

5.        The Debtors, which maintain their headquarters in Houston, Texas, are engaged in the exploration, development, production and acquisition of oil and natural gas properties located in the Gulf of Mexico, state waters of Louisiana, onshore Louisiana, and onshore Texas.  As of the Petition Date, the Debtors owned interests in approximately 182 oil, gas, and related wells, and have estimated proven reserves of approximately 2.3 MMBO (oil and gas condensate) and 38.5 BCFE (natural gas).  The Debtors are also a party to numerous joint operating agreements, joint development agreements, exploration agreements, and area of mutual interest agreements, and own interests in certain fee lands.

6.        Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Douglas J. Brickley, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

**B.**     **Debtors' Oil and Gas Business**

7.      As discussed in the First Day Declaration, the Debtors focus on finding and developing oil and natural gas reserves.  Substantially all of the Debtors' proved reserves are located in the Gulf of Mexico, state waters of Louisiana, onshore Louisiana, and onshore Texas.

8.      The Debtors own an interest in approximately 182 oil and gas wells on a number of  mineral leases (collectively, the "Oil and Gas Leases"), and are parties to a number of joint operating agreements (each, a "Joint Operating Agreement," and, collectively, the "Joint Operating Agreements") governing the operations of the Oil and Gas Leases.  The Debtors are the operator of record ("Operator") for 23 of the Oil and Gas wells in the Gulf of Mexico.  As Operator, the Debtors are responsible for the timely, proper, and efficient operation of the Oil and Gas Lease and corresponding wells and for remitting and distributing royalty and other amounts owed for the operation of the wells and the Oil and Gas Leases covered by the Joint Operating Agreements.

9.      As relates to the Debtors' non-operating working interests (each, a "Non-Operating Working Interest") in the Oil and Gas Leases, the Debtors are obligated to pay their *pro rata* portion of the operating expenses (the "Joint Interest Billings") to the Operator.  Non-Operating Working Interest Holders are billed for these Joint Interest Billings on terms contained in the Joint Operating Agreements, and the Non-Operating Working Interest Holders may either repay the Operator on a cash basis or have their *pro rata* portion deducted from the distributable proceeds.

### III.     OBLIGATIONS

**A.**     **Lease Operating Costs and Expenses**

10.      In the ordinary course of business and as a result of serving as the Operator for certain Oil and Gas Leases, the Debtors incur a variety of costs and expenses related to operating the properties (the "Lease Operating Costs and Expenses").  These Lease Operating Costs and Expenses include payments to various third parties, including land/surface owners, vendors,

contractors, subcontractors, drillers, haulers, shippers, warehousemen and suppliers who may have, or may be entitled to, liens under applicable state law (collectively, the "Lease Operating Costs and Expenses Claimants").[2]  Under applicable law, the Lease Operating Costs and Expenses Claimants may be entitled to assert liens against the Debtors' property (or even the property of other parties to the Joint Operating Agreements) in order to secure payment from the Debtors.

11.     As of the Petition Date, the Debtors estimate that they owe Lease Operating Cost and Expense Claimants approximately $1 million in outstanding prepetition Lease Operating Costs and Expenses for the month prior to the Petition Date.[3] The Lease Operating Costs and Expenses include, but are not limited to, Logistics/Freight, Oilfield Supplies/Services, Fuel, Service Contractors, and Other Operating Disbursements.

12.     The Debtors request entry of an order authorizing, but not directing, the Debtors (i) to pay Lease Operating Costs and Expenses incurred prior to the Petition Date in an amount not to exceed $1 million in the aggregate; and (ii) to continue paying post-petition Lease Operating Costs and Expenses in the ordinary course of business on a post-petition basis.

**B.     Payments to Critical Vendors**

13.     The Debtors also owe certain prepetition past due amounts to third-party vendors (the "Third-Party Vendors").  All of the goods and services provided by the Third-Party Vendors

---

[2] By the Motion, the Debtors do not concede that any liens (contractual, common law, statutory, or otherwise) described in the Motion are valid, and the Debtors expressly reserve the right to contest the extent, validity, and perfection of any and all such liens, and to seek avoidance thereof.

