

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
03/02/2021

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 21-30710** |
| **CASTEX ENERGY 2005 HOLDCO,** | § | |
| **LLC,** *et al.,* | § | **Chapter 11** |
| | § | |
| Debtors. [1] | § | **(Joint Administration Requested)** |

### INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) SCHEDULING A FINAL HEARING
#### (Relates to ECF # ___)

Upon the motion, dated February 28, 2021 (the "Motion"), of the Borrower (as defined

below) and the other debtors and debtors-in-possession (collectively, the "Debtors"), in the

above-referenced chapter 11 cases (the "Cases"), seeking (among other things) entry of an interim

order (this "Interim Order"), pursuant to sections 105, 361, 362, 363, 503, 507, and 552 of title 11

of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004,

7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

Rules 2002-1, 4002-1(i), and 9013-1 of the Bankruptcy Local Rules of the United States

Bankruptcy Court for the Southern District of Texas (the "Local Rules"), and the Procedures for

Complex Chapter 11 Bankruptcy Cases (the "Complex Case Rules" and together with the Local

Rules, the "Bankruptcy Local Rules"), that among other things:

(i)        authorizes the Debtors to use "cash collateral," as such term is defined in
section 363 of the Bankruptcy Code (the "Cash Collateral"), including Cash
Collateral in which the Prepetition Secured Parties (as defined below) have a Lien

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Castex Energy 2005 Holdco, LLC (6832); Castex Energy 2005, LLC (6832); Castex Energy Partners, LLC (6832); and Castex Offshore, Inc. (8432). The Debtors' mailing address is One Memorial City Plaza, 800 Gessner Rd., Suite 925, Houston, Texas 77024.

or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order or otherwise;

(ii) modifies the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(iii) grants the Prepetition Secured Parties, as of the Petition Date and in accordance with the relative priorities set forth herein, the Prepetition Secured Parties Adequate Protection (as defined below), which consists of, among other things, the Adequate Protection Liens (as defined below), Adequate Protection Superiority Claims (as defined below), and current payment of reimbursable fees and expenses;

(iv) schedules a final hearing on the Motion (the "Final Hearing") to be held no later than thirty-five (35) calendar days after the Petition Date to consider entry of a final order that grants all of the relief requested in the Motion on a final basis, which final order shall be in form and substance (including with respect to any subsequent modifications to the form or substance made in response to objections of other creditors or this Court) acceptable to the Prepetition Agent (the "Final Order");

(v) waives, upon entry of the Final Order, certain rights of the Debtors to surcharge collateral pursuant to section 506(c) of the Bankruptcy Code; and

(vi) provides for the immediate effectiveness of this Interim Order and waives any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

Having considered the Motion, and the *Declaration of* Douglas Brickley, (the "First Day Declaration"), and the evidence submitted or proffered at the hearing on this Interim Order (the "Interim Hearing"); and in accordance with Bankruptcy Rules 2002, 4001(b), 4001(c), and 4001(d) and 9014 and all applicable Bankruptcy Local Rules, notice of the Motion and the Interim Hearing having been provided pursuant to Bankruptcy Rule 4001(b)(1)(C); and an Interim Hearing having been held and concluded on March 2, 2021; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued

operation of the Debtors' business and the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[2]

A.      **Petition Date**. On February 26, 2021 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas (this "Court"). The Debtors have continued in the management and operation of their businesses and properties as debtors-in- possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No statutory committee of unsecured creditors (to the extent such committee is appointed, the "Committee"), trustee, or examiner has been appointed in the Cases.

B.      **Jurisdiction and Venue**. This Court has jurisdiction over the Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and other predicates for the relief granted herein are sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Bankruptcy Local Rules.

C.      **Notice**. The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Interim Hearing and the interim relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee

---

[2]  Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

for the Southern District of Texas (the "United States Trustee"), (ii) those entities or individuals included on the Debtors' list of thirty (30) largest unsecured creditors on a consolidated basis, (iii) counsel to the Prepetition Agent (as defined below), (iv) the Prepetition Agent, (v) the Bureau of Ocean Energy Management ("BOEM"), (vi) the Bureau of Safety and Environmental Enforcement ("BSEE"), (vii) the Department of Interior, (viii) the Department of Justice, (ix) the Internal Revenue Service, (x) entities who are predecessor owners in the chain of title or co-working interest owners with respect to certain of the applicable Debtors' leased property, and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice of the Motion, and the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Bankruptcy Local Rules, and no other notice need be provided for entry of this Interim Order.

D. **Debtors' Stipulations Regarding the Prepetition Facilities**. Subject to the rights of parties in interest that are specifically set forth in Paragraph 5 below, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree (Paragraph D hereof shall be referred to herein as the "Debtors' Stipulations") as follows:

(i) Prepetition Credit Facility. The Debtors are party to that certain Third Amended and Restated Credit Agreement, dated as of March 14, 2018, (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement", and collectively with any other agreements and documents executed or delivered in connection therewith, including the "Security Agreement" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Loan Documents"), by and among Castex Energy Partners, LLC (in such capacity, the "Borrower"), Castex Energy 2005 Holdco, LLC, and the other persons party thereto as "Loan Parties" (as that

4

term is defined in the Prepetition Credit Agreement), the financial institutions from time to time party thereto as lenders (collectively, the "Prepetition Secured Lenders"), and Capital One, National Association, individually as a Prepetition Secured Lender, as L/C Issuer (as that term is defined in the Prepetition Credit Agreement) and as administrative agent for the Prepetition Secured Lenders (in such capacity, the "Prepetition Agent" and, together with the Prepetition Secured Lenders and any other party to which Prepetition Secured Loan Obligations (as defined below) are owed, the "Prepetition Secured Parties"). All obligations of the Debtors arising under the Prepetition Credit Agreement or the other Prepetition Loan Documents shall collectively be referred to herein as the "Prepetition Secured Loan Obligations." The Debtors incurred the Prepetition Secured Loan Obligations in connection with their previous reorganization under chapter 11 of the Bankruptcy Code in the jointly administered case number 17-35835. During those cases, the court entered the *Order Confirming the Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 448 in Case No. 17-35835] under which the court, among other things, (a) approved the transactions contemplated under the Exit Loan Documents (as defined therein) and (b) found that the Exit Loan Documents created "perfected, valid, binding, non-avoidable, and enforceable first priority Liens on, and security interests in, all of the Reorganized Debtors' assets that will secure the obligations under the Exit Credit Agreement to the extent specified in the Exit Loan Documents."

      (ii)    <u>Prepetition Liens and Prepetition Collateral</u>. Pursuant to (a) that certain Second Amended and Restated Security Agreement dated as of March 14, 2018 (as amended, restated, amended and restated, supplemented and/or modified from time to time, the "Prepetition Security Agreement"), by and among the Borrower, the other Grantors (as defined therein) party thereto and the Prepetition Agent, each Grantor granted to the Prepetition Agent, for the benefit of

itself and the other Prepetition Secured Parties, to secure the Prepetition Secured Loan Obligations, a continuing first-priority lien and security interest in and Lien (as defined in the Prepetition Credit Agreement) on such Grantor's right, title and interest in and to substantially all of the property and assets of such Grantor (which, for the avoidance of doubt, includes Cash Collateral), whether now owned or existing or hereafter acquired or arising, regardless of where located, other than Excluded Assets (as defined in the Prepetition Security Agreement); and (b) that certain Second Amended and Restated Pledge Agreement and Irrevocable Proxy dated as of March 14, 2018 (as amended, restated, amended and restated, supplemented and/or modified from time to time, including by that certain Consent Agreement dated as of June 16, 2020 (as amended, restated, amended and restated, supplemented and/or modified from time to time, the "Consent Agreement") by and among the Borrower, Castex Offshore, Inc., the other Loan Parties party thereto, the Prepetition Secured Lenders party thereto, and the Prepetition Agent; collectively, the "Prepetition Pledge Agreement"; and together, with the Prepetition Security Agreement, the "Prepetition Security Documents") by and among the Borrower, the other Pledgors (as defined therein) party thereto and the Prepetition Agent, the Pledgors granted to the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, a continuing first-priority lien and security interest in and Lien (as defined in the Prepetition Credit Agreement) on such Pledgor's right, title and interest in, to and under certain Collateral (as defined in the Prepetition Pledge Agreement). All liens granted under and pursuant to the Prepetition Security Documents shall collectively be referred to herein as the "Prepetition Liens." All "Collateral" (under and as defined in the Prepetition Security Agreement) and "Collateral" (under and as defined in the Prepetition Pledge Agreement) shall collectively be referred to herein as the "Prepetition Collateral," which, for the avoidance of doubt, includes the Indemnity Escrow Shares and the Closing Payment Shares (each as defined in the Consent

Agreement and as used collectively herein, the "Talos Shares") and all commercial tort claims (including proceeds thereof) related to that certain lawsuit entitled *Apache Corporation v. Castex Offshore, Inc., et al.*, Cause No. 2015-48580 currently pending in the 133rd District Court of Harris County, Texas (the "Apache Litigation"). As of the Petition Date, (I) the Prepetition Liens (a) are legal, valid, binding, enforceable, and perfected Liens, (b) were granted to, or for the benefit of, the Prepetition Secured Parties (as applicable) for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (d) are subject and subordinate only to the Carve-Out (as defined below), and (II) (w) the Prepetition Secured Loan Obligations constitute legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition Secured Loan Obligations exist, (y) no portion of the Prepetition Secured Loan Obligations or any payments made to any or all of the Prepetition Secured Parties are subject to avoidance, disallowance, disgorgement, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (z) any guarantee under the Prepetition Security Documents shall continue in full force and effect to unconditionally guaranty the Prepetition Secured Loan Obligations notwithstanding any use of Cash Collateral permitted hereunder.

For the avoidance of doubt, and notwithstanding anything to the contrary in this Order, "Prepetition Collateral" does not include a lien, right, or interest, in the Escrow Shares (as defined in that certain Escrow Agreement, dated as of June 19, 2020, by and among Castex Energy Partners, LLC, Castex Offshore, Inc., Talos Production Inc., and Citibank N.A (the "Escrow

Agreement")) but rather includes a lien on the Debtors' rights and interests in the Escrow Agreement. Nothing in this Order impacts, subordinates, or otherwise alters the rights and interests of Talos Production Inc. in the Escrow Shares or the Escrow Agreement.

