B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____Southern_____ District of _____Texas_____

In re _Castex Energy 2005 Holdco, LLC, Castex Energy 2005, LLC, Castex Energy Partners, LLC, Castex Offshore, Inc._
        Debtor

              Case No. ___21-30710___

_(Complete if issued in an adversary proceeding)_

              Chapter _____

_____
        Plaintiff
          v.              Adv. Proc. No. _____
_____
        Defendant

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Intrepid Partners, LLC through its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE

_(Name of person to whom the subpoena is directed)_

[X] _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE  Stewart Robbins Brown & Altazan, LLC | DATE AND TIME |
|---|---|
| 301 Main St., Ste. 1640, Baton Rouge, LA 70801-0016 | April 16, 2021 @ 10:00 a.m. |

[ ] _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

    The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __3/26/21__

        CLERK OF COURT

                    OR

_____     _____
_Signature of Clerk or Deputy Clerk_     _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_ Official Committee of Unsecured Creditors, who issues or requests this subpoena, are:

Paul Douglas Stewart, Jr., Stewart Robbins Brown & Altazan, LLC, 301 Main St., Ste 1640, Baton Rouge, LA 70801; dstewart@stewartrobbins.com; 225-231-9998

#### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

EXHIBIT "A"

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

       I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

## REQUEST FOR PRODUCTION

## Intrepid Partners, LLC

### I.      Definitions

1. The term "***Castex***" means (a) Castex Energy 2005 Holdco, LLC; (b) Castex Energy 2005, LLC; (c) Castex Energy Partners, LLC; and (d) Castex Offshore, Inc. (whose Chapter 11 bankruptcy cases, bearing Cases No. 21-30710, 21-30711, 21-30712, and 21-30713, have been consolidated for joint administration with the lead case bearing 21-30710 and are pending before the United States Bankruptcy Court for the Southern District of Texas); (e) Castex LaFourche, LP, and (f) CTS-Castex, as well as anyone acting on Castex's behalf.

2. The terms "***you***," ***your***," or "***Intrepid***" mean Intrepid Partners, LLC, as well as anyone acting on your behalf.

3. The term "***Talos***" means Talos Energy Inc.

4. The term "***TK***" means Thompson Knight, LLP, as well as anyone acting on its behalf.

5. The term "***Okin Adams***" means Okin Adams LLP, as well as anyone acting on its behalf.

6. The term "***CG***" means The Claro Group, as well as anyone acting on its behalf.

7. The term "***Schooner***" means Schooner Oil and Gas LLC, as well as anyone acting on its behalf.

8. The term "***CEI***" means Castex Energy, Inc., as well as anyone acting on its behalf.

9. The term "***Board***" means Castex's Board of Directors as well as anyone acting on their behalf.

10. The terms "***Board Member***" or "***Board Members***" mean the singular or plural of (a) Greg Miller, (b) David Alexander, (c) Daniel Gillett, (d) Richard Sherill, and (e) John Stoika, as well as anyone acting on the Board Member's behalf.

11. The terms "***Owner/Lender***" or "***Owners/Lenders***" mean the singular or plural of (a) Capital One, National Association as Administrative Agent, L/C Issuer and an Owner/Lender, (b) Banc

of America Credit Products, Inc., (c) Cetus Capital III, L.P., (d) Citibank, N.A., (e) Cross Ocean SIF ESS II S.A. R. L., (f) Cross Ocean EUR ESS II S.A. R. L., (g) Cross Ocean USD ESS II S.A. R. L., (h) Cross Ocean USSS Fund I (A) LP, (i) Cross Ocean USSS SIF I LP, (j) T-VI CO-ES LP, (k) Frost Bank, (l) Iberiabank, (m) Littlejohn Opportunities Master Fund LP, (n) NB Distressed Debt Intermediate Fund LP, (o) OFM II, L.P., (p) VSS Fund, L.P., and (q) Whitney Bank, any of the foregoing Owner/Lender's assumes and assigns, any additional or replacement Owner/Lender, as well as anyone acting on such Owner/Lender's behalf.

12. The term "***Shared Services Agreement***" means that (i) certain *Second Amended and Restated Shared Services Agreement* dated March 18, 2018 between Castex and CEI, as further amended, modified, and supplemented, (ii) certain Castex Transition Program, dated February 25, 2020 with CEI, (iii) certain correspondence from CEI to the Board in October 2020, and provided on October 22, 2020 to Owner/Lenders' Counsel, (iv) certain last extension agreement dated October 26, 2020 by Castex and CEI, and (v) certain proposal by CEI dated November 17, 2020 submitted to the Owners/Lenders counsel and to the Board, under which CEI operated all of Castex's oil and gas assets for which Castex is the designated operator, was responsible for all of its management and back office operations, and provided all of Castex's officers, including John Stoika, who held the title of President and was a member of Castex's Board of Directors, including without limitation the contemplation, negotiation, execution, approval of, and termination of such agreements in late 2020.

13. The term "***Merger Negotiations***" means the process commencing in 2019 through which Castex attempted to locate a suitable merger partner, including without limitation, the contemplation, negotiation, analysis of, approvals of, and execution of such process.

14. The term *"Talos Transaction"* means the process through which Castex sold certain of its offshore and onshore assets to Talos pursuant to the definitive agreement executed on June 19, 2020 that concluded in August 2020, including without limitation, the contemplation, negotiation, analysis of, approval of, and execution of such process.

15. The term *"Remainco Negotiations"* means Castex's post-Talos sale efforts to sell or otherwise dispossess itself from its remaining oil and gas assets to CEI, parties with similar assets, or other working interest owners in properties in which Castex owns an interest, including without limitation, the contemplation, analysis of, negotiation, approval of, and execution regarding such efforts.

16. The term *"Debtors' Chapter 11 Filing"* means the authorization, planning, information gathering, information conveying, analysis of, negotiation, approval of, and execution leading to and resulting in the Castex bankruptcy filings on February 26, 2021, including without limitation, alternatives to filing, cash collateral and financing negotiations, and the chapter 11 plan and disclosures statement.

17. The term *"anyone acting on [a person's] behalf"* and includes, but is not limited to, that person's officers, directors, members, employees, representatives, agents, attorneys, members, or investigators, whether hired or appointed by such person, the person's attorneys or representatives.

18. The term *"representative"* means and includes all agents, employees, servants, officers, directors, attorneys, accountants and consultants who act or have acted on such person's behalf.

19. The term *"employee"* means employees, partners, agents, associates, or anyone acting on such party's behalf or purporting to act on such person's behalf.

20. The term "***person***" means any individual, partnership, firm, association, joint venture, corporation, estate, trust, receiver, any group or combination acting as a unit or any other business, governmental or legal entity.

