**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 21-30710** |
| **CASTEX ENERGY 2005 HOLDCO,** | § | |
| **LLC,** *et al.,* | § | **Chapter 11** |
| | § | |
| Debtors. [1] | § | **(Jointly Administered)** |

## SECOND AMENDED JOINT CHAPTER 11 PLAN

Matthew S. Okin
Texas Bar No. 00784695
David L. Curry, Jr.
Texas Bar No. 24065107
Ryan A. O'Connor
Texas Bar No. 24098190
Johnie A. Maraist
Texas Bar No. 24109505
**OKIN ADAMS LLP**
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 888.865.2118
Email: mokin@okinadams.com
Email: dcurry@okinadams.com
Email: roconnor@okinadams.com
Email: jmaraist@okinadams.com

**ATTORNEYS FOR THE DEBTORS**

Dated:  April 22, 2021

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Castex Energy 2005 Holdco, LLC (6832); Castex Energy 2005, LLC (6832); Castex Energy Partners, LLC (6832); and Castex Offshore, Inc. (8432).  The Debtors' mailing address is One Memorial City Plaza, 800 Gessner Rd., Suite 925, Houston, Texas 77024.

# TABLE OF CONTENTS

Page

ARTICLE I.  DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF
TERMS, COMPUTATION OF TIME, AND GOVERNING LAW
    A. Defined Terms .........................................................................................................1
    B. Rules of Interpretation and Construction of Terms ...................................................13
    C. Computation of Time ................................................................................................14
    D. Governing Law .........................................................................................................14
    E. Reference to Monetary Figures .................................................................................14
    F. Incorporation of Documents by Reference ................................................................14
    G. Controlling Document ..............................................................................................14

ARTICLE II.  ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS
    A. Administrative Claims ..............................................................................................15
    B. Professional Compensation Claims ...........................................................................15
    C. Payment of Fees and Expenses Under Cash Collateral Order.....................................16
    D. Priority Tax Claims ..................................................................................................16

ARTICLE III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS
    A. Classification in General ...........................................................................................17
    B. Formation of Debtor Groups for Convenience Only ...................................................17
    C. Summary of Classification of Claims and Interests .....................................................17
    D. Treatment of Claims and Interests .............................................................................18
    E. Special Provision Governing Unimpaired Claims........................................................20
    F. Separate Classification of Other Secured Claims ........................................................20
    G. Elimination of Vacant Classes ..................................................................................20
    H. Voting Classes; Presumed Acceptance By Non-Voting Classes ..................................20
    I. Controversy Concerning Impairment ..........................................................................21
    J. Subordinated Claims..................................................................................................21
    K. Statutory P&A Claims ..............................................................................................21
    L. 2017 Chapter 11 Unsecured Creditor Claims .............................................................21
    M. Cramdown...............................................................................................................22
    N. No Waiver................................................................................................................22

ARTICLE IV.  MEANS FOR IMPLEMENTATION OF THE PLAN
    A. Vesting of Assets in the Liquidating Trust ................................................................22
    B. Discharge of the CRO ..............................................................................................22
    C. The Post-Effective Date Debtors ...............................................................................22
    D. The Liquidating Trust ...............................................................................................23
    E. Plan Funding.............................................................................................................26
    F. Abandonment of Certain Assets.................................................................................26
    G. Closing of the Chapter 11 Cases ...............................................................................27

ARTICLE V.  TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES
    A. Executory Contracts and Unexpired Leases ..............................................................27
    B. Insurance Policies .....................................................................................................29
    C. Claims Based on Rejection of Executory Contracts or Unexpired Leases....................29
    D. Preexisting Obligations to the Debtors under Executory Contracts and Unexpired

Leases ..........................................................................................................................30

E. Reservation of Rights.............................................................................................30

## ARTICLE VI.  CLAIM/INTEREST OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS/INTERESTS AND PROCEDURE FOR ASSERTING CLAIMS

A. Objection Process ...................................................................................................30

B. Delivery of Distributions and Undeliverable or Unclaimed Distributions .................31

C. Distributions to Holders of Disputed Claims ...........................................................32

D. Foreign Currency Exchange Rate ...........................................................................32

E. Setoffs and Recoupment ........................................................................................32

F. Claims Paid or Payable by Third Parties  ................................................................32

G. Estimation of Claims and Interests .........................................................................33

H. Adjustment to Claims or Interests Without Objection ..............................................34

I. Disallowance of Claims or Interests  .......................................................................34

J. Amendments to Claims or Interests  ........................................................................34

## ARTICLE VII. EFFECT OF CONFIRMATION

A. Compromise and Settlement of Claims, Interests, and Controversies ........................34

B. Legally Binding Effect ............................................................................................35

C. Release of Liens ....................................................................................................35

D. Limited Discharge of Debtors and Injunction..........................................................35

E. Channeling Injunction ...........................................................................................36

F. Releases by the Debtors .........................................................................................36

G. Releases by Holders of Claims and Interests ...........................................................37

H. Exculpation  .........................................................................................................39

I. Preservation of Claims and Rights...........................................................................40

J. Reimbursement or Contribution ..............................................................................40

## ARTICLE VIII.  CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

A. Conditions Precedent to Effectiveness.....................................................................41

B. Waiver of Conditions .............................................................................................41

C. Effect of Failure of Conditions ...............................................................................42

## ARTICLE IX.  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A. Modifications and Amendments ..............................................................................42

B. Effect of Confirmation on Modifications..................................................................42

C. Revocation or Withdrawal of Plan ..........................................................................42

## ARTICLE X. RETENTION OF JURISDICTION....................................................................43

## ARTICLE XI.  MISCELLANEOUS PROVISIONS

A. Additional Documents.............................................................................................45

B. Payment of Statutory Fees .....................................................................................45

C. Reservation of Rights .............................................................................................45

D. Successors & Assigns ............................................................................................45

E. Notices..................................................................................................................45

F. Entire Agreement ...................................................................................................46

G. Exhibits ................................................................................................................46

H. Nonseverability of Plan Provisions .........................................................................46

I. Plan Proposed in Good Faith ......................................................................................46

J. Waiver or Estoppel ...................................................................................................47

# INTRODUCTION

The above-captioned Debtors hereby propose the following Plan, pursuant to Bankruptcy Code § 1121, for the resolution of outstanding Claims against, Interests in, and Expenses incurred by the Debtors.  The Debtors are the proponents of this Plan within the meaning of Bankruptcy Code § 1129.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## CONSTRUCTION OF TERMS, COMPUTATION OF TIME, AND GOVERNING LAW

### A.   Defined Terms

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have meanings ascribed to them in this Article.  Any term used in this Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

*2017 Chapter 11 Cases* means the cases jointly administered under the proceeding styled as *In re Castex Energy Partners, L.P. et al.*, Case No. 17-35835.

*2017 Chapter 11 Plan* means the *Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated February 23, 2018, as confirmed pursuant to the *Order Confirming Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, entered February 27, 2018, in the 2017 Chapter 11 Cases.

*2017 Chapter 11 Unsecured Creditor Reserve* means the interest-bearing segregated deposit account established for distributions to general unsecured creditors in connection with, and pursuant to the 2017 Chapter 11 Plan.

*2017 Chapter 11 Unsecured Creditor(s)* means the creditors entitled to receive distributions from the 2017 Chapter 11 Unsecured Creditor Reserve pursuant to the 2017 Chapter 11 Plan.

*Abandoned Assets* means the Debtors' rights to and interests in unexpired federal or state leases, rights-of-way, and right-of-use-and-easements and other assets listed on the Schedule of Abandoned Assets attached hereto as **Exhibit A**.

*Accepting Class* means a class of Claims or Interests that votes to accept this Plan in accordance with section 1126 of the Bankruptcy Code.

*Adequate Protection Claims* means any right to payment on account of Prepetition Secured Parties Adequate Protection, as such term is used and defined in the Cash Collateral Order.

*Administrative Claim* or *Administrative Expense Claims* means a Claim, Cause of Action, right, or other liability, or the portion thereof, that is entitled to priority under Bankruptcy Code

1

sections 326, 327, 330, 503(b), 506(c), 507(a)(2), 507(b), and 1103, including (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and/or in connection with operating the Debtors' business (such as wages, salaries, or payments for goods and services); (ii) Professional Compensation Claims; (iii) Adequate Protection Claims, if any, and (iv) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

*Administrative Claim Bar Date* means, except as provided in Article II herein, the first Business Day that is thirty (30) days after the Effective Date or such earlier deadline as established by an order of the Bankruptcy Court.

*Affiliate* has the meaning prescribed in Bankruptcy Code section 101(2).

*Allowed* means, with respect to any Claim or Interest, except as otherwise provided in the Plan, a Claim or Interest allowable under Bankruptcy Code section 502 that (i) has been allowed by a Final Order, including but not limited to any Final Order estimating claims for purposes of confirming this Plan, (ii) either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtors' Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed and liquidated Proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (iii) is expressly allowed in a liquidated amount in the Plan; provided, however that with respect to an Administrative Claim, "Allowed" means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) or other Administrative Claim, in each case as to which (a) a timely objection has not been filed, or (b) a timely objection is filed and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

*Amended Organizational Documents* means the certificates of incorporation, certificates of formation, bylaws, limited liability company agreements, stockholders agreement, and the operating agreements or other similar organizational or formation documents, as applicable, of the Post-Effective Date Debtors.

*Apache Claims* means all Claims and Causes of Action of CEP and COI outstanding against Apache Corporation, including in connection with the lawsuit filed in Texas state court entitled *Apache Corporation v. Castex Offshore, Inc., et al.*; in the 133rd District Court of Harris County, Texas; Cause No. 2015-48580.

*Asset* means all of the rights, title, and interests of a Debtor in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

*Assumption Dispute* means an unresolved objection regarding assumption or assumption and assignment of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including objections based on the appropriate Cure Amount or "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code).

***Avoidance Actions*** means any and all actual or potential Claims and Causes of Action that may be commenced before or after the Effective Date, to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

***Bankruptcy Estate*** or ***Estate*** means the estate of the Debtors created under section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Cases, and all Estate Property comprising the estate.