[3] Note that not all Lease Operating Costs and Expenses classify as Critical Third-Party Vendors (defined below).  At the discretion of the Debtors, Lease Operating Cost and Expense Claimants will be treated as a Critical Third-Party Vendor (i.e., applying same terms of any agreement that existed prepetition or better, and the Debtors may clawback the Lease Operating Costs and Expenses paid to the Lease Operating Cost and Expense Claimant if they do not continue to perform services for the Debtors as more fully detailed in the Order).

in question are provided in connection with the Debtors' operations, and for the Debtors' benefit.[4] The Debtors seek to pay certain Third-Party Vendors, subject to the below criteria, prepetition amounts due to minimize any disruption of operation of the Debtors resulting from the commencement of these Chapter 11 Cases.

14.     In evaluating whether to pay amounts owed to a Third-Party Vendor, the Debtors will consider the following criteria:

> (a) whether a vendor could claim a lien;
>
> (b) whether a vendor is essential to the continued operation of the Debtors' businesses;
>
> (c) whether a vendor is not replaceable without significant disruption to the Debtors' operations;
>
> (d) whether a vendor is entitled to a claim under Bankruptcy Code section 503(b)(9); and
>
> (e) whether a vendor is likely to continue doing business with the Debtors notwithstanding nonpayment of prepetition claims.

15.     If Third-Party Vendors meet the above criteria, then they are considered critical third-party vendor ("Critical Third-Party Vendors"). The services provided by Critical Third-Party Vendors are essential and necessary to the Debtors operations, and were they to cease performance of these services, they would likely be difficult or impossible to replace without the Debtors incurring higher costs.  The Debtors rely on timely performance by the Critical Third-Party Vendors, and any interruption—however brief—would disrupt the Debtors' operations and could

---

[4] By this Motion, or the payment of any of the amounts to vendors that are authorized pursuant to this Motion, the Debtors are not admitting that they are in direct contractual privity with any such vendor or admitting to the validity of any statutory liens that are filed by such vendors.

potentially cause material harm to their business.  Such harm would likely far outweigh the cost of the payment to the Critical Third-Party Vendors.

16.     Additionally, due to the nature of the Debtors' business and the services provided, certain of the Critical Third-Party Vendors may be entitled to statutory liens under maritime law, or the laws of the states where the Debtors operate.  *See, e.g.*, 46 U.S.C. § 31342 ("[A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner (1) has a maritime lien on the vessel; (2) may bring a civil action in rem to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the vessel."); TEX. PROP CODE § 56.002 ("A mineral contractor or subcontractor has a lien to secure payment for labor or services related to the mineral activities."); LA. STAT. ANN. § 9:4862 (providing mineral service providers with lien rights.").

17.     As a result, the Debtors request entry of an order authorizing, but not directing, the Debtors to pay Critical Third-Party Vendors for debts (the "Critical Third-Party Vendor Expenses") incurred prior to the Petition Date in an amount not to exceed $1.3 million in the aggregate.

18.     Some, if not all, Critical Third-Party Vendors are also Lease Operating Costs and Expenses Claimants but are owed amounts past due outside of the normal course of business rather than the typical amounts due that are paid in arrears with a one to two-month delay.  Accordingly, to the extent the Debtors pay a Lease Operating Costs and Expenses Claimant for amounts past due outside of the ordinary course of business, then they, at the Debtors discretion, shall be treated as Critical Third-Party Vendors and subject to the additional requirements and conditions to be treated as a Critical Third-Party Vendors as described in the Order.

19.     Any Critical Third-Party Vendor payment shall be made in the exercise of the Debtors' business judgment, subject to the terms and provisions of any order by this Court authorizing the use of cash collateral and in amounts set forth in any budget approved under such cash collateral orders.

20.     The Debtors intend to apply their business judgment and discretion on a case-by-case basis and only pay Critical Third-Party Vendors that are vital to maintaining their operations. Absent the ability to pay certain prepetition amounts owed to the Critical Third-Party Vendors, the Debtors' access to necessary goods and services could be impaired, with the Debtors having to seek replacement vendors which, in all likelihood, would require the Debtors to provide trade term accommodations such as advance deposits or payment prior to delivery.

## IV.     RELIEF REQUESTED

21.     By this Motion, the Debtors seek entry of an order, substantially in the form submitted herewith: (i) authorizing the Debtors to pay (a) Lease Operating Costs and Expenses, and (b) Critical Third-Party Vendor Expenses.