(iii)    <u>Amounts Owed under Prepetition Loan Documents</u>. As of the Petition Date, the applicable Debtors owed the Prepetition Secured Parties, pursuant to the Prepetition Loan Documents, without defense, counterclaim, reduction or offset of any kind, in respect of loans made and other financial accommodations made by the Prepetition Secured Parties with respect to the Prepetition Credit Agreement an aggregate principal amount of not less than $199,585,956, plus all accrued and hereafter accruing and unpaid interest thereon and any additional fees, expenses (including any reasonable attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Loan Documents), and other amounts now or hereafter due under the Prepetition Loan Documents.

(iv)    <u>Release of Claims</u>. Subject to Paragraph 5 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released each of (i) the Prepetition Secured Parties and (ii) each of their respective affiliates, assigns or successors and the respective members, managers, equity holders, affiliates, agents, attorneys, financial advisors, consultants, officers, directors, employees and other representatives of the foregoing (all of the foregoing, collectively, in such capacity, the "<u>Prepetition Secured Party Releasees</u>") from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action in the nature of "lender liability"), defenses, setoff, recoupment, other offset rights and other rights of disgorgement or recovery against any and all of the Prepetition Secured Party Releasees through the date of this Interim Order, whether arising at law or in equity, relating to and/or otherwise in connection (as applicable) with the Prepetition Secured Loan Obligations, the Prepetition Liens or the debtor-creditor relationship between any of the Prepetition Secured Parties, on the one hand,

and any of the Debtors, on the other hand, including (I) any recharacterization, subordination, avoidance, disallowance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, or municipal law and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition Secured Loan Obligations or any payments or other transfers made on account of the Prepetition Secured Loan Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition Liens securing the Prepetition Secured Loan Obligations, including any right or basis to seek any disgorgement or recovery of payments of cash or any other distributions or transfers previously received by any of the Prepetition Secured Party Releasees.

E.    **Cash Collateral**. All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

F.    **Adequate Protection for Prepetition Secured Parties**. The Prepetition Secured Parties have agreed to permit the Debtors to use certain of the Prepetition Collateral, including the Cash Collateral, during the Interim Period (as defined below), subject to the terms and conditions set forth herein. The Prepetition Secured Parties are entitled to the adequate protection as set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to this Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and the use of the Cash Collateral contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration for the consent of the Prepetition Secured Parties. The Prepetition Agent, with the consent of the requisite

percentage of the Prepetition Secured Lenders, has expressly consented to the entry of this Interim Order and the relief provided herein and pursuant to the terms of the Prepetition Credit Agreement.

G.     **Section 552**. Subject to entry of the Final Order, in light of the subordination of their Liens and superpriority administrative claims to the Carve-Out, subject to the entry of the Final Order, each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.

H.     **Relief Essential; Best Interest**. For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and the Bankruptcy Local Rules. Absent granting the relief set forth in this Interim Order, the Debtors' estates, their businesses and properties and their ability to reorganize or otherwise preserve the value of the Debtors' assets will be immediately and irreparably harmed. Authorization of the use of Cash Collateral in accordance with this Interim Order is therefor in the best interests of the Debtors' estates and consistent with their fiduciary duties. Based on all of the foregoing, sufficient cause exists for immediate entry of the Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Bankruptcy Local Rules.

**NOW, THEREFORE**, based on the Motion and the record before this Court with respect to the Motion, and with the consent of the Debtors, the Prepetition Agent and the requisite Prepetition Secured Lenders to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.     **Motion Granted**. The Motion is hereby granted on an interim basis in accordance with the terms and conditions set forth in this Interim Order. Any objections to the Motion with

respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2. **Protections**.

(a) <u>Authorization to Use Cash Collateral</u>. To enable the Debtors to continue to operate their business, during the period from the entry of this Interim Order through and including the earliest to occur of (i) the entry of the Final Order, or (ii) the Termination Declaration Date (as defined below), in each case unless extended by written agreement of the Prepetition Agent at the direction of the requisite percentage of the Prepetition Secured Lenders or in accordance with Paragraph 12 below (the period from the entry of this Interim Order through and including such earliest date, the "<u>Interim Period</u>") the Debtors are hereby authorized to use Cash Collateral. Any use of Cash Collateral shall be consistent with the terms and conditions of this Interim Order, including the Approved Budget and the Budget Covenants as defined and contained in Paragraph 2(c) below. Following the entry of the Final Order, further Cash Collateral use will be governed by the terms of such Final Order.

(b) <u>Budget</u>. Attached hereto as <u>Exhibit A</u> is a rolling 13-week cash flow budget (the "<u>Initial Approved Budget</u>") that reflects on a line-item basis the Debtors' (i) weekly projected cash receipts (including from non-ordinary course assets sales) and (ii) weekly projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses under the Cases, capital expenditures, and estimated fees and expenses of the Prepetition Secured Parties (including counsel and financial advisors therefor).

(i) The Debtors shall at the end of every four (4) week period commencing on Friday of the first full calendar week following the Petition Date propose an update to the then-existing Approved Budget (as defined below) adding

thereto the forecast of cash receipts and cash disbursements (including any Permitted Affiliate Services Payments (as defined in the Prepetition Credit Agreement)) for the 13-week period commencing with the calendar week immediately following the date such proposed update is required to be delivered hereunder, which, once approved in writing by the Prepetition Agent (each, a "Proposed Supplemental Budget" and, once approved in writing by the Prepetition Agent (or deemed approved, as provided below), a "Supplemental Approved Budget"), shall supplement and replace the then existing Approved Budget then in effect (the Initial Approved Budget, as modified by any and all Supplemental Approved Budgets, shall constitute the "Approved Budget") without further notice, motion, or application to, order of, or hearing before, this Court; provided that if the Prepetition Agent has not objected to a proposed budget within seven (7) days after delivery thereof, such proposed budget shall be deemed acceptable to and approved by the Prepetition Secured Parties for all purposes hereunder; provided, however, that unless and until such Supplemental Approved Budget has been approved (or deemed approved as provided above) by the Prepetition Agent, the Debtors shall still be subject to and be governed by the terms of the Approved Budget then in effect in accordance with this Interim Order, and the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral other than with respect thereto.

(ii)     By no later than 11:59 p.m. (prevailing Central Time) by the third Business Day (as defined in the Prepetition Credit Agreement) of each calendar week,

and commencing following the first full week following the Petition Date, the Debtors shall deliver to the Prepetition Agent and Prepetition Secured Lenders variance reports (in substantially the same format as the Budget) showing actual cash receipts and disbursements for the immediately preceding week, noting therein all variances, on a line-item basis, from values set forth for such period(s) in the Initial Budget or the most current Supplemental Approved Budget, as applicable.

(iii)    Notwithstanding anything to the contrary in this Interim Order, the professional fees, costs and expenses of the Lender Professionals (as defined below) (the "Lender Professional Fees") shall be due, payable and paid in accordance with the terms of this Interim Order and the Professional Fees (as defined below) shall be due, payable and paid subject to this Interim Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules and any interim compensation procedures order entered by this Court.

(c)    Budget Covenants. The Debtors shall only expend Cash Collateral and proceeds thereof in accordance with the purposes, and in the time periods, set forth in the Approved Budget (and in the case of the costs and expenses of the Prepetition Agent, in accordance with this Interim Order without being limited by the Approved Budget), subject to the following permitted variances (collectively, the "Permitted Variances"):

(i)    permitted variances with respect to the actual operating disbursements of the Debtors shall be tested bi-weekly initially on the third Business Day of the second full week following the Petition Date (the "First Testing Date")

13

(testing the period from the Petition Date through and including such date (such initial testing period, the "First Testing Period")) and continuing on the third Business Day of every other week thereafter (each, a "Subsequent Testing Date") (in the case of the first Subsequent Testing Date, testing the trailing three week period ending on the Friday before such Subsequent Testing Date (the "Second Testing Period"), and in the case of each Subsequent Testing Date that follows, testing the trailing four week period ending on the Friday before the applicable Subsequent Testing Date (each, a "Four Week Testing Period")) as follows: (A) for the First Testing Date, the sum of all actual disbursements of the Debtors (calculated in the same manner as the "Total Operating Disbursements" in the Approved Budget were calculated) for the First Testing Period shall not exceed 125% of the sum of the "Total Operating Disbursements" for such First Testing Period as set forth in the Approved Budget, (B) for the first Subsequent Testing Date, the sum of all actual disbursements of the Debtors (calculated in the same manner as the "Total Operating Disbursements" in the Approved Budget were calculated) for the Second Testing Period shall not exceed 125% of the sum of the "Total Operating Disbursements" for such Second Testing Period as set forth in the Approved Budget, and (C) for each Subsequent Testing Date, the sum of all actual disbursements of the Debtors (calculated in the same manner as the "Total Operating Disbursements" in the Approved Budget were calculated) for the immediately preceding Four Week Testing Period shall not exceed 125% of the sum of the "Total

Operating Disbursements" for such Four Week Testing Period as set forth in the Approved Budget; and

(ii) Notwithstanding the immediately preceding paragraph, at no time following the Petition Date shall the Debtors permit the difference of (A) the Debtors' cash on hand deposited in one or more bank accounts subject to a Control Agreement (as defined in the Prepetition Credit Agreement) in favor of the Prepetition Agent and (B) Cash Equivalents (as defined in the Prepetition Credit Agreement; _provided_ that for the avoidance of doubt, "Cash Equivalents" for purposes of this Paragraph 2(c)(ii) shall not include the Talos Shares) _minus_ (ii) the aggregate face amount of all checks and other negotiable instruments issued by any applicable Debtor which have not been presented for payment as of the applicable date of determination to be less than $[250,000] (as of any applicable date of determination, the "Minimum Cash Balance"). The Minimum Cash Balance shall be tested at the same time periods and intervals set forth in Paragraph 2(c)(i).

The budget-related covenants under this Paragraph 2(c) are collectively referred to herein as the "Budget Covenants."