21. The term "***document***" or "***documents***" (as applicable) means and includes any medium upon which intelligence or information can be recorded, maintained or retrieved, including, without limitation, the original or a copy thereof, regardless of the origin and location, of any writing, recording, and/or including electronically stored information of any type or description, however produced or reproduced, which is in your or your representatives' possession, custody or control, or to which you have or had access, or of which you have knowledge or which you have a right or privilege to examine upon request or demand, and includes any and all writings and recordings as the term is used in Federal Rule of Evidence 1001 and includes the original (or a copy if the original is not available) and any non-identical copies (whether different from the original because of notes made on the copy or otherwise).

22. The terms "***related to***", "***relate or pertain to***," "***pertaining to***", and "***relating to***" (as applicable) mean mentioning, discussing, including, summarizing, describing, reflecting, containing, referring to, relating to, depicting, connected with, embodying, evidencing, constituting, concerning, reporting, purporting or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

23. The terms "***and***" or "***or***" shall be construed either disjunctively or conjunctively or both, as necessary to bring within the scope of any request all responses which might otherwise be construed to be outside the scope.

24. The term "***communications***" means any transmission of information by written, oral, mechanical, magnetic, electronic, optical, digital, laser, photographic, pictorial, or other means,

including without limitation, documents, recorded conversations, telephone calls, meetings, e-mail messages, texts, slack messages and all other forms of electronic messaging, telegrams, facsimile transmissions, wires, and the like.

## II.     Instructions

1. Unless otherwise set forth herein, the Requests are limited in time from January 1, 2019 through the date of these Requests.

2. Where communications or documents are requested, such request encompasses communications or documents in your possession, custody or control, or in the possession, custody or control of your staff, agents, employees, representatives and, unless privileged, attorneys, or any other person who has possession, custody or control of your proprietary knowledge, information or documents.

3. For any request or part of a request for production which you refuse to respond to under a claim of privilege, you must identify the nature of the documents or information withheld; specify the grounds of the claimed privilege and the paragraph of these requests to which the information is responsive; identify each person to whom the documents or information, or any part thereof, has been disclosed; identify each person who prepared and/or signed the document; and identify each person designated as an addressee; identify the date of the document, the subject matter of the document, type or nature of the document.

4. For any record or document responsive or relating to these Requests which is known to have been destroyed or lost, or is otherwise unavailable, identify each such document by author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document.

5. All emails shall be produced in native format, organized in .pst files correlated to the number of the particular request.

6. All documents and communications should be produced in native format where possible. Scanned documents should be produced in .pdf format. All such production shall be correlated to the number of the particular request. If in doubt as to the form of production, please contact Paul Douglas Stewart, Jr. at dstewart@stewartrobbins.com (please contact through your counsel of you are a represented party) to discuss the issues to avoid misunderstandings that can result in multiple productions.

## III.    Requests

1. All of your communications relating to the Shared Services Agreement with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

2.  To the extent not already produced, all documents relating to the Shared Services Agreement.

3.  All of your communications relating to the Merger Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

4.  To the extent not already produced, all documents relating to the Merger Negotiations.

5.  All of your communications relating to the Talos Transaction with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

6.  To the extent not already produced, all documents relating to the Talos Transaction.

7.  All of your communications relating to the Remainco Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

8.  To the extent not already produced, all documents relating to the Remainco Negotiations.

9.  All of your communications relating to the Debtors' Chapter 11 Filing with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

10. To the extent not already produced, all documents relating to the Debtors' Chapter 11 Filing.

11. All of your communications relating to your billing of, and receipt of payments from, Castex with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

12. To the extent not already produced, all documents relating to your billing of, and receipt of payments from, Castex.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

__Southern__ District of __Texas__

In re __Castex Energy 2005 Holdco, LLC, Castex Energy 2005, LLC, Castex Energy Partners, LLC, Castex Offshore, Inc.__
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. __21-30710__

Chapter _____

_____
Plaintiff

v.

Adv. Proc. No. _____

_____
Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __Thompson Knight, LLP through its managing partner: Mark M. Sloan, 1722 Routh St., Suite 1500, One Arts Plaza, Dallas, TX__

*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE   Stewart Robbins Brown & Altazan, LLC 301 Main St., Ste. 1640, Baton Rouge, LA 70801-0016 | DATE AND TIME April 19, 2021 @ 10:00 a.m. |
|---|---|

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __3/26/21__

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* __Official Committee of Unsecured Creditors__, who issues or requests this subpoena, are:

Paul Douglas Stewart, Jr., Stewart Robbins Brown & Altazan, LLC, 301 Main St., Ste. 1640, Baton Rouge, LA 70801, dstewart@stewartrobbins.com; 225-231-9998

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

# PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any):* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $_____ .

      I declare under penalty of perjury that this information is true and correct.

Date: _____

 

                                 _____

                                            *Server's signature*

                                 _____

                                          *Printed name and title*

                                 _____

                                          *Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
 (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
 *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
 *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

 (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
 *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**EXHIBIT A**

**REQUEST FOR PRODUCTION**

**Thompson Knight, LLP**

**I.      Definitions**

1.  The term "*Castex*" includes (a) Castex Energy 2005 Holdco, LLC; (b) Castex Energy 2005, LLC; (c) Castex Energy Partners, LLC; and (d) Castex Offshore, Inc. (whose Chapter 11 bankruptcy cases, bearing Cases No. 21-30710, 21-30711, 21-30712, and 21-30713, have been consolidated for joint administration with the lead case bearing 21-30710 and are pending before the United States Bankruptcy Court for the Southern District of Texas); (e) Castex LaFourche, LP, and (f) CTS-Castex, as well as anyone acting on Castex's behalf.

2.  The terms "*you*," *your*," or "*TK*" mean Thompson Knight, LLP, as well as anyone acting on your behalf.

3.  The term "*Talos*" means Talos Energy Inc.

4.  The term "*Intrepid*" means Intrepid Partners, LLC, as well as anyone acting on its behalf.

5.  The term "*Okin Adams*" means Okin Adams LLP, as well as anyone acting on its behalf.

6.  The term "*CG*" means The Claro Group, as well as anyone acting on its behalf.

7.  The term "*Schooner*" means Schooner Oil and Gas LLC, as well as anyone acting on its behalf.

8.  The term "*CEI*" means Castex Energy, Inc., as well as anyone acting on its behalf.

9.  The term "*Board*" means Castex's Board of Directors as well as anyone acting on their behalf.

10. The terms "*Board Member*" or "*Board Members*" mean the singular or plural of (a) Greg Miller, (b) David Alexander, (c) Daniel Gillett, (d) Richard Sherill, and (e) John Stoika, as well as anyone acting on the Board Member's behalf.

11. The terms "*Owner/Lender*" or "*Owners/Lenders*" mean the singular or plural of (a) Capital One, National Association as Administrative Agent, L/C Issuer and an Owner/Lender, (b) Banc

of America Credit Products, Inc., (c) Cetus Capital III, L.P., (d) Citibank, N.A., (e) Cross Ocean SIF ESS II S.A. R. L., (f) Cross Ocean EUR ESS II S.A. R. L., (g) Cross Ocean USD ESS II S.A. R. L., (h) Cross Ocean USSS Fund I (A) LP, (i) Cross Ocean USSS SIF I LP, (j) T-VI CO-ES LP, (k) Frost Bank, (l) Iberiabank, (m) Littlejohn Opportunities Master Fund LP, (n) NB Distressed Debt Intermediate Fund LP, (o) OFM II, L.P., (p) VSS Fund, L.P., and (q) Whitney Bank, any of the foregoing Owner/Lender's assumes and assigns, any additional or replacement Owner/Lender, as well as anyone acting on such Owner/Lender's behalf.