***Bankruptcy Rules*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

***Bar Date*** means the deadline for filing Proofs of Claim in accordance with the Bar Date Order.

***Bar Date Order*** means the *Order (I) Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under 11 U.S.C. §§ 503(b)(1) and 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(1) and 503(b)(9) Requests, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief* [ECF # 39].

***Business Day*** means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

***Cash*** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

***Cash Collateral Order*** means the *Interim Order (I) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* [ECF # 41] and, once entered, the *Final Order (I) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, and (IV) Modifying the Automatic Stay* [ECF # ●].

***Castex 2005*** means Castex Energy 2005, LLC.

***Causes of Action*** means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever,

whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (i) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (ii) the right to object to or otherwise contest Claims or Interests; (iii) Avoidance Actions; and (iii) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

*CEP* means Castex Energy Partners, LLC.

*Chapter 11 Case(s)* means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code.

*Claim* means a claim against any portion of the Debtors' Bankruptcy Estate, whether or not asserted, as defined in section 105(5) of the Bankruptcy Code.

*Claims and Noticing Agent* means Donlin, Recano & Company, Inc., the notice, Claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases in accordance with the *Order Authorizing the Employment and Retention of Donlin, Recano & Company, Inc. as Claims and Noticing Agent for the Debtors* [ECF # 21].

*Claims Register* means the official register of Claims maintained by the Claims and Noticing Agent.

*Class* means a category of Claims or Interests as described in the Plan pursuant to Bankruptcy Code section 1122(a).

*CM/ECF* means the Bankruptcy Court's Case Management and Electronic Case Filing system.

*COI* means Castex Offshore, Inc.

*Collateral* means any Asset of an Estate that is subject to a Lien securing the payment or performance of a Claim, which Lien is not invalid, is properly perfected as of the Petition Date, and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, including, for the avoidance of doubt, the Prepetition Collateral, as such term is used and defined in the Cash Collateral Order.

*Confirmation* means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

*Confirmation Date* means the date of entry by the Bankruptcy Court of the Confirmation Order.

*Confirmation Hearing* means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

4

**Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

**Consummation** means the occurrence of the Effective Date.

**Creditors' Committee** means the Official Committee of Unsecured Creditors, if any, appointed by the U.S. Trustee in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as it may be reconstituted from time to time.

**Cure Amount** means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease and (b) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**Cure Notice** means the notice of proposed Cure Amount to be paid in connection with an executory contract or unexpired lease of the Debtors that may be assumed or assumed and assigned under the Plan pursuant to section 365 of the Bankruptcy Code, which shall include (a) procedures for objecting to proposed assumptions or assumptions and assignments of executory contracts and unexpired leases, (b) any Cure Amount to be paid in connection therewith, and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

**Debtor(s)** means Holdco, Castex 2005, CEP and COI, each individually a Debtor.

**Deficiency Claims** means the amount of the Allowed Secured Debt Claims in excess of the face value of the Talos Stock and Apache Claim on the Effective Date.

**Disclosure Statement** means the *Disclosure Statement in Support of Joint Chapter 11 Plan* [ECF # ●] filed by the Debtors, as such document may be amended or modified.

**Disputed Claim** means a Claim in a particular Class as to which a Proof of Claim has been filed or is deemed to have been filed under applicable law or an Administrative Claim as to which an objection has been filed in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules, and such objection has not been withdrawn or determined by a Final Order. For purposes of the Plan, a Claim is a Disputed Claim prior to any objection to the extent that (i) the amount of a Claim specified in a Proof of Claim exceeds the amount of any corresponding Claim scheduled by the Debtors in the Schedules of Assets and Liabilities; (ii) any corresponding Claim scheduled by the Debtors in the Schedules of Assets and Liabilities has been scheduled as disputed, contingent or unliquidated, irrespective of the amount scheduled; (iii) no corresponding Claim has been scheduled by the Debtors in the Schedules of Assets and Liabilities; or (iv) the Claim is subject to disallowance pursuant to Bankruptcy Code section 502(d).

**Distribution Record Date** means the Confirmation Date.

**Effective Date** means the date that is the first Business Day after the Confirmation Date, on which (i) no stay of the Confirmation Order is in effect, and (ii) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in the Plan.

**Entity** means any Person, estate, trust, Governmental Unit, or UST, as set forth in Bankruptcy Code section 101(15).

**Escrowed Talos Shares** means the Debtors' rights and interests in and to those 825,572 shares of Talos stock currently held in escrow pursuant to the Talos Escrow Agreement.

**Estate Property** means all right, title, and interest in and to any and all property of every kind or nature, owned by the Debtors or its Estate on the Petition Date as defined by Bankruptcy Code section 541.

**Excess Escrowed Talos Shares** means the amount of Escrowed Talos Shares or proceeds thereof exceeding $9,000,000 if, at the time of release from escrow in accordance with the Talos Escrow Agreement, the value of the Escrowed Talos Shares exceeds $9,000,000.

**Exculpated Parties** means collectively, and in each case in their capacities as such during the Chapter 11 Cases, (a) the Debtors, (b) the members of the Creditors' Committee, if any, (c) the Prepetition Agent, (d) the Prepetition Lenders, and (e) with respect to the foregoing Persons, each of their Affiliates, and each such Entity's directors, managers, officers, employees, attorneys, accountants, investment bankers, consultants, representatives and other professionals, in each case solely during the Chapter 11 Cases; provided, for the avoidance of doubt, John Stoika, Jonathan Wilson, Aaron Killian, Ashley Green and Castex Energy, Inc. and its Affiliates and subsidiaries, and any current or former employee, officer, director, shareholder, member, manager, director, equity holder or representative of Castex Energy, Inc. or its Affiliates or subsidiaries, in any capacity (including with respect to serving as an officer, director or employee of the Debtors), shall not be Exculpated Parties.

**Executory Contract** means an executory contract or unexpired lease as such terms are used in Bankruptcy Code section 365, including all operating leases, capital leases, and contracts to which any Debtor is a party or beneficiary.

**Exhibit** means an exhibit annexed to the Plan.

**Existing Interests** means Interests in the Debtors that existed immediately before the Effective Date.

**Final Order** means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtors' Chapter 11 Cases, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**Funded Statutory P&A Obligation(s)** means those Statutory P&A Obligations related to or arising from the Debtors' interest in the Operated Properties.

**General Unsecured Claim** means an Unsecured Claim that is not is not a Secured Debt Claim, an Intercompany Claim, or a Claim that is secured, subordinated, or entitled to priority under the Bankruptcy Code.  For the avoidance of doubt, General Unsecured Claims shall include, among other things, (i) all P&A Obligations related to any oil and gas property for which title is

relinquished, abandoned, and/or otherwise transferred to a non-Debtor prior to the termination of the Liquidating Trust; (ii) any other claims filed by any government or regulatory authority that do not arise out of the Debtors' P&A Obligations, including, but not limited to, any claims for unpaid royalties or civil penalties; and (iii) P&A Indemnification Claims.

*Governmental Unit* means any governmental unit, as defined in Bankruptcy Code section 101(27).

*Holdco* means Caste Energy 2005 Holdco, LLC.

*Holder* means (i) as to any Claim, (a) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (b) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court, or (c) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtors have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (ii) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register that is maintained by the Debtors or as otherwise determined by order of the Bankruptcy Court.

*Impaired* or *Impairment* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

*Indemnification Obligation* means any existing or future obligation of any Debtor to indemnify current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective memoranda, articles or certificates of incorporation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date.

*Insider* has the meaning set forth in Bankruptcy Code section 101(31).

*Intercompany Claim* means any Claim against a Debtor held by another Debtor or a non-Debtor Affiliate of a Debtor; provided, for the avoidance of doubt, Castex Energy, Inc and its Affiliates shall not be considered non-Debtor Affiliates.

*Intercompany Interest* means an Interest in a Debtor held by another Debtor.

*Interest*, *Equity Interest*, or *Membership Interest* means any ownership interest in the Debtors, as of the Petition Date, including, but not limited to, an interest in any issued, unissued, authorized or outstanding shares or stock, including ordinary shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, together with any warrants, options, or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto.

*IRS* means the Internal Revenue Service.

*Judicial Code* means title 28 of the United States Code, 28 U.S.C. §§ 1 – 4001.

*Lender NewCo* means a newly formed or incorporated Entity owned by the Prepetition Lenders.

*Lien* means a lien, security interest, or other interest or encumbrance asserted against any Estate Property as defined in Bankruptcy Code section 101(37).

*Liquidating Trust* means the Castex Liquidating Trust established pursuant to Article IV of this Plan.

*Liquidating Trust Agreement* means an agreement setting forth the economic arrangement and terms pursuant to which the Liquidating Trustee will perform its duties under this Plan.

*Liquidating Trust Assets* means (i) the Single Share; (ii) all Retained Causes of Action, including Avoidance Actions, and the proceeds thereof (other than the Apache Claims); (iii) the Liquidating Trust Cash Reserve; (iv) the Liquidating Trust Talos Shares; (v) the 2017 Chapter 11 Unsecured Creditor Reserve and all rights, including any residual rights to proceeds, relating thereto; and (vi) all other assets of the Debtors other than the Secured Cash Amount and the Abandoned Assets.

*Liquidating Trust Beneficiaries* means the Holders of Allowed Claims receiving a beneficial interest in the Liquidating Trust under this Plan.

*Liquidating Trust Cash Reserve* means $1,750,000 in Cash, which shall be funded from the Debtors' Cash or other working capital.

*Liquidating Trust Talos Shares* means the Escrowed Talos Shares other than the Excess Escrowed Talos Shares.

*Liquidating Trustee* means the Person or Entity selected by the Debtors, with the consent of the Required Lenders, which Person or Entity shall be charged with overseeing the tasks outlined in Article IV section D of this Plan and the Liquidating Trust Agreement, or any successor thereto. The identity of the Liquidating Trustee shall be disclosed to the Bankruptcy Court with the Plan Supplement.

*Other Secured Claim* means a Secured Claim other than a Priority Tax Claim and a Secured Debt Claim.