22.     The Debtors also request that the Court authorize financial institutions (collectively, the "Banks") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the Lease Operating Costs and Expenses and the Critical Third-Party Vendor Expenses to the extent that the Debtors have sufficient funds available with such Bank, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and that the Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to the Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

## V.    BASIS FOR RELIEF REQUESTED

**A.    Debtors Should Be Authorized to Pay Lease Operating Costs and Expenses and Critical Third-Party Expenses**

23.    Satisfaction of the Lease Operating Costs and Expenses and the Critical Third-Party Vendor Expenses is warranted because the harm to the Debtors' estates that may result from the nonpayment of such claims will most likely exceed the amount of such claims by a significant margin.  The Debtors' ongoing operations depend, to a significant degree, on their relationships with the Lease Operating Costs and Expenses Claimants and Critical Third-Party Vendors.  If these relationships are harmed, either through the nonpayment of invoices in the ordinary course of business or through the perceived difficulties of dealing with chapter 11 debtors, the Debtors will likely encounter particularized controversies with each such counterparty, resulting in unnecessary costs, distractions, and the corresponding harm to their business from the possible loss of the Debtors' going concern value, including from liens being placed on the Debtors' property.  Further, the Debtors may be unable to secure future opportunities with such Lease Operating Costs and Expenses Claimants and Critical Third-Party Vendors, and other third parties may be unwilling to engage in new business with the Debtors going forward.  If that were to occur, the Debtors' business, their estates, and creditors would be negatively impacted.

**B.    Payments on Account of Lease Operating Costs and Expenses Are Appropriate**

24.    The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound

business reasons.  *See, e.g.*, *In re BNP Petroleum Corp.*, 642 F. App'x 429, 435 (5th Cir. 2016);

*In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-

possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there

must be some articulated business justification for using, selling, or leasing the property outside

the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr.

N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale

of property of the estate other than in the ordinary course of business, but the movant must

articulate some business justification for the sale"); *In re Terrace Gardens Park P'ship*, 96 B.R.

707, 714 (Bankr. W.D. Tex. 1989).

25.     In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession

has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the

estate, including an operating business' going-concern value.'"  *In re CEI Roofing, Inc.*, 315 B.R.

50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D.

Tex. 2002).  Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11

U.S.C. § 150(a); *see also CoServ,* 273 B.R. at 497 (holding that sections 105 and 1107 of the

Bankruptcy Code provide authority for a debtor in possession to pay prepetition claims); *In re*

*Tusa-Expo Holdings, Inc.*, No. 08-45057-DML-11, 2008 WL 4857954, at *1 (Bankr. N.D. Tex.

Nov. 7, 2008); *In re CEI Roofing, Inc.*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427, 429-30

(Bankr. N.D. Tex. 2003).  Moreover, pursuant to section 362(b)(3) of the Bankruptcy Code, the

act of perfecting statutory liens, to the extent consistent with section 546(b) of the Bankruptcy

Code, is expressly excluded from the protections afforded by the automatic stay. 11 U.S.C. §

362(b)(3).  As a result, the Lease Operating Cost and Expense Claimants may be able to perfect liens against the Debtors' assets notwithstanding the automatic stay.

26.     Here, the Lease Operating Cost and Expense Claimants would likely assert statutory liens if the Debtors fail to pay the Lease Operating Costs and Expenses.  For example, chapter 56 of the Texas Property Code grants a "mineral contractor" or "mineral subcontractor" a lien to secure payment for any labor or services related to "mineral activities." TEX. PROP. CODE ANN. § 56.002. "Mineral contractor" and "mineral subcontractor" are broadly defined to include, inter alia, persons performing labor or furnishing or hauling material, machinery, or supplies used in mineral activities.  *Id.* at § 56.001(2), (4).  "Mineral activities" is similarly broad and includes "digging, drilling, torpedoing, operating, completing, maintaining, or repairing an oil, gas, or water well, an oil or gas pipeline, or a mine or quarry."  *Id.* at § 56.001(1).

27.     Moreover, it is possible that the Lease Operating Cost and Expense Claimants could place liens on, among other things, the Debtors' wells, the production and proceeds therefrom, the Debtors' Working Interests (which are real property rights), and fixtures and equipment associated with the oil and gas properties. *See, e.g.*, TEX. PROP. CODE ANN. § 56.002.  As such, the Debtors' revenues and their relationships with Non-Operating Working Interest Holders could be placed in jeopardy absent the relief requested herein.