(d) Use of Proceeds of Collateral. The Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of a confirmed chapter 11 plan or plans with respect to any of the Debtors, except: (a) with respect to the Prepetition Secured Loan Obligations as set forth in this Interim Order and a Final Order; (b) as provided in any order in connection with any request for relief sought by the Debtors at the outset of the Cases, each in form and substance acceptable to the Prepetition Agent and the Prepetition Secured Lenders prior to such motion, order or request for such relief being filed (the

"First Day Orders"); and (c) as expressly provided in other motions, orders, and requests for relief. Notwithstanding any provision to the contrary herein, the Debtors shall not be permitted or authorized to liquidate any Prepetition Collateral consisting of (a) the Talos shares (including any proceeds thereof) or (b) the Apache Litigation (including any proceeds thereof) without the express written consent of the Prepetition Agent at the direction of the requisite percentage of Prepetition Secured Lenders or further order of this Court.

(e) Conditions Precedent. The Prepetition Secured Parties have no obligation to permit use of any Prepetition Collateral or any proceeds thereof, including Cash Collateral, as applicable, during the Interim Period unless and until (i) all conditions precedent to the use of certain of the Prepetition Collateral or proceeds thereof under this Interim Order have been satisfied in full or waived by the Prepetition Agent in accordance with Section 11.01 of the Prepetition Credit Agreement, as applicable, and this Interim Order or (ii) otherwise ordered to do so by this Court.

3. **Adequate Protection**.

(a) In consideration for the use of certain of the Prepetition Collateral (including Cash Collateral), the Prepetition Agent, for the benefit of the Prepetition Secured Parties, shall receive the following adequate protection (collectively referred to as the "Prepetition Secured Parties Adequate Protection"):

(i) Adequate Protection Liens. To the extent there is a diminution in value of the interests of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, resulting from the use, sale, or lease by the Debtors of the applicable Prepetition Collateral (including Cash Collateral) and/or the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code ("Diminution in Prepetition Collateral Value"), the Prepetition Agent, for the benefit of all the Prepetition Secured

Parties, is hereby granted, subject to (a) the Carve-Out, (b) valid, perfected, and non-avoidable liens on property of a Debtor that are in existence on the Petition Date and senior in priority to the Prepetition Liens (including liens that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, if any, the "Permitted Prior Liens"), and (c) the terms and conditions set forth below, pursuant to sections 361 and 363 of the Bankruptcy Code, replacement Liens upon all of the "Adequate Protection Collateral," excluding all of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and similar statutes or common law (collectively, "Avoidance Actions"), but including, subject to the entry of the Final Order, any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance Actions Proceeds") (such adequate protection replacement Liens, the "Adequate Protection Liens"). "Adequate Protection Collateral" shall include, without limitation, any and all tangible and intangible pre- and post-petition property of the Debtors, whether existing before, on or after the Petition Date, together with any proceeds thereof, including, without limitation, any and all cash and any investment of such cash, inventory, goods, accounts, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, payment intangibles, documents, instruments, securities, chattel paper, interests in leaseholds (provided, however, that solely to the extent that any lease prohibits the granting of a lien thereon, or otherwise prohibits hypothecation of the leasehold interest, then in such event there shall only be a lien on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests unless the applicable provision is rendered ineffective by

applicable non-bankruptcy law or the Bankruptcy Code), real property, deposit accounts (except for any account created to hold an adequate assurance deposit for utility providers, pursuant to separate order of this Court), securities accounts, investment property, letters of credit, letter-of- credit rights, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, commercial tort claims, capital stock of subsidiaries, wherever located, and the proceeds, products, rents, accession and profits of the foregoing.

Notwithstanding any provision of this Interim Order or any final orders pertaining to post-petition financing, use of cash collateral, the sale of the Debtors' assets, or any agreements validated by any such orders, the liens currently held by applicable Texas state taxing authorities, or which shall arise during the course of the Cases pursuant to applicable non-bankruptcy law, shall neither be primed by nor subordinated to any liens granted thereby or pursuant to this Interim Order, subject in all respects to applicable priorities between the taxing authorities and the Prepetition Secured Parties.

(ii)     Adequate Protection Superpriority Claims.  To  the  extent  of Diminution in Prepetition Collateral Value, the Prepetition Secured Parties are hereby further granted, subject to the Carve-Out, allowed superpriority administrative claims (such adequate protection superpriority claims, the "Adequate Protection Superpriority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and priority and other unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order to the extent provided in Paragraph 7, 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114 or any other provision of the Bankruptcy Code or otherwise, and payable from and

having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof other than Avoidance Actions (but including, subject to entry of the Final Order, all Avoidance Actions Proceeds). Subject to the relative priorities set forth above, the Adequate Protection Superpriority Claims against each Debtor shall be allowed and enforceable against each Debtor and its estate on a joint and several basis. For purposes of this Interim Order, the terms "Paid in Full," "Repaid in Full," "Repay in Full," and "Payment in Full" shall mean, the indefeasible payment in full in cash of all Prepetition Secured Loan Obligations (other than contingent obligations, indemnities and expenses related thereto that, in each case, are not then payable or in existence or for which no claim has been asserted).

(iii) <u>Priority of Adequate Protection Liens and Adequate Protection Superpriority Claims</u>. The Adequate Protection Liens and the Adequate Protection Superpriority Claims, in each case subject to the Carve-Out and Permitted Prior Liens, (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any Liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, (C) shall be valid, binding, perfected and enforceable against any trustee or any other estate representative elected or appointed in the Cases or upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "<u>Successor Case</u>"), and/or upon the dismissal of any of the Cases, and (D) notwithstanding anything to the contrary in any First Day Order, shall be senior to any administrative claims arising under any such First Day Order.

(iv) <u>Professional Fees</u>. Without limiting any rights of the Prepetition Agent and the other Prepetition Secured Parties under section 506(b) of the Bankruptcy Code, which rights are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Secured Parties to the entry of this Interim Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall, subject to the Carve-Out, pay or reimburse in cash the Prepetition Secured Parties for all fees, costs, expenses, and charges (including the reasonable fees, costs, and expenses of counsel and financial advisors for the Prepetition Agent and the other Prepetition Secured Parties, collectively, the "<u>Lenders' Fees</u>") (x) outstanding as of the Petition Date, to the extent, and at the times, payable under the Prepetition Loan Documents, including any unpaid fees, costs and expenses accrued prior to the Petition Date, and (y) to the extent arising and relating to the period after the Petition Date, as provided in Paragraph 19(a) below, in the case of each of sub-clauses (i) and (ii) above, whether or not budgeted in the Approved Budget, and without further notice (except as provided in Paragraph 19(b) below with respect to postpetition professional fees, costs, and expenses), motion, or application to, order of, or hearing before, this Court.

(v) <u>Right to Seek Additional Adequate Protection</u>. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, this Court finds that the adequate protection provided herein is reasonable to protect the interests of the Prepetition Secured Parties. However, the Prepetition Agent, at the direction of and on behalf of the Prepetition Secured Lenders, may request Court approval for additional or alternative adequate protection, without prejudice to any objection of the Debtors or any other party in interest to the request for or grant of any additional or alternative adequate protection. The consent of the Prepetition Secured Parties to the Debtors'

use of Cash Collateral on the terms set forth herein does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Parties that their respective interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise.

4. **Automatic Postpetition Lien Perfection**. This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the Adequate Protection Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction, (b) obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any Adequate Protection Collateral or (c) taking any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, the Prepetition Agent may, in its sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of Liens, and other similar documents relating to the Adequate Protection Liens, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been entered into, filed or recorded as of the Petition Date. The applicable Debtors shall execute and deliver to the Prepetition Agent all such financing statements, mortgages, notices, and other documents as the Prepetition Agent may reasonably request to evidence and confirm the contemplated validity, perfection and priority of the Adequate Protection Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, the Prepetition Agent may, in its sole discretion, file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of

deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized and hereby is directed to file or record such copy of this Interim Order.

5. **Reservation of Certain Third-Party Rights and Bar of Challenges and Claims**. The Debtors' Stipulations shall be binding upon the Debtors and, subject to the remaining provisions of this Paragraph 5, their estates, in all circumstances upon entry of the Final Order. The Debtors' Stipulations shall be binding upon (a) the Debtors' estates and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances and for all purposes and (b) all other parties in interest, including, without limitation, any Committee appointed or formed in these Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates in all circumstances and for all purposes unless: (i) such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (A) the earlier of (x) five (5) business days prior to the commencement of the hearing to confirm a chapter 11 plan in these Cases, and (y) seventy-five (75) calendar days following the date of entry of this Interim Order; (B) solely with respect to any Committee, sixty (60) calendar days after the formation of any Committee, and (C) any such later date as has been agreed to, in writing by the Prepetition Agent (the time period established by the foregoing clauses (A) through (C), the "Challenge Period"), (1) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Secured Loan Obligations or the Prepetition Liens, or (2) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power

claims, or any other claims, counterclaims, or causes of action, objections, contests, or defenses (collectively, the "Challenges") against any of the Prepetition Secured Parties or their representatives in connection with matters related to the (a) Prepetition Loan Documents, (b) the Prepetition Secured Loan Obligations, (c) the Prepetition Liens, or (d) the Prepetition Collateral, and (ii) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided, however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Bankruptcy Court does not rule in favor of the plaintiff in any such proceeding, then: (a) the Debtors' Stipulations shall be binding on all parties in interest, including, without limitation, the Committee (if any), (b) the obligations of the Debtors under the Prepetition Loan Documents shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Cases, and any subsequent chapter 7 case(s), (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first-priority security interests and liens, not subject to recharacterization, subordination, avoidance, or other defense, and (d) the Prepetition Secured Loan Obligations and the Prepetition Liens shall not be subject to any other or further claim or challenge by any Committee or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by the Committee (if any), any non-statutory committees appointed or

formed in these Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their representatives arising out of or relating to the Prepetition Loan Documents shall be deemed forever waived, released, and barred. If any such Challenge is timely filed during the Challenge Period, the Debtors' Stipulations shall nonetheless remain binding and preclusive on any Committee (if any), and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Notwithstanding any provision to the contrary herein, nothing in this Interim Order shall be construed (i) to grant standing on any party in interest, including any Committee, to bring any Challenge on behalf of the Debtors' estates or (ii) to constitute a waiver of the Prepetition Secured Parties' rights to assert any defenses available to them with respect to such Challenge, including, without limitation, the preclusive effect of any prior court order pursuant to which any or all of the Prepetition Secured Loan Obligations were incurred. The failure of any party in interest, including any Committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this Paragraph 5 or to require or permit an extension of the Challenge Period Termination Date.