12. The term "*Shared Services Agreement*" means that (i) certain *Second Amended and Restated Shared Services Agreement* dated March 18, 2018 between Castex and CEI, as further amended, modified, and supplemented, (ii) certain Castex Transition Program, dated February 25, 2020 with CEI, (iii) certain correspondence from CEI to the Board in October 2020, and provided on October 22, 2020 to Owner/Lenders' Counsel, (iv) certain last extension agreement dated October 26, 2020 by Castex and CEI, and (v) certain proposal by CEI dated November 17, 2020 submitted to the Owners/Lenders counsel and to the Board, under which CEI operated all of Castex's oil and gas assets for which Castex is the designated operator, was responsible for all of its management and back office operations, and provided all of Castex's officers, including John Stoika, who held the title of President and was a member of Castex's Board of Directors, including without limitation the contemplation, negotiation, execution, approval of, and termination of such agreements in late 2020.

13. The term "*Merger Negotiations*" means the process commencing in 2019 through which Castex attempted to locate a suitable merger partner, including without limitation, the contemplation, negotiation, analysis of, approvals of, and execution of such process.

14. The term *"Talos Transaction"* means the process through which Castex sold certain of its offshore and onshore assets to Talos pursuant to the definitive agreement executed on June 19, 2020 that concluded in August 2020, including without limitation, the contemplation, negotiation, analysis of, approval of, and execution of such process.

15. The term *"Remainco Negotiations"* means Castex's post-Talos sale efforts to sell or otherwise dispossess itself from its remaining oil and gas assets to CEI, parties with similar assets, or other working interest owners in properties in which Castex owns an interest, including without limitation, the contemplation, analysis of, negotiation, approval of, and execution regarding such efforts.

16. The term *"Debtors' Chapter 11 Filing"* means the authorization, planning, information gathering, information conveying, analysis of, negotiation, approval of, and execution leading to and resulting in the Castex bankruptcy filings on February 26, 2021, including without limitation, alternatives to filing, cash collateral and financing negotiations, and the chapter 11 plan and disclosures statement.

17. The term *"anyone acting on [a person's] behalf"* and includes, but is not limited to, that person's officers, directors, members, employees, representatives, agents, attorneys, members, or investigators, whether hired or appointed by such person, the person's attorneys or representatives.

18. The term *"representative"* means and includes all agents, employees, servants, officers, directors, attorneys, accountants and consultants who act or have acted on such person's behalf.

19. The term *"employee"* means employees, partners, agents, associates, or anyone acting on such party's behalf or purporting to act on such person's behalf.

20. The term *"person"* means any individual, partnership, firm, association, joint venture, corporation, estate, trust, receiver, any group or combination acting as a unit or any other business, governmental or legal entity.

21. The term *"document"* or *"documents"* (as applicable) means and includes any medium upon which intelligence or information can be recorded, maintained or retrieved, including, without limitation, the original or a copy thereof, regardless of the origin and location, of any writing, recording, and/or including electronically stored information of any type or description, however produced or reproduced, which is in your or your representatives' possession, custody or control, or to which you have or had access, or of which you have knowledge or which you have a right or privilege to examine upon request or demand, and includes any and all writings and recordings as the term is used in Federal Rule of Evidence 1001 and includes the original (or a copy if the original is not available) and any non-identical copies (whether different from the original because of notes made on the copy or otherwise).

22. The terms *"related to"*, *"relate or pertain to,"* *"pertaining to"*, and *"relating to"* (as applicable) mean mentioning, discussing, including, summarizing, describing, reflecting, containing, referring to, relating to, depicting, connected with, embodying, evidencing, constituting, concerning, reporting, purporting or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

23. The terms *"and"* or *"or"* shall be construed either disjunctively or conjunctively or both, as necessary to bring within the scope of any request all responses which might otherwise be construed to be outside the scope.

24. The term *"communications"* means any transmission of information by written, oral, mechanical, magnetic, electronic, optical, digital, laser, photographic, pictorial, or other means,

including without limitation, documents, recorded conversations, telephone calls, meetings, e-mail messages, texts, slack messages and all other forms of electronic messaging, telegrams, facsimile transmissions, wires, and the like.

## II.   Instructions

1. Unless otherwise set forth herein, the Requests are limited in time from January 1, 2019 through the date of these Requests.

2. Where communications or documents are requested, such request encompasses communications or documents in your possession, custody or control, or in the possession, custody or control of your staff, agents, employees, representatives and, unless privileged, attorneys, or any other person who has possession, custody or control of your proprietary knowledge, information or documents.

3. For any request or part of a request for production which you refuse to respond to under a claim of privilege, you must identify the nature of the documents or information withheld; specify the grounds of the claimed privilege and the paragraph of these requests to which the information is responsive; identify each person to whom the documents or information, or any part thereof, has been disclosed; identify each person who prepared and/or signed the document; and identify each person designated as an addressee; identify the date of the document, the subject matter of the document, type or nature of the document.

4. For any record or document responsive or relating to these Requests which is known to have been destroyed or lost, or is otherwise unavailable, identify each such document by author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document.

5. All emails shall be produced in native format, organized in .pst files correlated to the number of the particular request.

6. All documents and communications should be produced in native format where possible. Scanned documents should be produced in .pdf format. All such production shall be correlated to the number of the particular request. If in doubt as to the form of production, please contact Paul Douglas Stewart, Jr. at dstewart@stewartrobbins.com (please contact through your counsel of you are a represented party) to discuss the issues to avoid misunderstandings that can result in multiple productions.

## III.   Requests

1. All of your communications relating to the Shared Services Agreement with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, Intrepid, OA, CG, or CEI.

2. To the extent not already produced, all documents relating to the Shared Services Agreement.

3. All of your communications relating to the Merger Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, Intrepid, OA, CG, or CEI.

4. To the extent not already produced, all documents relating to the Merger Negotiations.

5. All of your communications relating to the Talos Transaction with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, Intrepid, OA, CG, or CEI.

6. To the extent not already produced, all documents relating to the Talos Transaction.

7. All of your communications relating to the Remainco Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, Intrepid, OA, CG, or CEI.

8. To the extent not already produced, all documents relating to the Remainco Negotiations.

9. All of your communications relating to the Debtors' Chapter 11 Filing with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, Intrepid, OA, CG, or CEI.

10. To the extent not already produced, all documents relating to the Debtors' Chapter 11 Filing.

11. All of your communications relating to your billing of, and receipt of payments from, Castex with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, Intrepid, OA, CG, or CEI.