*Operated Property(ies)* means the oil and gas leases owned by the Debtors (and the oil and gas wells, platforms, pipelines and other facilities located thereon, to the extent Debtors own an interest therein) to be operated by the Post-Effective Date Debtors pending liquidation, as set forth in the schedule attached hereto as Exhibit B.

*P&A Claim(s)* means a claim related to P&A Obligations arising under applicable law or contract.

8

***P&A Indemnification Claim(s)*** means a P&A Claim asserted by or payable to any party other than a Regulatory Agency regardless of whether such P&A Claim is asserted under contract, law, or equity.

***P&A Obligation(s)*** means any plugging and abandonment or decommissioning obligation of the Debtors arising from the oil and gas leases owned by the Debtors (and the oil and gas wells, platforms, pipelines and other facilities located thereon, to the extent Debtors own an interest therein).

***Person*** means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, regardless of whether they are governments, agencies, or political subdivisions thereof.

***Petition Date*** means, with respect to a Debtor, the date on which such Debtor commenced its Chapter 11 Case.

***Plan*** means this Joint Chapter 11 Plan filed by the Debtors, as such document may be amended or modified.

***Plan Distribution*** means any initial or periodic payment or transfer of consideration to Holders of Allowed Claims made under the Plan.

***Plan Documents*** means, collectively those documents in furtherance of Consummation of the Plan and/or to be executed in order to consummate the transactions contemplated under the Plan, which may be filed by the Debtors with the Bankruptcy Court.

***Plan Supplement*** means a supplement or supplements to the Plan in form and substance acceptable to the Required Lenders containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, which shall include: (a) a schedule of Retained Causes of Action, (b) the Schedule of Assumed Contracts, (c) the Schedule of Abandoned Assets, (d) the schedule of Operated Properties, and (e) the identity of the Liquidating Trustee; *provided*, *however*, that the Debtors (with the consent of the Required Lenders) shall have the right to amend documents contained in, and exhibits thereto, the Plan Supplement in accordance with the terms of this Plan.

***Post-Effective Date Debtors*** means the Debtors following the Effective Date in accordance with this Plan.  For the avoidance of doubt, the Post-Effective Date Debtors shall not include Lender NewCo.

***Post-Effective Date Holdco*** means Holdco following the Effective Date in accordance with this Plan.

***Prepetition Agent*** means Capital One, National Association, in its capacity as the administrative agent under the Prepetition Credit Agreement.

***Prepetition Credit Agreement*** means that certain *Third Amended and Restated Credit Agreement*, dated as of March 14, 2018, by and among the Debtors, the Prepetition Agent, and

the Prepetition Lenders, and the other parties thereto, as in effect immediately before the Effective Date.

**Prepetition Lenders** means the Lenders (as defined in the Prepetition Credit Agreement) holding Prepetition Loans immediately before the Effective Date.

**Prepetition Loans** means the Loans (under and as defined in the Prepetition Credit Agreement) outstanding immediately before the Effective Date.

**Priority Non-Tax Claim** means a Claim asserted under Bankruptcy Code sections 507(a)(3-7 and 9-10).

**Priority Tax Claim** means a Claim asserted under Bankruptcy Code section 507(a)(8).

**Pro Rata Share** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

**Professional** means an Entity: (i) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**Professional Compensation Claim** means a Claim for compensation or reimbursement of expenses of a Professional incurred on and after the Petition Date and prior to the Effective Date, including fees and expenses incurred in preparing final fee applications and participating in hearings on such applications, and requested in accordance with the provisions of Bankruptcy Code sections 326, 327, 328, 330, 331, 502(b) or 1103.

**Professional Compensation Claim Bar Date** means, except as provided in Article II herein, sixty (60) days after the Effective Date.

**Professional Compensation Claim Objection Deadline** means twenty-one (21) days after the Professional Compensation Claim Bar Date.

**Professional Fee Escrow** means an escrow account established and funded pursuant to Article II section B, paragraph 3 of the Plan.

**Professional Fee Escrow Amount** means the aggregate unpaid Professional Compensation Claims through the Effective Date as estimated in accordance with Article II section B, paragraph 2 of the Plan.

**Proof of Claim** means a proof of Claim filed against the Debtors in the Chapter 11 Cases by the applicable Bar Date.

**Proof of Interest** means a proof of Interest filed against the Debtors in the Chapter 11 Cases by the applicable Bar Date.

***Regulatory Agency(ies)*** means, the Department of Interior and its agencies, the Bureau of Safety and Environmental Enforcement and the Bureau of Ocean Energy Management, or such other federal or state agency, as may be applicable, duly authorized to regulate the operation of the Debtors' oil and gas properties, including, but not limited to, regulation related to P&A Obligations.

***Released Parties*** means, collectively, (a) the members of the Creditors' Committee, if any, (b) the Prepetition Agent and Prepetition Lenders, (c) Lender NewCo, (d) the Liquidating Trustee; and (e) with respect to each of the Debtors, the Post-Effective Date Debtors, and each of the foregoing Persons in clauses (a) through (d), each of their current and former Affiliates, and each such Entity's and its current and former Affiliates' current directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other Persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities; <u>provided</u>, for the avoidance of doubt, John Stoika, Jonathan Wilson, Aaron Killian, Ashley Green and Castex Energy, Inc. and its Affiliates and subsidiaries, and any current or former employee, officer, director, shareholder, member, manager, director, equity holder or representative of Castex Energy, Inc. or its Affiliates or subsidiaries, in any capacity (including with respect to serving as an officer, director or employee of the Debtors), shall not be Released Parties.

***Releasing Parties*** means collectively, (a) the Holders of all Claims or Interests that vote to accept the Plan in accordance with the order approving the Disclosure Statement on a conditional basis, (b) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan in accordance with the order approving the Disclosure Statement on a conditional basis, (c) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein in accordance with the order approving the Disclosure Statement on a conditional basis, and (d) the Holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out in accordance with the order approving the Disclosure Statement on a conditional basis.

***Required Lenders*** has the meaning set forth in the Prepetition Credit Agreement.

***Retained Causes of Action*** means those Causes of Action set forth in the attached **Exhibit C**, which Causes of Action are being retained pursuant to Article VII herein.

***Schedule of Abandoned Assets*** means a schedule (as may be amended, modified, or supplemented from time to time) of the Debtors' rights to and interests in unexpired federal leases, rights-of-way, and right-of-use-and-easements to be abandoned pursuant to Article IV of this Plan, a copy of which shall be included in the Plan Supplement.

**Schedule of Assumed Contracts** means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to this Plan, if any, as the same may be amended, modified, or supplemented from time to time.

**Schedules** means, collectively, the Schedule of Assets and Liabilities, Schedule of Equity Security Holders, and the Statement of Financial Affairs filed by the Debtors in the Chapter 11 Cases, as may be amended, modified, or supplemented.

**Section 510(b) Claim** means any Claim against the Debtors that is subject to subordination under section 510(b) of the Bankruptcy Code, whether arising from rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such Claim, or otherwise, which Claim shall be subordinated to all Claims or Interests that are senior to or equal to the Claim or Interest represented by such security.

**Secured Cash Amount** means all Cash of the Debtors, other than the Liquidating Trust Cash Reserve, amounts in the 2017 Chapter 11 Unsecured Creditor Reserve, Cash to be deposited into the Professional Fee Escrow Amount in accordance with the terms herein and amounts for the payment of Priority Non-Tax Claims or Administrative Expense Claims as set forth herein.

**Secured Claim** means a Claim: (i) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (ii) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

**Secured Debt Claim(s)** means the principal obligations, plus all accrued and unpaid interest, fees, and other amounts arising under, and payable pursuant to, the Prepetition Credit Agreement.  The Secured Debt Claims shall be Allowed on the Effective Date in the aggregate principal amount of $199,585,956.

**Securities Act** means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local laws or regulations.

**Single Share** means the single share of Post-Effective Date Holdco common stock to be issued to the Liquidating Trustee to hold in trust for the benefit of the Liquidating Trust Beneficiaries.

**Statutory Fees** means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

**Statutory P&A Claim** means any P&A Claim payable to a Regulatory Agency arising from or related to the Debtors' failure or inability to satisfy a Funded Statutory P&A Obligation, which Claim shall be fixed in accordance with Article III section K of this Plan, in each case to the extent the applicable plugging, abandonment and/or decommissioning obligation is currently due under applicable law and such obligation is unresolved or otherwise outstanding as of the applicable date of determination.

**Statutory P&A Obligation(s)** means any statutory or regulatory obligation of the Debtors to perform plugging and abandonment or decommissioning activities arising from the oil and gas

12

leases owned by the Debtors (and the oil and gas wells, platforms, pipelines and other facilities located thereon, to the extent Debtors own an interest therein).

***Subordinated Claim*** means a Claim that is subordinated to General Unsecured Claims pursuant to (i) a contract or agreement, (ii) a Final Order declaring that such Claim is subordinated in right or payment, or (iii) any applicable provision of the Bankruptcy Code, including Bankruptcy Code section 510, or other applicable law.  Subordinated Claims specifically include any Claim for punitive damages provided for under applicable law.

***Talos*** means Talos Energy Inc.

***Talos Escrow Agreement*** means that certain Escrow Agreement, dated as of June 19, 2020, by and among CEP, COI, Talos Production Inc., and Citibank N.A.

***Talos PSA*** means that the Purchase and Sale Agreement, dated as of June 19, 2020, by and among CEP, COI, Talos Third Coast and Talos.

***Talos Shares*** means, other than the Liquidating Trust Talos Shares, all shares of Talos stock acquired by the Debtors under the Talos PSA, including, for the avoidance of doubt, the Excess Escrowed Talos Shares.