28.     The Debtors' primary source of income is revenue realized from producing properties under the Oil and Gas Leases.  That revenue cannot be placed in jeopardy as a result of the Debtors' inability to pay the Lease Operating Costs and Expenses.  The oil and gas lease market is competitive.  If the Debtors lost any of their Oil and Gas Leases, there would be no guarantee that the Debtors would be able to renew or reinstate a defaulted or terminated Oil and Gas Lease. Such a result could devastate the Debtors' efforts to maximize the value of their estates.  Moreover,

any uncertainty or questions regarding the Debtors' ability to honor the terms of their Oil and Gas Leases as a result of these Chapter 11 Cases may impair the Debtors' ability to negotiate with prospective counterparties. Accordingly, the Debtors submit that the payment of the Lease Operating Costs and Expenses is necessary to protect the Debtors' business and ensure that the Debtors are able to maximize the value of their estates during these Chapter 11 Cases.

C.     **Payments on Account Critical Third -Party Vendors Are Appropriate**

29.     The Court may also authorize the Debtors to pay any prepetition Critical Third-Party Expenses to the Critical Third-Party Vendors, up to the $1.3 million proposed cap.

30.     As discussed above, courts in the Fifth Circuit have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve a debtor's estate, including an operating business's going-concern value. *See, e.g.*, *CoServ*, 273 B.R. 487; *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369-70 (Bankr. S.D. Tex. 2000) (noting that payment of prepetition claims is permissible when the transactions are critical to the survival of the business of the debtor); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) ("while pre-petition claims are normally disposed of in a plan of reorganization… there are well-established 'necessity of payment' and similar exceptions"); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). In doing so, these courts acknowledged that several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims, as provided herein.

31.     Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. Additionally, under section 1107(a) of the Bankruptcy Code, a debtor has, among other things, the "implied duty

of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" 11 U.S.C. § 1107(a); *see In re CEI Roofing, Inc.*, 315 B.R. at (quoting *In re CoServ*, 273 B.R. at 497). Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see In re CoServ*, 273 B.R. at 497 (holding that sections 105(a) and 1107 of the Bankruptcy Code provide authority for a debtor in possession to pay prepetition claims, and that the "Court has inherent authority, through section 105(a) of the Bankruptcy Code to grant this Motion, in the interest of preservation of Debtors' bankruptcy estate."); *see also In re Tusa-Expo Holdings, Inc.*, No. 08-45057-DML-11, 2008 WL 4857954, at *1 (Bankr. N.D. Tex. Nov. 7, 2008); *In re CEI Roofing, Inc.*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003). No provision of the Bankruptcy Code expressly prohibits the post-petition payment of the prepetition critical vendor claims. Indeed, the above-referenced sections of the Bankruptcy Code authorize such payments when they are critical to preserving the going-concern value of a debtor's estate, as is the case here.

32.    Further, courts have noted that there are instances in which debtors may fulfill their fiduciary duties only "by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497. The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duties when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to the "sole suppliers of a given product." *Id.* at 497-98. Courts in the Fifth Circuit, including the Southern District of Texas, have followed *In re CoServ*'s three-part test to determine whether a prepetition claim of a "critical vendor" may be paid outside of the chapter 11 plan process on a post-petition basis:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498; *see also In re Mirant Corp.*, 296 B.R. at 429-30. Moreover, allowing the Debtors to pay the Critical Third-Party Vendor Expenses is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving the going-concern value for a debtor's business and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).

33.     The rationale for the necessity of payment rule – the rehabilitation of a debtor's business – is "the paramount policy and goal of Chapter 11*." Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Lehigh & New England Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (noting that the "doctrine of necessity" permits "immediate payment of claims to creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Boston & ME. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtor's continued operation); *CoServ*, 273 B.R. at 500 (permitting chapter 11 debtor to pay the claim of a prepetition general unsecured creditor in full because the "[d]ebtors very likely must deal with [such creditor] or risk harm to their estates or their going concern value").