6. **Carve-Out**. Subject to the terms and conditions contained in this Paragraph 6, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority

Claims shall be subject and subordinate to payment of the Carve-Out in accordance with the terms of this Interim Order:

(i) <u>Carve-Out</u>. For purposes of this Interim Order, "Carve-Out" means (a) all unpaid fees required to be paid in these Cases to the clerk of the Bankruptcy Court and to the office of the United States Trustee under 28 U.S.C. § 1930(a)(6); (b) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code, in an aggregate amount not to exceed $50,000 (without regard to the Carve-Out Trigger Notice); (c) to the extent allowed by the Court at any time, whether by interim order, procedural order or otherwise, all unpaid fees, costs, expenses, and disbursements ("<u>Debtor Professionals Fees</u>") of professionals retained by the Debtors in these Cases (collectively, the "<u>Debtors' Professionals</u>") that are incurred prior to the delivery by the Prepetition Agent of a Carve-Out Trigger Notice (as defined below), whether or not allowed by the Court or paid prior to or after delivery of the Carve-Out Trigger Notice, that (A) remain unpaid after application of any retainers being held by such professionals and (B) in all cases, are in accordance with the Approved Budget; (d) to the extent allowed by the Court at any time, whether by interim order, procedural order or otherwise, all unpaid fees, costs, and disbursements of professionals ("<u>Committee Professional Fees</u>," and together with the Debtor Professional Fees, the "<u>Professional Fees</u>") retained by any Committee in these Cases (collectively, the "<u>Committee's Professionals</u>") and all reasonable unpaid out-of-pocket expenses of the members of any Committee ("<u>Committee Members</u>"), in each case that are incurred prior to the delivery by the Prepetition Agent of a Carve- Out Trigger Notice, whether allowed by the Court prior to or after delivery of the Carve-Out Trigger Notice, and remain unpaid after application of any retainers being held by such professionals, in an aggregate amount (for both Committee Members and the Committee's Professionals) not to exceed $100,000; (e) the unpaid fees, costs,

and disbursements of the Debtors' Professionals that are incurred after the delivery of a Carve-Out Trigger Notice by the Prepetition Agent that are allowed by this Court under sections 327, 330 or 363 of the Bankruptcy Code, after application of any already un-applied retainers being held by such professionals, in an aggregate amount not to exceed $250,000 (the "Debtors' Professionals Carve-Out Cap"); and (f) the reasonable unpaid fees, costs, and disbursements of any Committee Professionals and the reasonable unpaid expenses of Committee Members that are incurred after the delivery of a Carve- Out Trigger Notice by the Prepetition Agent, that are allowed by this Court under sections 328, 330 or 1103 of the Bankruptcy Code after application of any retainers being held by such professionals, in an aggregate amount (for both Committee Members and the Committee's Professionals) not to exceed $25,000 (the "Committee Carve-Out Cap" and, together with the Debtors' Professionals Carve-Out Cap, the "Post-Default Carve-Out Cap") (provided that any success, completion, or similar fees payable from the Post-Default Carve-Out Cap amount shall be subject and subordinate, and junior in right of payment, to all other Professional Fees payable from such amount). The term "Carve-Out Trigger Notice" shall mean a written notice delivered in accordance with the rights and remedies in Paragraph 12 below by the Prepetition Agent to the Debtors' lead counsel, the United States Trustee, and lead counsel to any Committee appointed in these Cases, which notice may be delivered at any time following the occurrence and during the continuation of any Termination Event (as defined below), expressly stating that the Post-Default Carve-Out Cap is triggered.

(ii)     No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees. The Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any of the Debtors' Professionals, Committee's Professionals or Committee Members incurred in connection with the Cases or any Successor

Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed (i) to obligate any Prepetition Secured Party in any way to pay compensation to, or to reimburse expenses of, any of the Debtors' Professionals, the Committee's Professionals or Committee Members, or to guarantee that the Debtors or their estates have sufficient funds to pay such compensation or reimbursement or (ii) to increase the Carve-Out if actual allowed fees and expenses of any of the Debtors' Professionals, Committee's Professionals or Committee Members are higher in fact than the Post-Default Carve-Out Cap. Notwithstanding any provision in this Paragraph 6 to the contrary, no portion of the Carve-Out, Cash Collateral, or Prepetition Collateral shall be utilized for the payment of professional fees and disbursements to the extent restricted under Paragraph 14 hereof. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases or any Successor Cases, any trustee or of any other person or entity, or shall affect the right of any Prepetition Secured Party or any other party to object to the allowance and payment of any such fees and expenses.

(iii)    Payment of Allowed Professional Fees and Expenses. The Debtors shall be permitted to pay fees and expenses of the Debtors' Professionals, the Committee's Professionals and the Committee Members, subject to this Interim Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules and any interim compensation procedures order entered by this Court. The amounts paid prior to the Carve-Out Trigger Notice shall not reduce the Post-Default Carve-Out Cap.

7.    **Waiver of 506(c) Claims**. Subject to entry of the Final Order, and as a further condition of the Debtors' use of Cash Collateral pursuant to this Interim Order and a Final Order, (a) no costs or expenses of administration of the Cases or any Successor Cases shall be charged

against or recovered from or against any or all of the Prepetition Secured Parties, the Prepetition Collateral, and the Cash Collateral, in each case pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Prepetition Agent (at the direction of the requisite percentage of Prepetition Secured Lenders), (b) no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the Prepetition Secured Parties, and (c) the exercise prior to the entry of the Final Order of any rights under section 506(c) of the Bankruptcy Code or otherwise to charge any costs or expense of administration of the Cases or any Successor Cases from or against the Prepetition Secured Parties or their Prepetition Liens on or other interests in any or all of the Prepetition Collateral and the Cash Collateral shall not impair and shall be subject to, and junior to, the Prepetition Collateral and the Cash Collateral.

8. **After-Acquired Property**. Subject to entry of the Final Order, except as otherwise expressly provided in this Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any Lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable Lien as of the Petition Date (or a valid, enforceable and unavoidable Lien that is perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code) that is not subject to subordination or avoidance under the Bankruptcy Code or other provisions or principles of applicable law.

9. **Protection of Prepetition Secured Parties' Rights**.

(a) Subject to entry of a Final Order, unless the Prepetition Agent (at the direction of the requisite percentage of Prepetition Secured Lenders) shall have provided its prior written

consent or all Prepetition Secured Loan Obligations have been Paid in Full, there shall not be entered in any of these Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the Prepetition Liens and the Adequate Protection Liens; (ii) the use of Cash Collateral for any purpose other than to Pay in Full the Prepetition Secured Loan Obligations or as otherwise permitted in this Interim Order, (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return pursuant to section 553 of the Bankruptcy Code or otherwise, or (iv) any modification of any of the Prepetition Secured Parties' rights under this Interim Order or the Prepetition Loan Documents with respect any Prepetition Secured Loan Obligations.

(b)     The Debtors will, (i) maintain books, records, and accounts to the extent and as required by the Prepetition Loan Documents, (ii) reasonably cooperate with, consult with, and provide to the Prepetition Secured Parties all such non-privileged information and documents that any or all of the Debtors are obligated (including upon request by any of the Prepetition Secured Parties) to provide under the Prepetition Loan Documents (in the absence of the pendency of these Cases) or the provisions of this Interim Order, (iii) permit consultants, advisors and other representatives (including third party representatives) of the Prepetition Agent and the Prepetition Secured Lenders to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors'

business premises and other properties, and to discuss, and provide non-privileged advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants and other professional advisors (other than legal counsel), and (iv) permit the Prepetition Agent and the Prepetition Secured Lenders and each of their respective consultants, advisors and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets. Notwithstanding anything to the contrary contained herein, the Debtors do not waive any right to attorney-client, work product, or similar privilege, and neither the Debtors nor their legal and financial advisors shall be required to provide the Prepetition Agent or other Prepetition Secured Parties, or their respective counsel and financial advisors, with any information subject to attorney-client privilege or consisting of attorney work product.

10. **Cash Collection**. Subject to the Carve-Out and any contrary provision in the Final Order, from and after the date of the entry of this Interim Order, all collections and proceeds of any Prepetition Collateral or services provided by any Debtor and all Cash Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Loan Documents (or in such other accounts as are designated by the Prepetition Agent from time to time) (collectively, the "Cash Collection Accounts"), which accounts shall be subject to the sole dominion and control of the Prepetition Agent (and the funds in such accounts may be used by the Debtors to the extent provided in this Interim Order). Subject to entry of a Final Order, upon the direction of the Prepetition Agent (at the direction of the

requisite percentage of Prepetition Secured Lenders), at any time after the occurrence and continuation of a Termination Event, but subject to the provisions of Paragraphs 5, 6, 12, and 14, all proceeds in the Cash Collection Accounts shall be remitted to the Prepetition Agent for application to the Prepetition Secured Loan Obligations until Payment in Full of the Prepetition Secured Loan Obligations, and the Prepetition Agent shall be entitled to take all actions that are necessary or appropriate to effectuate the foregoing. Unless otherwise agreed to in writing by the Prepetition Agent (at the direction of the requisite percentage of Prepetition Secured Lenders), the Debtors shall maintain no accounts except those identified in the Debtors' cash management order (the "Cash Management Order"). The Debtors are authorized to incur obligations and liabilities for treasury, depositary or cash management services, including overnight overdraft services, controlled disbursement, automated clearinghouse transactions, return items, overdrafts and interstate depository network services provided on a postpetition basis by any financial institution at which any Cash Collection Account is maintained; provided, however, that except to the extent otherwise required by this Court, nothing herein shall require any Prepetition Secured Party to incur any overdrafts or provide any such services or functions to the Debtors.

11. **Termination Events**. The following shall constitute a termination event under this Interim Order unless waived in writing by the Prepetition Agent (each, a "Termination Event"):

(a)    The failure to obtain entry of the Final Order, in form and substance acceptable to the Prepetition Agent, on or before thirty-five (35) calendar days after the Petition Date.