12. To the extent not already produced, all documents relating to your billing of, and receipt of payments from, Castex.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Southern _____ District of _____ Texas _____

In re   Castex Energy 2005 Holdco, LLC, Castex Energy 2005, LLC, Castex Energy Partners, LLC, Castex Offshore, Inc.
_____ Debtor

*(Complete if issued in an adversary proceeding)*

_____
Plaintiff
v.

_____
Defendant

Case No.   21-30710 _____

Chapter _____

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:   Capital One, National Association, through Corporation Service Company, 211 E. 7th Street, Ste. 620 Austin, TX
78701-3218        *(Name of person to whom the subpoena is directed)*

[X]  *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE  Stewart Robbins Brown & Altazan, LLC 301 Main St., Ste. 1640, Baton Rouge, LA 70801-0016 | DATE AND TIME April 30, 2021 @ 10:00 a.m. |
|---|---|

[ ]  *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  4/8/21

        CLERK OF COURT

                                    OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Official Committee of Unsecured Creditors , who issues or requests this subpoena, are:

Paul Douglas Stewart, Jr., Stewart Robbins Brown & Altazan, LLC; 301 Main St., Ste  1640, Baton Rouge, LA 70801; dstewart@stewartrobbins.com; 225-231-9998

#### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
(made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

## REQUEST FOR PRODUCTION

### Capital One, National Association

**I.     Definitions**

1. The term "***Castex***" means the singular or plural of (a) Castex Energy 2005 Holdco, LLC; (b) Castex Energy 2005, LLC; (c) Castex Energy Partners, LLC; and (d) Castex Offshore, Inc. (whose Chapter 11 bankruptcy cases, bearing Cases No. 21-30710, 21-30711, 21-30712, and 21-30713, have been consolidated for joint administration with the Lead Case bearing 21-30710 and are pending before the United States Bankruptcy Court for the Southern District of Texas); (e) Castex LaFourche, LP, and (f) CTS-Castex, as well as anyone acting on Castex's behalf.

2. The terms "***you***," ***your***," or "***CONA***" mean Capital One, National Association as Administrative Agent, L/C Issuer and an Owner/Lender, as well as anyone acting on your behalf.

3. The term "***Talos***" means Talos Energy Inc.

4. The term "***TK***" means Thompson Knight, LLP, as well as anyone acting on its behalf.

5. The term "***Okin Adams***" means Okin Adams LLP, as well as anyone acting on its behalf.

6. The term "***CG***" means The Claro Group, as well as anyone acting on its behalf.

7. The term "***Schooner***" means Schooner Oil and Gas LLC, as well as anyone acting on its behalf.

8. The term "***CEI***" means Castex Energy, Inc., as well as anyone acting on its behalf.

9. The term "***Board***" means Castex's Board of Directors as well as anyone acting on their behalf.

10. The terms "***Board Member***" or "***Board Members***" mean the singular or plural of (a) Greg Miller, (b) David Alexander, (c) Daniel Gillett, (d) Richard Sherill, and (e) John Stoika, as well as anyone acting on the Board Member's behalf.

11. The terms "*Owner/Lender*" or "*Owners/Lenders*" mean the singular or plural of (a) Capital One, National Association as Administrative Agent, L/C Issuer and an Owner/Lender, (b) Banc of America Credit Products, Inc., (c) Cetus Capital III, L.P., (d) Citibank, N.A., (e) Cross Ocean SIF ESS II S.A. R. L., (f) Cross Ocean EUR ESS II S.A. R. L., (g) Cross Ocean USD ESS II S.A. R. L., (h) Cross Ocean USSS Fund I (A) LP, (i) Cross Ocean USSS SIF I LP, (j) T-VI CO-ES LP, (k) Frost Bank, (l) Iberiabank, (m) Littlejohn Opportunities Master Fund LP, (n) NB Distressed Debt Intermediate Fund LP, (o) OFM II, L.P., (p) VSS Fund, L.P., and (q) Whitney Bank, any of the foregoing Owner/Lender's assumes and assigns, any additional or replacement Owner/Lender, as well as anyone acting on such Owner/Lender's behalf.

12. The term "*Shared Services Agreement*" means that (i) certain *Second Amended and Restated Shared Services Agreement* dated March 18, 2018 between Castex and CEI, as further amended, modified, and supplemented, (ii) certain Castex Transition Program, dated February 25, 2020 with CEI, (iii) certain correspondence from CEI to the Board in October 2020, and provided on October 22, 2020 to Owner/Lenders' Counsel, (iv) certain last extension agreement dated October 26, 2020 by Castex and CEI, and (v) certain proposal by CEI dated November 17, 2020 submitted to the Owners/Lenders counsel and to the Board, under which CEI operated all of Castex's oil and gas assets for which Castex is the designated operator, was responsible for all of its management and back office operations, and provided all of Castex's officers, including John Stoika, who held the title of President and was a member of Castex's Board of Directors, including without limitation the contemplation, negotiation, execution, approval of, alternatives to, and termination of such agreements in late 2020.

13. The term "*Merger Negotiations*" means the process commencing in 2019 through which Castex attempted to locate a suitable merger partner, including without limitation, the

contemplation, negotiation, analysis of, approvals of, alternative to, and execution of, such process.

14. The term "*Talos Transaction*" means the process through which Castex sold certain of its offshore and onshore assets to Talos pursuant to the definitive agreement executed on June 19, 2020 that concluded in August 2020, including without limitation, the contemplation, negotiation, analysis of, approval of, alternatives to, and execution of, such process.

15. The term "*Remainco Negotiations*" means Castex's post-Talos sale efforts to sell or otherwise dispossess itself from its remaining oil and gas assets to CEI, parties with similar assets, or other working interest owners in properties in which Castex owns an interest, including without limitation, the contemplation, analysis of, negotiation, approval of, and execution regarding such efforts.

16. The term "*Debtors' Chapter 11 Filing*" means the authorization, planning, information gathering, information conveying, analysis of, negotiation, approval of, and execution leading to and resulting in the Castex bankruptcy filings on February 26, 2021, including without limitation, alternatives to filing, cash collateral and financing negotiations, and the chapter 11 plan and disclosures statement.

17. The term "*anyone acting on [a person's] behalf*" and includes, but is not limited to, that person's officers, directors, members, employees, representatives, agents, attorneys, members, or investigators, whether hired or appointed by such person, the person's attorneys or representatives.

18. The term "*representative*" means and includes all agents, employees, servants, officers, directors, attorneys, accountants and consultants who act or have acted on such person's behalf.

19. The term "*employee*" means employees, partners, agents, associates, or anyone acting on such party's behalf or purporting to act on such person's behalf.

20. The term "*person*" means any individual, partnership, firm, association, joint venture, corporation, estate, trust, receiver, any group or combination acting as a unit or any other business, governmental or legal entity.