***Tax Code*** means the Internal Revenue Code of 1986, as amended from time to time.

***Unexpired Lease*** means a lease to which either of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

***Unimpaired*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of Bankruptcy Code section 1124.

***Unsecured Claim*** means a Claim that is not a Secured Claim and that is not entitled to priority under Bankruptcy Code section 507(a)(1-9).  The term specifically includes, pursuant to Bankruptcy Code section 506(a), any Claim of a creditor against the Debtors to the extent that such creditor's Claim is greater than the value of the Lien securing such Claim, any Claim for damages resulting from rejection of any Executory Contract or Unexpired Lease under Bankruptcy Code section 365, any tort Claims or contractual Claims or Claims arising from damage or harm to the environment and, and any Claim not otherwise classified under the Plan.

***UST*** means the Office of the United States Trustee.

## B.      Rules of Interpretation and Construction of Terms

For purposes of this Plan: (i) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in this Plan to an existing document or Exhibit filed or to be filed means that document or Exhibit as it may have been or may be amended, supplemented, or otherwise modified; (iii) unless otherwise specified, all references in this Plan to Sections or Articles are references to Sections or Articles of or to this Plan; (iv) the words "herein," "hereto,"

"hereunder," and other words of similar import refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (vi) wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (vii) any reference to an Entity as a Holder of a Claim or Interest includes the Entity's successors and assigns; (viii) unless specifically noted otherwise, any reference to docket numbers of documents filed in the Chapter 11 Cases are references to docket numbers under the Bankruptcy Court's CM/ECF system for Case number 21-30710; and (ix) the rules of construction set forth in Bankruptcy Code section 102 and the Bankruptcy Rules shall apply.

## C.      Computation of Time

All times referenced in this Plan are prevailing Central Time.  In computing any period of time, date, or deadline prescribed or allowed in the Plan, the provisions of Bankruptcy Rule 9006 shall apply.  If the date on which a transaction may or must occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## D.      Governing Law

Subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules.

## E.      Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## F.      Incorporation of Documents by Reference

This Plan incorporates by reference certain documents relating to the Debtors that are not presented herein or delivered herewith.  The documents that have been filed in the Chapter 11 Cases are incorporated by reference herein in their entirety, including all amendments thereto filed prior to the date set for Confirmation, including the Debtors' Schedules.  Documents and pleadings filed in the Chapter 11 Cases are available at the following website: http://www.txsb.uscourts.gov.

## G.      Controlling Document

In the event of an inconsistency between the Plan and any Exhibit hereto or the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate

14

the purposes of each; provided, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Compensation Claims and Priority Tax Claims have not been classified for purposes of voting on, or receiving distributions under, the Plan, and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

**A.**     **Administrative Claims**

Except as otherwise provided in the Bar Date Order, and unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Post-Effective Date Debtors, each Holder of an Allowed Administrative Claim (other than Holders of Professional Compensation Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter; or (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) business days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.

Except for Professional Compensation Claims, and unless previously filed, requests for payment of Administrative Claims must be filed and served on the Post-Effective Date Debtors no later than the Administrative Claim Bar Date.  Objections to such requests must be filed and served on the Post-Effective Date Debtors and the requesting party by the later of (i) thirty (30) days after the Effective Date, or (ii) thirty (30) days after the filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Post-Effective Date Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Post-Effective Date Debtors or any action by the Bankruptcy Court.

**B.**     **Professional Compensation Claims**

1.     Final Fee Applications.  All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than the Professional Compensation Claim Bar Date.  Objections to Professional Compensation Claims must be filed and served on the Post-Effective Date Debtors and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and hearing in accordance with the procedures established by the Bankruptcy Court, including those certain compensation procedures set forth and defined in the Bankruptcy Court's *Order Establishing Procedures for the Interim Compensation and Reimbursement of Expenses of Professionals* [ECF # 181].  Allowed Professional Compensation Claims shall be paid by the Post-Effective Date Debtors in Cash within ten (10) business days of the entry of a Final Order allowing such Claims.

2.     Professional Fee Escrow Amount.  All Professionals shall estimate in good faith their unpaid Professional Compensation Claims before and as of the Effective Date and shall deliver such estimate to the Debtors at least three (3) calendar days before the Effective Date; *provided*, *however*, that such estimate shall not limit or be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Compensation Claims.  If a Professional does not provide such estimate, the Debtors and Post-Effective Date Debtors may estimate the unbilled fees and expenses of such Professional; *provided*, *however*, that such estimate shall not be considered an admission or limitation with respect to the fees and expenses incurred by, or payable to, such Professional.  The total amount so estimated as of the Effective Date shall comprise the Professional Fee Escrow Amount.

3.     Professional Fee Escrow.  If the Professional Fee Escrow Amount is greater than zero, then as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors will establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount and no Liens, Claims, or interests will encumber the Professional Fee Escrow in any way.  The Professional Fee Escrow (including funds held in the Professional Fee Escrow) will (i) not be and will not be deemed to be property of the Debtors or the Post-Effective Date Debtors and (ii) will be held in trust for the Professionals; *provided*, *however*, that funds remaining in the Professional Fee Escrow after all Allowed Professional Compensation Claims have been irrevocably paid in full will revert to Lender NewCo.  Allowed Professional Compensation Claims will be paid in Cash to such Professionals by the Liquidating Trustee from funds held in the Professional Fee Escrow as soon as reasonably practicable after such Claims are Allowed by an order of the Bankruptcy Court; *provided*, *however*, that the Debtors' obligations with respect to Professional Compensation Claims will not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow.

**C.**     **Payment of Fees and Expenses Under Cash Collateral Order**

On the later of (a) the Effective Date and (b) the date on which such fees, expenses, or disbursements would be required to be paid under the terms of the Cash Collateral Order, the Debtors or the Post-Effective Date Debtors (as applicable) shall pay all fees, expenses, and

disbursements of the Prepetition Agent and Prepetition Lenders, in each case that have accrued and are unpaid as of the Effective Date and are required to be paid under or pursuant to the Cash Collateral Order.

D.      **Priority Tax Claims**

Except (a) to the extent that the Holders of Allowed Priority Tax Claims have already been paid, satisfied or otherwise released prior to the Effective Date, and (b) to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, then in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Priority Tax Claim, each Holder of Allowed Priority Tax Claim shall receive from the applicable Post-Effective Date Debtors on the later of: (i) the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Claim; (iii) the date on which such Allowed Priority Tax Claim first becomes due and payable; or (iv) as soon thereafter as is reasonably practicable, an amount in Cash equal to the unpaid amount of such Allowed Priority Tax Claim; *provided*, *however*, that the Post-Effective Date Debtors shall have the right to pay any Allowed Priority Tax Claim, or the remaining balance of such Claim, in full in Cash at any time on or after the Effective Date, without premium or penalty.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      **Classification in General**

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving Plan Distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied.

B.      **Formation of Debtor Groups for Convenience Only**

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, Confirmation of the Plan, and making Plan Distributions in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any Assets; and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities.

C.      **Summary of Classification of Claims and Interests**

The following table designates the Classes of Claims against and Interests in the Debtors

and specifies which Classes are: (a) Impaired and Unimpaired under the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.  The classification of Claims and Interests set forth herein shall apply separately to each Debtor.

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|-------|---------------------------|------------|------------------|
| Class 1 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |
| Class 2 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| Class 3 | Secured Debt Claims | Impaired | Yes |
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Intercompany Claims | Impaired | No (Deemed to Reject) |
| Class 6 | Section 510(b) Claims | Impaired | No (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired | No (Presumed to Accept) |
| Class 8 | Existing Interests | Impaired | No (Deemed to Reject) |

## D.    Treatment of Claims and Interests

1.    *Class 1:  Other Secured Claims*.    Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the Debtors or the Post-Effective Date Debtors, and with the reasonable consent of the Required Lenders, such Holder will (i) retain its security interest and relative priority in the applicable assets of the Post-Effective Date Debtors or (ii) receive such other treatment so as to render such Holder's Allowed Other Secured Claim Unimpaired.

Class 1 Claims are Unimpaired under the Plan. In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Allowed Other Secured Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Other Secured Claims.

2.    *Class 2:  Priority Non-Tax Claims*.  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Non-Tax Claim shall be entitled to receive, on or after the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Priority Non-Tax Claim, (i) payment in full in Cash of its Allowed Class 2 Claim; or (ii) such other treatment as is consistent with the requirements of Bankruptcy Code section 1129(a)(9),

payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in each case, or as soon as reasonably practicable thereafter.

Class 2 Claims are Unimpaired under the Plan. In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Allowed Priority Non-Tax Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Priority Non-Tax Claims.

3.       *Class 3:  Secured Debt Claims*.  On the Effective Date, or as soon thereafter as reasonably practicable, each Holder of an Allowed Secured Debt Claim will receive, in full and final satisfaction of such Allowed Secured Debt Claim, its Pro Rata Share of the equity interests in Lender NewCo.  On the Effective Date, or as soon thereafter as reasonably practicable (and, in the case of the Excess Escrowed Talos Shares, as soon as reasonably practicable following receipt by the Post-Effective Date Debtors), the Debtors shall transfer to Lender NewCo the following Assets or the proceeds related thereto, which such Assets will vest free and clear of any Liens, Claims or encumbrances:

> i.   the Apache Claims;
>
> ii.  the Secured Cash Amount; and
>
> iii. the Talos Shares.

Class 3 Claims are Impaired under the Plan.  Holders of Allowed Claims in Class 3 are entitled to vote regarding acceptance thereof.

4.       *Class 4 General Unsecured Claims*.  On the Effective Date, or as soon thereafter as reasonably practicable, each Holder of an Allowed General Unsecured Claims will receive, in full and final satisfaction of such Allowed General Unsecured Claim, a Pro Rata Share of interests in the Liquidating Trust; provided, that solely in the event Class 4 votes to accept this Plan, then the Pro Rata Share of the Liquidating Trust interests allocable to the Deficiency Claims shall not be distributed to the Prepetition Lenders but shall instead be re-allocated to all Holders of Allowed General Unsecured Claims other than the Prepetition Lenders.

Class 4 claims are Impaired under the Plan.  Holders of Allowed Class 4 Claims are entitled to vote regarding acceptance thereof.

5.       *Class 5: Intercompany Claims*.  On the Effective Date, all Intercompany Claims will be adjusted or reinstated, as determined by the Debtors, subject to the consent of the Required Lenders.