34.     Finally, due to the nature of the services provided by the Critical Third-Party Vendors, many may be able to assert mechanics' liens, materialmen's liens, possessory liens, or

similar liens on the Debtors' assets.  The filing of liens on the Debtors' property would, at a minimum, be disruptive. Even if it is later determined that certain vendors' liens are invalid, the distraction, disruption, and cost associated with litigation regarding the validity of such liens would be costly and time consuming.  Accordingly, the authorization for the Debtors to pay prepetition Critical Third-Party Expenses, up to the $1.3 million cap, is necessary to avoid immediate and irreparable harm.

### D.    Banks Should Be Authorized to Receive, Process, Honor, and Pay Checks Issued and Transfers Requested to Pay Obligations

35.    The Debtors further request that the Court authorize the Banks to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to the Lease Operating Costs and Expenses and the Critical Third-Party Vendors Expenses, to the extent that sufficient funds are on deposit and available in the Debtors' applicable bank account(s) to cover such payment.  The Debtors also seek authority to issue new post-petition checks or effect new post-petition electronic funds transfers in replacement of any checks or fund transfer requests on account of prepetition Lease Operating Costs and Expenses and Critical Third-Party Vendors dishonored or rejected as a result of the commencement of these Chapter 11 Cases.

### VI.    EMERGENCY CONSIDERATION

36.    Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of the Motion under Bankruptcy Rule 6003, which provides that the Court may grant relief within the first 21 days after the Petition Date to the extent such relief is necessary to avoid immediate and irreparable harm.  As described herein and in the First Day Declaration, the relief requested is essential to avoid the immediate and irreparable harm that would be caused by the Debtors' inability to transition smoothly into chapter 11 and the disruption

to the Debtors' operations.  Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

## VII.    RESERVATION OF RIGHTS

37.    Nothing contained herein shall be deemed: (i) an admission as to the amount of, basis for, or validity of any claim against any of the Debtors; (ii) an impairment or waiver of the Debtors' or any other party in interest's right to dispute any claim against, or interest in, any Debtor, its property or its estate; (iii) a promise or requirement to pay any prepetition claim; (iv) a waiver of any claims or causes of action which may exist against any person or entity; (v) an assumption, adoption, or rejection or any agreement, contract, or lease under section 365 of the Bankruptcy Code; (vi) an implication or admission that any particular claim of a type specified or defined in this Motion, or any order granting the relief requested by this Motion; (vii) an implication, admission, or finding as to (a) the validity, enforceability, or perfection of any interest or encumbrance on the property of any Debtor or its estate or (b) the applicability of any exception or exclusion from property of the estate under section 541 of the Bankruptcy Code or other applicable law; (viii) an impairment or waiver of any claims or causes of action which may exist against any entity; or (ix) a waiver of any Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## VIII.    REQUEST FOR WAIVER OF STAY

38.    To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion satisfies Bankruptcy Rule 6004(a) and that the Court waive the 14-day period under Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.

## IX.   <u>NOTICE</u>

39.     Notice of the Motion will be provided by email, facsimile, or overnight courier to: (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to the Capital One, NA, as Prepetition Agent under the Prepetition Credit Agreement, King & Spalding, LLP 110 N Wacker Dr., Suite 3800, Chicago, IL 60606 (Attn: Matthew Warren, Esq.); (iv) the Internal Revenue Service; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice of the hearing and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 9014, the Bankruptcy Local Rules and the Complex Case Procedures.  The Debtors submit that no other or further notice need be provided.

## X.   <u>PRAYER</u>

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto: (i) granting the relief requested in this Motion; and (ii) granting the Debtors such other and further relief as the Court may deem just and proper.

Respectfully submitted this 28th day of February, 2021.

**OKIN ADAMS LLP**

By:      /s/ *Matthew S. Okin*
        Matthew S. Okin
        Texas Bar No. 00784695
        Email: mokin@okinadams.com
        David L. Curry, Jr.
        Texas Bar No. 24065107
        Email: dcurry@okinadams.com
        Ryan A. O'Connor
        Texas Bar No. 24098190
        Email: roconnor@okinadams.com
        Johnie A. Maraist
        Texas Bar No. 24109505
        Email: jmaraist@okinadams.com
        1113 Vine St., Suite 240
        Houston, TX  77002
        Tel: (713) 228-4100
        Fax: (888) 865-2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**

**<u>CERTIFICATE OF ACCURACY PURSUANT TO B.L.R. 9013-1(i)</u>**

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify to the accuracy of the matters set forth in the foregoing Motion.

By:      /s/ *Matthew S. Okin*
        Matthew S. Okin