(b)    The Debtors have failed to comply with any Milestone (as defined herein).

(c)    Any breach, default or other violation by any of the Debtors of the material terms and provisions of this Interim Order.

12.    **Rights and Remedies Upon Termination Event**.

(a)    Upon the occurrence and during the continuance of any Termination Event and following the giving of not less than three (3) business days' prior written notice (the "Termination Notice Period") to the respective lead counsel to the Debtors, any Committee and the U.S. Trustee, any automatic stay otherwise applicable to the Prepetition Secured Parties is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the Prepetition Secured Parties to declare a termination, reduction or restriction on the ability of the Debtors to use any Cash Collateral (any such declaration hereunder shall be made to the respective lead counsel to the Debtors, any Committee and the U.S. Trustee, and shall be referred to herein as a "Termination Declaration" and the date that is the earliest to occur of any such Termination Declaration being herein referred to as the "Termination Declaration Date"); *provided, however*, that during the Termination Notice Period, the Debtors and any Committee may (i) continue to use Cash Collateral in accordance with the Approved Budget; and (ii) seek an emergency hearing before the Bankruptcy Court, and must provide prompt notice of such hearing to the Prepetition Agent and its counsel, to contest whether an Termination Event has occurred, and the Prepetition Agent consents to either (y) an emergency hearing being set within the Termination Notice Period or (z) if the Prepetition Agent requests, in the Prepetition Agent's sole and absolute discretion, a continuance of such hearing until after the expiration of the Termination Notice Period, in which case the Debtors shall be authorized to continue use of Cash Collateral in accordance with the Budget and this Interim Order until such hearing is held; *provided, further, however*, that nothing in this section shall be construed as limiting the Debtors' ability to request or the Court's authority to grant use of Cash Collateral pursuant to section 363 of the Bankruptcy Code.

(b)      Subject to entry of a Final Order, in addition to the rights and remedies described above, within three (3) Business Days of the Termination Declaration Date, unless prior to such time this Court determines that a Termination Event has not occurred and/or is not continuing, the Prepetition Agent and the Prepetition Secured Lenders are hereby authorized to seek an emergency hearing to request any other relief, which shall be heard on no less than six (6) Business Days' notice from the filing of a motion or pleading seeking such relief, at which the Court will determine an appropriate remedy as a consequence of the Termination Event, including, without limitation, the right to seek relief from the automatic stay to foreclose on, or otherwise enforce and realize on, the Prepetition Liens on all or any portion of the Prepetition Collateral or Adequate Protection Collateral, including by collecting accounts receivable and applying the proceeds thereof to the Prepetition Secured Loan Obligations, and by occupying the Debtors' premises to sell or otherwise dispose of the Prepetition Collateral.  For the avoidance of doubt, the Prepetition Agent, or any of the Prepetition Secured Lenders, shall take no action against the Prepetition Collateral as a result of a breach of this Interim or Final Cash Collateral Order until the Bankruptcy Court determines an appropriate remedy as a consequence of such alleged breach.

(c)      Subject to the entry of a Final Order and the provisions of Paragraphs 5, 6 and 14 hereof, all proceeds realized in connection with the exercise of the rights and remedies of the Prepetition Secured Parties shall be turned over to the Prepetition Agent for application to the Prepetition Secured Loan Obligations under, and in accordance with the provisions of, the Prepetition Loan Documents and this Interim Order.

(d)      The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Interim Order as necessary to (i) permit the Debtors to grant the Adequate Protection Liens and to incur all liabilities and obligations to the Prepetition Secured

Parties under this Interim Order, (ii) authorize the Prepetition Secured Parties to retain and apply payments made in accordance with this Interim Order, (iii) permit the Prepetition Secured Parties to perform any act authorized under this Interim Order and the Prepetition Loan Documents, and (iv) otherwise to the extent necessary to implement and effectuate the provisions of this Interim Order.

13.    **Milestones**.    The Debtors shall comply with the following milestones (each, a "Milestone"):

(a)    By the date that is ten (10) calendar days after the Petition Date, the Debtors will file a proposed chapter 11 plan  (the "Plan") and related disclosure statement (the "Disclosure Statement"), each of which shall be in form and substance acceptable to the Prepetition Agent and the requisite percentage of Prepetition Secured Lenders.

(b)    By the date that is forty-five (45) calendar days after the Petition Date, or such other date as may be required by the Bankruptcy Court, the Debtors will obtain entry of an order of the Court approving the Disclosure Statement on a conditional basis and authorizing solicitation of votes on the Plan, which order shall be in form and substance acceptable to the Prepetition Agent and the requisite percentage of Prepetition Secured Lenders.

(c)    By the date that is ninety (90) calendar days after the Petition Date, the Debtors will obtain entry of an order confirming the Plan (the "Confirmation Order"), which order shall be in form and substance acceptable to the Prepetition Agent and the requisite percentage of Prepetition Secured Lenders.

(d)    By the date that is fourteen (14) calendar days after the entry of the Confirmation Order, the Debtors will cause the Effective Date (as defined in the Plan) to occur.

14. **Restriction on Use of Proceeds**. Notwithstanding anything herein to the contrary, no loans and/or proceeds from the Cash Collateral (including any retainer held by any professionals for the below-referenced parties), Prepetition Collateral, or any portion of the Carve-Out may be used by (a) any Debtor, Committee or trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity (including any of the Debtors' Professionals, the Committee's Professionals or the Committee Members) to investigate or prosecute any Challenge (including any litigation or other action) in connection with the value of the Prepetition Collateral (or to pay any professional fees and disbursements incurred in connection therewith) at any time; or (b) any Debtor, any Committee, or any trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity (including any of the Debtors' Professionals, the Committee's Professionals or the Committee Members) to (or to pay any professional fees and disbursements incurred in connection therewith): (i) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code unless upon consummation of any such loan all Prepetition Secured Loan Obligations are to be Paid in Full in Cash, or to seek any modification to this Interim Order not approved by the Prepetition Agent (at the direction of the requisite percentage of Prepetition Secured Lenders); (ii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, any or all of the Prepetition Secured Parties, their respective affiliates, assigns or successors and the respective officers, directors, employees, agents, attorneys, representatives and other advisors of the foregoing, with respect to any transaction, occurrence, omission, action, or other matter (including

formal or informal discovery proceedings in anticipation thereof) in connection with the Prepetition Secured Loan Obligations, the Prepetition Liens, or the debtor-creditor relationship between any of the Prepetition Secured Parties, on the one hand, and any of the Debtors, on the other hand, including (A) any Challenges and any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any action with respect to the validity, enforceability, priority, and extent of the Prepetition Secured Loan Obligations, or the validity, extent, and priority of the Prepetition Liens or the Adequate Protection Liens; (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the Prepetition Liens, the Adequate Protection Liens, or the other Prepetition Secured Parties Adequate Protection; and/or (D) other than with respect to the assertion of rights, remedies, or protections relating to an event of default in accordance with Paragraph 12 that is resolved in favor of the Debtors or by settlement, any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the Prepetition Secured Parties hereunder or any payments made hereunder; provided, however, up to $30,000 in the aggregate of the Carve-Out, Prepetition Collateral and any Cash Collateral may be used by the Committee (to the extent such Committee is appointed) to investigate (but not to prosecute) the claims and/or Liens of the Prepetition Agent and the other Prepetition Secured Parties under the Prepetition Loan Documents so long as such investigation occurs within the Challenge Period; or (ii) pay any fees or similar amounts to any person (other than the Prepetition Secured Parties) who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the Prepetition Agent.

15. **Proofs of Claim**. The Prepetition Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein. The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured

Parties in respect of all Prepetition Secured Loan Obligations. In addition, the Prepetition Secured Parties will not be required to file any request for allowance and/or payment of any administrative expenses, and this Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition Secured Loan Obligations constituting administrative expenses. Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, in its discretion) in each of the Cases or Successor Cases (i) a proof of claim and/or aggregate proofs of claim in respect of any Prepetition Secured Loan Obligations and (ii) a request or aggregate requests for allowance and/or payment of any portion of the Prepetition Secured Loan Obligations constituting administrative expenses.

16. **Preservation of Rights Granted Under the Interim Order**.

(a) Dismissal. If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, then notwithstanding any such dismissal, (i) all rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the Prepetition Secured Parties, respectively, shall remain in full force and effect and be binding on all parties in interest and be governed in all respects by the provisions of this Interim Order (and shall maintain their respective priorities as provided by this Interim Order) until all Prepetition Secured Loan Obligations have been Paid in Full and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the Prepetition Secured Parties, respectively.

(b)      Survival of Interim Order.  Unless the respective Prepetition Secured Party agrees otherwise or the Prepetition Secured Parties shall have been indefeasibly paid and satisfied in full, the provisions of this Interim Order, any actions taken pursuant hereto, and the Prepetition Secured Parties Adequate Protection, and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the Prepetition Secured Parties, respectively, shall survive, and shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization in any Case or Successor Case, converting any Case to a case under chapter 7, dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor Cases or providing for abstention from handling or retaining of jurisdiction of any of the Cases or any Successor Case in this Court, or terminating the joint administration of these Cases or any Successor Case or by any other act or omission. Except for the Debtors' authority to use any Cash Collateral, and unless the Debtors agree otherwise, the provisions of this Interim Order, any actions taken pursuant hereto, and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the Debtors, respectively, shall survive, and shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization in any Case or Successor Case, converting any Case to a case under chapter 7, dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor Cases or providing for abstention from handling or retaining of jurisdiction of any of the Cases or any Successor Case in this Court, or terminating the joint administration of these Cases or any Successor Case or by any other act or omission.  Unless the respective Prepetition Secured Party agrees otherwise or the Prepetition Secured Parties shall have been indefeasibly paid and satisfied in full, the terms and provisions of this Interim Order, including the Prepetition Secured Parties Adequate Protection and all other rights, remedies, Liens, priorities, privileges, protections, and

benefits granted to any or all of the Prepetition Secured Parties, respectively, shall continue in full force and effect and be binding on all parties in interest notwithstanding the entry of any such order, and such Prepetition Secured Parties Adequate Protection, and such other rights, remedies, Liens priorities, privileges, protections and benefits, shall continue in full force and effect in these proceedings and in any Successor Cases and after dismissal of any thereof, and shall maintain their respective priorities as provided by this Interim Order.