21. The term "*document*" or "*documents*" (as applicable) means and includes any medium upon which intelligence or information can be recorded, maintained or retrieved, including, without limitation, the original or a copy thereof, regardless of the origin and location, of any writing, recording, and/or including electronically stored information of any type or description, however produced or reproduced, which is in your or your representatives' possession, custody or control, or to which you have or had access, or of which you have knowledge or which you have a right or privilege to examine upon request or demand, and includes any and all writings and recordings as the term is used in Federal Rule of Evidence 1001 and includes the original (or a copy if the original is not available) and any non-identical copies (whether different from the original because of notes made on the copy or otherwise).

22. The terms "*related to*", "*relate or pertain to*," "*pertaining to*", and "*relating to*" (as applicable) mean mentioning, discussing, including, summarizing, describing, reflecting, containing, referring to, relating to, depicting, connected with, embodying, evidencing, constituting, concerning, reporting, purporting or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

23. The terms "*and*" or "*or*" shall be construed either disjunctively or conjunctively or both, as necessary to bring within the scope of any request all responses which might otherwise be construed to be outside the scope.

24. The term *"communications"* means any transmission of information by written, oral, mechanical, magnetic, electronic, optical, digital, laser, photographic, pictorial, or other means, including without limitation, documents, recorded conversations, telephone calls, meetings, e-mail messages, texts, slack messages and all other forms of electronic messaging, telegrams, facsimile transmissions, wires, and the like.

## II.    Instructions

1. Unless otherwise set forth herein, the Requests are limited in time from January 1, 2019 through the date of these Requests.

2. Where communications or documents are requested, such request encompasses communications or documents in your possession, custody or control, or in the possession, custody or control of your staff, agents, employees, representatives and, unless privileged, attorneys, or any other person who has possession, custody or control of your proprietary knowledge, information or documents.

3. For any request or part of a request for production which you refuse to respond to under a claim of privilege, you must identify the nature of the documents or information withheld; specify the grounds of the claimed privilege and the paragraph of these requests to which the information is responsive; identify each person to whom the documents or information, or any part thereof, has been disclosed; identify each person who prepared and/or signed the document; and identify each person designated as an addressee; identify the date of the document, the subject matter of the document, type or nature of the document.

4. For any record or document responsive or relating to these Requests which is known to have been destroyed or lost, or is otherwise unavailable, identify each such document by author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document.

5. All emails shall be produced in native format, organized in .pst files correlated to the number of the particular request.

6. All documents and communications should be produced in native format where possible. Scanned documents should be produced in .pdf format. All such production shall be correlated to the number of the particular request. If in doubt as to the form of production, please contact Paul Douglas Stewart, Jr. at dstewart@stewartrobbins.com (please contact through your counsel of you are a represented party) to discuss the issues to avoid misunderstandings that can result in multiple productions.

### III.     Requests

1.  All of your communications relating to the Shared Services Agreement with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

2.  To the extent not already produced, all documents relating to the Shared Services Agreement.

3.  All of your communications relating to the Merger Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

4.  To the extent not already produced, all documents relating to the Merger Negotiations.

5.  All of your communications relating to the Talos Transaction with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

6.  To the extent not already produced, all documents relating to the Talos Transaction.

7.  All of your communications relating to the Remainco Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

8.  To the extent not already produced, all documents relating to the Remainco Negotiations.

9.  All of your communications relating to the Debtors' Chapter 11 Filing with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

10. To the extent not already produced, all documents relating to the Debtors' Chapter 11 Filing.

11. All of your communications relating to amounts due from Castex with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

12. To the extent not already produced, all documents relating to amounts due from Castex.

13. All of your communications relating to Castex's default under its agreements with the Owners/Lenders with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

14. To the extent not already produced, all documents relating to Castex's default under its agreements with the Owners/Lenders.

15. To the extent not already produced, all communications relating to any formal protocols put in place by the Board to manage conflicts between the Lenders/Owners in their capacity as lenders and as owners with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Intrepid, Talos, Schooner, TK, CG, OA, or CEI.

16. To the extent not already produced, all documents relating to any formal protocols put in place by the Board or Lenders/Owners to manage conflicts between the Board and Lenders/Owners.

17. To the extent not already produced, all communications relating to Castex's financial statements, weekly/monthly/yearly reporting, plug and abandonment liability, the value of Castex's property sold through the Talos Sale, or the value of Castex's property relating to the Remainco Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Intrepid, Talos, Schooner, TK, OA, CG, or CEI.

18. To the extent not already produced, all documents relating to Castex's financial statements, weekly/monthly/yearly reporting, plug and abandonment liability, the value of Castex's property sold through the Talos Sale, or the value of Castex's property relating to the Remainco Negotiations.

19. To the extent not already produced, all documents relating to legal demands, subpoenas, litigation hold letters, or other such notices requiring or suggesting legal action or responsibilities provided to or from any person relating to Castex.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Southern _____ District of ____ Texas _____

In re  Castex Energy 2005 Holdco, LLC, Castex Energy 2005, LLC, Castex Energy Partners, LLC, Castex Offshore, Inc.
_____
Debtor

Case No.   21-30710 _____

*(Complete if issued in an adversary proceeding)*

Chapter _____

_____
Plaintiff
v.

Adv. Proc. No. _____

_____
Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:   Citibank NA, through its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801
*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE   Stewart Robbins Brown & Altazan, LLC 301 Main St., Ste. 1640, Baton Rouge, LA 70801-0016 | DATE AND TIME April 30, 2021 @ 10:00 a.m. |
|---|---|

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 4|8|21

CLERK OF COURT

                              OR

_____          _____
*Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Official Committee of Unsecured Creditors , who issues or requests this subpoena, are:

Paul Douglas Stewart, Jr ; Stewart Robbins Brown & Altazan, LLC; 301 Main St., Ste  1640, Baton Rouge, LA 70801; dstewart@stewartrobbins.com; 225-231-9998

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any):* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

(c) Place of compliance.

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

(d) Protecting a Person Subject to a Subpoena; Enforcement.

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) Contempt. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## REQUEST FOR PRODUCTION

### Citibank N.A.

**I.     Definitions**

1. The term *"Castex"* means the singular or plural of (a) Castex Energy 2005 Holdco, LLC; (b) Castex Energy 2005, LLC; (c) Castex Energy Partners, LLC; and (d) Castex Offshore, Inc. (whose Chapter 11 bankruptcy cases, bearing Cases No. 21-30710, 21-30711, 21-30712, and 21-30713, have been consolidated for joint administration with the Lead Case bearing 21-30710 and are pending before the United States Bankruptcy Court for the Southern District of Texas); (e) Castex LaFourche, LP, and (f) CTS-Castex, as well as anyone acting on Castex's behalf.