Class 5 Claims are Impaired under the Plan.  In accordance with section 1126(g) of the Bankruptcy Code, the Holders of Allowed Intercompany Claims are conclusively presumed to reject the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Intercompany Claims.

6.       *Class 6: Section 510(b) Claims*.  On the Effective Date, all of the Debtors'

outstanding obligations under the Section 510(b) Claims shall be extinguished and canceled, and each Holder of a Section 510(b) Claim shall receive no Plan Distribution on account of such Claim.

Class 6 Claims are Impaired under the Plan. In accordance with section 1126(g) of the Bankruptcy Code, the Holders of Allowed Section 510(b) Claims are conclusively presumed to reject the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Section 510(b) Claims.

7.    *Class 7: Intercompany Interests*.   On the Effective Date, all Allowed Intercompany Interests will be adjusted, reinstated, or discharged as determined by the Debtors, subject to the consent of the Required Lenders.

Class 7 Interests are Unimpaired under the Plan.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Allowed Intercompany Interests are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Intercompany Interests.

8.    *Class 8: Existing Interests*.   On the Effective Date, Existing Interests will be cancelled, released, and extinguished and will be of no further force or effect, whether surrendered for cancellation or otherwise, and each Holder of an Existing Interest will receive no recovery.

Class 8 Interests are Impaired under the Plan.  In accordance with section 1126(g) of the Bankruptcy Code, the Holders of Allowed Existing Interests are conclusively presumed to reject the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Existing Interests.

**E.    Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**F.    Separate Classification of Other Secured Claims**

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature within the Plan, each Other Secured Claim, to the extent secured by a Lien on Collateral different from the Collateral securing a different Other Secured Claim, shall be treated as being in a separate sub-Class for the purposes of receiving Plan Distributions.

**G.    Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interests temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan.

**H.    Voting Classes; Presumed Acceptance by Non-Voting Classes**

Classes 3 and 4 are Impaired and are entitled to vote regarding acceptance or rejection of this Plan; *provided*, *however*, if a Class contained Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

## I.   Controversy Concerning Impairment

If any controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and hearing, determine such controversy concerning Impairment.  Failure to timely file an objection in the Chapter 11 Cases shall result in such Person or Entity waiving any objection to the Impairment classifications set forth in the Plan.

## J.   Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Liquidating Trustee reserves the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## K.   Statutory P&A Claims

The Debtors' efforts to satisfy the Funded Statutory P&A Obligations may not be completed prior to and shall continue following the Effective Date.  To the extent that the Funded Statutory P&A Obligations are completed in accordance with applicable law or regulation, the Regulatory Agencies' Claim for P&A Obligations related to such Operated Property shall be fixed at $0 and shall be deemed fully satisfied and discharged.

If the Debtors, the Liquidating Trustee, or other non-Debtor third party, as applicable, are unable to satisfy any such Funded Statutory P&A Obligations, following the Effective Date with regard to a particular Operated Property, then the Debtors or the Liquidating Trustee, as applicable, shall inform the applicable Regulatory Agencies of the same, and the Regulatory Agencies and the Debtors or the Liquidating Trustee, as applicable, shall work together in good faith to create or obtain a written estimate of the costs necessary to satisfy the Debtors' remaining P&A Obligations as to such Operated Property.  Upon agreement over such written estimate, the Regulatory Agencies' Claim for P&A Obligations on the applicable lease or right of way shall immediately be fixed at such amount and shall constitute an Allowed Statutory P&A Claim.  To the extent that the Debtors or the Liquidating Trustee and the applicable Regulatory Agencies are unable to agree upon an estimate of the costs necessary to satisfy such P&A Obligations, then such dispute shall be submitted to the Bankruptcy Court, which shall, after notice and an evidentiary hearing, set the Regulatory Agencies' Allowed Statutory P&A Claim for such Operated Property.  For the avoidance of doubt, Statutory P&A Claims shall not be assignable or payable, under any theory, including subrogation, to any party other than a Regulatory Agency.

**L.** **2017 Chapter 11 Unsecured Creditor Claims**

  Nothing in this Chapter 11 Plan shall impair or otherwise modify the rights of the 2017 Chapter 11 Unsecured Creditors to receive distributions from the 2017 Chapter 11 Unsecured Creditor Reserve.  Distributions from the 2017 Chapter 11 Unsecured Creditor Reserve shall be made by the Liquidating Trustee in accordance with the 2017 Chapter 11 Plan and Article IV section D, paragraph 5 of this Plan.

**M.** **Cramdown**

  If any Class is deemed to reject the Plan or is entitled to vote on the Plan and does not vote to accept the Plan, the Debtors may (a) seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (b) amend or modify the Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**N.** **No Waiver**

  Nothing contained in the Plan shall be construed to waive the Debtors' or other Person's right to object on any basis to any Claim or Interest.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.** **Vesting of Assets in the Liquidating Trust**

  On the Effective Date, the Castex Liquidating Trust shall be deemed duly formed and the Debtors shall be deemed to have irrevocably transferred and assigned (in accordance with any applicable tax laws) to the Liquidating Trust, the Liquidating Trust Assets, to hold in trust for the Liquidating Trust Beneficiaries pursuant to the terms of this Plan and the Liquidating Trust Agreement.  Except as otherwise provided by this Plan, upon the Effective Date, title to the Liquidating Trust Assets shall pass to the Liquidating Trust free and clear of all Claims and Interests, in accordance with section 1141 of Bankruptcy Code.

**B.** **Discharge of the CRO**

  On the Effective Date, the Debtors' Chief Restructuring Officer shall be discharged and released from any further obligation or duty to the Debtors.

**C.** **The Post-Effective Date Debtors**

  1. *Single Share*.  On the Effective Date, the Single Share of the Post-Effective Date Holdco shall be issued to the Liquidating Trustee to hold in trust for the benefit of the Liquidating Trust Beneficiaries and the Single Share shall be recorded on the books and records maintained by the Liquidating Trustee.

2.    *Continued Corporate Existence*.  Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date as the Post-Effective Date Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized, including in accordance with the Amended Organizational Documents, as applicable.  After the Effective Date, pursuant to this Plan, the Liquidating Trustee shall have the sole authority to manage the operations of the Post-Effective Date Debtors without any further approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  The Post-Effective Date Debtors shall operate solely to the extent required to liquidate the Debtors' oil and gas interests, which shall, for the avoidance of doubt, include operations related to the plugging and abandonment, and decommissioning of the Debtors' oil and gas interests (other than those for which title is relinquished, abandoned, and/or otherwise transferred to a non-Debtor).  For the avoidance of doubt, the Post-Effective Date Debtors shall not operate any of the Abandoned Assets following the Effective Date.

3.    *Winddown of the Debtors*.  At such time as Funded Statutory P&A Obligations are completed or the Debtors' interest in all Operated Properties is relinquished, abandoned, and/or otherwise transferred to a non-Debtor, the Debtors shall be deemed dissolved.  The Liquidation Trustee shall have all power to wind up the affairs of the Debtors under applicable state laws in addition to all the rights, powers, and responsibilities conferred by the Bankruptcy Code, this Plan, the Liquidation Trust Agreement, and may, but shall not be required to dissolve the Debtors under applicable state law.

4.    *Corporate Action*.  Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects.  All matters provided for in this Plan involving the corporate or limited liability company structure of the Debtors or the Post-Effective Date Debtors, and any corporate or limited liability company action required by the Debtors or the Post-Effective Date Debtors in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Post-Effective Date Debtors.

On or before (as applicable) the Effective Date, the appropriate directors, officers, and managers of the Debtors or the Liquidating Trustee, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan).  The authorizations and approvals contemplated herein shall be effective notwithstanding any requirements under nonbankruptcy law.

5.    *Intercompany Interests; Corporate Reorganization*.  To the extent reinstated under the Plan, on the Effective Date, the Intercompany Interests shall be reinstated for the ultimate benefit of the Holders of Claims and Interests as set forth in the Plan without the need for any further corporate action or approval of any board of directors, board of managers, managers, management, or stockholders of any Debtor or Post-Effective Date Debtor, as applicable, the certificates and all other documents representing the Intercompany Interests shall be deemed to be in full force and effect.

D.      **The Liquidating Trust**

The following provisions of this section are intended to summarize the material terms of the Liquidating Trust Agreement (attached hereto as **Exhibit D**), which shall control the formation, operations and dissolution of the Liquidating Trust.  In the event of any conflict between the terms of this section and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall govern.

1.      Formation of the Liquidating Trust. On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtors and the Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidating Trust.  For the avoidance of doubt, entry of the Confirmation Order shall constitute a finding that the Liquidating Trust exists and is a valid Entity for purposes of all non-bankruptcy law.

2.      Purpose of Liquidating Trust. The Liquidating Trust shall be established only for the purposes of liquidating the Liquidating Trust Assets, including, but not limited to prosecuting and resolving objections to Disputed Claims against the Debtors, and liquidating and distributing its Assets, with no objective to continue or engage in the pursuit of a trade or business; *provided*, *however*, that the Liquidating Trustee shall be authorized to manage the operation of the Debtors' oil and gas properties to the extent that such operation is necessary to preserve the value of Liquidating Trust Assets pending liquidation, to satisfy Funded Statutory P&A Obligations, or to comply with any applicable health, safety, or environmental obligation arising from or related to the Liquidating Trust Assets or the Operated Properties. Notwithstanding any other section of this Plan or the Liquidating Trust Agreement, it is the express intent that the Liquidating Trust shall survive until such purpose is either achieved or determined to be impracticable or impossible.

3.      Authority of Liquidating Trustee. Subject only to the limitations contained in this Plan, the Confirmation Order, or the Liquidating Trust Agreement, the Liquidating Trustee shall have, by way of illustration and not limitation, the following duties, responsibilities, authorities, and powers: (A) the power and authority to hold, manage, sell, and distribute the Liquidating Trust Assets in accordance with the Plan, (B) the power and authority to prosecute and resolve all Retained Causes Action, (C) the power and authority to prosecute and resolve objections to Disputed Claims against the Debtors, (D) the power and authority to perform such other functions as are provided in this Plan and Liquidating Trust Agreement.