17.     **Insurance Policies**. Upon entry of this Interim Order, the Prepetition Agent and the other Prepetition Secured Parties shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtors that in any way relates to the Adequate Protection Collateral, and the Debtors shall take such actions as are reasonably requested by the Prepetition Agent (at the direction of the requisite percentage of Prepetition Secured Lenders) from time to time to evidence or effectuate the foregoing.

18.     **Other Rights and Obligations**.

(a)     Expenses. The applicable Debtors will pay all reasonable expenses incurred by the Prepetition Secured Parties (including the reasonable fees and disbursements of all counsel for the Prepetition Agent and any internal or third-party appraisers, consultants, advisors and auditors engaged by or for the benefit of the Prepetition Agent and/or its counsel) in connection with the preparation, execution, delivery, and administration of this Interim Order, the Final Order, and any other agreements, instruments, pleadings, or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby are consummated.

(b)    Notice of Professional Fees. Professionals for the Prepetition Secured Parties (including professionals engaged by counsel to the Prepetition Agent or the other Prepetition Secured Parties, as applicable) (collectively, the "Lender Professionals") shall not be required to comply with the United States Trustee fee guidelines or submit invoices to this Court, United States Trustee, any Committee or any other party in interest. Copies of summary invoices submitted to the Debtors by such Lender Professionals shall be forwarded by the Debtors to the United States Trustee, counsel for any Committee, and such other parties as this Court may direct. The summary invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; provided, however, that such summary invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege. If the Debtors, United States Trustee or any Committee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten (10) days of receipt of such invoices by the Debtors, then the Debtors, United States Trustee, or any Committee, as the case may be, shall file with this Court and serve on such Lender Professionals an objection (the "Fee Objection") limited to the issue of the reasonableness of such fees and expenses, and any failure by any such party to file a Fee Objection within such ten (10) day period shall constitute a waiver of any right of such party to object to the applicable invoice. Notwithstanding any provision herein to the contrary, any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of Lender Professionals shall be limited to the reasonableness of the amounts or particular

items or categories of the fees, costs, and expenses that are the subject of such objection. The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed and (b) all fees, costs and expenses on any invoice to which no Fee Objection has been timely filed. All such unpaid fees, costs, expenses, and charges of the Prepetition Secured Parties that have not been disallowed by this Court on the basis of an objection filed by the Debtor, the United States Trustee or any Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute Prepetition Secured Loan Obligations and shall be secured by the Adequate Protection Collateral as specified in this Interim Order. Any and all fees, commissions, costs, and expenses paid prior to the Petition Date by any Debtor to the Prepetition Agent or the other Prepetition Secured Parties in connection with or with respect to the Prepetition Credit Agreement or the other Prepetition Loan Documents are hereby approved in full and non-refundable and shall not otherwise be subject to any Challenge.

(c)      <u>Binding Effect</u>. Subject only to Paragraph 5 above, the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases and any Successor Cases, including the Prepetition Secured Parties, any Committee, and the Debtors and their respective estates, successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; provided, however, that except to the extent expressly provided in Paragraph 5, the Prepetition Secured Parties shall have no obligation to

permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(d)     No Waiver. The failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Loan Documents, or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise. Nothing contained in this Interim Order (including the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to any Prepetition Secured Party, including rights of a party to a swap agreement, securities contract, commodity contract, forward contract, or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion). Except as prohibited by this Interim Order, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any right or ability of the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Cases or any Successor Cases to cases under chapter 7, dismissal of the Cases or any Successor Cases, or the appointment of a trustee or examiner in the Cases or any Successor Cases, or to oppose the use of Cash Collateral in any Successor Case, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to any of the Debtors or seek early termination of the Debtors' exclusive rights to propose a plan under the Bankruptcy Code, or (iii) except as expressly provided herein, exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties under the Prepetition Loan Documents, the Bankruptcy Code or otherwise.

(e)   No Third-Party Rights. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or direct, indirect, or incidental beneficiary. In determining to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar federal, state or local statute or regulation) or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

(f)   No Marshaling. Subject to entry of the Final Order, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, as applicable.

(g)   Inconsistency. In the event of any inconsistency between the terms or conditions of this Interim Order and the terms or conditions of any other order entered by this Court in the nature of a "first day order", the provisions of this Interim Order shall govern and control.

(h)   Enforceability. This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

(i)     <u>Reservation of Rights</u>. Nothing in this Interim Order shall be deemed to constitute the consent of the Prepetition Secured Parties, and each of the foregoing expressly reserve the right to object, to entry of any Order of the Bankruptcy Court that provides for the sale or other disposition of all or substantially all of the assets of the Debtors (or any other sale or other disposition of assets of any of the Debtors outside the ordinary course of business) to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to Pay in Full the Prepetition Secured Loan Obligations and the Prepetition Secured Parties Adequate Protection and all of the foregoing are Paid in Full on the closing date of such sale.

(j)     <u>Headings</u>. Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Interim Order.

19.     **Final Hearing**.

(a)     The Final Hearing to consider entry of the Final Order is scheduled for March 29, 2021 at 3:30.m.(prevailing Central Time) at the United States Bankruptcy Court for the Southern District of Texas. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)     <u>Final Hearing Notice</u>. On or before March 9, 2021, the Debtors shall serve, by United States mail, first-class postage prepaid (such service constituting adequate notice of the Final Hearing), (i) notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>") and (ii) a copy of this Interim Order on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have

been appointed. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than March 25, 2021, at 5:00 p.m. (prevailing Central Time).

20.     **Retention of Jurisdiction**. This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Signed: March 02, 2021

Marvin Isgur
United States Bankruptcy Judge

**EXHIBIT A**

**Initial Approved Budget**

(see attached)

VERSION PREPARED 02.26 5PM

**CASTEX ENERGY 2005 HOLDCO, LLC**
**13-WEEK CASH FLOW ASSUMPTIONS**

# Exhibit A

| Category | Assumptions |
|---|---|
| **Revenue** | Using forward curves to base future week assumptions, which are based on commodity prices and production. Total receipts are net of taxes - estimated at 20% for onshore production. Henry Hub commodity price assumptions as well as LLS prices are based on forward curve estimates. NYMEX roll is estimated to be -.4 for Dec-Feb based on historical trends. Assuming production amount will remain steady for the going-forward months. February 2021 production has been reduced by 10% due to the power outage that occured in W.E. 2.21 |
| **Receipts** | Gross receipts for field operations are captured when revenue is recognized. Gross receipts for fields that are operated by Castex are received by Castex and are then distributed to partners based on working interest percentage - see Partner Disbursements - Revenue line item for additional detail. Additional receipts from owners when revenue is based on JIB ("Joint Interest Billing") payments that are then remitted back to Castex. Assuming a two month lag from when JIB is sent out by Castex to when JIB receipts are received by Castex. |
| CEI Onshore & Non-Op Onshore | Payments from CEI and other operators that are withholding CEP receipts will be ordered by the court to remit payments to CEP as the JOA states; It is assumed that the remitted funds that came due during post-petition will begin flowing into CEP in W.E. 4/2 and continued to be paid out at the end of every month |
| COI Offshore | Offshore operating oil receipts are projected to come in the 20th of every month; Offshore operating gas receipts are projected to come in the 25th of every month |
| Non-Operated Offshore | Assumed to come in at the beginning of every month |
| Receivables Talos - Third Coast | Assuming October & November JIB will be paid in W.E. 3/7; December JIB to be paid out W.E. 4/11 w/ the continued JIBs to follow suit in the beginning of each month and are estimated based on prior month JIB amounts - JIB Payments are assumed to have a two month lag from original JIB date. All JIBs have been discounted 20% for conservative purposes. |
| Receivables Walter | Assuming full outstanding July-Oct JIB AR payment to be paid out in W.E. 2/14; November JIB paid out W.E. 3/7; December JIB paid out W.E. 4/11 w/ the continued JIBs to follow suit in the beginning of each month and are estimated based on prior month JIB amounts - JIB Payments are assumed to have a two month lag from original JIB date. All JIBs have been discounted 20% for conservative purposes. |
| Receivables Other Owners | Outstanding Nov JIB amounts are assumed to be collected in W.E. 3/7; December JIB was prorated based on outstanding JIB that has not been added to the system - payout is assumed in W.E. 4/11; Going-forward JIBs are estimated based on prior month JIB amounts |
| **Expenditures** | |
| Logistics/Freight | Assuming $80K/wk. beginning on W.E. 3/7 |
| Oilfield Supplies/Services | Assuming $25K/wk. beginning on W.E. 3/7 |
| Fuel | Assuming $5K/wk. beginning on W.E. 3/7 |
| AFE/Cash Calls/CV | AFE disbursement overages for Ship Shoal 189 are scheduled to be paid out in week ending 4/11. AFE is specific to Walter O&G Corporation - Ship Soal 189 (SS189 B2 Workover) was pursued to ensure operational value and workover was abandoned due to unpredictable issues; Assuming $50K every other week payments will be needed for AFE beginning in W.E. 3/7 |
| Company Operators | Schooner O&G will be paid $385K at the beginning of every month per contract |
| Service Contractors | Assuming $65K/wk. beginning on W.E. 3/7 |
| Other Operating Disbursements | Assuming $50K/wk. beginning on W.E. 3/7 |
| Partner Disbursements - JIBs | Estimated monthly amounts to be paid to Walter are calculated using prior month's actual amount and updated based on discussions w/ Castex operations; Assuming an additional $50K per month to be made out to the minor non-operated partners |
| Partner Disbursements - Revenue | Gross Receipts are collected by Castex for the fields operated by Castex and are then disbursed to partners by check, which we are assuming will be cut the following week after proper review of disbursements |
| Insurance | Payments made beginning W.E. 1/17 are based on outstanding AP. Umbrella insurance coverage requires ~$290K payment to be made in W.E. 2/14; Assuming a payment of $432K to be made in W.E. 2/21 for D&O coverage |
| Interest Expense & Bank Fees | Assuming $4K around the 15th of every month for account analysis charge. |