2. The terms *"you," your,"* or *"CB"* mean Citibank, N.A., as well as anyone acting on your behalf.

3. The term *"Talos"* means Talos Energy Inc.

4. The term *"TK"* means Thompson Knight, LLP, as well as anyone acting on its behalf.

5. The term *"Okin Adams"* means Okin Adams LLP, as well as anyone acting on its behalf.

6. The term *"CG"* means The Claro Group, as well as anyone acting on its behalf.

7. The term *"Schooner"* means Schooner Oil and Gas LLC, as well as anyone acting on its behalf.

8. The term *"CEI"* means Castex Energy, Inc., as well as anyone acting on its behalf.

9. The term *"Board"* means Castex's Board of Directors as well as anyone acting on their behalf.

10. The terms *"Board Member"* or *"Board Members"* mean the singular or plural of (a) Greg Miller, (b) David Alexander, (c) Daniel Gillett, (d) Richard Sherill, and (e) John Stoika, as well as anyone acting on the Board Member's behalf.

11. The terms *"Owner/Lender"* or *"Owners/Lenders"* mean the singular or plural of (a) Capital One, National Association as Administrative Agent, L/C Issuer and an Owner/Lender, (b) Banc

of America Credit Products, Inc., (c) Cetus Capital III, L.P., (d) Citibank, N.A., (e) Cross Ocean SIF ESS II S.A. R. L., (f) Cross Ocean EUR ESS II S.A. R. L., (g) Cross Ocean USD ESS II S.A. R. L., (h) Cross Ocean USSS Fund I (A) LP, (i) Cross Ocean USSS SIF I LP, (j) T-VI CO-ES LP, (k) Frost Bank, (l) Iberiabank, (m) Littlejohn Opportunities Master Fund LP, (n) NB Distressed Debt Intermediate Fund LP, (o) OFM II, L.P., (p) VSS Fund, L.P., and (q) Whitney Bank, any of the foregoing Owner/Lender's assumes and assigns, any additional or replacement Owner/Lender, as well as anyone acting on such Owner/Lender's behalf.

12. The term "***Shared Services Agreement***" means that (i) certain *Second Amended and Restated Shared Services Agreement* dated March 18, 2018 between Castex and CEI, as further amended, modified, and supplemented, (ii) certain Castex Transition Program, dated February 25, 2020 with CEI, (iii) certain correspondence from CEI to the Board in October 2020, and provided on October 22, 2020 to Owner/Lenders' Counsel, (iv) certain last extension agreement dated October 26, 2020 by Castex and CEI, and (v) certain proposal by CEI dated November 17, 2020 submitted to the Owners/Lenders counsel and to the Board, under which CEI operated all of Castex's oil and gas assets for which Castex is the designated operator, was responsible for all of its management and back office operations, and provided all of Castex's officers, including John Stoika, who held the title of President and was a member of Castex's Board of Directors, including without limitation the contemplation, negotiation, execution, approval of, alternatives to, and termination of such agreements in late 2020.

13. The term "***Merger Negotiations***" means the process commencing in 2019 through which Castex attempted to locate a suitable merger partner, including without limitation, the contemplation, negotiation, analysis of, approvals of, alternative to, and execution of, such process.

14. The term "*Talos Transaction*" means the process through which Castex sold certain of its offshore and onshore assets to Talos pursuant to the definitive agreement executed on June 19, 2020 that concluded in August 2020, including without limitation, the contemplation, negotiation, analysis of, approval of, alternatives to, and execution of, such process.

15. The term "*Remainco Negotiations*" means Castex's post-Talos sale efforts to sell or otherwise dispossess itself from its remaining oil and gas assets to CEI, parties with similar assets, or other working interest owners in properties in which Castex owns an interest, including without limitation, the contemplation, analysis of, negotiation, approval of, and execution regarding such efforts.

16. The term "*Debtors' Chapter 11 Filing*" means the authorization, planning, information gathering, information conveying, analysis of, negotiation, approval of, and execution leading to and resulting in the Castex bankruptcy filings on February 26, 2021, including without limitation, alternatives to filing, cash collateral and financing negotiations, and the chapter 11 plan and disclosures statement.

17. The term "*anyone acting on [a person's] behalf*" and includes, but is not limited to, that person's officers, directors, members, employees, representatives, agents, attorneys, members, or investigators, whether hired or appointed by such person, the person's attorneys or representatives.

18. The term "*representative*" means and includes all agents, employees, servants, officers, directors, attorneys, accountants and consultants who act or have acted on such person's behalf.

19. The term "*employee*" means employees, partners, agents, associates, or anyone acting on such party's behalf or purporting to act on such person's behalf.

20. The term "*person*" means any individual, partnership, firm, association, joint venture, corporation, estate, trust, receiver, any group or combination acting as a unit or any other business, governmental or legal entity.

21. The term "*document*" or "*documents*" (as applicable) means and includes any medium upon which intelligence or information can be recorded, maintained or retrieved, including, without limitation, the original or a copy thereof, regardless of the origin and location, of any writing, recording, and/or including electronically stored information of any type or description, however produced or reproduced, which is in your or your representatives' possession, custody or control, or to which you have or had access, or of which you have knowledge or which you have a right or privilege to examine upon request or demand, and includes any and all writings and recordings as the term is used in Federal Rule of Evidence 1001 and includes the original (or a copy if the original is not available) and any non-identical copies (whether different from the original because of notes made on the copy or otherwise).

22. The terms "*related to*", "*relate or pertain to*," "*pertaining to*", and "*relating to*" (as applicable) mean mentioning, discussing, including, summarizing, describing, reflecting, containing, referring to, relating to, depicting, connected with, embodying, evidencing, constituting, concerning, reporting, purporting or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

23. The terms "*and*" or "*or*" shall be construed either disjunctively or conjunctively or both, as necessary to bring within the scope of any request all responses which might otherwise be construed to be outside the scope.

24. The term "*communications*" means any transmission of information by written, oral, mechanical, magnetic, electronic, optical, digital, laser, photographic, pictorial, or other means,

including without limitation, documents, recorded conversations, telephone calls, meetings, e-mail messages, texts, slack messages and all other forms of electronic messaging, telegrams, facsimile transmissions, wires, and the like.

## II.    Instructions

1. Unless otherwise set forth herein, the Requests are limited in time from January 1, 2019 through the date of these Requests.

2. Where communications or documents are requested, such request encompasses communications or documents in your possession, custody or control, or in the possession, custody or control of your staff, agents, employees, representatives and, unless privileged, attorneys, or any other person who has possession, custody or control of your proprietary knowledge, information or documents.

3. For any request or part of a request for production which you refuse to respond to under a claim of privilege, you must identify the nature of the documents or information withheld; specify the grounds of the claimed privilege and the paragraph of these requests to which the information is responsive; identify each person to whom the documents or information, or any part thereof, has been disclosed; identify each person who prepared and/or signed the document; and identify each person designated as an addressee; identify the date of the document, the subject matter of the document, type or nature of the document.

4. For any record or document responsive or relating to these Requests which is known to have been destroyed or lost, or is otherwise unavailable, identify each such document by author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document.

5. All emails shall be produced in native format, organized in .pst files correlated to the number of the particular request.