4.      Priority of Distribution of Liquidating Trust Assets. The Liquidating Trust, through the Liquidating Trustee, shall be responsible for distributing Liquidating Trust Assets, other than the 2017 Chapter 11 Unsecured Creditor Reserve, or the proceeds thereof, in the order of priority shown: (i) to satisfy outstanding, Allowed Priority Non-Tax Claims, if any; then (ii) to satisfy Funded Statutory P&A Obligations, if any; then (iii) to satisfy outstanding Allowed Statutory P&A Claims, if any; and then (iv) to satisfy outstanding Allowed General Unsecured Claims, if any.  For the avoidance of doubt, all expenses of the Liquidating Trust that are directly related to the administration of the Liquidating Trust Assets, including, but not limited to the liquidation of the Debtors' oil and gas properties, shall be taxed against the gross proceeds of the Liquidating Trust Assets and shall be satisfied prior to any subsequent Plan Distributions.  Other

24

than the enumerated Claims, no Claims against the Debtors or their Estates shall be charged against the Liquidating Trust.

The Liquidating Trust, through the Liquidating Trustee, shall be responsible for distributing the 2017 Chapter 11 Unsecured Creditor Reserve in accordance with the 2017 Chapter 11 Plan.

5. <u>Procedure for Distribution of Liquidating Trust Assets</u>. The Liquidating Trustee shall distribute Cash in accordance with the Liquidating Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, from the Liquidating Trust Assets on hand (including any Cash received from the Debtors on the Effective Date), except such amounts (i) as would be distributable to a Holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Plan Distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during litigation, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), and (iv) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement. For purposes of this subsection, (a) Statutory P&A Claims shall be deemed Disputed Claims until such time as any such Claim is liquidated or otherwise Allowed pursuant to Article III, section K of this Plan; and (b) contingent P&A Indemnification Claims shall be deemed Disputed Claims until such time as any such Claim is liquidated or otherwise Allowed pursuant to Bankruptcy Code section 502(c) and all reductions of such Claim pursuant to Article VI section F of this Plan have been applied.

6. <u>Compensation of the Liquidating Trustee</u>. The Liquidating Trustee shall be entitled to reasonable compensation as set forth in the Liquidating Trust Agreement.

7. <u>Retention of Professionals by the Liquidating Trustee</u>. The Liquidating Trustee may retain and reasonably compensate counsel and other professionals to assist in his duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval. The Liquidating Trustee may retain any professional who represented parties in interest in these Chapter 11 Cases.

8. <u>Tax Returns</u>. The Liquidating Trustee shall file all necessary tax returns and other filings with governmental authorities on behalf of the Liquidating Trust and the Liquidating Trust Assets held therein pursuant to the terms of the Liquidating Trust Agreement.

9. <u>Tax Treatment</u>. For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its Liquidating Trust Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Liquidating Trust Beneficiaries be treated as if they had received a distribution from the Debtors' Estates of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective shares in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as grantors and owners thereof.

10. <u>Preservation of Right to Investigate</u>. The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and

25

relevant to the liquidation and administration of the Liquidating Trust Assets.  Accordingly, the Liquidating Trustee shall have the same rights as the Debtors to conduct investigations pursuant to Bankruptcy Rule 2004 as those held by the Debtors prior to the Effective Date. Such powers to investigate pursuant to Bankruptcy Rule 2004 shall vest with the Liquidating Trustee and shall continue until dissolution of the Liquidating Trust.

11.    <u>Termination and Dissolution</u>.  The Liquidating Trust shall terminate upon the date on which all of the following events (each, a "Termination Condition," and, collectively, the "Termination Conditions") have occurred: (i) the dissolution of the Post-Effective Date Debtors pursuant to paragraph 3 of Article IV section C of this Plan; (ii) the Liquidating Trust Assets, including Causes of Action transferred and assigned to the Liquidating Trust, are fully resolved, abandoned or liquidated in accordance with the Plan and Liquidating Trust Agreement; (iii) all Cash has been completely distributed in accordance with the Plan and Liquidating Trust Agreement; (iv) all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities; and (v) the order closing the Chapter 11 Cases is a Final Order.  Upon the occurrence of each of the foregoing events, the duties, responsibilities and powers of the Liquidating Trustee shall terminate, and the Liquidating Trustee shall be discharged.  Except in the circumstances set forth below, the Liquidating Trustee shall dissolve the Liquidating Trust in accordance with the provisions of this section no later than five (5) years after the Effective Date in accordance with applicable IRS revenue procedures.

The Bankruptcy Court may extend the term of the Liquidating Trust one or more times (not to exceed a total of four extensions, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) for a finite period upon a showing of good cause and based on the particular circumstance at issue.  Each such extension must be approved by the Bankruptcy Court with notice thereof to all unpaid Liquidating Trust Beneficiaries.

Notwithstanding any other section of this Plan or the Liquidating Trust Agreement, it is the express intent that the Liquidating Trust shall survive until each of the Termination Conditions have either occurred or determined to be impracticable or impossible.  To the extent that the Liquidating Trust shall be deemed terminated pursuant to applicable law at any time prior to the occurrence of each Termination Condition, the Liquidating Trustee shall not be discharged, but shall have such "wind-up" powers, both express and implied, as are necessary to achieve all outstanding Termination Conditions, including, but, not limited to the authority to (i) continue prosecuting any Causes of Action belonging to the Liquidating Trust; (ii) continue Claim administration responsibilities set forth in Article VI section B paragraph 2 of the Plan; and (iii) distribute the Cash proceeds of the Liquidating Trust Assets in a manner consistent with the Liquidating Trust Agreement.  In no event shall the Liquidating Trust Beneficiaries be entitled to receive in-kind distributions of the Liquidating Trust Assets.

**E.    <u>Plan Funding</u>**

Plan Distributions of Cash shall be funded solely from the Debtors' Cash on hand as of the Effective Date and not from other sources, including, for the avoidance of doubt, any Talos Shares, proceeds of, or recoveries on account of, the Apache Claims, or Cash constituting the Secured Cash Amount transferred to Lender NewCo.

**F.      Abandonment of Certain Assets**

Immediately upon the occurrence of the Effective Date, the Debtors' rights to and interests in unexpired federal leases, rights-of-way, and right-of-use-and- easements listed on the Schedule of Abandoned Assets are abandoned pursuant to the Plan, in each case, without further notice to or order of the Bankruptcy Court, pursuant to sections 105(a) and 554(a) of the Bankruptcy Code and/or deemed rejected pursuant to section 365 of the Bankruptcy Code, as applicable.  The Abandoned Assets shall not be allocated to nor vest in the Post-Effective Date Debtors or Lender NewCo.  Except as otherwise provided in this Plan or the Confirmation Order, the Debtors' Estates, Lender NewCo, the Liquidating Trust and the Post-Effective Date Debtors shall not be liable for any obligations whatsoever arising from or relating to the post-Effective Date period with regards to the Abandoned Assets.  For the avoidance of doubt:  (i) nothing in this section shall modify or otherwise impair the treatment of Allowed P&A Indemnification Claims under this Plan; and (ii) nothing in this Plan or the Confirmation Order shall be construed as barring, waiving, or limiting any Regulatory Agencies' rights to assert a claim against the Debtors, the Post-Effective Date Debtors, or any co- lessees or predecessors in interest with respect to the Abandoned Assets for any P&A Obligations for the Abandoned Assets.

**G.      Closing of the Chapter 11 Cases**

After the Effective Date, the Liquidating Trustee shall be authorized, but not directed, to submit an order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the UST that closes and issues a final decree for each of the Chapter 11 Cases.

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.      Executory Contracts and Unexpired Leases**

1.      *General Treatment*.

(a)      As of and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (iv) is identified in the Plan; or (v) is identified for assumption on the Schedule of Assumed Contracts included in the Plan Supplement.

(b)      Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Post-Effective Date Debtors have provided adequate assurance of future performance under such assumed Executory Contracts and Unexpired Leases.  Each Executory Contract and Unexpired Lease assumed pursuant to the Plan

shall vest in and be fully enforceable by the Post-Effective Date Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

(c)     To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

(d)     The Debtors reserve the right, on or before 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the Confirmation Hearing, or such other time as may be agreed in writing between the Debtors and the applicable counterparty, to amend the Schedule of Assumed Contracts to add or remove any Executory Contract or Unexpired Lease; provided that if the Confirmation Hearing is adjourned or continued, such amendment right shall be extended to 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the rescheduled or continued Confirmation Hearing, and this provision shall apply in the case of any and all subsequent adjournments and continuances of the Confirmation Hearing; provided, further that the Debtors may amend the Schedule of Assumed Contracts to add or delete any Executory Contracts or Unexpired Leases after such date to the extent agreed with the relevant counterparties and entry of an order of the Bankruptcy Court.

2.     *Determination of Cure Amounts and Deemed Consent*.

(a)     Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, or on such other terms as the parties to such Executory Contracts or Unexpired Leases and the Debtors may otherwise agree.

(b)     The Debtors shall file, as part of the Plan Supplement, the Schedule of Assumed Contracts.  At least ten (10) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to Executory Contracts or Unexpired Leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.**  Any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption of such Executory Contract or Unexpired Lease shall be deemed to have assented to assumption of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such

28

contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or any Post-Effective Date Debtor, under such Executory Contract or Unexpired Lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or Post-Effective Date Debtor, as applicable.  Each such provision shall be deemed to not apply to the assumption of such Executory Contract or Unexpired Lease pursuant to the Plan and counterparties to assumed Executory Contracts or Unexpired Leases that fail to object to the proposed assumption in accordance with the terms set forth in this Section V.A(2)(b), shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

(c)     If there is an Assumption Dispute pertaining to assumption of an Executory Contract or Unexpired Lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court before such assumption becomes effective; provided, the Debtors or Post-Effective Date Debtors, as applicable, may settle any Assumption Dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)     To the extent an Assumption Dispute relates solely to the Cure Amount, the Debtors may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease before the resolution of the Assumption Dispute; provided, that the Post-Effective Date Debtors shall be responsible to pay the determined amount to be Allowed by the Bankruptcy Court or otherwise agreed to by such non-Debtor party.  The Debtors or Post-Effective Date Debtors, as applicable, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(e)     Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume or assume and assign such Executory Contract or Unexpired Lease.  Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Person, upon the assumption of such Executory Contracts or Unexpired Leases.