**CASTEX ENERGY 2005 HOLDCO, LLC**
**13-WEEK CASH FLOW ASSUMPTIONS**

| Category | Assumptions |
|---|---|
| Other Disbursements | Special Committee BOD fees starting W.E. 2/21 will be paid out at $15K/mo. on the 15th of every month for the two independent directors, which will also include a $45K retention payment in W.E. 2/21 for each independent director; Greg Miller payments will continue to be paid at the beginning of each quarter at $15K; Assuming $5K/wk. beginning on 3/7 |
| Professional Fees | Assuming payments will be made in the first week of every month w/ no hold-back applied |
| Estimated Accrued Professional Fees | Accrual begins in 1st week of BK - W.E. 3/7 for cash collateral budget purposes |
| King & Spalding | Based on most current response, it is assumed that K&S pre-petition amounts will paid out of the estate in W.E. 2/28 w/ going forward monthly payments of $100K/mo. |
| Shared Service Fees & Severance | Assuming the cancellation and final payment of shared services were made on W.E. 11/29. |
| **Bank Balances** | Bank balance does not include the $750K that is in account CASTEX ENERGY PART UNSECURED CLAIMS (4670140585) or the dormant investment account (4670148223) that is not used and earns minimal interest |
| Suspended Partner Revenue | Revenue owed to certain vendors that were listed as "Suspended" in reports received by CEI. Further clarification is needed as suspended amounts date back to 2016. Until clarification can be determined, the suspended revenue has been removed from the bank balance to better show what true free cash flow is for Castex. Assuming Talos revenue will be distributed to Talos in W.E. 3/21 with Talos remitting Oct & Nov JIB amounts owed to Castex |
| **Bankruptcy Filing & Emergence** | Bankruptcy filing will take place in  W.E. 2/28. Filing of bankruptcy is assumed to be a liquidating Ch. 11. |
| **DIP Loan** | Assumed to not be needed as cash on hand will be sufficient enough to run the bankruptcy filing. |

VERSION PREPARED 02.26 5PM

**CASTEX ENERGY 2005 HOLDCO, LLC**
**13-WEEK CASH FLOW**

| | Actual 8 Week Ending 2/28/2021 | Forecast 1 Week Ending 3/7/2021 | Forecast 2 Week Ending 3/14/2021 | Forecast 3 Week Ending 3/21/2021 | Forecast 4 Week Ending 3/28/2021 | Forecast 5 Week Ending 4/4/2021 | Forecast 6 Week Ending 4/11/2021 | Forecast 7 Week Ending 4/18/2021 |
|---|---|---|---|---|---|---|---|---|
| | | *1st Week - Ch. 11 Filing* | | | | | | |
| **Receipts** | | | | | | | | |
| CEI Onshore & Non-Op Onshore | $ - | $ - | $ - | $ - | $ - | $ 359,249 | $ - | $ - |
| COI Offshore | $ - | $ - | $ - | $ 938,053 | $ 165,539 | $ - | $ - | $ - |
| Non-Operated Offshore | $ - | $ 323,389 | $ - | $ - | $ - | $ 344,604 | $ - | $ - |
| Receivables Talos - Third Coast | $ - | $ - | $ - | $ 618,412 | $ - | $ 466,002 | $ - | $ - |
| Receivables Walter | $ - | $ 842,400 | $ - | $ - | $ - | $ 720,000 | $ - | $ - |
| Receivables Other Owners | $ - | $ 31,469 | $ - | $ - | $ - | $ 32,995 | $ - | $ - |
| **TOTAL CASH RECEIPTS** | **$ 343,199** | **$ 1,197,257** | **$ -** | **$ 1,556,465** | **$ 165,539** | **$ 1,922,850** | **$ -** | **$ -** |
| **CASH EXPENDITURES** | | | | | | | | |
| **Operating Expenditures** | | | | | | | | |
| Logistics/Freight | $ 98,256 | $ 80,000 | $ 80,000 | $ 80,000 | $ 80,000 | $ 80,000 | $ 80,000 | 80,000 |
| Oilfield Supplies/Services | $ 71,185 | $ 30,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | 25,000 |
| Partner Disbursements - JIBs | $ - | $ 1,147,055 | $ - | $ - | $ - | $ 477,469 | $ - | $ - |
| Partner Disbursements - Revenue | $ 260,743 | $ 639,458 | $ - | $ 720,800 | $ - | $ 706,834 | $ - | $ - |
| Fuel | $ - | $ 27,496 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | 5,000 |
| Company Operators - Schooner O&G | $ - | $ 385,000 | $ - | $ - | $ - | $ - | $ 385,000 | - |
| Service Contractors | $ 40,351 | $ 87,000 | $ 65,000 | $ 65,000 | $ 65,000 | $ 65,000 | $ 65,000 | 65,000 |
| Other Operating Disbursements | $ 37,260 | $ 72,935 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | 50,000 |
| **Total Operating Expenditures** | **$ 507,796** | **$ 2,468,944** | **$ 225,000** | **$ 945,809** | **$ 225,000** | **$ 1,409,303** | **$ 610,000** | **225,000** |
| **Operating Cash Flow** | **$ (164,596)** | **$ (1,271,687)** | **$ (225,000)** | **$ 610,656** | **$ (59,461)** | **$ 513,547** | **$ (610,000)** | **(225,000)** |
| **Other Expenditures** | | | | | | | | |
| Professional Fees | $ 1,555,184 | $ - | $ - | $ - | $ - | $ 625,000 | $ - | $ - |
| AFE/Cash Calls/CV | $ 8,060 | $ - | $ 50,000 | $ - | $ 50,000 | $ - | $ 675,000 | - |
| Tax Fees | $ - | $ - | $ - | $ - | $ - | $ - | $ 25,000 | - |
| Insurance | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Interest Expense & Bank Fees | $ - | $ - | $ - | $ 4,000 | $ - | $ - | $ - | 4,000 |
| Adequate Protection | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Other Disbursements | $ 2,605 | $ 5,000 | $ 5,000 | $ 35,000 | $ 5,000 | $ 5,000 | $ 20,000 | 35,000 |
| **Total Other Expenditures** | **$ 1,565,849** | **$ 5,000** | **$ 55,000** | **$ 39,000** | **$ 55,000** | **$ 630,000** | **$ 720,000** | **39,000** |
| **TOTAL EXPENDITURES** | **$ 2,073,644** | **$ 2,473,944** | **$ 280,000** | **$ 984,809** | **$ 280,000** | **$ 2,039,303** | **$ 1,330,000** | **264,000** |
| **NET CASH FLOW** | **$ (1,730,445)** | **$ (1,276,687)** | **$ (280,000)** | **$ 571,656** | **$ (114,461)** | **$ (116,453)** | **$ (1,330,000)** | **(264,000)** |
| **Bank Reconciliation** | | | | | | | | |
| **Bank Balance** | **$ 5,629,438** | **$ 3,112,103** | **$ 1,830,416** | **$ 1,550,416** | **$ 2,842,162** | **$ 2,727,700** | **$ 2,606,247** | **1,276,247** |
| Week Activity | $ (1,730,445) | $ (1,276,687) | $ (280,000) | $ 571,656 | $ (114,461) | $ (116,453) | $ (1,330,000) | (264,000) |
| Capital Infusion | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Suspended Partner Revenue | $ (786,891) | $ (5,000) | $ - | $ 720,090 | $ - | $ (5,000) | $ - | - |
| Other/Adjustment | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Ending Bank Balance Availability** | **$ 3,112,103** | **$ 1,830,416** | **$ 1,550,416** | **$ 2,842,162** | **$ 2,727,700** | **$ 2,606,247** | **$ 1,276,247** | **1,012,247** |

VERSION PREPARED 02.26 5PM

**CASTEX ENERGY 2005 HOLDCO, LLC**
**13-WEEK CASH FLOW**

| | 1st Week - Ch. 11 Filing | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| | 8 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| | Week Ending 2/28/2021 | Week Ending 3/7/2021 | Week Ending 3/14/2021 | Week Ending 3/21/2021 | Week Ending 3/28/2021 | Week Ending 4/4/2021 | Week Ending 4/11/2021 | Week Ending 4/18/2021 |
| **Estimated Accrual of Professional Fees** | | | | | | | | |
| The Claro Group | $ - | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 |
| Okin Adams | $ - | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 |
| Thompson & Knight | $ - | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 |
| Wright Close & Barger | $ - | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 |
| Baker Hostetler | $ - | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 |
| King & Spalding | $ - | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 |
| Willkie Farr | $ - | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 |
| **Estimated Accrued Total** | $ - | $ 158,750 | $ 158,750 | $ 158,750 | $ 158,750 | $ 158,750 | $ 158,750 | $ 158,750 |

*Notes:*

1) *Beginning cash balance does not include the $1.3 + mm of the debtor's money that CEI is holding. Withheld funds will be pursued shortly after a bankruptcy is filed*

2) *AFE disbursement overages for Ship Shoal 189 are scheduled to be paid out in week ending 4/9. AFE is specific to Walter O&G Corporation - Ship Soal 189 (SS189 B2 Workover) was pursued to ensure operational value and workover was abandoned due to unpredictable issues*

3) *Bank balance does not include the $750K that is in account CASTEX ENERGY PART UNSECURED CLAIMS (XXXXXX0585) or the dormant investment account (XXXXXX8223) that is not used and earns minimal interest*

4) *Total Cash Receipts includes gross production receipts, receivables from owners (i.e. Talos, Walter, etc.) and returned JIB payments. For conservative purposes, Walter receipts have been discounted by 20% w/ Talos receipts discounted by 20%*

5) *Projected disbursements in W.E. 2.21 do not include operational expenditures as Texas snow storm pushed the planned AP payments into the following week*

6) *Partner Disbursements - JIBs: Starting in April, estimated monthly amount to be paid to Walter will be calculated using prior month's actual amount and updated based on discussions w/ Castex operations*

7) *Gross Receipts are collected by Castex for the fields operated by Castex and are then disbursed to partners by check, which we are assuming will be cut the following week after proper review of disbursements*

8) *Beginning the 1st week of Ch. 11 filing, check disbursements will be recognized as cash outflow in the week in which they are distributed*

9) *Estimated Accrual of Professional Fees does not impact the 13-week cash flow and is presented for cash collateral budget reporting purposes. Accrued professional fees excludes K&S post-petition payment of pre-petition invoices as well as the fees related to U.S. Trustee, UCC & Claims Agent*