6. All documents and communications should be produced in native format where possible. Scanned documents should be produced in .pdf format. All such production shall be correlated to the number of the particular request. If in doubt as to the form of production, please contact Paul Douglas Stewart, Jr. at dstewart@stewartrobbins.com (please contact through your counsel of you are a represented party) to discuss the issues to avoid misunderstandings that can result in multiple productions.

### III.   Requests

1. All of your communications relating to the Shared Services Agreement with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

2. To the extent not already produced, all documents relating to the Shared Services Agreement.

3. All of your communications relating to the Merger Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

4. To the extent not already produced, all documents relating to the Merger Negotiations.

5. All of your communications relating to the Talos Transaction with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

6. To the extent not already produced, all documents relating to the Talos Transaction.

7. All of your communications relating to the Remainco Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

8. To the extent not already produced, all documents relating to the Remainco Negotiations.

9. All of your communications relating to the Debtors' Chapter 11 Filing with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

10. To the extent not already produced, all documents relating to the Debtors' Chapter 11 Filing.

11. All of your communications relating to amounts due from Castex with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

12. To the extent not already produced, all documents relating to amounts due from Castex.

13. All of your communications relating to Castex's default under its agreements with the Owners/Lenders with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

14. To the extent not already produced, all documents relating to Castex's default under its agreements with the Owners/Lenders.

15. To the extent not already produced, all communications relating to any formal protocols put in place by the Board to manage conflicts between the Lenders/Owners in their capacity as lenders and as owners with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Intrepid, Talos, Schooner, TK, CG, OA, or CEI.

16. To the extent not already produced, all documents relating to any formal protocols put in place by the Board or Lenders/Owners to manage conflicts between the Board and Lenders/Owners.

17. To the extent not already produced, all communications relating to Castex's financial statements, weekly/monthly/yearly reporting, plug and abandonment liability, the value of Castex's property sold through the Talos Sale, or the value of Castex's property relating to the Remainco Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Intrepid, Talos, Schooner, TK, OA, CG, or CEI.

18. To the extent not already produced, all documents relating to Castex's financial statements, weekly/monthly/yearly reporting, plug and abandonment liability, the value of Castex's property sold through the Talos Sale, or the value of Castex's property relating to the Remainco Negotiations.

19. To the extent not already produced, all documents relating to legal demands, subpoenas, litigation hold letters, or other such notices requiring or suggesting legal action or responsibilities provided to or from any person relating to Castex.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Southern _____ District of ____ Texas _____

In re ___Castex Energy 2005 Holdco, LLC, Castex Energy 2005, LLC, Castex Energy Partners, LLC, Castex Offshore, Inc.
_____ Debtor

*(Complete if issued in an adversary proceeding)*

Case No. __21-30710__

Chapter _____

_____
Plaintiff

v.

Adv. Proc. No. _____

_____
Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Lasalle Wacker S2013 LLC through its registered agent: Corporation Service Company, 251 Little Falls Dr., Wilmington, DE 19808
*(Name of person to who subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE   Stewart Robbins Brown & Altazan, LLC<br>301 Main St., Ste. 1640, Baton Rouge, LA 70801-0016 | DATE AND TIME<br>April 30, 2021 @ 10:00 a.m. |
|---|---|

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 4/2/21

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Official Committee of Unsecured Creditors, who issues or requests this subpoena, are:

Paul Douglas Stewart, Jr., Stewart Robbins Brown & Altazan, LLC, 301 Main St., Ste. 1640, Baton Rouge, LA 70801; dstewart@stewartrobbins.com; 225-231-9998

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

## REQUEST FOR PRODUCTION

## LaSalle Wacker S2013 LLC

### I.     Definitions

1.  The term *"Castex"* means the singular or plural of (a) Castex Energy 2005 Holdco, LLC; (b) Castex Energy 2005, LLC; (c) Castex Energy Partners, LLC; and (d) Castex Offshore, Inc. (whose Chapter 11 bankruptcy cases, bearing Cases No. 21-30710, 21-30711, 21-30712, and 21-30713, have been consolidated for joint administration with the Lead Case bearing 21-30710 and are pending before the United States Bankruptcy Court for the Southern District of Texas); (e) Castex LaFourche, LP, and (f) CTS-Castex, as well as anyone acting on Castex's behalf.

2.  The terms *"you," "your,"* or *"LWS2013"* mean LaSalle Wacker S2013 LLC, as well as anyone acting on your behalf.

3.  The term *"Talos"* means Talos Energy Inc.

4.  The term *"TK"* means Thompson Knight, LLP, as well as anyone acting on its behalf.

5.  The term *"Okin Adams"* means Okin Adams LLP, as well as anyone acting on its behalf.

6.  The term *"CG"* means The Claro Group, as well as anyone acting on its behalf.

7.  The term *"Schooner"* means Schooner Oil and Gas LLC, as well as anyone acting on its behalf.

8.  The term *"CEI"* means Castex Energy, Inc., as well as anyone acting on its behalf.

9.  The term *"Board"* means Castex's Board of Directors as well as anyone acting on their behalf.

10. The terms *"Board Member"* or *"Board Members"* mean the singular or plural of (a) Greg Miller, (b) David Alexander, (c) Daniel Gillett, (d) Richard Sherill, and (e) John Stoika, as well as anyone acting on the Board Member's behalf.

11. The terms "**Owner/Lender**" or "**Owners/Lenders**" mean the singular or plural of (a) Capital One, National Association as Administrative Agent, L/C Issuer and an Owner/Lender, (b) Banc of America Credit Products, Inc., (c) Cetus Capital III, L.P., (d) Citibank, N.A., (e) Cross Ocean SIF ESS II S.A. R. L., (f) Cross Ocean EUR ESS II S.A. R. L., (g) Cross Ocean USD ESS II S.A. R. L., (h) Cross Ocean USSS Fund I (A) LP, (i) Cross Ocean USSS SIF I LP, (j) T-VI CO-ES LP, (k) Frost Bank, (l) Iberiabank, (m) Littlejohn Opportunities Master Fund LP, (n) NB Distressed Debt Intermediate Fund LP, (o) OFM II, L.P., (p) VSS Fund, L.P., and (q) Whitney Bank, any of the foregoing Owner/Lender's assumes and assigns, any additional or replacement Owner/Lender, as well as anyone acting on such Owner/Lender's behalf.

12. The term "**Shared Services Agreement**" means that (i) certain *Second Amended and Restated Shared Services Agreement* dated March 18, 2018 between Castex and CEI, as further amended, modified, and supplemented, (ii) certain Castex Transition Program, dated February 25, 2020 with CEI, (iii) certain correspondence from CEI to the Board in October 2020, and provided on October 22, 2020 to Owner/Lenders' Counsel, (iv) certain last extension agreement dated October 26, 2020 by Castex and CEI, and (v) certain proposal by CEI dated November 17, 2020 submitted to the Owners/Lenders counsel and to the Board, under which CEI operated all of Castex's oil and gas assets for which Castex is the designated operator, was responsible for all of its management and back office operations, and provided all of Castex's officers, including John Stoika, who held the title of President and was a member of Castex's Board of Directors, including without limitation the contemplation, negotiation, execution, approval of, alternatives to, and termination of such agreements in late 2020.