**B.      Insurance Policies**

Notwithstanding any other provision of the Plan or Plan Documents, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto are expressly assumed by the Debtors and assigned to Liquidating Trust.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or the Liquidating

Trust may hold against any Person or Entity related thereto.

**C.      Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Except as otherwise provided by the Bar Date Order or other Final Order of the Bankruptcy Court, all Proofs of Claim, with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the later of: (i) the date of entry of any order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (ii) the effective date of such rejection; (iii) the Effective Date; or (iv) the date after the Effective Date that the applicable Schedules are altered, amended, modified, or supplemented, but only with respect to any Executory Contract or Unexpired Lease thereby affected.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Post-Effective Date Debtors, the Estate, or their property without the need for any objection by the Post-Effective Date Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified and treated as Class 4 (General Unsecured Claims) Claims.

**D.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases**

Except as explicitly provided in the Plan, nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors or the Liquidating Trustee under any executory or non-executory contract or unexpired or expired lease.  Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, the Liquidating Trust, or the Post-Effective Date Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors expressly reserve for the Liquidating Trust and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtors counterparties to rejected Executory Contracts or Unexpired Leases.

**E.      Reservation of Rights**

Nothing in the Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Post-Effective Date Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease. Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Contracts, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder.  If there is a dispute regarding whether a contract

or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Liquidating Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

## ARTICLE VI.
## CLAIM/INTEREST OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS/INTERESTS AND PROCEDURE FOR ASSERTING CLAIMS

### A.     Objection Process

Except insofar as a Claim is Allowed under the Plan, only the Debtors or the Liquidating Trustee, as applicable, shall be entitled to object to Claims.  Except as otherwise expressly provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Liquidating Trustee shall have the exclusive authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Debtors' claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### B.     Delivery of Distributions and Undeliverable or Unclaimed Distributions

1.     *Record Date for Distribution.* As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be closed, and neither the Debtors, the Liquidating Trustee nor their respective agents shall be required to make any further changes in the record Holders of any of the Claims or Interests.  The Debtors and Liquidating Trustee shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.  The Debtors and the Liquidating Trustee shall be entitled to recognize and deal for all purposes hereunder only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

2.     *Delivery of Distributions in General.*  Except as otherwise provided herein, the Liquidating Trustee shall make Plan Distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution: *provided, however*, that the manner of such Plan Distributions shall be determined at the discretion of the Liquidating Trustee; *provided further, however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim or Proof of Interest filed by that Holder.

3.     *Minimum Distributions.*  To the extent Cash is distributed under the Plan or the Liquidating Trust Agreement, no Cash payment of less than $50.00 shall be made to a Holder on account of any Allowed Claim or Interest, and such amounts shall be retained by the Post-Effective Date Debtors.

4.    *Request for Tax Forms; Undeliverable Distributions; and Unclaimed Property*. Prior to making any Plan Distributions required under the Plan or the Liquidating Trust Agreement, the Liquidating Trustee may request that Holders provide an executed Form W-9 or Form W-8 as appropriate ("Request for Tax Form").  In the event that any Holder fails to execute and return such Request for Tax Form within a reasonable time or if a Request for Tax Form is returned as undeliverable (and the Liquidating Trustee is unable after reasonable efforts to determine the then-current address of such Holder), such Plan Distributions shall be deemed unclaimed property.

Further, if a Plan Distribution is returned as undeliverable, no further Plan Distributions to such Holder will be made unless and until the Liquidating Trustee is notified in writing of such Holder's then current address.

The Liquidating Trustee shall file a Notice of Distribution within ten (10) Business Days of the date on which Plan Distributions are made under the Plan, which notice shall also identify any Holders having failed to return an executed Request for Tax Form.  All claims for undelivered or undeliverable Plan Distributions must be made no later than the 60th day following the date that the Notice of Distribution is filed. After such date, all unclaimed Plan Distributions will revert to the Liquidating Trust for distribution in accordance with this section of this Plan and the Claim or Equity Interest of any Holder with respect to such Plan Distribution will be discharged and forever barred.  Checks issued in respect of Allowed Claims and/or Equity Interests will be null and void if not negotiated within ninety (90) days after the date of issuance thereof.

## C.    **Distributions to Holders of Disputed Claims**

Except as otherwise provided in the Plan, Plan Distributions on account of Disputed Claims shall be withheld by the Liquidating Trustee until such Claims have been either Allowed or disallowed.  To the extent a Disputed Claim becomes Allowed any Plan Distribution reserved for such Claim shall be distributed to the Holder thereof.  To the extent a Disputed Claim becomes disallowed, the Plan Distribution reserved for such Claim shall revert to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court.

## D.    **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

## E.    **Setoffs and Recoupment**

Except as expressly provided in the Plan, or otherwise ordered by the Bankruptcy Court, the Liquidating Trustee may, pursuant to section 553 of the Bankruptcy Code, withhold, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim or Interest, any and all claims, rights, and Causes of Action, including contingent or unliquidated claims, that the Debtors or the Liquidating Trust may hold against the Holder of such Allowed

Claim or Interest; *provided, however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust or its successor of any and all claims, rights, and Causes of Action that the Debtors, the Liquidating Trust, or their successor may possess against the applicable Holder.  In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Post-Effective Date Debtors, as applicable, unless such Holder has actually performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XI section E of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**F.      Claims Paid or Payable by Third Parties**

1.      *Claims Paid by Third Parties.* The Debtors or the Liquidating Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or Liquidating Trustee, including, for the avoidance of doubt any payment from the proceeds of any insurance policy purchased by or for the benefit of the Debtors or the Debtors' officers and directors, if any.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Plan Distribution on account of such Claim and receives payment from a party that is not the Debtors or Liquidating Trustee, such Holder shall, within fourteen (14) days of receipt thereof, repay or return any Plan Distribution received from the Liquidating Trustee to the extent the Holder's total recovery exceeds the amount such Holder was entitled to receive under the Plan on account of the Claim. The failure of such Holder to timely repay or return such Plan Distribution shall result in the Holder owing the Liquidating Trustee annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.      *Claims Payable by Third Parties*.  No Plan Distributions under the Plan shall be made on account of an Allowed Claim that is payable under any insurance policy purchased by or for the benefit of the Debtors or the Debtors' officers and directors until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent the underlying claim forming the basis of the Claim against the Debtors is adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement to satisfy all or part of the Claim, the applicable portion of such Claim against the Debtors shall be deemed expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      *Application of Insurance Policies*.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**G.**     **Estimation of Claims and Interests**

Before or after the Effective Date, the Debtors or the Liquidating Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Plan Distributions), as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation of the amount of such Claim, the Debtors, the Liquidating Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate Plan Distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.

**H.**     **Adjustment to Claims or Interests Without Objection**

Any duplicate Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Liquidating Trustee without any further notice to or action, order, or approval of the Bankruptcy Court.

**I.**     **Disallowance of Claims or Interests**

Except as otherwise specifically provided in the Plan, any Claims or Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any Plan Distributions on account of such Claims until such time as any objection to those Claims or Interests have been settled or a Bankruptcy Court order with respect thereto has been entered.

Except as provided herein or otherwise agreed, any and all Proofs of Claim or Proofs of Interest filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Plan Distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.

## J.    Amendments to Claims or Interests

On or after the Effective Date, a Claim or Interest may not be filed or amended without the prior authorization of the Bankruptcy Court or the Liquidating Trustee and any such new or amended Claim or Interest filed shall be deemed disallowed in full and expunged without any further action.

## ARTICLE VII.
## EFFECT OF CONFIRMATION

## A.    Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Plan Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest Holder may have with respect to any Allowed Claim or Allowed Interest or any Plan Distribution to be made on account of such Allowed Claim or Allowed Interest.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Allowed Claims, Allowed Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of such Allowed Claims and Allowed Interests, and is fair, equitable, and reasonable.

## B.    Legally Binding Effect

The provisions of this Plan shall bind all creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all Holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtors or their Assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date; and (ii) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

## C.    Release of Liens

Except as otherwise provided in the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Plan Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Liquidating Trust and its successors and assigns.  On and after the Effective Date, any Holder of such Secured Claim (and the applicable agents for such Holder), at the expense of the Liquidating Trust, shall be authorized and may be directed to release any Collateral or other property of either Debtors (including any Cash Collateral and possessory Collateral) held by

such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Liquidating Trustee to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens. For the avoidance of doubt, this Section shall not apply to those certain Liens held by any Governmental Unit for amounts owed by the Debtors for taxes, including, but not limited to, *ad valorem* property taxes, unless and until such tax Claims have been paid in full.

**D.**     **Limited Discharge of Debtors and Injunction**

The Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against the Debtors and their Assets and properties and any proceedings not yet instituted against the Debtors or their Assets and properties, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Liquidating Trust, or their property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or the Liquidating Trust, or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or the Liquidating Trust, or their property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the Liquidating Trust, or the property of the Debtors, the Estates or the Liquidating Trust with respect to any such Claim or (e) asserting any right of setoff or recoupment against the Debtors, the Estates or the Liquidating Trust. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in this case pursuant to section 105, if any, or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until entry of a final decree in these Chapter 11 Cases.

**E.**     **Releases by the Debtors**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER**

(INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION VII.F. OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (V) FAIR, EQUITABLE AND REASONABLE, (VI) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

F.  <u>**RELEASES BY HOLDERS OF CLAIMS AND INTERESTS**</u>

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION VII.G. OF THE PLAN**

(THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY, THE UNITED STATES IS NOT A RELEASING PARTY UNDER THE PLAN AND IS NOT PROVIDING A RELEASE.