10) *The budget does not include any insurance premiums for wind damange*

** *These projections are estimates only and are subject to the assumptions*

VERSION PREPARED 02.26 5PM

**CASTEX ENERGY 2005 HOLDCO, LLC**
**13-WEEK CASH FLOW**

| | | Forecast 8 Week Ending 4/25/2021 | | Forecast 9 Week Ending 5/2/2021 | | Forecast 10 Week Ending 5/9/2021 | | Forecast 11 Week Ending 5/16/2021 | | Forecast 12 Week Ending 5/23/2021 | | Forecast 13 Week Ending 5/30/2021 | | 13-Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | |
| CEI Onshore & Non-Op Onshore | $ | - | $ | 365,238 | $ | - | $ | - | $ | - | $ | - | $ | 724,487 |
| COI Offshore | $ | 1,015,466 | $ | 179,200 | $ | - | $ | - | $ | 1,203,751 | $ | 212,427 | $ | 3,714,436 |
| Non-Operated Offshore | $ | - | $ | - | $ | 334,069 | $ | - | $ | - | $ | - | $ | 1,002,062 |
| Receivables Talos - Third Coast | $ | - | $ | - | $ | 350,000 | $ | - | $ | - | $ | - | $ | 1,434,414 |
| Receivables Walter | $ | - | $ | - | $ | 500,000 | $ | - | $ | - | $ | - | $ | 2,062,400 |
| Receivables Other Owners | $ | - | $ | - | $ | 30,000 | $ | - | $ | - | $ | - | $ | 94,463 |
| **TOTAL CASH RECEIPTS** | $ | 1,015,466 | $ | 544,438 | $ | 1,214,069 | $ | - | $ | 1,203,751 | $ | 212,427 | $ | 9,032,262 |
| | | | | | | | | | | | | | | |
| **CASH EXPENDITURES** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **Operating Expenditures** | | | | | | | | | | | | | | |
| Logistics/Freight | $ | 80,000 | $ | 80,000 | $ | 80,000 | $ | 80,000 | $ | 80,000 | $ | 80,000 | $ | 1,040,000 |
| Oilfield Supplies/Services | $ | 25,000 | $ | 25,000 | $ | 25,000 | $ | 25,000 | $ | 25,000 | $ | 25,000 | $ | 330,000 |
| Partner Disbursements - JIBs | $ | - | $ | - | $ | 450,000 | $ | - | $ | - | $ | - | $ | 2,074,524 |
| Partner Disbursements - Revenue | $ | - | $ | - | $ | 765,166 | $ | - | $ | - | $ | - | $ | 2,832,267 |
| Fuel | $ | 5,000 | $ | 5,000 | $ | 5,000 | $ | 5,000 | $ | 5,000 | $ | 5,000 | $ | 87,496 |
| Company Operators - Schooner O&G | $ | - | $ | - | $ | 385,000 | $ | - | $ | - | $ | - | $ | 1,155,000 |
| Service Contractors | $ | 65,000 | $ | 65,000 | $ | 65,000 | $ | 65,000 | $ | 65,000 | $ | 65,000 | $ | 867,000 |
| Other Operating Disbursements | $ | 50,000 | $ | 50,000 | $ | 50,000 | $ | 50,000 | $ | 50,000 | $ | 50,000 | $ | 672,935 |
| **Total Operating Expenditures** | $ | 225,000 | $ | 225,000 | $ | 1,825,166 | $ | 225,000 | $ | 225,000 | $ | 225,000 | $ | 9,059,223 |
| **Operating Cash Flow** | $ | 790,466 | $ | 319,438 | $ | (611,097) | $ | (225,000) | $ | 978,751 | $ | (12,573) | $ | (26,960) |
| | | | | | | | | | | | | | | |
| **Other Expenditures** | | | | | | | | | | | | | | |
| Professional Fees | $ | - | $ | 876,317 | $ | - | $ | - | $ | - | $ | - | $ | 1,501,317 |
| AFE/Cash Calls/CV | $ | 50,000 | $ | - | $ | 50,000 | $ | - | $ | 50,000 | $ | - | $ | 925,000 |
| Tax Fees | $ | - | $ | - | $ | - | $ | - | $ | - | $ | - | $ | 25,000 |
| Insurance | $ | - | $ | - | $ | - | $ | - | $ | - | $ | - | $ | - |
| Interest Expense & Bank Fees | $ | - | $ | - | $ | - | $ | - | $ | 4,000 | $ | - | $ | 12,000 |
| Adequate Protection | $ | - | $ | - | $ | - | $ | - | $ | - | $ | - | $ | - |
| Other Disbursements | $ | 5,000 | $ | 5,000 | $ | 5,000 | $ | 5,000 | $ | 35,000 | $ | 5,000 | $ | 170,000 |
| **Total Other Expenditures** | $ | 55,000 | $ | 881,317 | $ | 55,000 | $ | 55,000 | $ | 89,000 | $ | 5,000 | $ | 2,633,317 |
| **TOTAL EXPENDITURES** | $ | 280,000 | $ | 1,106,317 | $ | 1,880,166 | $ | 230,000 | $ | 314,000 | $ | 230,000 | $ | 11,692,540 |
| **NET CASH FLOW** | $ | 735,466 | $ | (561,879) | $ | (666,097) | $ | (230,000) | $ | 889,751 | $ | (17,573) | $ | (2,660,277) |
| | | | | | | | | | | | | | | |
| **Bank Reconciliation** | | | | | | | | | | | | | | |
| **Bank Balance** | $ | 1,012,247 | $ | 1,747,713 | $ | 1,180,834 | $ | 514,737 | $ | 284,737 | $ | 1,174,489 | | |
| Week Activity | $ | 735,466 | $ | (561,879) | $ | (666,097) | $ | (230,000) | $ | 889,751 | $ | (17,573) | | |
| Capital Infusion | $ | - | $ | - | $ | - | $ | - | $ | - | $ | - | | |
| Suspended Partner Revenue | $ | - | $ | (5,000) | $ | - | $ | - | $ | - | $ | - | | |
| Other/Adjustment | $ | - | $ | - | $ | - | $ | - | $ | - | $ | - | | |
| **Ending Bank Balance Availability** | $ | 1,747,713 | $ | 1,180,834 | $ | 514,737 | $ | 284,737 | $ | 1,174,489 | $ | 1,156,915 | | |

VERSION PREPARED 02.26 5PM

**CASTEX ENERGY 2005 HOLDCO, LLC**
**13-WEEK CASH FLOW**

| | Forecast 8 Week Ending 4/25/2021 | | Forecast 9 Week Ending 5/2/2021 | | Forecast 10 Week Ending 5/9/2021 | | Forecast 11 Week Ending 5/16/2021 | | Forecast 12 Week Ending 5/23/2021 | | Forecast 13 Week Ending 5/30/2021 | | 13-Week Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Estimated Accrual of Professional Fees** | | | | | | | | | | | | | | |
| The Claro Group | $ | 50,000 | $ | 40,000 | $ | 40,000 | $ | 40,000 | $ | 40,000 | $ | 40,000 | $ | 600,000 |
| Okin Adams | $ | 50,000 | $ | 40,000 | $ | 40,000 | $ | 40,000 | $ | 40,000 | $ | 40,000 | $ | 600,000 |
| Thompson & Knight | $ | 25,000 | $ | 20,000 | $ | 20,000 | $ | 20,000 | $ | 20,000 | $ | 20,000 | $ | 300,000 |
| Wright Close & Barger | $ | 1,250 | $ | 1,600 | $ | 1,600 | $ | 1,600 | $ | 1,600 | $ | 1,600 | $ | 18,000 |
| Baker Hostetler | $ | 1,250 | $ | 1,600 | $ | 1,600 | $ | 1,600 | $ | 1,600 | $ | 1,600 | $ | 18,000 |
| King & Spalding | $ | 25,000 | $ | 20,000 | $ | 20,000 | $ | 20,000 | $ | 20,000 | $ | 20,000 | $ | 300,000 |
| Willkie Farr | $ | 6,250 | $ | 10,000 | $ | 10,000 | $ | 10,000 | $ | 10,000 | $ | 10,000 | $ | 100,000 |
| **Estimated Accrued Total** | $ | **158,750** | $ | **133,200** | $ | **133,200** | $ | **133,200** | $ | **133,200** | $ | **133,200** | $ | **1,936,000** |

*Notes:*

1) *Beginning cash balance does not include the $1.3 + mm of the debtor's money that CEI is holding. Withheld funds will be pursued shortly after a bankruptcy is filed*

2) *AFE disbursement overages for Ship Shoal 189 are scheduled to be paid out in week ending 4/9. AFE is specific to Walter O&G Corporation - Ship Soal 189 (SS189 B2 Workover) was pursued to ensure operational value and workover was abandoned due to unpredictable issues*

3) *Bank balance does not include the $750K that is in account CASTEX ENERGY PART UNSECURED CLAIMS (XXXXXX0585) or the dormant investment account (XXXXXX8223) that is not used and earns minimal interest*

4) *Total Cash Receipts includes gross production receipts, receivables from owners (i.e. Talos, Walter, etc.) and returned JIB payments. For conservative purposes, Walter receipts have been discounted by 20% w/ Talos receipts discounted by 20%*

5) *Projected disbursements in W.E. 2.21 do not include operational expenditures as Texas snow storm pushed the planned AP payments into the following week*

6) *Partner Disbursements - JIBs: Starting in April, estimated monthly amount to be paid to Walter will be calculated using prior month's actual amount and updated based on discussions w/ Castex operations*

7) *Gross Receipts are collected by Castex for the fields operated by Castex and are then disbursed to partners by check, which we are assuming will be cut the following week after proper review of disbursements*

8) *Beginning the 1st week of Ch. 11 filing, check disbursements will be recognized as cash outflow in the week in which they are distributed*

9) *Estimated Accrual of Professional Fees does not impact the 13-week cash flow and is presented for cash collateral budget reporting purposes. Accrued professional fees excludes K&S post-petition payment of pre-petition invoices as well as the fees related to U.S. Trustee, UCC & Claims Agent*

10) *The budget does not include any insurance premiums for wind damange*

** *These projections are estimates only and are subject to the assumptions*