13. The term "**Merger Negotiations**" means the process commencing in 2019 through which Castex attempted to locate a suitable merger partner, including without limitation, the

contemplation, negotiation, analysis of, approvals of, alternative to, and execution of, such process.

14. The term "*Talos Transaction*" means the process through which Castex sold certain of its offshore and onshore assets to Talos pursuant to the definitive agreement executed on June 19, 2020 that concluded in August 2020, including without limitation, the contemplation, negotiation, analysis of, approval of, alternatives to, and execution of, such process.

15. The term "*Remainco Negotiations*" means Castex's post-Talos sale efforts to sell or otherwise dispossess itself from its remaining oil and gas assets to CEI, parties with similar assets, or other working interest owners in properties in which Castex owns an interest, including without limitation, the contemplation, analysis of, negotiation, approval of, and execution regarding such efforts.

16. The term "*Debtors' Chapter 11 Filing*" means the authorization, planning, information gathering, information conveying, analysis of, negotiation, approval of, and execution leading to and resulting in the Castex bankruptcy filings on February 26, 2021, including without limitation, alternatives to filing, cash collateral and financing negotiations, and the chapter 11 plan and disclosures statement.

17. The term "*anyone acting on [a person's] behalf*" and includes, but is not limited to, that person's officers, directors, members, employees, representatives, agents, attorneys, members, or investigators, whether hired or appointed by such person, the person's attorneys or representatives.

18. The term "*representative*" means and includes all agents, employees, servants, officers, directors, attorneys, accountants and consultants who act or have acted on such person's behalf.

19. The term "*employee*" means employees, partners, agents, associates, or anyone acting on such party's behalf or purporting to act on such person's behalf.

20. The term "*person*" means any individual, partnership, firm, association, joint venture, corporation, estate, trust, receiver, any group or combination acting as a unit or any other business, governmental or legal entity.

21. The term "*document*" or "*documents*" (as applicable) means and includes any medium upon which intelligence or information can be recorded, maintained or retrieved, including, without limitation, the original or a copy thereof, regardless of the origin and location, of any writing, recording, and/or including electronically stored information of any type or description, however produced or reproduced, which is in your or your representatives' possession, custody or control, or to which you have or had access, or of which you have knowledge or which you have a right or privilege to examine upon request or demand, and includes any and all writings and recordings as the term is used in Federal Rule of Evidence 1001 and includes the original (or a copy if the original is not available) and any non-identical copies (whether different from the original because of notes made on the copy or otherwise).

22. The terms "*related to*", "*relate or pertain to,*" "*pertaining to*", and "*relating to*" (as applicable) mean mentioning, discussing, including, summarizing, describing, reflecting, containing, referring to, relating to, depicting, connected with, embodying, evidencing, constituting, concerning, reporting, purporting or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

23. The terms "*and*" or "*or*" shall be construed either disjunctively or conjunctively or both, as necessary to bring within the scope of any request all responses which might otherwise be construed to be outside the scope.

24. The term *"communications"* means any transmission of information by written, oral, mechanical, magnetic, electronic, optical, digital, laser, photographic, pictorial, or other means, including without limitation, documents, recorded conversations, telephone calls, meetings, e-mail messages, texts, slack messages and all other forms of electronic messaging, telegrams, facsimile transmissions, wires, and the like.

## II.    Instructions

1. Unless otherwise set forth herein, the Requests are limited in time from January 1, 2019 through the date of these Requests.

2. Where communications or documents are requested, such request encompasses communications or documents in your possession, custody or control, or in the possession, custody or control of your staff, agents, employees, representatives and, unless privileged, attorneys, or any other person who has possession, custody or control of your proprietary knowledge, information or documents.

3. For any request or part of a request for production which you refuse to respond to under a claim of privilege, you must identify the nature of the documents or information withheld; specify the grounds of the claimed privilege and the paragraph of these requests to which the information is responsive; identify each person to whom the documents or information, or any part thereof, has been disclosed; identify each person who prepared and/or signed the document; and identify each person designated as an addressee; identify the date of the document, the subject matter of the document, type or nature of the document.

4. For any record or document responsive or relating to these Requests which is known to have been destroyed or lost, or is otherwise unavailable, identify each such document by author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document.

5. All emails shall be produced in native format, organized in .pst files correlated to the number of the particular request.

6. All documents and communications should be produced in native format where possible. Scanned documents should be produced in .pdf format. All such production shall be correlated to the number of the particular request. If in doubt as to the form of production, please contact Paul Douglas Stewart, Jr. at dstewart@stewartrobbins.com (please contact through your counsel of you are a represented party) to discuss the issues to avoid misunderstandings that can result in multiple productions.

## III.    Requests

1. All of your communications relating to the Shared Services Agreement with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

2. To the extent not already produced, all documents relating to the Shared Services Agreement.

3. All of your communications relating to the Merger Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

4. To the extent not already produced, all documents relating to the Merger Negotiations.

5. All of your communications relating to the Talos Transaction with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

6. To the extent not already produced, all documents relating to the Talos Transaction.

7. All of your communications relating to the Remainco Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

8. To the extent not already produced, all documents relating to the Remainco Negotiations.

9. All of your communications relating to the Debtors' Chapter 11 Filing with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

10. To the extent not already produced, all documents relating to the Debtors' Chapter 11 Filing.

11. All of your communications relating to amounts due from Castex with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

12. To the extent not already produced, all documents relating to amounts due from Castex.

13. All of your communications relating to Castex's default under its agreements with the Owners/Lenders with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Talos, Schooner, TK, OA, CG, or CEI.

14. To the extent not already produced, all documents relating to Castex's default under its agreements with the Owners/Lenders.

15. To the extent not already produced, all communications relating to any formal protocols put in place by the Board to manage conflicts between the Lenders/Owners in their capacity as lenders and as owners with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Intrepid, Talos, Schooner, TK, CG, OA, or CEI.

16. To the extent not already produced, all documents relating to any formal protocols put in place by the Board or Lenders/Owners to manage conflicts between the Board and Lenders/Owners.

17. To the extent not already produced, all communications relating to Castex's financial statements, weekly/monthly/yearly reporting, plug and abandonment liability, the value of Castex's property sold through the Talos Sale, or the value of Castex's property relating to the Remainco Negotiations with or including any person, including without limitation, Castex, any Board Member, any Owner/Lender, Intrepid, Talos, Schooner, TK, OA, CG, or CEI.

18. To the extent not already produced, all documents relating to Castex's financial statements, weekly/monthly/yearly reporting, plug and abandonment liability, the value of Castex's property sold through the Talos Sale, or the value of Castex's property relating to the Remainco Negotiations.

19. To the extent not already produced, all documents relating to legal demands, subpoenas, litigation hold letters, or other such notices requiring or suggesting legal action or responsibilities provided to or from any person relating to Castex.