G.   **Exculpation**

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF DEFINITIVE DOCUMENTS, THE DISCLOSURE STATEMENT, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR

THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.   THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

**H.**     **Preservation of Claims and Rights**

Confirmation of this Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless this Plan or the Confirmation Order specifically and unambiguously so provides. **Exhibit C** of this Plan describes (i) those Claims, Causes of Action, Right of Action or claims (the "Retained Causes of Action") for relief currently known to the Debtors; and (ii) circumstances currently known to the Debtors that may give rise to a Claim, Cause of Action, Right of Action or other claim for relief.  All Claims, Causes of Action, Rights of Action or claims for relief (including, for the avoidance of doubt, the Apache Claims) are expressly preserved for the benefit of the Debtors' creditors in accordance with the terms of this Plan.  The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.

**Except as released in the Plan, Confirmation Order, or previous order of the Bankruptcy Court, the Debtors and the Liquidating Trustee in his capacity as trustee of the Liquidating Trust, reserve any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Distribution Record Date and/or any Plan Distribution date, including, without limitation, any and all Causes of Action, Rights of Action and/or claims for relief that the Debtors or the Liquidating Trust may have against (i) any party described or related to the events described in Exhibit C hereto, and (ii) any insurer and/or insurance policies in which either the Debtors have an insurable or other interest in or right to make a claim against, any other of the Debtors' insurers. The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Liquidating Trustee, in his capacity as trustee for the Liquidating Trust, relating to any claims, Causes of Action or Rights of Action referred to in this Plan, or otherwise. The Liquidating Trustee shall constitute the representative of the Debtors for purposes of retaining, asserting and/or enforcing Rights of Action under section 1123(b)(3)(B) of the Bankruptcy Code. On the Effective Date, the Liquidating Trustee shall be substituted as a party of record in all pending litigation brought by or against any Debtor without need for further order of the Bankruptcy Court.**

**I.**     **Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed

and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent or (ii) the relevant Holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim is no longer contingent.

# ARTICLE VIII.
## CONDITIONS PRECEDENT TO
## CONFIRMATION AND CONSUMMATION OF THE PLAN

**A.**     **Conditions Precedent to Effectiveness**

The following conditions precedent shall be satisfied, or waived in writing in accordance with section B of this Article, prior to the occurrence of the Effective Date of the Plan:

1.     The Debtors shall have taken all steps necessary to transfer to Lender NewCo the Secured Cash Amount, the Apache Claims and the Talos Shares in accordance with the Plan immediately upon the occurrence of the Effective Date;

2.     The Plan Supplement has been filed;

3.     The Bankruptcy Court shall have entered the Confirmation Order, which order shall be a Final Order;

4.     All definitive documentation, including all terms and conditions thereof, necessary to effectuate the terms of this Plan shall be in form and substance acceptable to the Required Lenders; and

5.     The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents (other than any such authorization, consent, regulatory approval, ruling, or document that is customarily obtained or completed after assignment, conveyance or vesting of an applicable asset) that, after giving effect to the entry of the Confirmation Order, are necessary to implement and effectuate the Plan, including Bankruptcy Court approval, and each of the other transactions contemplated hereof, and such authorizations, consents, regulatory approvals, rulings, or documents shall not be subject to unfulfilled conditions and shall be in full force and effect, and all applicable regulatory waiting periods shall have expired.

**B.**     **Waiver of Conditions**

With the prior written consent of the Required Lenders, the conditions precedent to the occurrence of the Effective Date set forth in section A above may be waived, in whole or in part, by the Debtors, without leave of or order of the Bankruptcy Court.  If any such condition precedent is waived pursuant to this section and the Effective Date occurs, each party agreeing to waive such condition precedent shall be estopped from withdrawing such waiver after the Effective Date or otherwise challenging the occurrence of the Effective Date on the basis that such condition was not satisfied, the waiver of such condition precedent shall benefit from the "equitable mootness" doctrine, and the occurrence of the Effective Date shall foreclose any ability

to challenge the Plan in any court.  If the Plan is confirmed for fewer than all of the Debtors, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur.

## C.  **Effect of Failure of Conditions**

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of Claims by the Debtors, or any Holders of Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Person or Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Person or Entity.

## ARTICLE IX.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

## A.  **Modifications and Amendments**

Except as otherwise specifically provided in the Plan, the Debtors reserves the right to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtors expressly reserve their rights to revoke or withdraw, or, to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

## B.  **Effect of Confirmation on Modifications**

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan made pursuant Article IX.A., above, are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure under Bankruptcy Rule 3019.

## C.  **Revocation or Withdrawal of Plan**

The Debtors reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts and Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or

any other Person or Entity.

# ARTICLE X.
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any requests for payment of any Administrative Claim and the resolution of any objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or unexpired;

4.      Ensure that Plan Distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve all matters related to section 1141 of the Bankruptcy Code;

7.      Enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

8.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Person or Entity with respect to Consummation or enforcement of the Plan;

11.     Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VII hereof and enter such orders as may be necessary to implement or enforce such releases, injunctions and other provisions;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Plan Distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII section F. hereof;

13.     Enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     Determine any other matters that may arise in connection with or related to the Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

15.     Enter an order concluding or closing, on a temporary or final basis, the Chapter 11 Cases;

16.     Adjudicate any and all disputes arising from or relating to Plan Distributions under the Plan;

17.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18.     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 363, 505, and 1146 of the Bankruptcy Code;

21.     Hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VII hereof, regardless of whether such termination occurred prior to or after the Effective Date;

22.     Enforce all orders previously entered by the Bankruptcy Court; and

23.     Hear any other matter not inconsistent with the Bankruptcy Code.

# ARTICLE XI.
## MISCELLANEOUS PROVISIONS

**A.**     **Additional Documents**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Liquidating Trustee, as applicable, and all Holders of Claims or Interests receiving Plan Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**B.**     **Payment of Statutory Fees**

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by the Liquidating Trust for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed – whichever occurs first.

**C.**     **Reservation of Rights**

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of an action by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

**D.**     **Successors & Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**E.**     **Notices**

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including any facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

OKIN ADAMS LLP
Matthew S. Okin
David L. Curry, Jr.
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 888.865.2118
mokin@okinadams.com
dcurry@okinadams.com

## F.     Entire Agreement

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Documents) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which are deemed merged and integrated into the Plan.

## G.     Exhibits

All Exhibits and documents attached to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the Exhibits and documents are filed, copies of such Exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such Exhibits and documents from the Courts CM/ECF filing system.  To the extent any Exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

## H.     Nonseverability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) nonseverable and mutually dependent.

## I.     Plan Proposed in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have proposed the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their Affiliates, agents, representatives,

members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such individuals or Entities or the Post-Effective Date Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the proposal of the Plan or participation in the Chapter 11 Cases.

## J.     Waiver or Estoppel

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any arguments, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors, or their counsel, or any other Entity, if such agreement was not expressly disclosed in the Plan or papers filed with the Bankruptcy Court prior to the Confirmation Date.

Respectfully submitted on the 22nd day of April, 2021.

**CASTEX ENERGY 2005 HOLDCO, LLC,** *et al.*

By:    /s/ *Douglas J. Brickley*
     Douglas J. Brickley
     Chief Restructuring Officer

**OKIN ADAMS LLP**

By:    /s/ *Matthew S. Okin*
     Matthew S. Okin
     Texas Bar No. 00784695
     Email: mokin@okinadams.com
     David L. Curry, Jr.
     Texas Bar No. 24065107
     Email: dcurry@okinadams.com
     Ryan A. O'Connor
     Texas Bar No. 24098190
     Email: roconnor@okinadams.com
     Johnie A. Maraist
     Texas Bar No. 24109505
     Email: jmaraist@okinadams.com
     1113 Vine St., Suite 240
     Houston, TX  77002
     Tel: (713) 228-4100
     Fax: (888) 865-2118

**ATTORNEYS FOR THE DEBTORS**

**EXHIBIT A**

## Properties to be Abandoned

| OFFSHORE PROPERTIES | ONSHORE WELLS |
|---|---|
| SOUTH TIMBALIER BLK 200 | SCHINDLER |
| SOUTH TIMBALIER BLK 072 | KING LAKE |
| SHIP SHOAL BLK 189 | BAYOU FER BLANC |
| SHIP SHOAL BLK 209/210 | JOE McHUGH |
| SHIP SHOAL BLK 314 | LAKE SALVADOR |
| SHIP SHOAL BLK 301 | BARATARIA WEST |
| GREEN CANYON BLK 0243 | SUNRISE |
| GREEN CANYON BLK 0006 | BAYOU POINT au CHIEN |
| CHANDELEUR BLK 42/43 | HUMPHREYS |
| MAIN PASS BLK 041/59 | HOUMA |
| BRETON SOUND 41 | PT AU FER |
| HIGH ISLAND BLK 138 | LIVE OAK |
| | LAKE GERO |
| | JEANERETTE |
| | LAKE ENFERMER |
| | RICEVILLE |
| | LAC BLANC (LONG POINT) |
| | HAMILTON |
| | RABBIT ISLAND |
| | BELLE ISLE |
| | LAKE PELTO |
| | HIGH ISLAND BLK 023-L |
| | HIGH ISLAND BLK 024-L |
| | CHACAHOULA |
| | AVERY ISLAND, SE |
| | LAKE PAGIE |
| | LAKE ARTHUR, SW |
| | OUTSIDE ISLAND (LIBERTY CANAL) |
| | FALSE RIVER |
| | CLARA NORTH |
| | DEER ISLAND WEST |
| | GOLDEN MEADON WEST |

**EXHIBIT B**

## <u>Operated Properties</u>

VR 253
VR 252/ SM 87 / VR 271
HIGH ISLAND BLK 176
MAIN PASS BLK 270
WEST CAMERON BLK 073
HIGH ISLAND BLK 116/117
SOUTH PELTO BLK 018
SOUTH TIMBALIER BLK 107
SHIP SHOAL BLK 188

**EXHIBIT C**

## Retained Causes of Action
(*To Be Supplemented*)

**EXHIBIT D**

## **Liquidating Trust Agreement**
(*To Be Supplemented*)