

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
06/07/2021

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 21-30710** |
| **CASTEX ENERGY 2005 HOLDCO,** | § | |
| **LLC**, *et al.*, | § | **Chapter 11** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |

### <u>ORDER CONFIRMING FOURTH AMENDED JOINT CHAPTER 11 PLAN</u>

On June 7, 2021, the Court conducted a hearing (the "<u>Confirmation Hearing</u>") to consider approval of the *Second Amended Disclosure Statement in Support of Joint Chapter 11* Plan [ECF # 206] (the "<u>Disclosure Statement</u>"), dated April 22, 2021, and Confirmation of the *Fourth Amended Joint Chapter 11 Plan* [ECF # 307], dated June 3, 2021, filed by Castex Energy 2005 Holdco, LLC, *et al*., as debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned jointly administered Chapter 11 Cases. As referred to herein, the "<u>Plan</u>" shall be the Plan attached to this Confirmation Order as **Exhibit 1**, along with all modifications referred to herein.[2] Having considered the Plan, and based on the evidence presented at the Confirmation Hearing, including the *Declaration of Douglas J. Brickley in Support of Confirmation* [ECF # 297] (the "<u>Brickley Declaration</u>"), the Debtors' Ballot Summary [ECF # 282-1] (the "<u>Ballot Summary</u>"), the arguments and representations of counsel, and the entire record in the Chapter 11 Cases, the Court makes the following findings of fact and conclusions of law (the "<u>Findings of Fact and Conclusions of Law</u>") in support of approval of the Disclosure

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Castex Energy 2005 Holdco, LLC (6832); Castex Energy 2005, LLC (6832); Castex Energy Partners, LLC (6832); and Castex Offshore, Inc. (8432). The Debtors' mailing address is One Memorial City Plaza, 800 Gessner Rd., Suite 925, Houston, Texas 77024.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan attached hereto as **Exhibit 1**, the Liquidating Trust Agreement attached to the Plan, or the Debtors' Disclosure Statement [ECF # 206], as applicable.

Statement and Confirmation of the Plan pursuant to Bankruptcy Rule 7052, as made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

All Findings of Fact and Conclusions of Law announced by the Court at the Confirmation Hearing are incorporated herein by reference for all purposes to the extent not inconsistent herewith.  To the extent that any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such.  To the extent any of the following Conclusions of Law constitute Findings of Fact, they are adopted as such.

## I.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    Introduction

1.      On February 26, 2021 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").  The Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered under Case No. 21-30710.  Since the Petition Date, the Debtors have operated their businesses and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.  The United States Trustee for the Southern District of Texas appointed an Official Committee of Unsecured Creditors (the "Committee") on March 10, 2021 [ECF # 75].

2.      On March 8, 2021, the Debtors filed their *Joint Chapter 11 Plan* [ECF # 65] and their *Disclosure Statement in Support of Joint Chapter 11 Plan* [ECF # 66].  First amended versions of the Plan [ECF # 186] and Disclosure Statement [ECF # 187] were filed on April 15, 2021.  On April 22, 2021, the Debtors filed their second amended versions of the Plan [ECF #

205] and Disclosure Statement [ECF # 206].  The Court entered an Order [ECF # 214] conditionally approving this version of the Disclosure Statement and authorized the Debtors to solicit the Plan.  A third amended Plan [ECF # 294] was filed on May 26, 2021, and a fourth amended Plan was filed on June 3, 2021, as ordered by the Court at the initial Confirmation Hearing held on May 27, 2021.

3.      The Court makes these Findings of Fact and Conclusions of Law with respect to approval of the Debtors' *Second Amended Disclosure Statement in Support of Joint Chapter 11 Plan*, dated April 22, 2021, and Confirmation of the Debtors' *Fourth Amended Joint Chapter 11 Plan*, dated June 3, 2021, which is attached hereto as **Exhibit 1** and incorporated herein by reference.

**B.      Jurisdiction and Venue**

4.      The Court has jurisdiction over this matter under 28 U.S.C. § 1334.  Confirmation of this Plan is a core matter under 28 U.S.C. § 157(b), including those proceedings set forth in subsections (b)(2)(A), (B), (G), (I), (K), (L), (M), and (O), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

**C.      Eligibility for Relief**

5.      The Debtors were and continue to be eligible for relief under section 109 of the Bankruptcy Code.

**D.      Solicitation Materials and Related Matters**

6.      On March 26, 2021, the Debtors filed their *Emergency Motion for Entry of an Order Approving (I) Adequacy of the Disclosure Statement; (II) Form of Solicitation Materials;*

*and (III) Procedures for Soliciting and Voting on the Joint Chapter 11 Plan* [ECF # 121].

7.      On April 26, 2021, the Court entered its *Order Conditionally Approving (I) Adequacy of the Disclosure Statement; (II) Form of Solicitation Materials; and (III) Procedures for Soliciting and Voting on the Joint Chapter 11 Plan* [ECF # 214] (the "Disclosure Statement Approval Order").

8.      Pursuant to the Disclosure Statement Approval Order, on April 28, 2021, the Debtors filed a *Notice of Filing Approved Solicitation Materials* [ECF # 218] and caused the Solicitation Materials (as defined in the Disclosure Statement Approval Order) to be served upon Holders of Claims and Interests in the Voting Classes [ECF # 223].

9.      On May 13, 2021, the Debtors Filed a *Notice of Filing Plan Supplement* [ECF # 237]. The materials contained in the Plan Supplement comply with the terms of the Plan and the Disclosure Statement Approval Order, and the filing and notice of such documents was good and proper.

10.     On May 25, 2021, the Debtors filed their Ballot Summary.  The procedures by which Ballots were received and tabulated in the Ballot Summary was fair and properly conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Approval Order.  The Ballot Summary was amended at the Confirmation Hearing, and the amendments were accepted by the Court.

**E.      Disclosure Statement**

11.     The Disclosure Statement contains (i) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws, rules and regulations, including the Securities Act, and (ii) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy

4

Code) with respect to the Debtors, the Plan, and the transactions contemplated therein. The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

**F.**     **Objections to Confirmation of the Plan and Disposition Thereof**

12.     Pursuant to Disclosure Statement Approval Order, the Court established May 20, 2021 as the deadline to object to the Confirmation of the Plan (the "First Confirmation Objection Deadline"). At the initial Confirmation Hearing held on May 27, 2021, the Court established June 4, 2021 at 5:00 p.m. (prevailing Central Time) as the deadline to object to Confirmation of the Debtors' amended and modified Plan (the "Second Confirmation Objection Deadline," and collectively with the First Confirmation Objection Deadline, the "Confirmation Objection Deadlines"). The Debtors received certain objections to the Plan [ECF #s 249, 254, 256, 257, 258, 265, and 273] (collectively, the "Confirmation Objections") prior to the Confirmation Objection Deadlines. As stated on the record at the Confirmation Hearing, all of these Confirmation Objections were resolved as set forth in this Confirmation Order. To the extent such Confirmation Objections were not withdrawn or otherwise resolved, the record demonstrates by a preponderance of the evidence that the Plan should be confirmed, and the Confirmation Objections should be, and hereby are, overruled.

**G.**     **Confirmation Hearing**

13.     On June 7, 2021 at 10:00 a.m. (prevailing Central Time), the Court held the Confirmation Hearing. At the Confirmation Hearing, the Debtors established the following record in support of Confirmation of the Plan: (a) all documents identified on the Debtors' Witness and Exhibit List filed in the Chapter 11 Cases in support of Confirmation; (b) the Brickley Declaration; (c) the testimony at the Confirmation Hearing; (d) the evidence in respect of transmittal and service of the Solicitation Materials; (e) the Ballot Summary; (f) the entire

record of the Chapter 11 Cases and the docket maintained by the clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered by the Court, and evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, as to all of which the Court takes judicial notice; (f) the statements and argument of counsel on the record at the Confirmation Hearing; and (g) all papers and pleadings filed with the Court in support of, in opposition to, or otherwise in connection with Confirmation of the Plan.

**H.**     **Applicable Confirmation Requirements**

14.     To confirm the Plan, the Debtors are required to demonstrate that the Plan satisfies the provisions of Bankruptcy Code section 1129 by a preponderance of the evidence. *See Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160, 1163-65 (5th Cir. 1993), *cert. denied*, 510 U.S. 992 (1993) (recognizing that "preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cram down").   Here, the Debtors have satisfied their burden of proof with respect to Confirmation of the Plan.

   *i.* *11 U.S.C. § 1129(a)(1) and (a)(2): Compliance with Title 11*

15.     The classification and treatment of Claims and Interests are described in Articles II and III of the Plan, and the Plan implementation procedures are described in Article IV of the Plan.  The classification of Claims and Interests described in the Plan satisfies the standards of section 1122 of the Bankruptcy Code, and the Plan complies with the applicable provisions of section 1123 of the Bankruptcy Code.  The requirements of section 1129(a)(1) of the Bankruptcy Code are therefore satisfied.   The Debtors have complied with the terms of the Disclosure Statement Approval Order, and the applicable provisions of the Bankruptcy Code, Bankruptcy

Rules, Bankruptcy Local Rules for the Southern District of Texas, and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas.  As a result, the requirements of section 1129(a)(2) of the Bankruptcy Code are satisfied.

ii.   *11 U.S.C. § 1129(a)(3): Plan Proposed in Good Faith*

16.   The Debtors have proposed the Plan with the legitimate and honest purpose of restructuring their financial affairs and making distributions to Holders of Claims and Interests. The Plan has not been proposed by any means forbidden by law.  The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code.  The Plan is the result of good faith, arm's-length negotiations among the Debtors, Holders of Claims and Interests, and other parties in interest.  Accordingly, the Plan has been proposed in good faith and not by any means forbidden by law as required by section 1129(a)(3) of the Bankruptcy Code.

iii.   *11 U.S.C. § 1129(a)(4): Disclosure and Approval of Payments*

17.   Any payment made, or to be made, by the Debtors for services or for costs and expenses during or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of the Court as reasonable, as required by section 1129(a)(4) of the Bankruptcy Code.

iv.   *11 U.S.C. § 1129(a)(5): Disclosure of Management and Payments to Insiders*

18.   As required by section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed the identities of the individuals proposed to serve as the directors and officers of Post-Effective Date Debtors.  Further, the Debtors have adequately disclosed the identities of the current directors and officers who are Insiders of the Debtors.

v.   *11 U.S.C. § 1129(a)(6): Regulatory Rate Approval*

19.   The Plan does not provide for a "rate change" as contemplated by section

7

1129(a)(6) of the Bankruptcy Code, and therefore, section 1129(a)(6) does not apply to the Plan.

vi.      *11 U.S.C. § 1129(a)(7): Best Interest of Creditors Test*

20.      The Debtors prepared a Liquidation Analysis with respect to a hypothetical liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code.  The Court accepts the results of the Liquidation Analysis.  Based on the Liquidation Analysis, with respect to each Impaired Class of Claims or Interests, (a) each Holder of a Claim or Interest of such Class has either accepted the Plan, or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  The requirements of section 1129(a)(7) of the Bankruptcy Code are therefore satisfied.

vii.     *11 U.S.C. § 1129(a)(8): Acceptance of Plan by All Classes*

21.      Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each Class of Claims or Interests, such Class has either accepted the Plan or is not Impaired under the Plan.  As demonstrated in the Ballot Summary, all Classes of Claims and Interests who were entitled to vote on the Plan either voted to accept the Plan or are deemed to have accepted the Plan, and therefore, the requirements of section 1129(a)(8) are satisfied.

22.      Omitted.

viii.    *11 U.S.C. § 1129(a)(9): Payment of Priority Claims*

23.      Section 1129(a)(9) of the Bankruptcy Code provides for the treatment of Claims entitled to priority under sections 507(a)(1)-(8) of the Bankruptcy Code.  Under section 1129(a)(9)(A) of the Bankruptcy Code, Holders of section 507(a)(2) and (a)(3) Claims must receive Cash equal to the Allowed amount of such Claim.  Section 1129(a)(9)(B) provides that, except to the extent the Holder of a Claim has otherwise agreed to a different treatment, Holders

8

of section 507(a)(1) and (a)(4)-(a)(7) Claims must receive deferred Cash payments of a value equal to the Allowed amount of such Claims if the Class has accepted the Plan or, if not, Cash equal to the Allowed amount of such Claim.  The Plan satisfies these requirements, and, therefore, complies with sections 1129(a)(9)(A) and (B) of the Bankruptcy Code.

24.     Under section 1129(a)(9)(C) of the Bankruptcy Code, holders of claims under section 507(a)(8) or secured tax claims must receive regular installment payments in cash, (a) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (b) over a period ending not later than five (5) years after the date of the order for relief under Bankruptcy Code sections 301, 302 or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan.  The Debtors' Plan satisfies such requirements and therefore complies with section 1129(a)(9)(C) of the Bankruptcy Code.

> ix.     _11 U.S.C. § 1129(a)(10): At Least One Impaired Class Has Accepted the Plan_

25.     Section 1129(a)(10) of the Bankruptcy Code provides that if one or more classes of claims is impaired under the plan, at least one class must have accepted the plan, without including any votes of insiders.  Here, without including acceptance of the Plan by any Insider, Class 3 has voted unanimously to accept the Plan.  The Plan therefore satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

> x.     _11 U.S.C. § 1129(a)(11): Feasibility_

26.     At the Confirmation Hearing, the Debtors offered certain Exhibits, including the Brickley Declaration, in order to demonstrate the feasibility of the Plan.  Based on the testimony and the supporting documentary evidence presented, the Court finds that the Plan adequately implements the restructuring of the Debtors' financial obligations.  The testimony adduced at the Confirmation Hearing and the testimony set forth in the Brickley Declaration is credible, and the

Debtors can be expected to achieve operational results sufficient to satisfy the obligations required under the Plan. Further, Confirmation of the Plan is not likely to be followed by a chapter 7 liquidation or further need for financial restructuring by the Debtors. Accordingly, the Plan is feasible and complies with section 1129(a)(11) of the Bankruptcy Code.

      *xi.*    *11 U.S.C. § 1129(a)(12): Payment of Fees*

27.      The Plan provides that, until the Chapter 11 Cases are closed, all Statutory Fees incurred under 28 U.S.C. § 1930(a)(6) will be paid by the Liquidating Trustee. Thus, the Plan complies with section 1129(a)(13) of the Bankruptcy Code.

      *xii.*    *11 U.S.C. § 1129(a)(13): Retiree Benefits*

28.      The Debtors do not maintain a retirement plan as defined by section 1114 of the Bankruptcy Code, and therefore the Plan does not require the payment of retiree benefits.

      *xiii.*    *11 U.S.C. § 1129(a)(14): Domestic Support Obligations*

29.      The Debtors are not required to pay a domestic support obligations, either under a judicial or administrative order or by statute, and therefore section 1129(a)(14) of the Bankruptcy Code is inapplicable.

      *xiv.*    *11 U.S.C. § 1129(a)(15): Objection to Plan Confirmation by a Holder of an Unsecured Claim*

30.      The Debtors are not individuals, and therefore section 1129(a)(15) of the Bankruptcy Code is inapplicable.

      *xv.*    *11 U.S.C. § 1129(a)(16): Restrictions on Transfers of Property by Nonprofit Entities*

31.      The Debtors are a moneyed, commercial corporation and limited liability companies, respectively, and therefore section 1129(a)(16) of the Bankruptcy Code is inapplicable.

xvi.    _11 U.S.C. § 1129(b)_

32.    Under section 1129(b) of the Bankruptcy Code, the court "shall confirm the plan … if the plan does not discriminate unfairly, and it is fair and equitable, with respect to each class of claims or interest is impaired under, and has not accepted, the plan." _See_ 11 U.S.C. § 1129(b).  For purposes of section 1129(b), the Plan is fair and equitable to the extent that the Holder of any Claim or Interest that is junior to the Claims of such Class will not receive or retain any property under the Plan on account of such junior Claim or Interest.  The Court finds that the Plan does not discriminate unfairly, is fair and equitable, and otherwise satisfied the elements of 1129(b) of the Bankruptcy Code.

xvii.    _11 U.S.C. § 1129(d)_

33.    The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act.  As a result, the Plan complies with section 1129(d) of the Bankruptcy Code.

I.    **Conclusion**

34.    The Debtors have demonstrated that the Plan provisions comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including sections 1122, 1123, and 1129 of the Bankruptcy Code, and are reasonable and appropriate.

## II. ORDER

Based on the Findings of Fact and Conclusions of Law, the Court has determined that the Disclosure Statement and Plan satisfy the applicable provisions of the Bankruptcy Code and should therefore be approved on a final basis and confirmed.  It is therefore hereby **ORDERED** that:

35.    The foregoing Findings of Fact and the Conclusions of Law constitute findings of

fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014. All additional findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to approval of the Disclosure Statement and Confirmation of the Plan, including the Court's rulings with respect to Confirmation, are hereby incorporated into this Confirmation Order. All Findings of Fact or Conclusions of Law constitute rulings of the Court and are part of this Confirmation Order and adopted as such.

## A.    Disclosure Statement

36.    The Disclosure Statement is APPROVED in all respects.

## B.    Confirmation of the Plan and Approval of Plan Documents

37.    The Plan is CONFIRMED in its entirety under section 1129 of the Bankruptcy Code, and all of the terms and conditions contained in the Plan are APPROVED. The Debtors, the Post-Effective Date Debtors, and the Liquidating Trustee, as applicable, are authorized to implement the Plan in accordance with the terms and provisions of the Plan, Liquidating Trust Agreement, and this Confirmation Order. The Debtors, upon written notice to and in consultation with the Liquidating Trustee, are authorized to modify the Plan through and including the Effective Date in accordance with Bankruptcy Code section 1127 without further order of the Court to the extent necessary to make any changes required or appropriate to implement, effectuate, and consummate the Plan, the terms of this Confirmation Order, the Liquidating Trust Agreement, and the transactions respectively contemplated under each of the foregoing.

38.    The Plan Documents, as filed with the Court, are necessary and appropriate to effectuate the transactions contemplated under the Plan and are APPROVED and deemed part of

4821-7259-2104, v. 12

the Plan as if fully set forth therein.  The Debtors, upon written notice to and in consultation with the Liquidating Trustee, are authorized to modify the Plan Documents through and including the Effective Date, along with such other certificates, documents, and instruments that may be necessary or appropriate to effectuate the transactions contemplated under the Plan.  All of the Plan Documents comply with the terms of the Plan, and the filing and notice of such Plan Documents was good and proper and in accordance with the Bankruptcy Code and Bankruptcy Rules, and no other or further notice is required.  The Plan and Plan Documents have been negotiated in good faith at arm's length and shall, on and after the Effective Date, constitute legal, valid, binding, and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms.  The Plan, including all transactions contemplated by the Plan and Plan Documents, represents the exercise of the sound business judgment of the Debtors, and is in the best interests of the Debtors, Holders of Claims and Interests, and all parties in interest.

**C.     Resolution of Confirmation Objections**

39.     The Confirmation Objection(s) which were timely filed by the Confirmation Objection Deadlines are resolved as set forth herein.  All timely filed Confirmation Objections, or any other untimely objections to Confirmation of the Plan, that were not withdrawn or otherwise resolved at or before the Confirmation Hearing are expressly overruled, except as set forth in this Confirmation Order.

**D.     Establishment of the Liquidating Trust**

40.     The Plan provides for the creation of the Liquidating Trust.  Confirmation of the Plan shall effect the formation of the Liquidating Trust and shall be governed by the Liquidating Trust Agreement.  The form and content of the Liquidating Trust Agreement attached as an

4821-7259-2104, v. 12

Exhibit to the Plan is approved and incorporated by reference herein; *provided*, *however*, that the Liquidating Trust Agreement will be amended, as necessary, to change the name of the Liquidating Trustee to Thomas Thompson.

41.     Thomas Thompson shall serve as the Liquidating Trustee until death, resignation, discharge, or the appointment of a successor in accordance with the Liquidating Trust Agreement.  In the exercise of his authority on behalf of the Liquidating Trust, the Liquidating Trustee will have certain responsibilities and powers, and shall administer the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries pursuant to the terms and conditions of the Plan, Liquidating Trust Agreement, and this Confirmation Order.  In addition to the rights and duties provided in the Plan, Liquidating Trust Agreement, and this Confirmation Order, the Liquidating Trustee shall be entitled to all rights, privileges, and immunities provided under applicable non-bankruptcy law, including, but not limited to, all rights, privileges, and immunities provided to a trustee under Texas law.

**E.     Implementation of the Plan**

42.     Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, on the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors, Post-Effective Date Debtors, and Liquidating Trustee, as applicable, may take all actions as may be necessary or appropriate to affect any action described in, approved by, contemplated by, or necessary to effectuate the Plan and the Liquidating Trust.

43.     All such actions taken or caused to be taken consistent with the terms of the Plan, Liquidating Trust Agreement, and Confirmation Order, including any such actions taken prior to the entry of the Confirmation Order, shall be deemed to have been authorized and approved by the Court without further order under any applicable laws or regulations.

14

44.     On the Effective Date, except to the extent otherwise provided in the Plan or Plan Documents, all notes, instruments, certificates, and other documents evidencing Claims or Interests shall be cancelled and the obligations of the Debtors or Liquidating Trustee, if any, shall be deemed satisfied in full, cancelled, discharged, and of no force or effect.  Holders of, or parties to, such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided pursuant to the Plan, Liquidating Trust Agreement, and this Confirmation Order.

## F.     **Settlement of Claims and Controversies**

45.     Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies relating to the rights that a Holder of a Claim or Interest may have with respect to such Claim or Interest or any distribution on account thereof, including, for the avoidance of doubt, the compromises and settlements with Castex Energy, Inc., Talos, Texas Petroleum Investment Company ("TPIC"), and W&T Offshore, Inc..  The entry of this Confirmation Order shall constitute the Court's approval, as of the Effective Date, of each of the compromises and settlements embodied in the Plan, including the treatment of Claims and Interests under the Plan, and the Court's finding that all such compromises or settlements are: (i) in the best interest of the Debtors, their estates, the Post-Effective Date Debtors, and their respective creditors and stakeholders; (ii) fair, equitable and within the range of reasonableness; and (iii) satisfy the requirements of Bankruptcy Rule 9019 and Bankruptcy Code section 1123(b)(3)(A).  The

provisions of the Plan, including, without limitation, the Plan's release, injunction, exculpation and compromise provisions, are mutually dependent.

**G.**     **Effects of Confirmation of the Plan**

46.     The provisions of the Plan, Plan Documents, Liquidating Trust Agreement, and this Confirmation Order are binding on the Debtors, Post-Effective Date Debtors, Liquidating Trustee, Lender NewCo, each Holder of a Claim or Interest, each non-Debtor counterparty to an Executory Contract or Unexpired Lease with any Debtor, any other interested party in the Chapter 11 Cases, and each of the foregoing's respective agents, heirs, successors, and assigns, regardless of whether such Entity filed a Proof of Claim or voted to accept the Plan.

47.     Upon entry of this Confirmation Order, the Debtors, Post-Effective Date Debtors, Liquidating Trustee, Lender NewCo, and their respective directors and officers, agents, attorneys, and Professionals, as applicable, are authorized and directed to effect any and all actions contemplated or required by the Plan or Plan Documents, including, but not limited to, the Liquidating Trust Agreement.  On and after the Effective Date, the Debtors, Post-Effective Date Debtors, Liquidating Trustee, Lender NewCo, and their respective directors and officers, agents, attorneys, and Professionals are authorized and directed to take all necessary and appropriate steps and corporate action to implement the terms of the Plan, regardless of whether such actions are specifically referred to in the Plan or this Confirmation Order.

48.     Except as otherwise provided by the Plan or this Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims against or Interests in the Debtors and their estates, and the Liquidating Trust.

49.     Except as otherwise provided in the Plan, this Confirmation Order, or separate Final Order of the Court, all injunctions or automatic stays provided for in the Chapter 11 Cases under sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date.

50.     Except as otherwise provided in section 1141of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of this Confirmation Order, the provisions of the Plan and Liquidating Trust Agreement shall bind every Holder of a Claim against or Interest in the Debtors and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is Impaired under the Plan and whether such Holder has voted to accept or reject the Plan.

**H.     <u>Vesting of Assets Free and Clear of Liens, Claims and Encumbrances</u>**

51.     Except as otherwise provided in the Plan, Plan Documents, Liquidating Trust Agreement, or this Confirmation Order, all Estate Property of any Debtor, and any property acquired by a Debtor or Post-Effective Date Debtor under the Plan, will vest in the applicable Entity or Liquidating Trust, as applicable under the Plan, free and clear of all Claims, Liens, Interests, charges, and other encumbrances.  On and after the Effective Date and, in the case of a Secured Claim, upon satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date pursuant to the terms and conditions of the Plan, except as otherwise provided in the Plan or this Confirmation Order, each Post-Effective Date Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Failure to include a Cause of Action

17

on the Schedule of Retained Causes of Action shall not constitute a waiver or release of such Cause of Action.

**I.      Abandonment of Certain Assets**

52.     The Abandoned Assets shall be deemed abandoned as of the Effective Date pursuant to section 554 of the Bankruptcy Code without further order of the Court.  Entry of this Confirmation Order shall constitute: (i) approval, pursuant to Bankruptcy Code section 554, of the abandonment of the properties set forth in the Debtors' Schedule of Abandoned Assets attached to the Plan and included in the Plan Supplement; and (ii) authorization to relinquish any interest the Debtors' hold in the Abandoned Assets.  Such abandonment and/or relinquishment does not alter the obligation of the Debtors or the Liquidating Trustee, as applicable, to comply with laws reasonably designed to protect the public health and safety from identifiable hazards, including, but not limited to, plugging and abandonment obligations (the "HSE Obligations") or in any manner extinguish, modify, or otherwise limit: (a) the obligations of non-Debtor third parties for HSE Obligations, or (b) the rights of the United States to enforce such HSE Obligations.

**J.      Continued Corporate Existence**

53.     The Debtors shall continue to exist after the Effective Date as Post-Effective Date Debtors in accordance with the applicable laws of the respective jurisdictions in which they are formed or organized and pursuant to their respective bylaws (or other formation documents) in effect prior to the Petition Date, except to the extent such bylaws (or other formation documents) are amended or restated.

54.     As of the Effective Date: (i) all current officers and directors of the Debtors are deemed to have resigned as officers and directors of the Debtors; (ii) the Liquidating Trustee

shall be the sole remaining director of the Post-Effective Date Debtors; and (iii) all of the Debtors' corporate organizational documents are deemed amended to allow for the Liquidating Trustee to be designated as the sole officer and director of the Post-Effective Date Debtors.

**K.** **Release of Liens**

55.    The Debtors shall continue to operate their businesses, including the Operated Properties, in the ordinary course as Post-Effective Date Debtors and perform their duties in connection with the Plan.  Except as otherwise expressly provided in the Plan, Liquidating Trust Agreement, or Confirmation Order, all assets and property of the Debtors shall be vested in the Post-Effective Date Debtors free and clear of all Liens, Claims and Interests, and all such Liens, Claims and Interests are hereby extinguished.

56.    Except as otherwise provided in the Plan, Liquidating Trust Agreement, or Confirmation Order, or in any contract, instrument or other agreement or document entered into in connection with the Consummation of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security Interests shall revert to the Post-Effective Date Debtors and their successors and assigns.

57.    Each Holder of a Secured Claim, or a Claim that is purportedly secured by any security interest or Lien shall, on or before the Effective Date, and concurrently with the applicable distributions made pursuant to the Plan, be authorized and directed to release to the Debtors or Post-Effective Date Debtors, as applicable, any Collateral or other Assets of a Debtor (including any Cash Collateral and possessory Collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably required or

requested by the Post-Effective Date Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  To the extent any of the foregoing actions, whether arising prior to the Effective Date or thereafter, require action to be taken by the Holders or applicable agents for such Holders of Secured Claims, the Debtors or Post-Effective Date Debtors, as applicable, shall pay the reasonable and documented fees and expenses of the Holders or applicable agents for such Holder or such Secured Claims, without the need for any further application or notice to or action, order, or approval of the Court.  No distributions under the Plan shall be made to or on behalf of any Holder of a Secured Claim by the Post-Effective Date Debtors or Liquidating Trustee unless and until such Holder complies with any outstanding demand that it execute and deliver to the Debtors or Post-Effective Date Debtors such release of Liens; *provided*, *however*, that the foregoing clause shall not apply to Lender NewCo or otherwise delay the Plan Distribution to Lender NewCo in accordance with the Plan.

L.      **Provisions Related to Executory Contracts and Unexpired Leases**

58.      All Executory Contracts and Unexpired Leases not assumed by the Debtors in accordance with this Confirmation Order (including the provisions below regarding assumption and assignment of Executory Contracts and Unexpired Leases to TPIC) are deemed rejected pursuant to section 365 of the Bankruptcy Code. Unless otherwise indicated or provided in a separate order of the Court, rejections or assumptions of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Provided, executory contracts and leases may be assumed in accordance with the Plan within 60 days of the Effective Date, but only  as set forth within the Plan.

59.      Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by order of the Court but not assigned to a third party before the Effective Date (excluding the

provisions below regarding assumption and assignment of Executory Contracts and Unexpired

Leases to TPIC)  shall vest in, and be fully enforceable by, the applicable Post-Effective Date

Debtor as of the Effective Date in accordance with its terms, except as may be modified by the

provisions of the Plan, any order of the Court authorizing and providing for its assumption, or

any applicable law.  Each Executory Contract and Unexpired Lease that is assumed by the

Debtors shall include any and all modifications, amendments, supplements, restatements, or

other agreements made directly or indirectly by any agreement, instrument, or other document

that in any manner affects such Executory Contract or Unexpired Lease.

  60. The payment of any applicable Cure Amount, the resolution of any Cure Amount

dispute, and the entry of this Confirmation Order by the Court shall constitute approval of the

assumptions and rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the

Bankruptcy Code as of the Effective Date.

  61. With respect to each Executory Contract or Unexpired Lease to be assumed by

the Debtors, the Cure Amount required to cure any defaults by the Debtors existing as of the

Effective Date shall be determined in accordance with, and subject to, Article V.A of the Plan.

All non-Debtor counterparties to the Executory Contracts and Unexpired Leases that failed to

timely assert a Cure Amount objection in accordance with Article V.A of the Plan are deemed to

have consented to such assumption and Cure Amount, and shall be forever barred, estopped and

enjoined from challenging the validity of such assumption or the Cure Amount, or from

asserting, collecting, or seeking to collect any amount or default relating thereto against the Post-

Effective Date Debtors or the assignee(s) of such Executory Contract or Unexpired Lease.  Upon

payment of the applicable Cure Amount, if any, such Claims shall be deemed fully released and

satisfied, and all Proofs of Claim based upon an Executory Contract or Unexpired Lease that has

been assumed in the Chapter 11 Cases or pursuant to this Confirmation Order shall be deemed disallowed and expunged without any further notice to or action by any party or order of the Court.

62.     As of the Effective Date, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are expressly assumed and assigned to the Liquidating Trust, and such policies shall continue in full force and effect in accordance with their respective terms and applicable non-bankruptcy law, and the Liquidating Trust shall remain liable for all obligations (including Claims) thereunder regardless of when such obligations (including Claims) arise or become due or liquidated as if the Chapter 11 Cases had not occurred.  Consistent with the foregoing, any obligations that come due under the terms of such insurance policies after the effective time of the assumption shall be deemed to arise after the Effective Date, such that the Liquidating Trust shall not be released from any such obligations.

63.     Any term of any policy, contract, or other obligation applicable to any Debtor(s) shall be void and of no further force or effect to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the applicable Debtor(s) as a result of, or gives rise to a right of any Entity based on any of the following: (i) the insolvency or financial condition of a Debtor (prior to the Effective Date); (ii) the commencement of the Chapter 11 Cases; or (iii) the Confirmation or Consummation of the Plan.

64.     Unless otherwise provided by a separate Final Order of the Court, any Claim resulting from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be filed with the Court within thirty (30) days after the later of: (i) the date of an order of the Court (including this Confirmation Order) approving such rejection, (ii) the effective date of such rejection, (iii) the Effective Date of the Plan, or (iv) the date after the Effective Date that the

22

applicable Schedules are altered, amended, modified, or supplemented, but only with respect to any Executory Contract or Unexpired Lease thereby affected.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, their estates, the Post-Effective Date Debtors, their property, or the Liquidating Trust without the need for any objection by the Post-Effective Date Debtors or Liquidating Trustee, further notice to, or action, order or approval of the Court or any other Entity, and any such Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Debtors' Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.D.4 of the Plan.

**M.**    **Release and Exculpation Provisions Approved; Discharge of Claims Against and Interests in the Debtors**

65.    On and after the Effective Date, and except as provided in this Confirmation Order, all injunctions, releases, and exculpation provisions set forth in Article VII of the Plan, are hereby approved, and shall be effective and binding on all Entities, to the fullest extent provided therein; *provided*, *however*, that the consensual third-party release provisions set forth in Article VII shall: (i) not be binding on any Entity that timely rejected such third-party release provisions in accordance with the Plan and Disclosure Statement Approval Order; and (ii) be construed, and only be effective, to the extent that it is consistent with the applicable provisions of the Bankruptcy Code and case law in the Fifth Circuit.

66.    Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise provided in the Plan, this Confirmation Order, or any

23

stipulation filed between the Debtors and a Holder of Claims against the Debtors, each Holder of a Claim or Interest and any successor, assign, and affiliate of such Holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Except as otherwise provided in the Plan, all Holders of Claims and Interests and their successors, assigns, and affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in any Debtor or Post-Effective Date Debtor.

67.      The exculpation provided in Article VII.G of the Plan is approved but should be construed, and only be effective, to the extent that it is consistent with the applicable provisions of the Bankruptcy Code and case law in the Fifth Circuit.  In addition, the exculpation provided in Article VII.G of the Plan shall be limited to acts which occurred after the Petition Date.  Any claims against Exculpated Parties for acts described in Article VII.G of the Plan shall be filed in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, and this Court retains exclusive jurisdiction to consider such claims.

68.      Except as otherwise expressly provided in the Plan or this Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or this Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been satisfied, released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in

connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

69.     Upon Confirmation of the Plan, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of any Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or reinstatement of such Claim or Interest, as applicable, pursuant to the Plan and Liquidating Trust Agreement, shall be deemed to have consented to the injunction provisions set forth in the Plan.

**N.**     **Claims Resolution Procedures Approved**

70.     The procedures for resolving contingent, unliquidated, or Disputed Claims by the

Debtors or Liquidating Trustee, as outlined in Article VI of the Plan, are hereby approved.

**O.** **Professional Compensation**

71.     All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be filed no later than the Professional Compensation Claim Bar Date, consistent with the procedures under Article II.B of the Plan.  Objections to Professional Compensation Claims must be filed and served on the Post-Effective Date Debtors and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline. The Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and a hearing in accordance with the procedures established by the Court.  Allowed Professional Compensation Claims shall be paid by the Post-Effective Date Debtors in Cash within ten (10) days of the entry of a Final Order allowing such Claims.

**P.** **Post-Confirmation Professional Fees and Expenses**

72.     Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, but effective as of the Effective Date, the Debtors and the Post Effective Date Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

**Q.**     **Retention of Causes of Action**

73.     Except as otherwise provided in the Plan or Liquidating Trust Agreement, nothing contained in the Plan, Liquidating Trust Agreement, or this Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective Date on behalf of the estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law.  Except as otherwise provided in the Plan, the Post-Effective Date Debtors or the Liquidating Trustee, as applicable, shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

74.     No Person or Entity may rely on the absence of specific reference to any Cause of Action in the Plan, Plan Documents, Liquidating Trust Agreement, or the Disclosure Statement as any indication that the Post-Effective Date Debtors (with respect to Retained Causes of Action) or the Liquidating Trustee (with respect to Liquidating Trust Assets) will not pursue any and all available Causes of Action.

**R.**     **Setoffs and Recoupments**

75.     Except as expressly provided in the Plan or this Confirmation Order, the Liquidating Trustee, on behalf of the Liquidating Trust, may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Liquidating Trust

27

may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either: (i) agreed in amount by the Liquidating Trustee, on behalf of the Liquidating Trust and Holder of such Allowed Claim; or (ii) otherwise adjudicated by the Court or another court of competent jurisdiction; *provided, however,* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by either Liquidating Trustee, on behalf of the Liquidating Trust, or its successor of any and all claims, rights, and Causes of Action that such Liquidating Trustee, on behalf of the Liquidating Trust, or its successor may possess against the applicable Holder.  Except as otherwise authorized in the Plan or this Confirmation Order, in no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust, as applicable, unless such Holder has actually performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XI.E of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**S.**    **Global Plan Settlement Term Sheet**

76.    After solicitation, the Debtors made certain non-material modifications to clarify certain terms and provisions of the Plan, incorporate a global settlement pursuant to that certain global settlement term sheet (the "Settlement Term Sheet"), and effectuate the intent of the Plan to reserve the rights of parties in interest.  The Settlement Term Sheet agreed to by and among the following parties (collectively, the "Settlement Parties"): (i) the Debtors; (ii) the Prepetition Lenders; (iii) the Committee; (iv) Talos Production Inc., Talos Energy, Inc. and Talos Third

Coast LLC (collectively, "Talos"); (v) Walter Oil & Gas Corporation ("Walter"); and (vi) TPIC,

is attached as an Exhibit and incorporated into the Plan.

77.     To the extent not already incorporated into the Plan, the Settlement Term Sheet is

part of the Plan, and the transactions contemplated by the Settlement Parties to the Settlement

Term Sheet are APPROVED in all respects.  The transactions contemplated by the Settlement

Term Sheet shall be finalized with definitive documentation by the parties, which documentation

shall constitute Plan Documents within the meaning of the Plan and are hereby approved without

further notice or order of the Court.  Each of the Settlement Parties, as applicable, are hereby

authorized and directed to execute such Plan Documents as soon as reasonably practicable

following entry of this Confirmation Order.  Notwithstanding anything to the contrary in this

Confirmation Order or the Plan, including, for the avoidance of doubt, Article VIII.A. of the

Plan, the execution of such Plan Documents pursuant to the Settlement Term Sheet and this

Confirmation Order shall be a condition precedent to the Effective Date of the Plan.  To the

extent there is a conflict between the Settlement Term Sheet and the Plan, the Settlement Parties

will work in good faith to resolve such conflict.  If the Settlement Parties are unable to

consensually resolve the dispute, then the Settlement Parties may seek that the dispute be

adjudicated by the Court, and the Settlement Parties agree that such dispute may be heard by the

Court on an emergency basis.

78.     **Talos**.  The Plan and Settlement Term Sheet describe and provide for, pursuant to

section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, a sale and transfer of the

Debtors' interests in MP270A (the "MP270A Sale"), as is, with no warranties, except that the

Debtors represent and warrant (a) that they have not disposed of or transferred any of their

interests therein and (b) that they have full corporate power and authority to enter into the

29

MP270A Sale and to execute definitive documentation memorializing such and to execute the PSA and all other documents contemplated thereby. The MP270A Sale shall sell and transfer, in exchange for the consideration set forth herein, to the designee of Talos all of the Debtors' interests in MP270A as is, with no warranties, except that the Debtors represent that they have not disposed of or transferred any of their interests therein, with an Effective Time to be the closing with all revenues, expenses, and obligations accruing or existing as of closing to be transferred by the Debtors to Talos, with no adjustments to price or consideration. The Debtors have demonstrated that the MP270A Sale constitutes the exercise by the Debtors of sound business judgment, and is in the best interests of the Debtors, Holders of Claims and Interests, and all parties in interest. This Court finds that the Debtors have articulated good and sufficient business reasons justifying the MP270A Sale. The Debtors and Talos have proceeded in good faith in all respects in connection with the MP270A Sale. The terms of the MP270A Sale were negotiated by the Debtors and Talos at arm's length, without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. Talos has not violated section 363(n) of the Bankruptcy Code by any action or inaction. As a result of the foregoing, Talos is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and as such, is entitled to all the protections afforded thereby, including those protections that exist in favor of a good faith purchaser in the event this Confirmation Order or any portion thereof is reversed or modified on appeal. If the Debtors did not agree to the MP270A Sale free and clear of all liens, claims, and interests, any sale would have yielded substantially lower value for the Debtors' estates. The Debtors are authorized to sell MP270A free and clear of all liens, claims, and interests. Talos is not holding itself out to the public as a continuation of the Debtors and is not, as of the Petition Date, an "insider" or "affiliate" of the Debtors, as those terms are defined

in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders exists now or has ever existed between Talos and the Debtors. The MP270A Sale does not amount to a consolidation, merger or *de facto* merger of Talos and the Debtors and/or the Debtors' estates, there is not substantial continuity between Talos and the Debtors, and there is no continuity of enterprise between Talos and the Debtors, Talos is not a mere continuation of the Debtors or their estate, and Talos does not constitute a successor to the Debtors or their estates. To the fullest extent of the law, Talos's acquisition of MP270A shall be free and clear of any "successor liability" claims of any nature whatsoever. Talos's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of MP270A. Talos would not have acquired MP270A but for the foregoing protections against potential claims based upon "successor liability" theories. For the avoidance of doubt, and notwithstanding anything to the contrary in this Confirmation Order or in the Plan, Talos shall have no obligations to pay any cash to the Debtors, their estates, or the Liquidating Trust.

79. On the Effective Date, the Liquidating Trust shall succeed to all rights and interest of the Debtors, including, but not limited to, CEP and COI, in, to, and under the Talos Escrow Agreement and the Liquidating Trustee shall have the authority to exercise and protect such rights by, among other actions, issuing direction or instruction to the Escrow Agent (as defined in the Talos Escrow Agreement). Subject to receipt of Joint Instructions (as defined in the Talos Escrow Agreement, *provided*, *however*, such Joint Instructions may be provided by Talos and the Liquidating Trustee), the Escrow Agent shall release the Escrowed Talos Shares to the Liquidating Trust.

80. **TPIC**. The Plan and Settlement Term Sheet described and provide for, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, a sale and transfer of the

31

Debtors' interests in so-called Belle Isle field and the assets regarding or related to the Plant Related Agreements (collectively, the "TPIC Assets"), as is, with warranties, except that the Debtors represent and warrant (a) that they have not disposed of or transferred any of their interests therein and (b) that they have full corporate power and authority to enter into the sale of the TPIC Assets and to execute definitive documentation memorializing such and to execute the asset transfer related agreements and all other documents contemplated thereby (the "TPIC Sale"). The TPIC Sale shall sell and transfer, in exchange for the consideration set forth herein, to the designee of TPIC all of the Debtors' interests in the TPIC Assets as is, with no warranties, except that the Debtors represent that they have not disposed of or transferred any of their interests therein, with an Effective Time to be the closing with all revenues, expenses, and obligations accruing or existing as of closing to be transferred by the Debtors to TPIC, with no adjustments to price or consideration. The Debtors have demonstrated that the TPIC Sale constitutes the exercise by the Debtors of sound business judgment, and is in the best interests of the Debtors, Holders of Claims and Interests, and all parties in interest. This Court finds that the Debtors have articulated good and sufficient business reasons justifying the TPIC Sale. The Debtors and TPIC have proceeded in good faith in all respects in connection with the TPIC Sale. The terms of the TPIC Sale were negotiated by the Debtors and TPIC at arm's length, without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. TPIC has not violated section 363(n) of the Bankruptcy Code by any action or inaction. As a result of the foregoing, TPIC is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and as such, is entitled to all protections afforded thereby, including those protections that exist in favor of a good faith purchaser in the event this Confirmation Order or any portion thereof is reversed or modified on appeal. If the Debtors did

not agree to the TPIC Sale free and clear of all liens, claims, and interests, any sale would have yielded substantially lower value for the Debtors' estates. The Debtors are authorized to sell the TPIC Assets free and clear of all liens, claims, and interests. TPIC is not holding itself out to the public as a continuation of the Debtors and is not, as of the Petition Date, an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders exists now or has ever existed between TPIC and the Debtors. The TPIC Sale does not amount to a consolidation, merger or *de facto* merger of TPIC and the Debtors and/or the Debtors' estates, there is not substantial continuity between TPIC and the Debtors, and there is no continuity of enterprise between TPIC and the Debtors, TPIC is not a mere continuation of the Debtors or their estate, and TPIC does not constitute a successor to the Debtors or their estates. To the fullest extent of the law, TPIC's acquisition of the TPIC Assets shall be free and clear of any "successor liability" claims of any nature whatsoever. TPIC's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the TPIC Assets. TPIC would not have acquired the TPIC Assets but for the foregoing protections against potential claims based upon "successor liability" theories. For the avoidance of doubt, and notwithstanding anything to the contrary in this Confirmation Order or in the Plan, TPIC shall have no obligation to pay any cash to the Debtors, their estates, or the Liquidating Trust.

81.    Not later than fourteen (14) calendar days after the Effective Date, TPIC shall file and shall serve a *Notice of Assumption and Assignment* with respect to any Executory Contracts or Unexpired Leases to be assumed and assigned to TPIC in accordance with the Plan, this Confirmation Order, and the Settlement Term Sheet. The *Notice of Assumption and Assignment* shall set forth the Cure Amount owed to the applicable contract counterparties which are

necessary to cure any defaults (other than the filing of the Chapter 11 Cases) and actual pecuniary losses under the Executory Contracts or Unexpired Leases to be assumed and assigned. Any objections to the assumption and assignment of any Executory Contract or Unexpired Lease identified in TPIC's *Notice of Assumption and Assignment* must: (i) set forth in writing and describe with specificity the factual and legal basis for the objection; (ii) comply with the Bankruptcy Rules and Bankruptcy Local Rules; and (iii) be filed with the Clerk of the Court no later than twenty-one (21) calendar days from the date TPIC serves the *Notice of Assumption and Assignment*. If a counterparty to an Executory Contract or Unexpired Lease set forth in the *Notice of Assumption and Assignment* fails to file an objection by the deadline set forth herein, then the Cure Amount will be binding upon the contract counterparty, and all parties in interest, for all purposes in the Chapter 11 Cases and otherwise. All such counterparties to those Executory Contracts and Unexpired Leases set forth in the *Notice of Assumption and Assignment* will: (a) be forever barred from objecting to the Cure Amounts with respect to such Executory Contracts and Unexpired Leases, and the Cure Amounts identified with respect to such Executory Contracts and Unexpired Leases shall be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults thereunder in connection with assumption by the Debtors and assignment to TPIC; (b) be deemed to have consented to the assumption and assignment to TPIC; and (c) be forever barred and estopped from asserting or claiming against the Debtors, the Post-Effective Date Debtors, the Liquidating Trust, or TPIC, as applicable, that any additional amounts are due, other defaults exist, other conditions to assignment must be satisfied under such Executory Contracts or Unexpired Leases, or that there is any objection or defense to the assumption and assignment. Unless the contract counterparty properly files an objection in accordance with the requirements of this Confirmation

Order, the Cure Amounts, and the assumption and assignment to TPIC, shall be deemed approved without further order of the Court.  If an objection is timely filed and served with respect to an Executory Contract or Unexpired Lease set forth in the *Notice of Assumption and Assignment*, and the relevant parties are unable to resolve the objection, such objection will be adjudicated at such other date and time as may be fixed by the Court.

**T.**     **Non-Material Modifications to the Plan**

82.     Prior to the Second Confirmation Objection Deadline, and based on the agreement of the Debtors and the applicable party, following the First Confirmation Objection Deadline, the Debtors continued to negotiate with parties in interest, received various formal and informal comments to the Plan from the Committee and certain Holders of Claims against the Debtors, and entered into the Settlement Term Sheet. The terms of the negotiated resolutions: (i) constitute a settlement of the certain formal and informal objections to confirmation (the "Confirmation Disputes"); (ii) are not materially different from what parties in interest could have expected if the confirmation disputes were fully litigated; (iii) provide for more favorable treatment to Holders of Allowed Class 4 Claims than would have been received under the Debtors' *Second Amended Joint Chapter 11 Plan* that was approved by the Court for solicitation and *Third Amended Joint Chapter 11 Plan* dated May 26, 2021; (iv) have been approved by the Prepetition Agent and the Prepetition Lenders; and (v) are in the best interest of the Debtors and their estates.  The negotiated resolutions between the Debtors and the applicable parties in interest after the First Confirmation Objection Deadline are approved and incorporated in the Plan attached hereto as **Exhibit 1** and the Settlement Term Sheet attached thereto.

83.     Pursuant to Bankruptcy Rule 3019, the Plan, as amended, modified, and supplemented, does not (i) constitute a material modification of the Plan under section 1127 of

the Bankruptcy Code, (ii) require additional disclosure under section 1125 of the Bankruptcy Code, (iii) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (iv) materially and adversely change the treatment of any Claims or Interests, (v) require re-solicitation to any Holders of Claims or Interests, or (vi) require that any such Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Under the circumstances, the form and manner of notice of the Plan, Plan Supplement, and Plan Documents is adequate, and no other or further notice of the Plan, Plan Supplement, or Plan Documents is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims or Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan, as amended, modified, and supplemented.

**U.**      **Reservation of Rights of the United States**

84.      Nothing in this Confirmation Order, the Plan, Plan Supplement, or any other implementing or supplementing Plan documents (collectively, the foregoing are referred to as the "Plan Documents") discharges, releases, precludes, or enjoins: (i) any liability to the United States that is not a Claim; (ii) any Claim of the United States arising on or after the Confirmation Date; (iii) any liability of any entity or person under police or regulatory statutes or regulations to the United States as the owner or operator of property or rights to property that such entity owns or operates after the Confirmation Date; and (iv) any liability to a Governmental Unit on the part of any non-Debtor. Nor shall anything in the Plan Documents enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the first sentence of this paragraph and nothing in the Plan Documents divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret the Plan Documents or to adjudicate any defense asserted under the Plan Documents.

4821-7259-2104, v. 12

85.     Notwithstanding anything to the contrary in Plan Documents, nothing shall affect the United States' setoff and recoupment rights, or the Debtors', Post-Effective Date Debtors, and/or their successor(s) and assign(s) defenses thereto.

86.     Notwithstanding any provision to the contrary in the Plan Documents, no sale, assignment, and/or transfer of any interest in contracts, leases, covenants, operating rights agreements, rights-of-use and easement, and rights-of-way or other interests or agreements with the federal government involving federal land or minerals in effect on or after the Confirmation Date  (collectively, the "Federal Leases") may take place pursuant to the Plan Documents absent the consent of the United States, including any of its components, as provided for in applicable non-bankruptcy laws and regulations.

87.     Notwithstanding any provision to the contrary in the Plan Documents, the United States will retain and have the right to audit and/or perform any compliance review and, if appropriate, collect from the Debtors, Post-Effective Date Debtors, and/or their successor(s) and assign(s) in full any additional monies owed by the Debtors with respect to any assumed Federal Leases without those rights being adversely affected by these bankruptcy proceedings. Such rights shall be preserved in full as if this bankruptcy had not occurred.  Furthermore, nothing in the Plan Documents shall be interpreted to set Cure Amounts or require the United States to novate, approve or consent to any sale, assignment, and/or transfer of any interests in the Federal Leases except pursuant to existing regulatory requirements and applicable law.  The Debtors, Post-Effective Date Debtors, and their successor(s) and assign(s), will retain all defenses and/or rights, other than defenses and/or rights arising from these bankruptcy proceedings, to challenge any such determination; *provided*, *however*, that any such challenge, including any challenge associated with these bankruptcy cases, must be raised in the United States' administrative

review process leading to a final agency determination by the Department of the Interior.  The audit and/or compliance review period shall remain open for the full statute of limitations period established by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996, 30 U.S.C. § 1702, *et seq*.

88.     For the avoidance of doubt, nothing in the Plan Documents releases the Debtors or Post-Effective Date Debtors from any reclamation, plugging and abandonment, or other operational requirement under applicable federal non-bankruptcy law with respect to the Federal Leases or addresses or otherwise affects any decommissioning obligations and financial assurance requirements under the Federal Leases, as determined by the United States, that must be met by the Debtors, Post-Effective Date Debtors, or their successors and assigns on the Federal Leases going forward.

## V.     **Miscellaneous Agreements With Parties In Interest**

89.     **Archrock**.  Notwithstanding anything to the contrary contained in the Plan, this Confirmation Order, or any Plan Document or Plan Supplement, the agreed Plan treatment of Archrock Partners Operating LLC ("Archrock"), which represents a settlement and compromise of all disputes and claims between the Debtors and Archrock, is hereby approved pursuant to Bankruptcy Rule 9019, and shall be as follows:

(i)     The Master Compression Services Agreement and all related Schedule "A" work orders between Archrock and Castex Offshore, Inc., shall be rejected on the Effective Date.

(ii)    On or before the Effective Date, the Debtors shall pay Archrock the amount of $17,762.92 in full and final satisfaction of Archrock's Administrative Claims for post-petition compression services.

(iii)   Archrock waives any further Claim for diminution in value of its statutory Liens in Vermilion 252 (OCS-G 05431) and Vermilion 253 (OCS-G 17912), offshore Vermilion Parish, Louisiana (collectively, the "Vermilion Properties").

4821-7259-2104, v. 12

(iv)     The Debtors, their Estates, the Post-Effective Date Debtors and Liquidating Trustee waive all Avoidance Actions and other claims of any nature against Archrock.

(v)      Archrock's statutory Liens in the Vermilion Properties shall remain attached to the Vermilion Properties after the Effective Date subject to the following agreement: if either of the Vermilion Properties sell for positive cash proceeds within eighteen (18) months (the "Reservation Period") of the Effective Date of the Plan, the Liquidating Trustee shall pay Archrock fifty percent (50%) of Archrock's prepetition Lien amount for the applicable Vermilion Property at closing of such sale; *provided*, *further*, that if a sale agreement is executed but not yet closed as of the expiration of the Reservation Period, the expiration date of the Reservation Period shall be extended through and including the closing of the transaction.

(vi)     Archrock shall have an Allowed Class 4 General Unsecured Claim in the amount of $68,514.12 relating to Archrock's Proof of Claim No. 3 (to the extent unpaid), subject to the reservation in the preceding subparagraph (v).

(vii)    Archrock reserves all rights to file a rejection damage Claim in accordance with the Plan relating to rejection of the Archrock contracts, and the Debtors or the Liquidating Trustee, as applicable, reserve all rights and defenses with respect thereto. Any such rejection damage Claim, if allowed, shall be treated as Class 4 General Unsecured Claim.

(viii)   If the Post-Effective Date Debtors or Liquidating Trustee decommission Vermilion 252 or Vermilion 253, the Liquidating Trustee shall deliver Archrock's equipment to shore that is situated on such decommissioned Vermillion Property at no cost to Archrock and shall make such equipment available to Archrock for recovery.

(ix)     All of the above terms relating to Archrock shall be binding on any successor to the Debtors including the Liquidating Trustee, the Post-Effective Date Debtors, or any other trustee appointed in the Chapter 11 Cases.

90.    **Energy Transfer**.  Notwithstanding anything to the contrary contained in the Plan, this Confirmation Order, or any Plan Document or Plan Supplement, Energy Transfer's[3] rights to setoff and recoupment, if any, are hereby preserved and shall not be impaired, conditioned, limited, released, discharged, enjoined, or otherwise prejudiced or diminished in any manner whatsoever by entry of this Confirmation Order, the Confirmation or Consummation

---

[3] The term "Energy Transfer" refers to Sea Robin Pipeline Company, LLC, Trunkline Field Services, LLC, and Stingray Pipeline Company, L.L.C.

of the Plan and related transactions, or the discharge of any Claims under the Plan; *provided*, *however*, that Energy Transfer may only exercise such rights to setoff and recoupment if the Court, or another court of competent jurisdiction, authorizes such setoff or recoupment after notice and a hearing.  Nothing in the Plan, this Confirmation Order, or any Plan Document or Plan Supplement shall impair, condition, limit release, discharge, enjoin, or otherwise prejudice or diminish in any manner whatsoever any direct claims that Energy Transfer may hold against non-Debtor parties.  Any dispute regarding the application of the foregoing sentence in relation to the Plan's release and exculpation provisions shall be brought before the Court.  Energy Transfer is deemed to have opted out of the third-party release in the Plan.

91.     **McMoRan**.  The Liquidating Trustee shall have the authority on behalf of the Debtors or Post-Effective Date Debtors, as applicable, to enter into agreements, communicate with any applicable regulatory authorities, and execute such documents as may be necessary to effectuate transfers of lease interests including, but not limited to, West Cameron 73 (OCS-G 23736).  Nothing contained herein shall be deemed or construed to be a release or discharge of any liability or obligations of any third parties with respect to decommissioning liabilities of Debtors' predecessors and any other co-liable and/or jointly and severally liable parties with respect to former McMoRan Oil & Gas LLC properties and/or the Debtor Terminated Leases.  McMoRan expressly reserves any and all claims and causes of action against any third parties.  For the avoidance of doubt, GOME 1271 LLC's obligations under the October 11, 2018 Purchase and Sale Agreement with McMoRan Oil & Gas LLC and related agreements are not released by the Plan, Term Sheet, or Confirmation Order.  McMoRan is further hereby opted out of the third party releases.

4821-7259-2104, v. 12

92.     **Fairfield Industries Incorporated d/b/a/ Fairfield Geotechnologies f/k/a FairfieldNodal ("Fairfield")**.  Notwithstanding anything to the contrary in the Plan, any Plan Supplement, any Schedule of Assumed Executory Contracts and Unexpired Leases, any Schedule of Rejected Executory Contracts and Unexpired Leases, this Confirmation Order or otherwise: (i) the Master License Agreement dated February 24, 2018, between Fairfield and Castex Energy 2005, LLC ("Castex 2005") and Castex Energy 2014, LLC ("Castex 2014") and the supplemental agreements entered into thereunder (collectively, the "Fairfield Agreements") shall be deemed terminated and rejected only as to Castex 2005 pursuant to the Plan as of the Effective Date thereof; and (ii) all rights, claims, causes of action and remedies of Fairfield with respect or relating to licenses of seismic data between Fairfield and any non-Debtor Entities, and with respect to the seismic data and derivatives licensed thereunder, are hereby preserved unto Fairfield. The Court hereby approves the termination of the Fairfield Agreements only as to Castex 2005 as provided in the foregoing paragraph.

93.     **U.S. Specialty Insurance Company**.  With respect to WC 73, prior to any restoration of production, the Debtors or the Post-Effective Date Debtors, as applicable, shall either obtain a new area wide bond or seek reasonable consent from U.S. Specialty Insurance Company ("USSIC"), *provided*, *however*, that to the extent production is restored on any such Operated Property without USSIC's consent, USSIC reserves all of its rights with respect to its existing bonds and payment and indemnity agreements, and such rights are unimpaired by the Plan.

94.     Nothing in the Plan shall be construed as USSIC's consent to matters covered by this Plan.  Moreover, nothing in the Plan shall constitute an admission or consent by USSIC, nor

shall it be binding on USSIC in any other matter or proceeding related to any of its bonds or bond obligations.

**W.**     **Miscellaneous Confirmation Provisions**

95.     This Confirmation Order is in recordable form and shall be accepted by any filing or recording officer or authority of any applicable Governmental Unit for filing and recording purposes without further or additional orders, certifications, or other supporting documents. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan, any applicable Plan Documents, and this Confirmation Order.

96.     Under section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan or any applicable Plan Documents, shall not be taxed under any law imposing a stamp tax or similar tax.  The appropriate state or local government officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

97.     To the extent that, under applicable non-bankruptcy law, any of the actions contemplated in the Plan would otherwise require the consent or approval of the Holders of Interests in the Debtors, this Confirmation Order shall constitute such consent or approval, and such actions shall be, and are deemed to have been, taken by unanimous action of the Holders of Interests in the Debtors.

42

98.     Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order, and all other agreements and documents executed and delivered pursuant to the Plan, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

99.     The Debtors, the Post-Effective Date Debtors, and the Liquidating Trustee, as applicable, shall have the right, to the fullest extent permitted by section 1142 of the Bankruptcy Code, to apply to the Court for an order, notwithstanding any otherwise applicable non-bankruptcy law, directing any appropriate Entity to execute and deliver an instrument or perform any other act necessary to implement the Plan, the Plan Documents, or the provisions of this Confirmation Order.

100.    On and after the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Court, except as otherwise provided in the Plan or in this Confirmation Order, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including, but not limited to, jurisdiction over the matters set forth in Article X of the Plan.

101.    If any or all of this Confirmation Order is hereafter reversed, modified, or vacated by subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan before the Debtors, Post-Effective Date Debtors or Liquidating Trustee receive written notice of any such order, nor shall such reversal, modification, or vacation of this Confirmation Order affect the validity or enforceability of such act or obligation. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation

Order before the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, and all documents, instruments, and agreements related thereto or any amendments or modifications thereto.

102.     The failure to include specifically any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision, nor constitute a waiver thereof, it being the intent of the Court that the Plan is confirmed in its entirety.

103.     The provisions of the Plan and this Confirmation Order, including the Findings of Fact and Conclusions of Law entered contemporaneously with this Confirmation Order, are nonseverable and mutually dependent.

104.     All Statutory Fees charged pursuant to 28 U.S.C. § 1930 shall be timely paid by the Liquidating Trustee for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  After the Effective Date, the Liquidating Trustee shall file all quarterly reports.

105.     On the Effective Date and following the payment of all amounts under the Plan required to be paid on the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

106.     This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order are hereby waived.  This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rule 3020(e), 6004(h), 6006(d), or 7062.

107.     In the event of any direct conflict or inconsistency between any provision of this Confirmation Order, on the one hand, and the provisions of the Liquidating Trust Agreement, on

the other hand, the provisions of this Confirmation Order shall govern and control.  In the event of any direct conflict or inconsistency between any provision of the Liquidating Trust Agreement, on the one hand, and the provisions of the Plan, on the other hand, the provisions of the Plan shall govern and control, except with respect to the administration and structure of the Liquidating Trust, for which the Liquidating Trust Agreement shall govern and control. Notwithstanding the foregoing, the Liquidating Trustee may apply or move the Court for resolution of any dispute concerning the foregoing.

108.    On the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date (the "Effective Date Notice") with the Court.  As soon as reasonably practicable after the occurrence of the Effective Date, the Post-Effective Date Debtors shall serve the Effective Date Notice on all Holders of Claims and Interests.

Signed: June 07, 2021

_____
Marvin Isgur
United States Bankruptcy Judge

4821-7259-2104, v. 12

**EXHIBIT 1**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 21-30710 |
| **CASTEX ENERGY 2005 HOLDCO,** | § | |
| **LLC,** *et al.*, | § | Chapter 11 |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

## FOURTH AMENDED JOINT CHAPTER 11 PLAN

Matthew S. Okin
Texas Bar No. 00784695
David L. Curry, Jr.
Texas Bar No. 24065107
Ryan A. O'Connor
Texas Bar No. 24098190
Johnie A. Maraist
Texas Bar No. 24109505
**OKIN ADAMS LLP**
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 888.865.2118
Email: mokin@okinadams.com
Email: dcurry@okinadams.com
Email: roconnor@okinadams.com
Email: jmaraist@okinadams.com

**ATTORNEYS FOR THE DEBTORS**

Dated:  June 3, 2021

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Castex Energy 2005 Holdco, LLC (6832); Castex Energy 2005, LLC (6832); Castex Energy Partners, LLC (6832); and Castex Offshore, Inc. (8432).  The Debtors' mailing address is One Memorial City Plaza, 800 Gessner Rd., Suite 925, Houston, Texas 77024.

## TABLE OF CONTENTS

Page

ARTICLE I.  DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF
TERMS, COMPUTATION OF TIME, AND GOVERNING LAW
    A. Defined Terms ....................................................................... 1
    B. Rules of Interpretation and Construction of Terms ..................................... 13
    C. Computation of Time ................................................................ 14
    D. Governing Law ..................................................................... 14
    E. Reference to Monetary Figures ...................................................... 14
    F. Incorporation of Documents by Reference ............................................ 14
    G. Controlling Document ............................................................... 14

ARTICLE II.  ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS
    A. Administrative Claims .............................................................. 15
    B. Professional Compensation Claims ................................................... 15
    C. Payment of Fees and Expenses Under Cash Collateral Order ............................ 16
    D. Adequate Protection Claims ......................................................... 17
    E. Priority Tax Claims ................................................................. 17

ARTICLE III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS
    A. Classification in General ........................................................... 17
    B. Formation of Debtor Groups for Convenience Only ..................................... 17
    C. Summary of Classification of Claims and Interests .................................... 18
    D. Treatment of Claims and Interests ................................................... 18
    E. Special Provision Governing Unimpaired Claims ....................................... 20
    F. Separate Classification of Other Secured Claims ..................................... 20
    G. Elimination of Vacant Classes ...................................................... 20
    H. Voting Classes; Presumed Acceptance By Non-Voting Classes ........................... 21
    I. Controversy Concerning Impairment ................................................... 21
    J. Subordinated Claims ................................................................ 21
    K. Statutory P&A Claims ............................................................... 21
    L. 2017 Chapter 11 Unsecured Creditor Claims ........................................... 22
    M. Cramdown .......................................................................... 22
    N. No Waiver .......................................................................... 22

ARTICLE IV.  MEANS FOR IMPLEMENTATION OF THE PLAN
    A. Vesting of Assets in the Liquidating Trust .......................................... 23
    B. Discharge of the CRO and Directors .................................................. 23
    C. The Post-Effective Date Debtors ..................................................... 23
    D. The Liquidating Trust ............................................................... 24
    E. Plan Funding ....................................................................... 27
    F. Abandonment of Certain Assets ....................................................... 27
    G. Sale of MP 270A .................................................................... 29
    H. Closing of the Chapter 11 Cases ..................................................... 29

ARTICLE V.  TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES
    A. Executory Contracts and Unexpired Leases ............................................ 28
    B. Insurance Policies .................................................................. 30

C. Claims Based on Rejection of Executory Contracts or Unexpired Leases ..................30
D. Preexisting Obligations to the Debtors under Executory Contracts and Unexpired
Leases ...........................................................................................................................31
E. Reservation of Rights...................................................................................................31

ARTICLE VI.  CLAIM/INTEREST OBJECTION PROCEDURES, TREATMENT OF
DISPUTED CLAIMS/INTERESTS AND PROCEDURE FOR ASSERTING CLAIMS
A. Objection Process .......................................................................................................31
B. Delivery of Distributions and Undeliverable or Unclaimed Distributions ..................32
C. Distributions to Holders of Disputed Claims ..............................................................33
D. Foreign Currency Exchange Rate ...............................................................................33
E. Setoffs and Recoupment ..............................................................................................33
F. Claims Paid or Payable by Third Parties  ...................................................................33
G. Estimation of Claims and Interests .............................................................................34
H. Adjustment to Claims or Interests Without Objection .................................................35
I. Disallowance of Claims or Interests  ...........................................................................35
J. Amendments to Claims or Interests  ............................................................................35

ARTICLE VII. EFFECT OF CONFIRMATION
A. Compromise and Settlement of Claims, Interests, and Controversies .........................35
B. Legally Binding Effect ................................................................................................36
C. Release of Liens ..........................................................................................................36
D. Limited Discharge of Debtors and Injunction.............................................................36
E. Releases by the Debtors ...............................................................................................37
F. Releases by Holders of Claims and Interests...............................................................38
G. Exculpation  ................................................................................................................39
H. Releases by the CEI Parties of the CEI Release Parties ..............................................42
I. Releases by the CEI Release Parties of the CEI Parties................................................43
J. Preservation of Claims and Rights...............................................................................40
K. Reimbursement or Contribution ..................................................................................41
L. Sale of MP270A...........................................................................................................45

ARTICLE VIII.  CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN
A. Conditions Precedent to Effectiveness.........................................................................41
B. Waiver of Conditions ...................................................................................................42
C. Effect of Failure of Conditions ...................................................................................42

ARTICLE IX.  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN
A. Modifications and Amendments ...................................................................................42
B. Effect of Confirmation on Modifications.....................................................................43
C. Revocation or Withdrawal of Plan ..............................................................................43

ARTICLE X. RETENTION OF JURISDICTION ....................................................................43

ARTICLE XI.  MISCELLANEOUS PROVISIONS
A. Additional Documents..................................................................................................45
B. Payment of Statutory Fees ...........................................................................................45
C. Reservation of Rights ..................................................................................................46
D. Successors & Assigns ..................................................................................................46

E. Notices ..................................................................................................................... 46

F. Entire Agreement ...................................................................................................... 46

G. Exhibits .................................................................................................................... 46

H. Nonseverability of Plan Provisions .......................................................................... 47

I. Plan Proposed in Good Faith ..................................................................................... 47

J. Waiver or Estoppel ................................................................................................... 47

## INTRODUCTION

The above-captioned Debtors hereby propose the following Plan, pursuant to Bankruptcy Code § 1121, for the resolution of outstanding Claims against, Interests in, and Expenses incurred by the Debtors.  The Debtors are the proponents of this Plan within the meaning of Bankruptcy Code § 1129.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## CONSTRUCTION OF TERMS, COMPUTATION OF TIME, AND GOVERNING LAW

### A.    <u>Defined Terms</u>

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have meanings ascribed to them in this Article.  Any term used in this Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

*2017 Chapter 11 Cases* means the cases jointly administered under the proceeding styled as *In re Castex Energy Partners, L.P. et al.*, Case No. 17-35835.

*2017 Chapter 11 Plan* means the *Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated February 23, 2018, as confirmed pursuant to the *Order Confirming Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, entered February 27, 2018, in the 2017 Chapter 11 Cases.

*2017 Chapter 11 Unsecured Creditor Reserve* means the interest-bearing segregated deposit account established for distributions to general unsecured creditors in connection with, and pursuant to the 2017 Chapter 11 Plan.

*2017 Chapter 11 Unsecured Creditor(s)* means the creditors entitled to receive distributions from the 2017 Chapter 11 Unsecured Creditor Reserve pursuant to the 2017 Chapter 11 Plan.

*Abandoned Assets* means the Debtors' rights to and interests in unexpired federal or state leases, rights-of-way, and right-of-use-and-easements and other assets listed on the Schedule of Abandoned Assets attached hereto as **Exhibit A**.

*Accepting Class* means a class of Claims or Interests that votes to accept this Plan in accordance with section 1126 of the Bankruptcy Code.

*Adequate Protection Claims* means any right to payment on account of Prepetition Secured Parties Adequate Protection, as such term is used and defined in the Cash Collateral Order.

*Administrative Claim* **or** *Administrative Expense Claims* means a Claim, Cause of Action, right, or other liability, or the portion thereof, that is entitled to priority under Bankruptcy Code

1

sections 326, 327, 330, 503(b), 506(c), 507(a)(2), 507(b), and 1103, including (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and/or in connection with operating the Debtors' business (such as wages, salaries, or payments for goods and services); (ii) Professional Compensation Claims; (iii) Adequate Protection Claims, if any, and (iv) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

*Administrative Claim Bar Date* means, except as provided in Article II herein, the first Business Day that is thirty (30) days after the Effective Date or such earlier deadline as established by an order of the Bankruptcy Court.

*Affiliate* has the meaning prescribed in Bankruptcy Code section 101(2), provided, however, that for CEI is not an Affiliate.

*Allowed* means, with respect to any Claim or Interest, except as otherwise provided in the Plan, a Claim or Interest allowable under Bankruptcy Code section 502 that (i) has been allowed by a Final Order, including but not limited to any Final Order estimating claims for purposes of confirming this Plan, (ii) either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtors' Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed and liquidated Proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (iii) is expressly allowed in a liquidated amount in the Plan; provided, however that with respect to an Administrative Claim, "Allowed" means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) or other Administrative Claim, in each case as to which (a) a timely objection has not been filed, or (b) a timely objection is filed and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

*Amended Organizational Documents* means the certificates of incorporation, certificates of formation, bylaws, limited liability company agreements, stockholders agreement, and the operating agreements or other similar organizational or formation documents, as applicable, of the Post-Effective Date Debtors.

*Apache Claims* means all Causes of Action of CEP and COI outstanding against Apache Corporation, including in connection with the lawsuit filed in Texas state court entitled *Apache Corporation v. Castex Offshore, Inc., et al.*; in the 133rd District Court of Harris County, Texas; Cause No. 2015-48580.

*Asset* means all of the rights, title, and interests of a Debtor in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

*Assumption Dispute* means an unresolved objection regarding assumption or assumption and assignment of an executory contract or unexpired lease pursuant to section 365 of the

2

Bankruptcy Code, including objections based on the appropriate Cure Amount or "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code).

***Avoidance Actions*** means any and all actual or potential Causes of Action that may be commenced before or after the Effective Date, to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

***Bankruptcy Estate*** or ***Estate*** means the estate of the Debtors created under section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Cases, and all Estate Property comprising the estate.

***Bankruptcy Rules*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

***Bar Date*** means the deadline for filing Proofs of Claim in accordance with the Bar Date Order.

***Bar Date Order*** means the *Order (I) Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under 11 U.S.C. §§ 503(b)(1) and 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(1) and 503(b)(9) Requests, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief* [ECF # 39].

***Business Day*** means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

***Cash*** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

***Cash Collateral Order*** means the *Interim Order (I) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* [ECF # 41] and the *Final Order (I) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, and (IV) Modifying the Automatic Stay* [ECF # 149].

***Castex 2005*** means Castex Energy 2005, LLC.

3

**Causes of Action** means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (i) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (ii) the right to object to or otherwise contest Claims or Interests; (iii) Avoidance Actions; and (iii) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

**CEI** means Castex Energy, Inc.

**CEI Parties** means, collectively, CEI and its current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current officers, members, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives, and other professionals and, with respect to each of the foregoing, each such Person's or Entity's respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other Persons or Entities that may purport to assert any cause of action derivatively, by or through the foregoing Persons or Entities, as applicable.

**CEI Release Parties** means collectively, (a) the members of the Creditors' Committee in their capacity as and on account of their actions as members of the Creditors' Committee; (b) the Prepetition Agent and Prepetition Lenders; (c) Lender NewCo; (d) the Liquidating Trustee; (e) Walter; (f) with respect to each of the Debtors, each of the Post-Effective Date Debtors, and each of the foregoing Persons in clauses (a) through (e), each of their respective current and former Affiliates, and; (g) with respect to each Entity specified in clause (f), each such Entity's current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, , principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives, and other professionals and, with respect to each of the foregoing, each such Person's or Entity's respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other Persons or Entities that may purport to assert any cause of action derivatively, by or through the foregoing Persons or Entities, as applicable.

**CEP** means Castex Energy Partners, LLC.

**Chapter 11 Case(s)** means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code.

4

***Claim*** means a claim against any portion of the Debtors' Bankruptcy Estate, whether or not asserted, as defined in section 105(5) of the Bankruptcy Code.

***Claims and Noticing Agent*** means Donlin, Recano & Company, Inc., the notice, Claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases in accordance with the *Order Authorizing the Employment and Retention of Donlin, Recano & Company, Inc. as Claims and Noticing Agent for the Debtors* [ECF # 21].

***Claims Register*** means the official register of Claims maintained by the Claims and Noticing Agent.

***Class*** means a category of Claims or Interests as described in the Plan pursuant to Bankruptcy Code section 1122(a).

***CM/ECF*** means the Bankruptcy Court's Case Management and Electronic Case Filing system.

***COI*** means Castex Offshore, Inc.

***Collateral*** means any Asset of an Estate that is subject to a Lien securing the payment or performance of a Claim, which Lien is not invalid, is properly perfected as of the Petition Date, and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, including, for the avoidance of doubt, the Prepetition Collateral, as such term is used and defined in the Cash Collateral Order.

***Confirmation*** means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

***Confirmation Date*** means the date of entry by the Bankruptcy Court of the Confirmation Order.

***Confirmation Hearing*** means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

***Consummation*** means the occurrence of the Effective Date.

***Creditors' Committee*** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as it may be reconstituted from time to time.

***Cure Amount*** means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease and (b) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

*Cure Notice* means the notice of proposed Cure Amount to be paid in connection with an executory contract or unexpired lease of the Debtors that may be assumed or assumed and assigned under the Plan pursuant to section 365 of the Bankruptcy Code, which shall include (a) procedures for objecting to proposed assumptions or assumptions and assignments of executory contracts and unexpired leases, (b) any Cure Amount to be paid in connection therewith, and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

*Debtor(s)* means Holdco, Castex 2005, CEP and COI, each individually a Debtor.

*Deficiency Claims* means the amount of the Allowed Secured Debt Claims in excess of the face value of the Talos Stock and Apache Claim on the Effective Date.

*Disclosure Statement* means the *Second Amended Disclosure Statement in Support of Joint Chapter 11 Plan* [ECF # 206] filed by the Debtors, as such document may be amended or modified.

*Disputed Claim* means a Claim in a particular Class as to which a Proof of Claim has been filed or is deemed to have been filed under applicable law or an Administrative Claim as to which an objection has been filed in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules, and such objection has not been withdrawn or determined by a Final Order. For purposes of the Plan, a Claim is a Disputed Claim prior to any objection to the extent that (i) the amount of a Claim specified in a Proof of Claim exceeds the amount of any corresponding Claim scheduled by the Debtors in the Schedules of Assets and Liabilities; (ii) any corresponding Claim scheduled by the Debtors in the Schedules of Assets and Liabilities has been scheduled as disputed, contingent or unliquidated, irrespective of the amount scheduled; (iii) no corresponding Claim has been scheduled by the Debtors in the Schedules of Assets and Liabilities; or (iv) the Claim is subject to disallowance pursuant to Bankruptcy Code section 502(d).

*Distribution Record Date* means the Confirmation Date.

*Effective Date* means the date that is the first Business Day after the Confirmation Date, on which (i) no stay of the Confirmation Order is in effect, and (ii) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in the Plan.

*Entity* means any Person, estate, trust, Governmental Unit, or UST, as set forth in Bankruptcy Code section 101(15).

*Escrowed Talos Shares* means the Debtors' rights and interests in and to those 825,572 shares of Talos stock currently held in escrow pursuant to the Talos Escrow Agreement.

*Estate Property* means all right, title, and interest in and to any and all property of every kind or nature, owned by the Debtors or its Estate on the Petition Date as defined by Bankruptcy Code section 541.

*Exculpated Parties* means collectively, and in each case in their capacities as such during the Chapter 11 Cases, (a) the Debtors, (b) the members of the Creditors' Committee, if any, (c) the Prepetition Agent, (d) the Prepetition Lenders, (e) Walter, (f) Talos and (g) with respect to the foregoing Persons, each of their Affiliates, and each such Entity's directors, managers, officers,

employees, attorneys, accountants, investment bankers, consultants, representatives and other professionals, in each case solely during the Chapter 11 Cases.

**Executory Contract** means an executory contract or unexpired lease as such terms are used in Bankruptcy Code section 365, including all operating leases, capital leases, and contracts to which any Debtor is a party or beneficiary.

**Exhibit** means an exhibit annexed to the Plan.

**Existing Interests** means Interests in Holdco that existed immediately before the Effective Date.

**Federal Lease(s)** means an oil and gas lease of federally owned areas managed by the Bureau of Ocean Energy Management pursuant to the Outer Continental Shelf Lands Act.

**Final Order** means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtors' Chapter 11 Cases, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**Funded Statutory P&A Obligation(s)** means those Statutory P&A Obligations related to or arising from the Debtors' interest in the Operated Properties.

**Funded Statutory P&A Obligation Escrow** means the proceeds from or the right to receive the proceeds of 412,786 shares of Escrowed Talos Stock.

**General Unsecured Claim** means an Unsecured Claim that is not is not a Secured Debt Claim, an Intercompany Claim, or a Claim that is secured, subordinated, or entitled to priority under the Bankruptcy Code.  For the avoidance of doubt, General Unsecured Claims shall include, among other things, (i) any prepetition claims filed by any governmental or regulatory authority that do not arise out of the Debtors' P&A Obligations, including, but not limited to, any claims for unpaid royalties or civil penalties, but not including Cure Amounts or other obligations due to a governmental or regulatory authority arising from assumption of any of the Debtors' Federal Leases; and (ii) P&A Indemnification Claims.

**Governmental Unit** means any governmental unit, as defined in Bankruptcy Code section 101(27).

**Holdco** means Castex Energy 2005 Holdco, LLC.

**Holder** means (i) as to any Claim, (a) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (b) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court, or (c) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtors have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (ii) as to any Equity Interest, the record

7

owner or holder of such Equity Interest as shown on the stock register that is maintained by the Debtors or as otherwise determined by order of the Bankruptcy Court.

***Impaired*** or ***Impairment*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

***Indemnification Obligation*** means any existing or future obligation of any Debtor to indemnify current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective memoranda, articles or certificates of incorporation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date.

***Insider*** has the meaning set forth in Bankruptcy Code section 101(31).

***Intercompany Claim*** means any Claim against a Debtor held by another Debtor or a non-Debtor Affiliate of a Debtor; underlined provided, for the avoidance of doubt, CEI and its Affiliates shall not be considered non-Debtor Affiliates.

***Intercompany Interest*** means an Interest in a Debtor held by another Debtor.

***Interest***, ***Equity Interest***, or ***Membership Interest*** means any ownership interest in the Debtors, as of the Petition Date, including, but not limited to, an interest in any issued, unissued, authorized or outstanding shares or stock, including ordinary shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, together with any warrants, options, or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto.

***IRS*** means the Internal Revenue Service.

***Judicial Code*** means title 28 of the United States Code, 28 U.S.C. §§ 1 – 4001.

***Lender NewCo*** means a newly formed or incorporated Entity owned by the Prepetition Lenders.

***Lien*** means a lien, security interest, or other interest or encumbrance asserted against any Estate Property as defined in Bankruptcy Code section 101(37).

***Liquidating Trust*** means the Castex Liquidating Trust established pursuant to Article IV of this Plan.

***Liquidating Trust Agreement*** means an agreement setting forth the economic arrangement and terms pursuant to which the Liquidating Trustee will perform its duties under this Plan.

***Liquidating Trust Assets*** means (i) the Single Share; (ii) all Retained Causes of Action, including Avoidance Actions, and the proceeds thereof (other than the Apache Claims); (iii) the Liquidating Trust Cash Reserve; (iv) the Escrowed Talos Shares; (v) the 2017 Chapter 11

8

Unsecured Creditor Reserve and all rights, including any residual rights to proceeds, relating thereto; and (vi) all other assets of the Debtors other than the Secured Cash Amount, Talos Shares, Apache Claims and the Abandoned Assets.

***Liquidating Trust Beneficiaries*** means the Holders of Allowed Claims receiving a beneficial interest in the Liquidating Trust under this Plan.

***Liquidating Trust Cash Reserve*** means up to $1,750,000 in Cash, which shall be funded from the Debtors' Cash or other working capital.

***Liquidating Trustee*** means the Person or Entity selected by the Debtors, with the consent of the Required Lenders, which Person or Entity shall be charged with overseeing the tasks outlined in Article IV section D of this Plan and the Liquidating Trust Agreement, or any successor thereto. The identity of the Liquidating Trustee shall be disclosed to the Bankruptcy Court with the Plan Supplement.

***Maintenance and Monitoring Obligations*** shall mean the Debtors' maintenance and monitoring obligations for all leases and rights-of-way which it has operated prior to the Confirmation Date pursuant to applicable federal regulations including, without limitation, 30 C.F.R. §§ 250.107, 250.132, 250.300, 250.301, 250.518, 250.520, 250.804, 250.1703 and 33 C.F.R. § 143.14 and the Debtors' obligations to make payments to keep an OSRP (Oil Spill Response Plan) in place until such leases and rights-of-way are fully decommissioned pursuant to 30 C.F.R. §§ 254 et seq.

***MP270A Sale*** shall have the meaning set forth in Article VII Section J of this Plan.

***Non-Debtor Parties*** shall have the meaning set forth in Article III Section K of this Plan.

***Other Secured Claim*** means a Secured Claim other than a Priority Tax Claim and a Secured Debt Claim.

***Operated Property(ies)*** means, except as provided in the Settlement Term Sheet and subject to the terms thereof, the oil and gas leases owned by the Debtors (and the oil and gas wells, platforms, pipelines and other facilities located thereon, to the extent Debtors own an interest therein) to be operated by the Post-Effective Date Debtors or Walter, as set forth in the schedule attached hereto as **Exhibit B**.

***Outer Continental Shelf Lands Act*** means 43 U.S.C. §§ 1331 *et. seq*.

***P&A Claim(s)*** means a claim related to P&A Obligations arising under applicable law or contract.

***P&A Indemnification Claim(s)*** means a P&A Claim asserted by or payable to any party other than a Regulatory Agency regardless of whether such P&A Claim is asserted under contract, law, or equity.

***P&A Obligation(s)*** means any plugging and abandonment or decommissioning obligation of the Debtors arising from the oil and gas leases owned by the Debtors (and the oil and gas wells,

9

platforms, pipelines and other facilities located thereon, to the extent Debtors own an interest therein).

***Person*** means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, regardless of whether they are governments, agencies, or political subdivisions thereof.

***Petition Date*** means, with respect to a Debtor, the date on which such Debtor commenced its Chapter 11 Case.

***Plan*** means this Joint Chapter 11 Plan filed by the Debtors, as such document may be amended or modified.

***Plan Distribution*** means any initial or periodic payment or transfer of consideration to Holders of Allowed Claims made under the Plan.

***Plan Documents*** means, collectively those documents in furtherance of Consummation of the Plan and/or to be executed in order to consummate the transactions contemplated under the Plan, which may be filed by the Debtors with the Bankruptcy Court, including the Settlement Term Sheet.

***Plan Supplement*** means a supplement or supplements to the Plan in form and substance acceptable to the Required Lenders, as such may be amended from time-to-time, containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, which shall include: (a) a schedule of Retained Causes of Action, (b) the Schedule of Assumed Contracts, (c) the Schedule of Abandoned Assets, (d) the schedule of Operated Properties, and (e) the identity of the Liquidating Trustee; *provided*, *however*, that the Debtors (with the consent of the Required Lenders) shall have the right to amend documents contained in, and exhibits thereto, the Plan Supplement in accordance with the terms of this Plan.

***Post-Effective Date Debtors*** means the Debtors following the Effective Date in accordance with this Plan.  For the avoidance of doubt, the Post-Effective Date Debtors shall not include Lender NewCo.

***Post-Effective Date Holdco*** means Holdco following the Effective Date in accordance with this Plan.

***Prepetition Agent*** means Capital One, National Association, in its capacity as the administrative agent under the Prepetition Credit Agreement.

***Prepetition Credit Agreement*** means that certain *Third Amended and Restated Credit Agreement*, dated as of March 14, 2018, by and among the Debtors, the Prepetition Agent, and the Prepetition Lenders, and the other parties thereto, as in effect immediately before the Effective Date.

***Prepetition Lenders*** means the Lenders (as defined in the Prepetition Credit Agreement) holding Prepetition Loans immediately before the Effective Date.

10

***Prepetition Loans*** means the Loans (under and as defined in the Prepetition Credit Agreement) outstanding immediately before the Effective Date.

***Priority Non-Tax Claim*** means a Claim asserted under Bankruptcy Code sections 507(a)(3-7 and 9-10).

***Priority Tax Claim*** means a Claim asserted under Bankruptcy Code section 507(a)(8).

***Pro Rata Share*** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

***Professional*** means an Entity: (i) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

***Professional Compensation Claim*** means a Claim for compensation or reimbursement of expenses of a Professional incurred on and after the Petition Date and prior to the Effective Date, including fees and expenses incurred in preparing final fee applications and participating in hearings on such applications, and requested in accordance with the provisions of Bankruptcy Code sections 326, 327, 328, 330, 331, 502(b) or 1103.

***Professional Compensation Claim Bar Date*** means, except as provided in Article II herein, sixty (60) days after the Effective Date.

***Professional Compensation Claim Objection Deadline*** means twenty-one (21) days after the Professional Compensation Claim Bar Date.

***Professional Fee Escrow*** means an escrow account established and funded pursuant to Article II section B, paragraph 3 of the Plan.

***Professional Fee Escrow Amount*** means the aggregate unpaid Professional Compensation Claims through the Effective Date as estimated in accordance with Article II section B, paragraph 2 of the Plan.

***Proof of Claim*** means a proof of Claim filed against the Debtors in the Chapter 11 Cases by the applicable Bar Date.

***Proof of Interest*** means a proof of Interest filed against the Debtors in the Chapter 11 Cases by the applicable Bar Date.

***Regulatory Agency(ies)*** means, the Department of Interior and its agencies, the Bureau of Safety and Environmental Enforcement and the Bureau of Ocean Energy Management, or such other federal or state agency, as may be applicable, duly authorized to regulate the operation of the Debtors' oil and gas properties, including, but not limited to, regulation related to P&A Obligations.

11

**Released Parties** means, collectively, (a) the members of the Creditors' Committee; (b) the Prepetition Agent and Prepetition Lenders; (c) Lender NewCo; (d) the Liquidating Trustee; (e) Walter; (f) Talos; (g) with respect to each of the foregoing Persons in clauses (a) through (f), each of their respective current and former Affiliates; (h) with respect to each Debtor, each Post-Effective Date Debtor, and each Pearson in clauses (a) through (g), each such Entity's current directors, and their managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, members, principals, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives, and other professionals and, with respect to each of the foregoing, each such Person's or Entity's respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other Persons or Entities that may purport to assert any cause of action derivatively, by or through the foregoing Persons or Entities, as applicable.

**Releasing Parties** means collectively, (a) the Holders of all Claims or Interests that vote to accept the Plan in accordance with the order approving the Disclosure Statement on a conditional basis, (b) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan in accordance with the order approving the Disclosure Statement on a conditional basis, (c) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein in accordance with the order approving the Disclosure Statement on a conditional basis, and (d) the Holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out in accordance with the order approving the Disclosure Statement on a conditional basis.  For the avoidance of any doubt, CEI shall not constitute a Releasing Party.

**Required Lenders** has the meaning set forth in the Prepetition Credit Agreement.

**Retained Causes of Action** means those Causes of Action set forth in the attached **Exhibit C**, which Causes of Action are being retained pursuant to Article VII herein, provided, however, for the avoidance of doubt, that the Retained Causes of Action shall not include any Causes of Action specifically released under this Plan or through Order of the Bankruptcy Court.

**Schedule of Abandoned Assets** means a schedule (as may be amended, modified, or supplemented from time to time) of the Debtors' rights to and interests in unexpired Federal Leases, leases, wells, rights-of-way, right-of-use-and-easements, and other assets to be abandoned pursuant to Article IV of this Plan attached hereto as **Exhibit A**.

**Schedule of Assumed Contracts** means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to this Plan, if any, as the same may be amended, modified, or supplemented from time to time filed, which schedule is included as Exhibit C to the Debtors' *Notice of Filing Plan Supplement* [ECF # 237, 237-3].

**Schedules** means, collectively, the Schedule of Assets and Liabilities, Schedule of Equity Security Holders, and the Statement of Financial Affairs filed by the Debtors in the Chapter 11 Cases, as may be amended, modified, or supplemented.

12

***Section 510(b) Claim*** means any Claim against the Debtors that is subject to subordination under section 510(b) of the Bankruptcy Code, whether arising from rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such Claim, or otherwise, which Claim shall be subordinated to all Claims or Interests that are senior to or equal to the Claim or Interest represented by such security.

***Secured Cash Amount*** means all Cash of the Debtors, other than the Liquidating Trust Cash Reserve, amounts in the 2017 Chapter 11 Unsecured Creditor Reserve, and Cash to be deposited into the Professional Fee Escrow Amount in accordance with the terms herein and amounts for the payment of Priority Non-Tax Claims or Administrative Expense Claims as set forth herein.

***Secured Claim*** means a Claim: (i) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (ii) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

***Secured Debt Claim(s)*** means the principal obligations, plus all accrued and unpaid interest, fees, and other amounts arising under, and payable pursuant to, the Prepetition Credit Agreement.  The Secured Debt Claims shall be Allowed on the Effective Date in the aggregate principal amount of $199,585,956.

***Securities Act*** means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local laws or regulations.

***Settlement Term Sheet*** means the Settlement Term Sheet attached hereto as **Exhibit E**.

***Single Share*** means the single share of Post-Effective Date Holdco common stock to be issued to the Liquidating Trustee to hold in trust for the benefit of the Liquidating Trust Beneficiaries.

***SSA*** means that Second Amended and Restated Shared Services Agreement between CEI on the one hand and the Debtors on the other, dated March 18, 2018, as the same has been amended, modified, and that was terminated effective December 5, 2021.

***Statutory Fees*** means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

***Statutory P&A Obligation(s)*** means any statutory or regulatory obligation of the Debtors to perform plugging and abandonment or decommissioning activities arising from the oil and gas leases owned by the Debtors (and the oil and gas wells, platforms, pipelines and other facilities located thereon, to the extent Debtors own an interest therein).

***Subordinated Claim*** means a Claim that is subordinated to General Unsecured Claims pursuant to (i) a contract or agreement, (ii) a Final Order declaring that such Claim is subordinated in right or payment, or (iii) any applicable provision of the Bankruptcy Code, including Bankruptcy Code section 510, or other applicable law.  Subordinated Claims specifically include any Claim for punitive damages provided for under applicable law.

***Talos*** means Talos Energy Inc.

***Talos Escrow Agreement*** means that certain Escrow Agreement, dated as of June 19, 2020, by and among CEP, COI, Talos Production Inc., and Citibank N.A.

***Talos PSA*** means that the Purchase and Sale Agreement, dated as of June 19, 2020, by and among CEP, COI, Talos Third Coast and Talos.

***Talos Settlement*** means $2,000,000.00 in cash proceeds from the monetized Escrowed Talos Shares free and clear of all liens, claims, encumbrances and other interests, including the liens, claims and interests of the Prepetition Lenders, including without limitation any Adequate Protection Claims.

***Talos Shares*** means, other than the Escrowed Talos Shares, all shares of Talos stock acquired by the Debtors under the Talos PSA.

***Tax Code*** means the Internal Revenue Code of 1986, as amended from time to time.

***Termination Condition(s)*** shall have the meaning set forth in Article IV Section D.11. of this Plan.

***Unexpired Lease*** means a lease to which either of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

***Unimpaired*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of Bankruptcy Code section 1124.

***Unsecured Claim*** means a Claim that is not a Secured Claim and that is not entitled to priority under Bankruptcy Code section 507(a)(1-9). The term specifically includes, pursuant to Bankruptcy Code section 506(a), any Claim of a creditor against the Debtors to the extent that such creditor's Claim is greater than the value of the Lien securing such Claim, any Claim for damages resulting from rejection of any Executory Contract or Unexpired Lease under Bankruptcy Code section 365, any tort Claims or contractual Claims or Claims arising from damage or harm to the environment and, and any Claim not otherwise classified under the Plan.

***UST*** means the Office of the United States Trustee.

***Walter*** means Walter Oil & Gas Corporation.

## B.    Rules of Interpretation and Construction of Terms

For purposes of this Plan: (i) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in this Plan to an existing document or Exhibit filed or to be filed means that document or Exhibit as it may have been or may be amended, supplemented, or otherwise modified; (iii) unless otherwise specified, all references in this Plan to Sections or Articles are references to Sections or Articles of or to this Plan; (iv) the words "herein," "hereto,"

14

"hereunder," and other words of similar import refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (vi) wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (vii) any reference to an Entity as a Holder of a Claim or Interest includes the Entity's successors and assigns; (viii) unless specifically noted otherwise, any reference to docket numbers of documents filed in the Chapter 11 Cases are references to docket numbers under the Bankruptcy Court's CM/ECF system for Case number 21-30710; and (ix) the rules of construction set forth in Bankruptcy Code section 102 and the Bankruptcy Rules shall apply.

## C.   Computation of Time

All times referenced in this Plan are prevailing Central Time.  In computing any period of time, date, or deadline prescribed or allowed in the Plan, the provisions of Bankruptcy Rule 9006 shall apply.  If the date on which a transaction may or must occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## D.   Governing Law

Subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules.

## E.   Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## F.   Incorporation of Documents by Reference

This Plan incorporates by reference certain documents relating to the Debtors that are not presented herein or delivered herewith.  The documents that have been filed in the Chapter 11 Cases are incorporated by reference herein in their entirety, including all amendments thereto filed prior to the date set for Confirmation, including the Debtors' Schedules.  Documents and pleadings filed in the Chapter 11 Cases are available at the following website: http://www.txsb.uscourts.gov.

## G.   Controlling Document

In the event of an inconsistency between the Plan and any Exhibit hereto or the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate

15

the purposes of each; provided, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Compensation Claims and Priority Tax Claims have not been classified for purposes of voting on, or receiving distributions under, the Plan, and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

## A.     **Administrative Claims**

Except as otherwise provided in the Bar Date Order, and unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Post-Effective Date Debtors, each Holder of an Allowed Administrative Claim (other than Holders of Professional Compensation Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter; or (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) business days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.

Except for Professional Compensation Claims, and unless previously filed, requests for payment of Administrative Claims must be filed and served on the Post-Effective Date Debtors no later than the Administrative Claim Bar Date.  Objections to such requests must be filed and served on the Post-Effective Date Debtors and the requesting party by the later of (i) thirty (30) days after the Effective Date, or (ii) thirty (30) days after the filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Post-Effective Date Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Post-Effective Date Debtors or any action by the Bankruptcy Court.

**B.**     **Professional Compensation Claims**

1.     _Final Fee Applications_.  All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than the Professional Compensation Claim Bar Date.  Objections to Professional Compensation Claims must be filed and served on the Post-Effective Date Debtors and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and hearing in accordance with the procedures established by the Bankruptcy Court, including those certain compensation procedures set forth and defined in the Bankruptcy Court's _Order Establishing Procedures for the Interim Compensation and Reimbursement of Expenses of Professionals_ [ECF # 181].  Allowed Professional Compensation Claims shall be paid by the Post-Effective Date Debtors in Cash within ten (10) business days of the entry of a Final Order allowing such Claims.

2.     _Professional Fee Escrow Amount_.  All Professionals shall estimate in good faith their unpaid Professional Compensation Claims before and as of the Effective Date and shall deliver such estimate to the Debtors at least three (3) calendar days before the Effective Date; _provided_, _however_, that such estimate shall not limit or be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Compensation Claims.  If a Professional does not provide such estimate, the Debtors and Post-Effective Date Debtors may estimate the unbilled fees and expenses of such Professional; _provided_, _however_, that such estimate shall not be considered an admission or limitation with respect to the fees and expenses incurred by, or payable to, such Professional.  The total amount so estimated as of the Effective Date shall comprise the Professional Fee Escrow Amount.

3.     _Professional Fee Escrow_.  If the Professional Fee Escrow Amount is greater than zero, then as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors will establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount and no Liens, Claims, or interests will encumber the Professional Fee Escrow in any way.  The Professional Fee Escrow (including funds held in the Professional Fee Escrow) will (i) not be and will not be deemed to be property of the Debtors or the Post-Effective Date Debtors and (ii) will be held in trust for the Professionals; _provided_, _however_, that funds remaining in the Professional Fee Escrow after all Allowed Professional Compensation Claims have been irrevocably paid in full will revert to Lender NewCo.  Allowed Professional Compensation Claims will be paid in Cash to such Professionals by the Liquidating Trustee from funds held in the Professional Fee Escrow as soon as reasonably practicable after such Claims are Allowed by an order of the Bankruptcy Court; _provided_, _however_, that the Debtors' obligations with respect to Professional Compensation Claims will not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow.

**C.**     **Payment of Fees and Expenses Under Cash Collateral Order**

On the later of (a) the Effective Date and (b) the date on which such fees, expenses, or disbursements would be required to be paid under the terms of the Cash Collateral Order, the Debtors or the Post-Effective Date Debtors (as applicable) shall pay all fees, expenses, and

disbursements of the Prepetition Agent and Prepetition Lenders, in each case that have accrued and are unpaid as of the Effective Date and are required to be paid under or pursuant to the Cash Collateral Order, provided, however, that, notwithstanding any provisions of the Cash Collateral Order to the contrary, the Debtors' obligation to pay any such fees shall be limited to those amounts set forth in the Approved Budget (as defined in the Cash Collateral Order).

**D.      Adequate Protection Claims**

Subject to the occurrence of the Effective Date, all Adequate Protection Claims and any Adequate Protection Liens granted to the Prepetition Lenders under the Cash Collateral Order shall be deemed settled, waived, discharged and released to the fully extent possible, and the Prepetition Lenders shall not be entitled to recovery under this Plan on account of such Adequate Protection Claims.

**E.      Priority Tax Claims**

Except (a) to the extent that the Holders of Allowed Priority Tax Claims have already been paid, satisfied or otherwise released prior to the Effective Date, and (b) to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, then in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Priority Tax Claim, each Holder of Allowed Priority Tax Claim shall receive from the applicable Post-Effective Date Debtors on the later of: (i) the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Claim; (iii) the date on which such Allowed Priority Tax Claim first becomes due and payable; or (iv) as soon thereafter as is reasonably practicable, an amount in Cash equal to the unpaid amount of such Allowed Priority Tax Claim; *provided*, *however*, that the Post-Effective Date Debtors shall have the right to pay any Allowed Priority Tax Claim, or the remaining balance of such Claim, in full in Cash at any time on or after the Effective Date, without premium or penalty.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.      Classification in General**

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving Plan Distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied.

**B.**   **Formation of Debtor Groups for Convenience Only**

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, Confirmation of the Plan, and making Plan Distributions in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any Assets; and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities.

**C.**   **Summary of Classification of Claims and Interests**

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are: (a) Impaired and Unimpaired under the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.  The classification of Claims and Interests set forth herein shall apply separately to each Debtor.

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|-------|---------------------------|------------|------------------|
| Class 1 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |
| Class 2 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| Class 3 | Secured Debt Claims | Impaired | Yes |
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Intercompany Claims | Impaired | No (Deemed to Reject) |
| Class 6 | Section 510(b) Claims | Impaired | No (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired | No (Presumed to Accept) |
| Class 8 | Existing Interests | Impaired | No (Deemed to Reject) |

**D.**   **Treatment of Claims and Interests**

1.   *Class 1:  Other Secured Claims*.   Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the Debtors or the Post-Effective Date Debtors, and with the reasonable consent of the Required Lenders, such Holder will (i) retain its security interest and relative priority in the applicable assets of the Post-Effective Date Debtors or (ii) receive such other treatment so as to render such Holder's Allowed Other Secured Claim Unimpaired.

19

Class 1 Claims are Unimpaired under the Plan. In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Allowed Other Secured Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Other Secured Claims.

2.      *Class 2:  Priority Non-Tax Claims*.  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Non-Tax Claim shall be entitled to receive, on or after the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Priority Non-Tax Claim, (i) payment in full in Cash of its Allowed Class 2 Claim; or (ii) such other treatment as is consistent with the requirements of Bankruptcy Code section 1129(a)(9), payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in each case, or as soon as reasonably practicable thereafter.

Class 2 Claims are Unimpaired under the Plan. In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Allowed Priority Non-Tax Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Priority Non-Tax Claims.

3.      *Class 3:  Secured Debt Claims*.  On the Effective Date, or as soon thereafter as reasonably practicable, each Holder of an Allowed Secured Debt Claim will receive, in full and final satisfaction of such Allowed Secured Debt Claim, its Pro Rata Share of the equity interests in Lender NewCo.  On the Effective Date, or as soon thereafter as reasonably practicable, the Debtors shall transfer to Lender NewCo the following Assets or the proceeds related thereto, which such Assets will vest free and clear of any Liens, Claims or encumbrances:

   i.   the Apache Claims;

   ii.  the Secured Cash Amount; and

   iii. the Talos Shares.

Class 3 Claims are Impaired under the Plan.  Holders of Allowed Claims in Class 3 are entitled to vote regarding acceptance thereof.

4.      *Class 4 General Unsecured Claims*.  On the Effective Date, or as soon thereafter as reasonably practicable, each Holder of an Allowed General Unsecured Claims will receive, in full and final satisfaction of such Allowed General Unsecured Claim, a Pro Rata Share of interests in the Liquidating Trust; provided that the Pro Rata Share of the Liquidating Trust interests allocable to the Deficiency Claims shall not be distributed to the Prepetition Lenders but shall instead be re-allocated to all Holders of Allowed General Unsecured Claims other than the Prepetition Lenders.

Class 4 claims are Impaired under the Plan.  Holders of Allowed Class 4 Claims are entitled to vote regarding acceptance thereof.

5.      *Class 5: Intercompany Claims*.  On the Effective Date, all Intercompany Claims

will be adjusted or reinstated, as determined by the Debtors, subject to the consent of the Required Lenders.

Class 5 Claims are Impaired under the Plan. In accordance with section 1126(g) of the Bankruptcy Code, the Holders of Allowed Intercompany Claims are conclusively presumed to reject the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Intercompany Claims.

6.      *Class 6: Section 510(b) Claims.*  On the Effective Date, all of the Debtors' outstanding obligations under the Section 510(b) Claims shall be extinguished and canceled, and each Holder of a Section 510(b) Claim shall receive no Plan Distribution on account of such Claim.

Class 6 Claims are Impaired under the Plan. In accordance with section 1126(g) of the Bankruptcy Code, the Holders of Allowed Section 510(b) Claims are conclusively presumed to reject the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Section 510(b) Claims.

7.      *Class 7: Intercompany Interests*.  On the Effective Date, all Allowed Intercompany Interests will be adjusted, reinstated, or discharged as determined by the Debtors, subject to the consent of the Required Lenders.

Class 7 Interests are Unimpaired under the Plan. In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Allowed Intercompany Interests are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Intercompany Interests.

8.      *Class 8: Existing Interests*.  On the Effective Date, Existing Interests will be cancelled, released, and extinguished and will be of no further force or effect, whether surrendered for cancellation or otherwise, and each Holder of an Existing Interest will receive no recovery.

Class 8 Interests are Impaired under the Plan. In accordance with section 1126(g) of the Bankruptcy Code, the Holders of Allowed Existing Interests are conclusively presumed to reject the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to such Allowed Existing Interests.

## E.      **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## F.      **Separate Classification of Other Secured Claims**

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature within the Plan, each Other Secured Claim, to the extent secured by a Lien on Collateral different from the Collateral securing a different Other Secured Claim, shall be treated

21

as being in a separate sub-Class for the purposes of receiving Plan Distributions.

## G.     Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interests temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan.

## H.     Voting Classes; Presumed Acceptance by Non-Voting Classes

Classes 3 and 4 are Impaired and are entitled to vote regarding acceptance or rejection of this Plan; *provided*, *however*, if a Class contained Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

## I.     Controversy Concerning Impairment

If any controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and hearing, determine such controversy concerning Impairment.  Failure to timely file an objection in the Chapter 11 Cases shall result in such Person or Entity waiving any objection to the Impairment classifications set forth in the Plan.

## J.     Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Liquidating Trustee reserves the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## K.     Statutory P&A Obligations

On the Effective Date, or as soon thereafter as is reasonably practical, the Liquidating Trustee shall establish the Funded Statutory P&A Obligation Escrow, which shall be reserved as the sole source of funding for or recovery on account of any Claim, other than a P&A Indemnification Claim, related to any P&A Obligation arising from the Operated Properties. The Funded Statutory P&A Obligation Escrow shall be administered by Walter, in accordance with applicable laws and regulations, with the proceeds from the 412,786 shares of Escrowed Talos Stock being allocated on a property by property basis in proportion to the Debtors' plugging and abandonment obligations on the Walter New Operated Properties and Debtor Terminated Leases (each as defined in the Settlement Term Sheet) or as agreed upon by Walter and Talos) and then with such allocated proceeds being used in such manner as shall be necessary to satisfy and discharge the Funded Statutory P&A Obligations to the greatest extent reasonably possible.  To the extent that the Funded Statutory P&A Obligations are completed in

22

accordance with applicable law or regulation, all P&A Claims related to such Operated Property shall be deemed fully satisfied and discharged. Otherwise, the Debtors acknowledge that they: (i) are unable to comply with their P&A Obligations under the Outer Continental Shelf Lands Act and its implementing federal regulations because the Debtors are unable to fully decommission the Operated Properties; and therefore (ii) the Debtors represent they have or will default on their P&A Obligations to the United States for the Operated Properties.

For the avoidance of doubt, other than the obligations to fund and administer the Funded Statutory P&A Obligation Escrow set forth in this Plan, but without extinguishing the Debtors' underlying P&A Obligations, the Liquidating Trust shall have no further liability for any Claims arising from or related to the Debtors' Statutory P&A Obligations for the Operated Properties, provided, however, nothing in this section shall modify or otherwise impair the treatment under this Plan of Allowed P&A Indemnification Claims arising from or related to the Operated Properties.   No party, however, shall be entitled, under any circumstances, to claim a right of subrogation against the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust as to the Regulatory Agencies' rights under the Plan, provided, however, that any sureties that have furnished bonds in favor of the United States on behalf of the Debtors under the Operated Properties made to the Regulatory Agencies, including for the Debtors' P&A Obligations, shall retain their rights, if any, to seek repayment and recourse (including subrogation) from the Debtors' estate or the Liquidating Trust, as applicable and in accordance with the provisions of this Plan.

For the further avoidance of doubt, as required by the United States, nothing in this Plan shall, in any manner, extinguish, modify or otherwise limit: (i) the Debtors, or the Liquidating Trust's, Maintenance and Monitoring Obligations provided for in Article IV(D)(2) of this Plan, until (a) the relevant leases or rights-of-way being maintained and monitored have been fully decommissioned as verified by BSEE; (b) a non-debtor third-party shall become the designated operator or decommissioning operator of the Operated Properties; or (c) the expiration of one year following the Effective Date, whichever occurs first; (ii) the obligations of non-debtor third-parties to the United States including, without limitation, any jointly and severally liable parties on the Operated Properties and the United States fully reserves all rights against any applicable sureties that have issued bonds in favor of the United States to secure the Debtors' obligations to the United States, including its P&A Obligations (collectively the **"Non-Debtor Parties"**); or (iii) the rights of the United States to enforce the P&A Obligations or any applicable mandatory compliance obligations, including Maintenance and Monitoring Obligations (including obligations to maintain an OSRP) and obligations to maintain insurance, under applicable laws and regulations, against any such Non-Debtor Parties.

## L.   2017 Chapter 11 Unsecured Creditor Claims

Distributions from the 2017 Chapter 11 Unsecured Creditor Reserve shall be made by the Liquidating Trustee in accordance with further orders of the Bankruptcy Court.

## M.   Cramdown

If any Class is deemed to reject the Plan or is entitled to vote on the Plan and does not vote to accept the Plan, the Debtors may (a) seek Confirmation of the Plan under section 1129(b)

of the Bankruptcy Code or (b) amend or modify the Plan in accordance with the terms hereof and the Bankruptcy Code. If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## N.   No Waiver

Nothing contained in the Plan shall be construed to waive the Debtors' or other Person's right to object on any basis to any Claim or Interest.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

## A.   Vesting of Assets in the Liquidating Trust

On the Effective Date, the Castex Liquidating Trust shall be deemed duly formed and the Debtors shall be deemed to have irrevocably transferred and assigned (in accordance with any applicable tax laws) to the Liquidating Trust, the Liquidating Trust Assets, to hold in trust for the Liquidating Trust Beneficiaries pursuant to the terms of this Plan and the Liquidating Trust Agreement. Except as otherwise provided by this Plan, upon the Effective Date, title to the Liquidating Trust Assets shall pass to the Liquidating Trust free and clear of all Claims and Interests, in accordance with section 1141 of Bankruptcy Code.

## B.   Discharge of the CRO and Directors

On the Effective Date, the Debtors' Chief Restructuring Officer and each of the Debtors' current directors shall be discharged and released from any further obligation or duty to the Debtors.

## C.   The Post-Effective Date Debtors

1.   *Single Share*. On the Effective Date, the Single Share of the Post-Effective Date Holdco shall be issued to the Liquidating Trustee to hold in trust for the benefit of the Liquidating Trust Beneficiaries and the Single Share shall be recorded on the books and records maintained by the Liquidating Trustee.

2.   *Continued Corporate Existence*. Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date as the Post-Effective Date Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized, including in accordance with the Amended Organizational Documents, as applicable. After the Effective Date, pursuant to this Plan, the Liquidating Trustee shall have the sole authority to manage the operations of the Post-Effective Date Debtors without any further approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The Post-Effective Date Debtors shall operate solely to the extent required to liquidate the Debtors' oil and gas interests, which shall, for the avoidance of doubt, include operations related to the plugging and abandonment, and decommissioning of the Debtors' oil and gas interests (other than those for which title is relinquished, abandoned, and/or otherwise

24

transferred to a non-Debtor).  For the avoidance of doubt, the Post-Effective Date Debtors shall not operate any of the Abandoned Assets following the Effective Date.

3. _Winddown of the Debtors_.  At such time as Funded Statutory P&A Obligations are completed or the Debtors' interest in all Operated Properties is relinquished, abandoned, and/or otherwise transferred to a non-Debtor, the Debtors shall be deemed dissolved.  The Liquidating Trustee shall have all power to wind up the affairs of the Debtors under applicable state laws in addition to all the rights, powers, and responsibilities conferred by the Bankruptcy Code, this Plan, the Liquidating Trust Agreement, and may, but shall not be required to dissolve the Debtors under applicable state law.

4. _Corporate Action_.  Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects.  All matters provided for in this Plan involving the corporate or limited liability company structure of the Debtors or the Post-Effective Date Debtors, and any corporate or limited liability company action required by the Debtors or the Post-Effective Date Debtors in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Post-Effective Date Debtors.

On or before (as applicable) the Effective Date, the appropriate directors, officers, and managers of the Debtors or the Liquidating Trustee, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan).  The authorizations and approvals contemplated herein shall be effective notwithstanding any requirements under nonbankruptcy law.

5. _Intercompany Interests; Corporate Reorganization_.  To the extent reinstated under the Plan, on the Effective Date, the Intercompany Interests shall be reinstated for the ultimate benefit of the Holders of Claims and Interests as set forth in the Plan without the need for any further corporate action or approval of any board of directors, board of managers, managers, management, or stockholders of any Debtor or Post-Effective Date Debtor, as applicable, the certificates and all other documents representing the Intercompany Interests shall be deemed to be in full force and effect.

## D.    **The Liquidating Trust**

The following provisions of this section are intended to summarize the material terms of the Liquidating Trust Agreement (attached hereto as **Exhibit D**), which shall control the formation, operations and dissolution of the Liquidating Trust.  In the event of any conflict between the terms of this section and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall govern.

1.     <u>Formation of the Liquidating Trust</u>. On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtors and the Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidating Trust.  For the avoidance of doubt, entry of the Confirmation Order shall constitute a finding that the Liquidating Trust exists and is a valid Entity for purposes of all non-bankruptcy law.

2.     <u>Purpose of Liquidating Trust</u>. The Liquidating Trust shall be established only for the purposes of liquidating the Liquidating Trust Assets, including, but not limited to prosecuting and resolving objections to Disputed Claims against the Debtors, and liquidating and distributing its Assets, with no objective to continue or continue in the pursuit of a trade or business. Notwithstanding any other section of this Plan or the Liquidating Trust Agreement, it is the express intent that the Liquidating Trust shall survive until such purpose is either achieved or determined to be impracticable or impossible.

3.     <u>Authority of Liquidating Trustee</u>. Subject only to the limitations contained in this Plan, the Confirmation Order, or the Liquidating Trust Agreement, the Liquidating Trustee shall have, by way of illustration and not limitation, the following duties, responsibilities, authorities, and powers: (A) the power and authority to hold, manage, sell, and distribute the Liquidating Trust Assets in accordance with the Plan, (B) the power and authority to prosecute and resolve all Retained Causes Action, (C) the power and authority to prosecute and resolve objections to Disputed Claims against the Debtors, (D) the power, authority, and obligation to sell the Escrowed Talos Shares in a manner that maximizes their value for all parties, and (E) the power and authority to perform such other functions as are provided in this Plan and Liquidating Trust Agreement.

4.     <u>Priority of Distribution of Liquidating Trust Assets</u>. The Liquidating Trust, through the Liquidating Trustee, shall be responsible for distributing Liquidating Trust Assets, or the proceeds thereof, in the order of priority shown (other than the Escrowed Talos Shares): (i) to satisfy outstanding Allowed Priority Non-Tax Claims, if any; then (ii) to satisfy outstanding Allowed General Unsecured Claims, if any.  After the Escrowed Talos Shares are released to the Liquidating Trust, the Liquidating Trustee shall sell the Escrowed Talos Shares in a manner that maximizes their value.  Upon the monetization of all the Escrowed Talos Shares, the proceeds shall be used first to fund the Funded Statutory P&A Obligation Escrow and Talos Settlement and then to be distributed in accordance with the priorities set forth in this section.

For the avoidance of doubt, all expenses of the Liquidating Trust that are directly related to the administration of the Liquidating Trust Assets, including, but not limited to the performance of any Maintenance and Monitoring Obligations related to the Operated Properties, shall be taxed against the gross proceeds of the Liquidating Trust Assets and shall be satisfied prior to any subsequent Plan Distributions, provided, however, for the avoidance of doubt, that all expenses related to the satisfaction or performance of the Funded Statutory P&A Obligations shall be taxed solely against the Funded Statutory P&A Obligation Escrow.  Other than the enumerated Claims, no Claims against the Debtors or their Estates shall be charged against the Liquidating Trust.

The Liquidating Trust, through the Liquidating Trustee, shall be responsible for distributing the 2017 Chapter 11 Unsecured Creditor Reserve in accordance with further orders of the Bankruptcy Court.

5.    Procedure for Distribution of Liquidating Trust Assets. The Liquidating Trustee shall distribute Cash in accordance with the Liquidating Trust Agreement, beginning on the Effective Date (other than the proceeds of the Escrowed Talos Shares, which shall only be distributed upon the monetization of all Escrowed Talos Shares) or as soon thereafter as is practicable, from the Liquidating Trust Assets on hand (including any Cash received from the Debtors on the Effective Date), except such amounts (i) as would be distributable to a Holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Plan Distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during litigation, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), and (iv) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement. For purposes of this subsection, contingent P&A Indemnification Claims shall be deemed Disputed Claims until such time as any such Claim is liquidated or otherwise Allowed pursuant to Bankruptcy Code section 502(c) and all reductions of such Claim pursuant to Article VI section F of this Plan have been applied.

6.    Compensation of the Liquidating Trustee. The Liquidating Trustee shall be entitled to reasonable compensation as set forth in the Liquidating Trust Agreement.

7.    Retention of Professionals by the Liquidating Trustee. The Liquidating Trustee may retain and reasonably compensate counsel and other professionals to assist in his duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval. The Liquidating Trustee may retain any professional who represented parties in interest in these Chapter 11 Cases.

8.    Tax Returns. The Liquidating Trustee shall file all necessary tax returns and other filings with governmental authorities on behalf of the Liquidating Trust and the Liquidating Trust Assets held therein pursuant to the terms of the Liquidating Trust Agreement.

9.    Tax Treatment. For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its Liquidating Trust Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Liquidating Trust Beneficiaries be treated as if they had received a distribution from the Debtors' Estates of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective shares in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as grantors and owners thereof.

10.    Preservation of Right to Investigate.  The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust Assets.  Accordingly, the Liquidating Trustee shall have the same rights as the Debtors to conduct investigations pursuant

27

to Bankruptcy Rule 2004 as those held by the Debtors prior to the Effective Date. Such powers to investigate pursuant to Bankruptcy Rule 2004 shall vest with the Liquidating Trustee and shall continue until dissolution of the Liquidating Trust.

11.     Termination and Dissolution.  The Liquidating Trust shall terminate upon the date on which all of the following events (each, a "**Termination Condition**," and, collectively, the "**Termination Conditions**") have occurred: (i) the dissolution of the Post-Effective Date Debtors pursuant to paragraph 3 of Article IV section C of this Plan; (ii) the Liquidating Trust Assets, including Causes of Action transferred and assigned to the Liquidating Trust, are fully resolved, abandoned or liquidated in accordance with the Plan and Liquidating Trust Agreement; (iii) all Cash has been completely distributed in accordance with the Plan and Liquidating Trust Agreement; (iv) all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities; and (v) the order closing the Chapter 11 Cases is a Final Order.  Upon the occurrence of each of the foregoing events, the duties, responsibilities and powers of the Liquidating Trustee shall terminate, and the Liquidating Trustee shall be discharged.  Except in the circumstances set forth below, the Liquidating Trustee shall dissolve the Liquidating Trust in accordance with the provisions of this section no later than five (5) years after the Effective Date in accordance with applicable IRS revenue procedures.

The Bankruptcy Court may extend the term of the Liquidating Trust one or more times (not to exceed a total of four extensions, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) for a finite period upon a showing of good cause and based on the particular circumstance at issue.  Each such extension must be approved by the Bankruptcy Court with notice thereof to all unpaid Liquidating Trust Beneficiaries.

Notwithstanding any other section of this Plan or the Liquidating Trust Agreement, it is the express intent that the Liquidating Trust shall survive until each of the Termination Conditions have either occurred or determined to be impracticable or impossible.  To the extent that the Liquidating Trust shall be deemed terminated pursuant to applicable law at any time prior to the occurrence of each Termination Condition, the Liquidating Trustee shall not be discharged, but shall have such "wind-up" powers, both express and implied, as are necessary to achieve all outstanding Termination Conditions, including, but, not limited to the authority to (i) continue prosecuting any Causes of Action belonging to the Liquidating Trust; (ii) continue Claim administration responsibilities set forth in Article VI section B paragraph 2 of the Plan; and (iii) distribute the Cash proceeds of the Liquidating Trust Assets in a manner consistent with the Liquidating Trust Agreement.  In no event shall the Liquidating Trust Beneficiaries be entitled to receive in-kind distributions of the Liquidating Trust Assets.

E.     **Plan Funding**

Plan Distributions of Cash shall be funded solely from the Debtors' Cash on hand as of the Effective Date and not from other sources, including, for the avoidance of doubt, any Talos Shares, proceeds of, or recoveries on account of, the Apache Claims, or Cash constituting the Secured Cash Amount transferred to Lender NewCo.

## F.        Abandonment of Certain Assets

Except as otherwise provided in a final order or the Settlement Term Sheet, immediately upon the occurrence of the Effective Date, the Debtors' rights to and interests in unexpired Federal Leases, leases, wells, rights-of-way, right-of-use-and- easements, and other assets listed on the Schedule of Abandoned Assets are abandoned pursuant to the Plan, in each case, without further notice to or order of the Bankruptcy Court, pursuant to sections 105(a) and 554(a) of the Bankruptcy Code and/or deemed rejected pursuant to section 365 of the Bankruptcy Code, as applicable.  The Abandoned Assets shall not be allocated to nor vest in the Post-Effective Date Debtors or Lender NewCo.  Except as otherwise provided in this Plan or the Confirmation Order, the Debtors' Estates, Lender NewCo, the Liquidating Trust and the Post-Effective Date Debtors shall not be liable for any obligations whatsoever arising from or relating to the post-Effective Date period with regards to the Abandoned Assets.  Subject to the occurrence of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests held by or for the benefit of the Prepetition Lenders or the Prepetition Agent against any of the Abandoned Assets shall be fully released and discharged.  For the avoidance of doubt:  (i) nothing in this section shall modify or otherwise impair the treatment of Allowed P&A Indemnification Claims under this Plan; and (ii) nothing in this Plan or the Confirmation Order shall be construed as barring, waiving, or limiting any Regulatory Agencies' rights to assert a claim against the Debtors, the Post-Effective Date Debtors, or any co- lessees or predecessors in interest with respect to the Abandoned Assets for any P&A Obligations for the Abandoned Assets.

## G.        Sale of MP270A

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors will effectuate a sale and transfer of the Debtors' interests in MP270A to a designee of Talos (the "**MP270A Sale**") in exchange for the consideration set forth herein and in the Settlement Term Sheet, as is, with no warranties, except that Debtors represent and warrant (a) that they have not disposed of or transferred any of their interests therein and (b) that they have full corporate power and authority to enter into the MP270A Sale and to execute definitive documentation memorializing such and to execute the PSA and all other documents contemplated thereby with an Effective Time to be the closing with all revenues, expenses, and obligations accruing or existing as of closing to be transferred by the Debtors to Talos, with no adjustments to price or consideration.

## H.        Closing of the Chapter 11 Cases

After the Effective Date, the Liquidating Trustee shall be authorized, but not directed, to submit an order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the UST that closes and issues a final decree for each of the Chapter 11 Cases.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.        Executory Contracts and Unexpired Leases

1.     *General Treatment*.

(a)     As of and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (iv) is identified in the Plan or the Settlement Term Sheet; (v) is identified for assumption on the Schedule of Assumed Contracts included in the Plan Supplement; or (vi) is assumed pursuant to an order of the Bankruptcy Court, after notice and hearing, and upon a motion to assume filed by the Liquidating Trustee filed not later than sixty (60) days following the Effective Date.

(b)     Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Post-Effective Date Debtors have provided adequate assurance of future performance under such assumed Executory Contracts and Unexpired Leases.  Each Executory Contract and Unexpired Lease assumed pursuant to the Plan shall vest in and be fully enforceable by the Post-Effective Date Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

(c)     To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

2.     *Determination of Cure Amounts and Deemed Consent*.

(a)     Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, or on such other terms as the parties to such Executory Contracts or Unexpired Leases and the Debtors may otherwise agree.

(b)     The Debtors shall file, as part of the Plan Supplement, the Schedule of Assumed Contracts.  At least ten (10) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to Executory Contracts or Unexpired Leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the**

**parties or authorized by the Bankruptcy Court.**  Any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption of such Executory Contract or Unexpired Lease shall be deemed to have assented to assumption of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or any Post-Effective Date Debtor, under such Executory Contract or Unexpired Lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or Post-Effective Date Debtor, as applicable.  Each such provision shall be deemed to not apply to the assumption of such Executory Contract or Unexpired Lease pursuant to the Plan and counterparties to assumed Executory Contracts or Unexpired Leases that fail to object to the proposed assumption in accordance with the terms set forth in this Section V.A(2)(b), shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

(c)  If there is an Assumption Dispute pertaining to assumption of an Executory Contract or Unexpired Lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court before such assumption becomes effective; provided, the Debtors or Post-Effective Date Debtors, as applicable, may settle any Assumption Dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)  To the extent an Assumption Dispute relates solely to the Cure Amount, the Debtors may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease before the resolution of the Assumption Dispute; provided, that the Post-Effective Date Debtors shall be responsible to pay the determined amount to be Allowed by the Bankruptcy Court or otherwise agreed to by such non-Debtor party.  The Debtors or Post-Effective Date Debtors, as applicable, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(e)  Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume or assume and assign such Executory Contract or Unexpired Lease.  Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Person, upon the assumption of such Executory Contracts or Unexpired Leases.

31

## B.    Insurance Policies

Notwithstanding any other provision of the Plan or Plan Documents, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto are expressly assumed by the Debtors and assigned to Liquidating Trust.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or the Liquidating Trust may hold against any Person or Entity related thereto.

## C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

Except as otherwise provided by the Bar Date Order or other Final Order of the Bankruptcy Court, all Proofs of Claim, with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the later of: (i) the date of entry of any order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (ii) the effective date of such rejection; (iii) the Effective Date; or (iv) the date after the Effective Date that the applicable Schedules are altered, amended, modified, or supplemented, but only with respect to any Executory Contract or Unexpired Lease thereby affected.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Post-Effective Date Debtors, the Estate, or their property without the need for any objection by the Post-Effective Date Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified and treated as Class 4 (General Unsecured Claims) Claims.

## D.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases

Except as explicitly provided in the Plan, nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors or the Liquidating Trustee under any executory or non-executory contract or unexpired or expired lease.  Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, the Liquidating Trust, or the Post-Effective Date Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors expressly reserve for the Liquidating Trust and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtors counterparties to rejected Executory Contracts or Unexpired Leases.

## E.    Reservation of Rights

Nothing in the Plan shall increase, augment, or add to any of the duties, obligations,

responsibilities, or liabilities of the Debtors or the Post-Effective Date Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease. Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Contracts, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Liquidating Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

**ARTICLE VI.**
**CLAIM/INTEREST OBJECTION PROCEDURES, TREATMENT OF**
**DISPUTED CLAIMS/INTERESTS AND PROCEDURE FOR ASSERTING CLAIMS**

A.    **Objection Process**

Except insofar as a Claim is Allowed under the Plan, only the Debtors or the Liquidating Trustee, as applicable, shall be entitled to object to Claims. Except as otherwise expressly provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Liquidating Trustee shall have the exclusive authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Debtors' claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

B.    **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

1.    *Record Date for Distribution.* As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be closed, and neither the Debtors, the Liquidating Trustee nor their respective agents shall be required to make any further changes in the record Holders of any of the Claims or Interests. The Debtors and Liquidating Trustee shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Debtors and the Liquidating Trustee shall be entitled to recognize and deal for all purposes hereunder only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

2.    *Delivery of Distributions in General.* Except as otherwise provided herein, the Liquidating Trustee shall make Plan Distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution: *provided, however*, that the manner of such Plan Distributions shall be determined at the discretion of the Liquidating Trustee; *provided further, however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim or Proof of Interest filed by that Holder.

33

3.  *Minimum Distributions.*  To the extent Cash is distributed under the Plan or the Liquidating Trust Agreement, no Cash payment of less than $50.00 shall be made to a Holder on account of any Allowed Claim or Interest, and such amounts shall be retained by the Post-Effective Date Debtors.

4.  *Request for Tax Forms; Undeliverable Distributions; and Unclaimed Property.* Prior to making any Plan Distributions required under the Plan or the Liquidating Trust Agreement, the Liquidating Trustee may request that Holders provide an executed Form W-9 or Form W-8 as appropriate ("Request for Tax Form").  In the event that any Holder fails to execute and return such Request for Tax Form within a reasonable time or if a Request for Tax Form is returned as undeliverable (and the Liquidating Trustee is unable after reasonable efforts to determine the then-current address of such Holder), such Plan Distributions shall be deemed unclaimed property.

Further, if a Plan Distribution is returned as undeliverable, no further Plan Distributions to such Holder will be made unless and until the Liquidating Trustee is notified in writing of such Holder's then current address.

The Liquidating Trustee shall file a Notice of Distribution within ten (10) Business Days of the date on which Plan Distributions are made under the Plan, which notice shall also identify any Holders having failed to return an executed Request for Tax Form.  All claims for undelivered or undeliverable Plan Distributions must be made no later than the 60th day following the date that the Notice of Distribution is filed. After such date, all unclaimed Plan Distributions will revert to the Liquidating Trust for distribution in accordance with this section of this Plan and the Claim or Equity Interest of any Holder with respect to such Plan Distribution will be discharged and forever barred.  Checks issued in respect of Allowed Claims and/or Equity Interests will be null and void if not negotiated within ninety (90) days after the date of issuance thereof.

## C.  **Distributions to Holders of Disputed Claims**

Except as otherwise provided in the Plan, Plan Distributions on account of Disputed Claims shall be withheld by the Liquidating Trustee until such Claims have been either Allowed or disallowed.  To the extent a Disputed Claim becomes Allowed any Plan Distribution reserved for such Claim shall be distributed to the Holder thereof.  To the extent a Disputed Claim becomes disallowed, the Plan Distribution reserved for such Claim shall revert to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court.

## D.  **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

## E.  **Setoffs and Recoupment**

Except as expressly provided in the Plan, or otherwise ordered by the Bankruptcy Court,

34

the Liquidating Trustee may, pursuant to section 553 of the Bankruptcy Code, withhold, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim or Interest, any and all claims, rights, and Causes of Action, including contingent or unliquidated claims, that the Debtors or the Liquidating Trust may hold against the Holder of such Allowed Claim or Interest; *provided, however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust or its successor of any and all claims, rights, and Causes of Action that the Debtors, the Liquidating Trust, or their successor may possess against the applicable Holder.  Except as otherwise ordered by the Bankruptcy Court, in no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Post-Effective Date Debtors, as applicable, unless such Holder has actually performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XI section E of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**F.**    **Claims Paid or Payable by Third Parties**

1.    *Claims Paid by Third Parties.* The Debtors or the Liquidating Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or Liquidating Trustee, including, for the avoidance of doubt any payment from the proceeds of any insurance policy purchased by or for the benefit of the Debtors or the Debtors' officers and directors, if any.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Plan Distribution on account of such Claim and receives payment from a party that is not the Debtors or Liquidating Trustee, such Holder shall, within fourteen (14) days of receipt thereof, repay or return any Plan Distribution received from the Liquidating Trustee to the extent the Holder's total recovery exceeds the amount such Holder was entitled to receive under the Plan on account of the Claim. The failure of such Holder to timely repay or return such Plan Distribution shall result in the Holder owing the Liquidating Trustee annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.    *Claims Payable by Third Parties*.  No Plan Distributions under the Plan shall be made on account of an Allowed Claim that is payable under any insurance policy purchased by or for the benefit of the Debtors or the Debtors' officers and directors until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent the underlying claim forming the basis of the Claim against the Debtors is adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement to satisfy all or part of the Claim, the applicable portion of such Claim against the Debtors shall be deemed expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    *Application of Insurance Policies*.  Nothing contained in the Plan shall constitute

or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## G.   Estimation of Claims and Interests

Before or after the Effective Date, the Debtors or the Liquidating Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Plan Distributions), as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation of the amount of such Claim, the Debtors, the Liquidating Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate Plan Distribution on such Claim.   Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.

## H.   Adjustment to Claims or Interests Without Objection

Any duplicate Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Liquidating Trustee without any further notice to or action, order, or approval of the Bankruptcy Court.

## I.   Disallowance of Claims or Interests

Except as otherwise specifically provided in the Plan, any Claims or Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any Plan Distributions on account of such Claims until such time as any objection to those Claims or Interests have been settled or a Bankruptcy Court order with respect thereto has been entered.

Except as provided herein or otherwise agreed, any and all Proofs of Claim or Proofs of Interest filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Plan Distributions on account of such Claims,

36

unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.

**J.      Amendments to Claims or Interests**

On or after the Effective Date, a Claim or Interest may not be filed or amended without the prior authorization of the Bankruptcy Court or the Liquidating Trustee and any such new or amended Claim or Interest filed shall be deemed disallowed in full and expunged without any further action.

# ARTICLE VII.
# EFFECT OF CONFIRMATION

**A.      Compromise and Settlement of Claims, Interests, and Controversies**

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Plan Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest Holder may have with respect to any Allowed Claim or Allowed Interest or any Plan Distribution to be made on account of such Allowed Claim or Allowed Interest.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Allowed Claims, Allowed Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of such Allowed Claims and Allowed Interests, and is fair, equitable, and reasonable.

**B.      Legally Binding Effect**

The provisions of this Plan shall bind all creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all Holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtors or their Assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date; and (ii) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

**C.      Release of Liens**

Except as otherwise provided in the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, or as provided for by any Order of the Bankruptcy Court, on the Effective Date and concurrently with the applicable Plan Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Liquidating Trust and its successors and assigns.  On and after the Effective Date, any Holder of such Secured Claim

(and the applicable agents for such Holder), at the expense of the Liquidating Trust, shall be authorized and may be directed to release any Collateral or other property of either Debtors (including any Cash Collateral and possessory Collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Liquidating Trustee to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens. For the avoidance of doubt, this Section shall not apply to those certain Liens held by any Governmental Unit for amounts owed by the Debtors for taxes, including, but not limited to, *ad valorem* property taxes, unless and until such tax Claims have been paid in full.

D.   **Limited Discharge of Debtors and Injunction**

The Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against the Debtors and their Assets and properties and any proceedings not yet instituted against the Debtors or their Assets and properties, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Liquidating Trust, or their property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or the Liquidating Trust, or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or the Liquidating Trust, or their property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the Liquidating Trust, or the property of the Debtors, the Estates or the Liquidating Trust with respect to any such Claim or (e) asserting any right of setoff or recoupment against the Debtors, the Estates or the Liquidating Trust. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in this case pursuant to section 105, if any, or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until entry of a final decree in these Chapter 11 Cases.

E.   **Releases by the Debtors**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE**

38

FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION VII.E. OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (V) FAIR, EQUITABLE AND REASONABLE, (VI) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

F.     RELEASES BY HOLDERS OF CLAIMS AND INTERESTS

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION VII.F. OF THE PLAN

(THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY, THE UNITED STATES IS NOT A RELEASING PARTY UNDER THE PLAN AND IS NOT PROVIDING A RELEASE.

NOTWITHSTANDING ANYTHING THE CONTRARY, NO RIGHTS, CLAIMS, CAUSE OF ACTION OR DEFENSES BY AND AMONG TPIC, CEI, AND TALOS ARE WAIVED, RELEASED, OR OTHERWISE AFFECTED BY THE PLAN, THE PLAN SUPPLEMENT, OR THE CONFIRMATION ORDER.

G.    **Exculpation**

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF DEFINITIVE DOCUMENTS, THE DISCLOSURE STATEMENT, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL

41

WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

## H.      RELEASES BY THE CEI PARTIES OF THE CEI RELEASE PARTIES

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE CEI RELEASE PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE CEI PARTIES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN

THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY CEI RELEASE PARTY, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION VII.H. OF THE PLAN (THE "CEI PARTIES SETTLEMENT"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE CEI PARTIES SETTLEMENT IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE CEI RELEASE PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE CEI PARTIES SETTLEMENT, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE CEI PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE CEI PARTIES SETTLEMENT.

I.    RELEASES BY THE CEI RELEASE PARTIES, THE DEBTORS AND POST-EFFECTIVE DATE DEBTORS OF THE CEI PARTIES

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE DEBTORS AND POST-EFFECTIVE DATE DEBTORS, AND THE CEI PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE CEI RELEASE PARTIES, THE DEBTORS AND POST-EFFECTIVE DATE DEBTORS, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN,

43

FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY CEI RELEASE PARTY, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION VII.H. OF THE PLAN (THE "CEI RELEASE PARTIES SETTLEMENT"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE CEI RELEASE PARTIES SETTLEMENT IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE CEI RELEASE PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE CEI RELEASE PARTIES SETTLEMENT, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF CEI ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE CEI RELEASE PARTIES SETTLEMENT. NOTWITHSTANDING THE FOREGOING, CAUSES OF ACTION SOLEY OF THE DEBTORS AND POST-EFECTIVE DATE DEBTORS ARISING

**PRIOR TO THE EFFECTIVE DATE AGAINST CEI FOR BREACH OF THE SSA SHALL NOT BE RELEASED BY THE CEI RELEASE PARTIES SETTLEMENT.**

J.    **Preservation of Claims and Rights**

Confirmation of this Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless this Plan or the Confirmation Order specifically and unambiguously so provides. **Exhibit C** of this Plan describes (i) those Claims, Causes of Action, Right of Action or claims (the "Retained Causes of Action") for relief currently known to the Debtors; and (ii) circumstances currently known to the Debtors that may give rise to a Claim, Cause of Action, Right of Action or other claim for relief.  All Claims, Causes of Action, Rights of Action or claims for relief (including, for the avoidance of doubt, the Apache Claims) are expressly preserved for the benefit of the Debtors' creditors in accordance with the terms of this Plan.  The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.

**Except as released in the Plan, Confirmation Order, or previous order of the Bankruptcy Court, the Debtors and the Liquidating Trustee in his capacity as trustee of the Liquidating Trust, reserve any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Distribution Record Date and/or any Plan Distribution date, including, without limitation, any and all Causes of Action, Rights of Action and/or claims for relief that the Debtors or the Liquidating Trust may have against (i) any party described or related to the events described in Exhibit C hereto, and (ii) any insurer and/or insurance policies in which either the Debtors have an insurable or other interest in or right to make a claim against, any other of the Debtors' insurers. The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Liquidating Trustee, in his capacity as trustee for the Liquidating Trust, relating to any claims, Causes of Action or Rights of Action referred to in this Plan, or otherwise. The Liquidating Trustee shall constitute the representative of the Debtors for purposes of retaining, asserting and/or enforcing Rights of Action under section 1123(b)(3)(B) of the Bankruptcy Code. On the Effective Date, the Liquidating Trustee shall be substituted as a party of record in all pending litigation brought by or against any Debtor without need for further order of the Bankruptcy Court.**

K.    **Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent or (ii) the relevant Holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim is no longer contingent.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO
## CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.    Conditions Precedent to Effectiveness

The following conditions precedent shall be satisfied, or waived in writing in accordance with section B of this Article, prior to the occurrence of the Effective Date of the Plan:

1.    The Debtors shall have taken all steps necessary to transfer to Lender NewCo the Secured Cash Amount, the Apache Claims and the Talos Shares in accordance with the Plan immediately upon the occurrence of the Effective Date;

2.    The Plan Supplement has been filed;

3.    The Bankruptcy Court shall have entered the Confirmation Order, which order shall be a Final Order;

4.    All definitive documentation, including, but not limited to, (a) with respect to WC 73, definitive agreement, including, but not limited to, the agreement of Walter and other joint interest owners to the designation of Walter as: (i) designated operator; (ii) an approved agent of the Designated Operator; or (iii) contractual operator, or in the alternative to the extent that no agreement is reached between Walter and the required other joint interest owners, the Liquidating Trust shall be responsible for Maintenance and Monitoring Obligations regarding WC 73 for a period six (6) months following the Effective Date; (b) with respect to the MP 270A Sale; (c) with respect to the release of the Escrowed Talos Shares to the Liquidating Trust; and (d) all terms and conditions thereof, necessary to effectuate the terms of this Plan shall be in form and substance acceptable to the Required Lenders; and

5.    The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents (other than any such authorization, consent, regulatory approval, ruling, or document that is customarily obtained or completed after assignment, conveyance or vesting of an applicable asset) that, after giving effect to the entry of the Confirmation Order, are necessary to implement and effectuate the Plan, including Bankruptcy Court approval, and each of the other transactions contemplated hereof, and such authorizations, consents, regulatory approvals, rulings, or documents shall not be subject to unfulfilled conditions and shall be in full force and effect, and all applicable regulatory waiting periods shall have expired.

### B.    Waiver of Conditions

With the prior written consent of the Required Lenders, the conditions precedent to the occurrence of the Effective Date set forth in section A above may be waived, in whole or in part, by the Debtors, without leave of or order of the Bankruptcy Court, provided, however, that as to section A.4. above, waiver of such condition shall require the consent or agreement of any counter-party to any transaction described therein.  If any such condition precedent is waived pursuant to this section and the Effective Date occurs, each party agreeing to waive such condition precedent shall be estopped from withdrawing such waiver after the Effective Date or

otherwise challenging the occurrence of the Effective Date on the basis that such condition was not satisfied, the waiver of such condition precedent shall benefit from the "equitable mootness" doctrine, and the occurrence of the Effective Date shall foreclose any ability to challenge the Plan in any court.  If the Plan is confirmed for fewer than all of the Debtors, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur.

### C.     Effect of Failure of Conditions

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of Claims by the Debtors, or any Holders of Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Person or Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Person or Entity.

## ARTICLE IX.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.     Modifications and Amendments

Except as otherwise specifically provided in the Plan, the Debtors reserves the right to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtors expressly reserve their rights to revoke or withdraw, or, to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

### B.     Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan made pursuant Article IX.A., above, are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure under Bankruptcy Rule 3019.

### C.     Revocation or Withdrawal of Plan

The Debtors reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts and Unexpired Leases effected under the Plan,

and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## ARTICLE X.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any requests for payment of any Administrative Claim and the resolution of any objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or unexpired;

4.    Ensure that Plan Distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5.    Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6.    Adjudicate, decide, or resolve all matters related to section 1141 of the Bankruptcy Code;

7.    Enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

8.    Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

48

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Person or Entity with respect to Consummation or enforcement of the Plan;

11.     Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VII hereof and enter such orders as may be necessary to implement or enforce such releases, injunctions and other provisions;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Plan Distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII section F. hereof;

13.     Enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     Determine any other matters that may arise in connection with or related to the Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

15.     Enter an order concluding or closing, on a temporary or final basis, the Chapter 11 Cases;

16.     Adjudicate any and all disputes arising from or relating to Plan Distributions under the Plan;

17.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18.     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 363, 505, and 1146 of the Bankruptcy Code;

21.     Hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VII hereof, regardless of whether such termination occurred prior to or

49

after the Effective Date;

22.     Enforce all orders previously entered by the Bankruptcy Court; and

23.     Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XI.
## MISCELLANEOUS PROVISIONS

### A.     Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Liquidating Trustee, as applicable, and all Holders of Claims or Interests receiving Plan Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### B.     Payment of Statutory Fees

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by the Liquidating Trust for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed – whichever occurs first.

### C.     Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of an action by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### D.     Successors & Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### E.     Notices

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including any facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, or, in the case of

notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

OKIN ADAMS LLP
Matthew S. Okin
David L. Curry, Jr.
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 888.865.2118
mokin@okinadams.com
dcurry@okinadams.com

**F.      Entire Agreement**

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Documents) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which are deemed merged and integrated into the Plan.

**G.      Exhibits**

All Exhibits and documents attached to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the Exhibits and documents are filed, copies of such Exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such Exhibits and documents from the Courts CM/ECF filing system.  To the extent any Exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

**H.      Nonseverability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) nonseverable and mutually dependent.

**I.**       **Plan Proposed in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have proposed the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such individuals or Entities or the Post-Effective Date Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the proposal of the Plan or participation in the Chapter 11 Cases.

**J.**       **Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any arguments, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors, or their counsel, or any other Entity, if such agreement was not expressly disclosed in the Plan or papers filed with the Bankruptcy Court prior to the Confirmation Date.

Respectfully submitted on the 3rd day of June, 2021.

**CASTEX ENERGY 2005 HOLDCO, LLC,** *et al*.

By: _____ /s/ *Douglas J. Brickley* _____
     Douglas J. Brickley
     Chief Restructuring Officer

**OKIN ADAMS LLP**

By: _____ /s/ *Matthew S. Okin* _____
     Matthew S. Okin
     Texas Bar No. 00784695
     Email: mokin@okinadams.com
     David L. Curry, Jr.
     Texas Bar No. 24065107
     Email: dcurry@okinadams.com
     Ryan A. O'Connor
     Texas Bar No. 24098190
     Email: roconnor@okinadams.com
     Johnie A. Maraist
     Texas Bar No. 24109505
     Email: jmaraist@okinadams.com
     1113 Vine St., Suite 240
     Houston, TX  77002
     Tel: (713) 228-4100
     Fax: (888) 865-2118

**ATTORNEYS FOR THE DEBTORS**

**EXHIBIT A**

## Properties to be Abandoned

| OFFSHORE PROPERTIES | ONSHORE WELLS |
|---|---|
| SOUTH TIMBALIER BLK 200 | SCHINDLER |
| SOUTH TIMBALIER BLK 072 | KING LAKE |
| SHIP SHOAL BLK 189 | BAYOU FER BLANC |
| SHIP SHOAL BLK 209/210 | JOE McHUGH |
| SHIP SHOAL BLK 314 | LAKE SALVADOR |
| SHIP SHOAL BLK 301 | BARATARIA WEST |
| GREEN CANYON BLK 0243 | SUNRISE |
| GREEN CANYON BLK 0006 | BAYOU POINT au CHIEN |
| CHANDELEUR BLK 42/43 | HUMPHREYS |
| MAIN PASS BLK 041/59 | HOUMA |
| BRETON SOUND 41 | PT AU FER |
| HIGH ISLAND BLK 138 | LIVE OAK |
| | LAKE GERO |
| | JEANERETTE |
| | LAKE ENFERMER |
| | RICEVILLE |
| | LAC BLANC (LONG POINT) |
| | HAMILTON |
| | RABBIT ISLAND |
| | BELLE ISLE |
| | LAKE PELTO |
| | HIGH ISLAND BLK 023-L |
| | HIGH ISLAND BLK 024-L |
| | CHACAHOULA |
| | AVERY ISLAND, SE |
| | LAKE PAGIE |
| | LAKE ARTHUR, SW |
| | OUTSIDE ISLAND (LIBERTY CANAL) |
| | FALSE RIVER |
| | CLARA NORTH |
| | DEER ISLAND WEST |
| | GOLDEN MEADON WEST |

**EXHIBIT B**

## <u>Operated Properties</u>

VR 253
VR 252/ SM 87 / VR 271
HIGH ISLAND BLK 176
MAIN PASS BLK 270
WEST CAMERON BLK 073
HIGH ISLAND BLK 116/117
SOUTH PELTO BLK 018
SOUTH TIMBALIER BLK 107
SHIP SHOAL BLK 188

**EXHIBIT C**

## Retained Causes of Action

**EXHIBIT C**

### Schedule of Retained Causes of Action

Pursuant to the *Fourth Amended Joint Chapter 11 Plan,* filed on June 3, 2021 (as may be further amended, the "Plan"),[1] the Liquidating Trust is being established as a grantor trust for the purpose of liquidating and distributing the Liquidating Trust Assets to the Liquidating Trust Beneficiaries in accordance with the Plan. Liquidating Trust Assets is defined in the Plan to include: (i) the Single Share; (ii) all Retained Causes of Action, including Avoidance Actions, and the proceeds thereof (other than the Apache Claims); (iii) the Liquidating Trust Cash Reserve; (iv) the Liquidating Trust's Talos Shares; (v) the 2017 Chapter 11 Unsecured Creditor Reserve and all rights, including any residual rights to proceeds, relating thereto; and (vi) all other Assets of the Debtors other than the Secured Cash Amount and the Abandoned Assets.

Unless a Retained Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtors expressly reserve such Cause of Action (including any counterclaims) for later adjudication by the Liquidating Trustee on behalf of the Liquidating Trust. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Causes of Action (including counterclaims) on or after the Confirmation Date. All Retained Causes of Action shall be preserved for the benefit of the Post-Effective Date Debtors, collectively and individually, and the Liquidating Trust, as appropriate, whether or not brought by the Debtor(s) prior to the Effective Date of the Plan.

Notwithstanding the foregoing paragraphs, and without limiting the generality of Article VII section H of the Plan, Retained Causes of Action include Causes of Action related to: (i) insurance policies; (ii) tax credits and refunds; (iii) litigation and possible litigation; (iv) Avoidance Actions; (v) confidentiality agreements; (vi) accounts receivable and accounts payable; (vii) contracts and leases; (viii) current or former employee matters; (ix) deposits, adequate assurance postings, and other collateral postings; (x) vendor obligations; (xi) intellectual property; (xii) customer obligations; and (xiii) environmental matters. Accordingly, unless otherwise agreed among the Debtors, the Committee, and the Prepetition Agent, the following shall constitute Retained Causes of Action under the Plan:

1. **Causes of Action Related to Insurance Policies**

Unless otherwise released by the Plan, Retained Causes of Action shall include all Causes of Action based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor is (or was) a party or pursuant to which the Debtors have any rights whatsoever, including Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, third party administrators, underwriters, or surety bond insurers relating to coverage, indemnity, contribution, reimbursement, or any other matter. Without limiting the foregoing, but subject to any releases contained within the Plan, such Retained Causes of Action shall expressly include any actions, claims and demands relating to or brought against Starr Indemnity & Liability Company under Insurance Policy #1000620769201, XL Specialty Insurance Company under Insurance Policy #ELU166511-20, XL Specialty Insurance Company under Insurance Policy #ELU166512-20, and Axis Insurance Company under Insurance Policy #P-001-000327076-01.

---

[1]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

EXHIBIT C

### 2.     Causes of Action Related to Tax Credits and Refunds

Unless otherwise released by the Plan, Retained Causes of Action shall include all Causes of Action against or related to all taxing authorities that owe or may in the future owe money to the Debtors.  Furthermore, Retained Causes of Action shall include all Causes of Action against or related to all taxing authorities who assert or may assert that the Debtors owe money to them.

### 3.     Causes of Action Related to Litigation and Possible Litigation

Unless otherwise released by the Plan, Retained Causes of Action shall include all Causes of Action against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, regardless of whether such entity is included on the schedule below.

The following schedule includes entities, affiliates, subsidiaries, successors and assigns, that are party to or that the Debtors believe may become party to litigation or arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial.  **No entity may rely on its omission from the below schedule or herein as any indication that the Liquidating Trust will not pursue any and all available Causes of Action against it.**

| Counter-Party Name | Address | Description of Proceeding |
|---|---|---|
| Apache Corporation | John Melko<br>Foley and Lardner LLP<br>100 Louisiana St Suite 2000<br>Houston, TX 77002<br><br>Jennifer Bruch Hogan<br>jhogan@hoganfirm.com<br>Hogan & Hogan<br>711 Louisiana St., Suite 500<br>Houston, Texas  77002<br><br>Roger D. Townsend<br>rtownsend@cokinoslaw.com<br>Cokinos \| Young<br>1221 Lamar, 16th Floor<br>Houston, Texas 77010<br><br>Adam P. Schiffer<br>aschiffer@shjlawfirm.com<br>Marc S. Tabolsky<br>mtabolsky@shjlawfirm.com<br>Matthew W. Davis<br>mdavis@shjlawfirm.com<br>Schiffer Hicks Johnson, PLLC<br>700 Louisiana Street, Suite 2650<br>Houston, Texas  77002 | All claims or causes of action arising from or related to that certain litigation styled *Apache Corporation v. Castex Offshore, Inc., et al.;* in the 133rd District Court of Harris County, Texas bearing Cause No. 2015-48580. |

**EXHIBIT C**

|  | Murray Fogler<br>mfogler@fbfog.com<br>Fogler, Brar, O'Neil & Gray, LLP<br>2 Houston Center<br>909 Fannin Street, Suite 1640<br>Houston, Texas  77002 |  |
| --- | --- | --- |

### 4.  Causes of Action Related to Avoidance Actions

Unless otherwise released by the Plan or Final Order, Retained Causes of Action shall include, but are not limited to, all Causes of Action in which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, and/or a transfer is avoidable under sections 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code.  Such Causes of Action, specifically include, but are not limited to, any and all potential 11 U.S.C. § 547 preference claims related to transfers made within the 90 days before the filing of the Chapter 11 Cases on account of an antecedent debt owed by the respective Debtor as identified by the Debtors in their respective Statement of Financial Affairs in response to Question 3 (*See* ECF ## 98-101).[2]  Further, such Causes of Action specifically include, but are not limited to, any and all potential 11 U.S.C. § 547 insider preference claims related to transfers to an insider made between the 90 days and one year before the filing of the Chapter 11 Cases on account of an antecedent debt owed by the respective Debtor as identified by the Debtors in their respective Statement of Financial Affairs in response to Question 4 (*See* ECF ## 98-101).  Further, such Causes of Action specifically include, but are not limited to, any and all potential fraudulent transfer claims as may be asserted under either 11 U.S.C. § 548 or 11 U.S.C. § 544 and the applicable state law fraudulent transfer statute to transfers made within the applicable lookback time period applicable to the particular fraudulent transfer statute, including any and all transfers identified by the Debtors in their respective Statement of Financial Affairs (specifically including all transfers previously identified in this paragraph) and any transfers made to insiders.  **No entity may rely on its omission from the Debtors' respective Statement of Financial Affairs or herein as any indication that the Liquidating Trust will not pursue any and all available Causes of Action against it.**

### 5.  Causes of Action Related to Confidentiality Agreements

Unless otherwise released by the Plan, Retained Causes of Action shall include all Causes of Action against or related to all entities that are party to any confidentiality agreements with any or all of the Debtors

### 6.  Causes of Action Related to Accounts Receivable and Accounts Payable

Unless otherwise released by the Plan, Retained Causes of Action shall include all Causes of Action against or related to all entities that owe or that may in the future owe money to the Debtors. Furthermore, Retained Causes of Action shall include all Causes of Action against or related to all Entities who assert or may assert that the Debtors owe money to them.

---

[2] Reference to documents in the record of the Chapter 11 Cases shall mean that such documents referenced are incorporated herein as if copied *in extenso*.

EXHIBIT C

### 7.     Causes of Action Related to Contracts and Leases

Unless otherwise released by the Plan, Retained Causes of Action shall include all Causes of Action, based in whole or in part upon any and all contracts and leases to which any Debtor is or was a party or pursuant to which a Debtor has any rights whatsoever. The Retained Causes of Action include, without limitation, Causes of Action against vendors, suppliers of goods or services, or any other parties: (a) for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (c) for failure to fully perform or to condition performance on additional requirements under contracts with any Debtor before the assumption or rejection, if applicable, of such contracts; (d) for payments, deposits, holdbacks, reserves, or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor, or other party; (e) for any liens, including mechanic's, artisan's, materialmen's, possessory, or statutory liens held by any Debtor; (f) counterclaims and defenses related to any contractual obligations; (g) any turnover actions arising under section 542 or 543 of the Bankruptcy Code; (h) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claims; and (i) any accumulated service credits, both those that may apply to future vendor invoices and those from which any Debtor may be entitled to receive a refund.

### 8.     Causes of Action Related to Current or Former Employee Matters

Unless otherwise released by the Plan, Retained Causes of Action shall include all Causes of Action against or related to all current or former employees that are party to or that may in the future become party to any workers' compensation claims or actions, litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial.

### 9.     Causes of Action Related to Current or Former Insiders and/or Related Entities

Unless otherwise released by the Plan, Retained Causes of Action shall include all Causes of Action against or related to all current or former insiders (including directors and/or officers) and/or related entities, including claims or actions, litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial.[3] Such Causes of Action, specifically include, but are not limited to, (i) any claims against such parties for mismanagement and/or the breach of any fiduciary duty arising under applicable law, including without limitation, the duties of loyalty and care; and (ii) any and all potential claims related to transfers made within the four year period before the filing of the Chapter 11 Cases, specifically including those transfers identified by the Debtors in their respective Statement of Financial Affairs in response to Question 3 and Question 4 (*See* ECF ## 98-101).

---

[3] Such former insiders include, without limitation but subject to releases contained in the Plan: John Stoika, Johnathan Wilson, Aaron Killian, Ashley Green, Gregory L. Miller, Richard Sherrill, David Alexander, Daniel Gillett

EXHIBIT C

### 10. **Causes of Action Related to Deposits, Adequate Assurance Postings, and Other Collateral Postings**

Unless otherwise released by the Plan, Retained Causes of Action shall include all Causes of Action based in whole or in part upon any and all postings of a security deposit, adequate assurance payment, or any other type of deposit or collateral.

### 11. **Causes of Action Related to Vendor Obligations**

Unless otherwise released by the Plan, Retained Causes of Action shall include all Causes of Action against or related to all vendors that owe or may in the future owe money or other obligations to the Debtors, whether for unpaid invoices; unreturned, missing, or damaged inventory; indemnification; warranties; any turnover actions arising under section 542 or 543 of the Bankruptcy Code; or any other matter whatsoever.

### 12. **Causes of Action Related to Intellectual Property**

Unless otherwise released by the Plan, Retained Causes of Action shall include any Causes of Action for unfair competition, licensing or licensing agreements, interference with contract or potential business advantage, conversion, infringement of intellectual property, or other business tort claims.

### 13. **Causes of Action Related to Customer Obligations**

Unless otherwise released by the Plan, Retained Causes of Action shall include all Causes of Action against or related to all customers that owe or may in the future owe money to the Debtors, whether for unpaid invoices; unreturned, missing, or damaged inventory, warranties, or any other matter whatsoever.

### 14. **Causes of Action Related to Environmental Matters**

Unless otherwise released by the Plan, Retained Causes of Action shall include all Causes of Action against or related to all entities or potentially responsible parties that owe or that may in the future owe money to the Debtors in connection with any environmental matters. Furthermore, Retained Causes of Action shall include all Causes of Action against or related to all entities or potentially responsible parties who assert or may assert that the Debtors owe money to them in connection with any environmental matters.

**EXHIBIT D**

## Liquidating Trust Agreement

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 21-30710 |
| **CASTEX ENERGY 2005 HOLDCO,** | § | |
| **LLC,** *et al.*, | § | **Chapter 11** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (this "Agreement"), is made this [●] day of June, 2021 (the "Effective Date"), by and among Castex Energy 2005 Holdco, LLC, *et al.* (collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned bankruptcy cases (the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), and Thomas Thompson, as Liquidating Trustee (in such capacity as Liquidating Trustee of the Liquidating Trust, the "Liquidating Trustee" or "Trustee"), for the benefit of the Liquidating Trust Beneficiaries (as defined in the *Fourth Amended Joint Chapter 11 Plan* [ECF # 307] (as may be amended, the "Plan") entitled to proceeds of the Liquidating Trust Assets (as defined in the Plan).

## RECITALS

A.     Entry of the Confirmation Order (as defined in the Plan) shall constitute a finding that the Liquidating Trust exists and is a valid entity for purposes of all non-bankruptcy law.

B.     This trust (the "Trust" or the "Liquidating Trust") is established, pursuant to the Plan, as a liquidating trust for the sole purpose of liquidating the Liquidating Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of this Trust and the terms of the Plan.

C.     Capitalized terms used in this Agreement and not defined herein have the meanings ascribed to them in the Plan, or if not defined in the Plan, the meanings ascribed to them in the Bankruptcy Code.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and in the Plan; the Debtors and the Trustee agree as follows:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Castex Energy 2005 Holdco, LLC (6832); Castex Energy 2005, LLC (6832); Castex Energy Partners, LLC (6832); and Castex Offshore, Inc. (8432).  The Debtors' mailing address is One Memorial City Plaza, 800 Gessner Rd., Suite 925, Houston, Texas 77024.

# ARTICLE I
## DEFINITIONS

1.01   Definitions.

"Beneficiaries" means the holder of a beneficial interest in this Liquidating Trust, which shall be distributed in accordance with section 5.02 herein.

"Distribution" means a Distribution of property to a Beneficiary pursuant to this Agreement.

# ARTICLE II
## PURPOSE OF THE TRUST

2.01   Purpose.   The Liquidating Trust shall be established, in accordance with Treasury Regulation Section 301.7701-4(d), only for the purposes of liquidating the Liquidating Trust Assets, including, but not limited to prosecuting and resolving objections to Disputed Claims against the Debtors, and liquidating and distributing their Assets, with no objective to continue or engage in the pursuit of a trade or business; *provided*, *however*, that the Liquidating Trustee shall be authorized to manage the operation of the Debtors' oil and gas properties to the extent that such operation is necessary to preserve the value of Liquidating Trust Assets pending liquidation, or to comply with any applicable health, safety, or environmental obligation arising from or related to the Liquidating Trust Assets or the Operated Properties, subject to the provisions of the Plan. Notwithstanding any other section of the Plan or this Agreement, it is the express intent that the Liquidating Trust shall survive until such purpose is either achieved or determined to be impracticable or impossible.

# ARTICLE III
## ESTABLISHMENT OF THE TRUST

3.01   Name of the Trust. The name of the Trust shall be the Castex Liquidating Trust (referred to herein as the "Trust").

3.02   Transfer of Liquidating Trust Assets to the Trust. Except as otherwise provided by the Plan or this Agreement, on the Effective Date, the Liquidating Trust Assets shall be deemed transferred to the Trust free and clear of all Claims and Interests, in accordance with Section 1141 of the Bankruptcy Code.

3.03   Title to the Liquidating Trust Assets. The Trustee shall hold title to the Liquidating Trust Assets for the benefit of the Beneficiaries, subject to the terms of the Plan and this Agreement. The Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtor to the Beneficiaries, and then by such Beneficiaries to the Trust in exchange for interests (the "Liquidating Trust Beneficial Interests") for the benefit of such holders in accordance with the Plan.  Accordingly, the holders of the Liquidating Trust Beneficial Interests as of the Effective Date shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Trust.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local and tax purposes.

3.04    Appointment of the Trustee. Pursuant to the Confirmation Order, Thomas Thompson has been designated to serve as the Trustee, and he hereby accepts such appointment and agrees to serve in such capacity, as of the Effective Date.  The Trustee shall be deemed to be appointed pursuant to Bankruptcy Code section 1123(b)(3)(B).

3.05    Rights of Debtor.  On the Effective Date, the Trustee shall succeed to all of the Debtors' right, title and interest in the Liquidating Trust Assets, but subject to the terms of the Plan and this Agreement, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets or this Trust, and the Trustee shall be vested with all rights and discretion regarding the Liquidating Trust Assets.  In no event shall any part of the Liquidating Trust Assets revert to or be distributed to the Debtors.

3.06    Grantors.  Pursuant to the Plan, the Debtors have agreed to contribute certain property to the Trust and have agreed to the terms of this Agreement solely in their capacity as Grantors.

3.07    Nontransferability. The Liquidating Trust Beneficial Interests shall be nontransferable, except upon the Trustee's written consent, which may be withheld for any reason in the Trustee's sole and absolute discretion.

## ARTICLE IV
## THE TRUSTEE

4.01    Authority of the Trustee. The Trustee is hereby empowered to, subject to the limitations set forth in this Agreement, take any and all actions to effectuate the purpose of the Trust. Without limiting the generality of the previous sentence, the Trustee shall have the power to, for the benefit of the Beneficiaries:

(i)      receive, hold, manage, sell, prosecute, resolve, invest, supervise, protect and liquidate the Liquidating Trust Assets;

(ii)     withdraw, make Distributions and pay taxes and other obligations owed by the Trust from the funds held by the Trust in accordance with the Plan or applicable law;

(iii)    execute, deliver, file, and record contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such actions, as it may deem reasonably necessary or appropriate to effectuate and implement the terms and conditions thereof or of the Plan;

(iv)    calculate and implement Distributions to Beneficiaries out of the Liquidating Trust Assets in accordance with the Plan;

(v)     protect, and enforce the rights to, the Liquidating Trust Assets by any method deemed appropriate, including by judicial proceeding;

(vi)    compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise resolve or settle, in accordance with the terms hereof, claims in favor of, or against, the Trust;

(vii)     determine and satisfy any and all liabilities created, incurred, or assumed by the Trust;

(viii)    pay all expenses of the Trust and make other payments relating to the Liquidating Trust Assets;

(iv)     obtain and maintain insurance coverage with respect to the liabilities and obligations of the Trustee and the Trust (in the form of an errors and omissions policy, fiduciary policy, or otherwise);

(x)      obtain and maintain insurance coverage with respect to real and personal property which may become Liquidating Trust Assets, if any;

(xi)     retain and pay such third parties, including, one or more paying agents or counsel, as the Trustee may deem necessary or appropriate in its sole and reasonable discretion to assist the Trust in carrying out its powers and duties under this Agreement;

(xii)    exercise such other powers as may be vested in or assumed by the Trust or the Trustee pursuant to the Plan, Bankruptcy Court order, or as may be necessary, proper and appropriate to carry out the provisions of the Plan;

(xiii)   prosecute and resolve objections to Disputed Claims against the Debtors that are payable from the Liquidating Trust Assets; and

(xiv)    file all necessary tax returns and other filings with governmental authorities on behalf of the Trust and the Liquidating Trust Assets held therein pursuant to the terms of this Agreement.

4.02   <u>Limitations on Trustee's Authority</u>.

(i)      The Trustee is not authorized to engage in any trade or business with respect to the Liquidating Trust Assets, and shall engage only in activity reasonably necessary to, and consistent with, the liquidating purpose of the Trust.  All actions taken by the Trustee shall be consistent with the expeditious but orderly liquidation of the Liquidating Trust Assets as is required by applicable law and consistent with the treatment of the Trust as a liquidating trust under Treasury Regulation Section 301.7701-4(d).

(ii)     In all circumstances, the Trustee shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Trust.

(iii)    The Trustee shall liquate and convert to Cash the Liquidating Trust Assets in an expeditious but orderly manner, make timely Distributions, and not unduly prolong the duration of the Trust.

(iv)     Any investments of the Cash portion of the Liquidating Trust Assets by the Trustee must be permitted investments for a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), or under applicable Internal Revenue Service guidelines, rulings, or other controlling authority.

4.03    Discretion. Subject to express provisions of this Agreement and the Plan, the Trustee shall have absolute discretion to pursue, or not pursue, any and all claims, rights, or causes of action, as it determines is in the best interests of the Beneficiaries and consistent with the purposes of the Trust, and shall not have liability for the outcome of his decisions.  The Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Cash.

4.04    Retention of Professionals.   The Trustee may retain and reasonably compensate counsel and other professionals to assist in his duties as Trustee on such terms as the Trustee deems appropriate without Bankruptcy Court approval. The Trustee may retain any professional who represented parties in interest in the Chapter 11 Cases.  The Trustee shall be entitled to rely, in good faith, on the advice of his retained professionals.

4.05    Liability of Trustee and His or Her Agents.   Neither the Trustee, nor the employees, professionals, agents, and representatives of the Trust or the Trustee (collectively the "Covered Persons"), shall be held liable for actions taken or omitted in its capacity as, or on behalf of, the Trust or Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Trust or Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts.  All Persons dealing with the Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Trustee in carrying out the terms of this Agreement, and, subject to the preceding portions of this section, none of the Covered Persons shall have any personal obligation to satisfy any such liability.

4.06    Compensation of the Trustee and Other Employees.   The Trustee shall be compensated hourly at a rate of $600.00 and shall be entitled to reimbursement of all reasonable expenses incurred by the Trustee in discharging his duties hereunder.  The Trustee may pay his or her compensation and other costs and expenses of the Trust before approving or making any Distributions to the Beneficiaries.

4.07    Exculpation; Indemnification.   All of the Covered Persons shall be, and hereby are, exculpated by all Persons, including the Beneficiaries, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon them by the Plan, this Agreement, or any Order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, or by applicable law, except for actions or omissions that are determined by a Final Order to have arisen out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts.  No Person shall have, or be permitted to pursue, any claim or cause of action against any of the Covered Persons for making payments in accordance with the Plan, or for implementing any other provision of the Plan.   To the fullest extent permitted by applicable law, the Trust shall (i) indemnify, defend, and hold harmless the Covered Persons from and against any and all losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Covered Persons may incur or to which the Covered Persons may become subject in connection with any actions or inactions in their capacity as such, except for actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing,

breach of fiduciary duty, or *ultra vires* acts, and (ii) the Covered Persons shall be entitled to obtain advances from the Trust to cover their reasonable fees and expenses incurred in defending any such actions or inactions. The foregoing indemnity in respect of any Covered Person shall survive the termination of such Covered Person from the capacity for which they are indemnified.

4.08    Termination.    The duties, responsibilities and powers of the Trustee shall terminate on the date the Trust is dissolved, provided that Sections 4.05-4.07 shall survive such termination and dissolution.

4.09    Resignation, Death, or Removal.    The Trustee or any successor trustee may resign upon thirty (30) days' notice by an instrument in writing signed by the Trustee and filed with the Bankruptcy Court. The Trustee or any successor may be removed at any time with or without cause by the Bankruptcy Court. Any party in interest may apply to the Bankruptcy Court for an order removing the Trustee for cause, with the determination of cause left to the reasonable discretion of the Bankruptcy Court. In the event of the removal of the Trustee, the Trustee shall be entitled to immediate payment of all compensation earned through and including the effective date of such removal.

4.10    Successor Trustee.    In the event of resignation, death, or removal, as provided herein; any party in interest, any professional for the Trustee, the Trustee, and/or the United States Trustee may seek to designate a successor trustee and the Bankruptcy Court shall appoint a successor trustee to perform the duties, functions, and obligations, and to exercise the rights and authority of Liquidating Trustee, as described in the Plan. Any successor to the initial Trustee shall execute an instrument accepting such appointment and shall file such acceptance with the Trust records and with the Bankruptcy Court.

## ARTICLE V
## DISTRIBUTIONS

5.01    Distributions to Beneficiaries.    The Trustee shall distribute Cash in accordance with the Liquidating Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, from the Liquidating Trust Assets on hand (including any Cash received from the Debtor on the Effective Date), except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during litigation, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Trust or in respect of the Liquidating Trust Assets), and (iv) to satisfy other liabilities incurred by the Trust in accordance with the Plan or this Agreement. The timing and amount of each Distribution by the Trustee shall be determined by the Trustee and shall be consistent with the terms set forth in the Plan, any applicable order of the Bankruptcy Court, and this Agreement.

5.02    Priority of Distribution of Liquidating Trust Assets.    The Liquidating Trust, through the Liquidating Trustee, shall be responsible for distributing Liquidating Trust Assets, or the proceeds thereof, in the order of priority shown (other than the Escrowed Talos Shares, and the 2017 Chapter 11 Unsecured Creditor Reserve): (i) to satisfy outstanding Allowed but unpaid

Administrative Claims, including Allowed Professional Compensation Claims; (ii) Allowed Priority Non-Tax Claims, if any; then (iii) to satisfy outstanding Allowed General Unsecured Claims, if any. After the Escrowed Talos Shares are released to the Liquidating Trust, the Liquidating Trustee shall sell the Escrowed Talos Shares in a manner that maximizes their value. Upon the monetization of all the Escrowed Talos Shares, the proceeds shall be used first to fund the Funded Statutory P&A Obligation Escrow and Talos Settlement, and the remainder of such funds shall then constitute Liquidating Trust Assets which shall be distributed in accordance with the priorities set forth above.  .  The 2017 Chapter 11 Unsecured Creditor Reserve shall be distributed in accordance with further orders of the Bankruptcy Court, and to the extent that the Bankruptcy Court determines that such funds are not required to be distributed in accordance with the 2017 Chapter 11 Plan, such funds shall be distributed in accordance with the priorities set forth above.

For the avoidance of doubt, all expenses of the Liquidating Trust, including but not limited to Liquidating Trustee compensation and fees and expenses of professionals hired by the Liquidating Trustee and the performance of any Maintenance and Monitoring Obligations related to the Operated Properties (if any) incurred prior to the effect of transfer of such properties to Walter or Talos, shall be taxed against the gross proceeds of the Liquidating Trust Assets and shall be satisfied prior to any subsequent Distributions hereunder, provided, however, that all expenses related to the satisfaction or performance of the Funded Statutory P&A Obligations shall be taxed solely against the Funded Statutory P&A Obligation Escrow..

5.03   Administration of Distributions.

(i)   Manner of Payment.  At the option of the Trustee, any Cash payment to be made hereunder may be made by a check or wire transfer.

(ii)   No Fractional Payments.   Whenever a payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding down to the nearest whole dollar.

(iii)   Unclaimed Distributions.   In the event any Distribution to any Beneficiary is returned as undeliverable, the Trustee shall use commercially reasonable efforts to determine the current address of such Beneficiary.   No additional Distribution shall be made to such Beneficiary until the Trustee has determined the then-current address of such Beneficiary, at which time the Distribution shall be made to such Beneficiary.  At the expiration of two (2) years after the Effective Date, all undeliverable Distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code, and the Claims of the Beneficiaries that may have been entitled to such Distribution shall be discharged and forever barred.  After such date, all undeliverable Distributions shall revert to the Trust and shall be redistributed in accordance with this Agreement.  The Trustee may, in an exercise of his business judgment, seek an order of the Bankruptcy Court deeming Distributions undeliverable prior to the expiration of two (2) years.

(iv)   Abandonment.   The Trustee may abandon, in any commercially reasonable manner, any property that the Trustee reasonably concludes is of no benefit to the Beneficiaries.

**ARTICLE VI**

## **DISSOLUTION OF TRUST**

6.01   <u>Dissolution</u>.   The Trust shall terminate upon the date on which all of the following events (each, a "<u>Termination Condition</u>," and, collectively, the "<u>Termination Conditions</u>") have occurred: (i) the dissolution of the Post-Effective Date Debtors pursuant to paragraph 3 of Article IV section C of the Plan; (ii) the Liquidating Trust Assets, including Causes of Action transferred and assigned to the Trust, are fully resolved, abandoned or liquidated in accordance with the Plan and this Agreement; (iii) all Cash has been completely distributed in accordance with the Plan and this Agreement; (iv) all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities; and (v) the order closing the Chapter 11 Cases is a Final Order.  Upon the occurrence of each of the foregoing events, the duties, responsibilities and powers of the Liquidating Trustee shall terminate, and the Liquidating Trustee shall be discharged.  Except in the circumstances set forth below, the Liquidating Trustee shall dissolve the Trust in accordance with the provisions of this section no later than five (5) years after the Effective Date in accordance with applicable IRS revenue procedures.

The Bankruptcy Court may extend the term of the Trust one or more times (not to exceed a total of four extensions, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Trust as a liquidating trust for federal income tax purposes) for a finite period upon a showing of good cause and based on the particular circumstance at issue.  Each such extension must be approved by the Bankruptcy Court with notice thereof to all unpaid Liquidating Trust Beneficiaries.

Notwithstanding any other section of the Plan or this Agreement, it is the express intent that the Trust shall survive until each of the Termination Conditions have either occurred or be determined to be impracticable or impossible.  To the extent that the Trust shall be deemed terminated pursuant to applicable law at any time prior to the occurrence of each Termination Condition, the Liquidating Trustee shall not be discharged, but shall have such "wind-up" powers, both express and implied, as are necessary to achieve all outstanding Termination Conditions, including, but, not limited to the authority to: (i) continue prosecuting any Causes of Action belonging to the Trust; (ii) continue Claim administration responsibilities set forth in Article VI section B paragraph 2 of the Plan; and (iii) distribute the Cash proceeds of the Liquidating Trust Assets in a manner consistent with this Agreement.  In no event shall the Liquidating Trust Beneficiaries be entitled to receive in-kind distributions of the Liquidating Trust Assets.

6.02   <u>Post-Dissolution</u>.  Upon Distribution of all the Liquidating Trust Assets, the Trustee shall retain the books, records and files that shall have been created by the Trustee, provided that at his or her sole discretion, all of such records and documents may be destroyed at any time following the date of final Distribution of Liquidating Trust Assets as the Trustee deems appropriate (unless the records and documents are necessary to fulfill the Trustee's obligations pursuant to this Agreement).

## ARTICLE VII
## AMENDMENT AND WAIVER

7.01    Amendment; Waiver.  The Trustee may amend, supplement, or waive any provision of this Agreement, without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court, in order to: (i) cure any nonmaterial or non-substantive ambiguity, omission, defect, or inconsistency in this Agreement; provided that such amendments, supplements or waivers shall not adversely affect the Distributions to any of the Beneficiaries or adversely affect the U.S. federal income status of the Trust as a "liquidating trust"; or (ii) comply with any requirements in connection with the U.S. federal income tax status of the Trust as a "liquidating trust."  Any substantive provision of this Agreement may be amended or waived by the Trustee, with the approval of the Bankruptcy Court; *provided*, *however*, that no change may be made to this Agreement that would (i) adversely affect (a) the Post-Effective Date Debtors (absent such Party or Parties' consent), (b) the Distributions to any of the Beneficiaries, or (c) the U.S. federal income tax status of the Trust as a "liquidating trust" or (ii) expand, add to, or modify the original stated purpose of the Trust.    Notwithstanding this section, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Trust to liquidate in an expeditious but orderly manner the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d).

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

8.01    Intention to Establish Grantor Trust. This Agreement is intended to create a grantor trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with that intent, and, if necessary, this Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

8.02    Laws as to Construction.   Except as to formation of the Trust, which shall be deemed effective upon entry of the Confirmation Order, this Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to the rules governing the conflict of law which would require the application of the law of another jurisdiction. In the event of any conflict between the terms of this Agreement and the terms of the Plan or Confirmation Order, the terms of this Agreement shall govern.

8.03    Severability.   If any provision of this Agreement or application thereof to any person or circumstance shall be determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

8.04    Notices.  Any notice of other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office box, or transmitted by telex, facsimile or other telegraphic means, or sent by a nationally recognized overnight delivery service, addressed to the person for whom such notice is intended

at the appropriate address set forth below, or such other address as may be provided to the other parties in writing.

       If to the Post-Effective Date Debtors:

              Castex Energy 2005 Holdco, LLC, *et al*.
              Attn: Thomas Thompson
              Seaport Global Securities LLC

              600 Anton Blvd., Ste. 1700
              Costa Mesa, CA 92626
              Telephone: (646) 770-8279
              Email: tthompson@seaportglobal.com

       With copies to:

              Stewart Robbins Brown & Altazan LLC
              Attn:   Paul D. Stewart, Jr.
              Email: dstewart@stewartrobbins.com
              Attn:   Brandon A. Brown
              Email: bbrown@stewartrobbins.com
              Baton Rouge, LA 70801-0016
              Telephone: (225) 231-9998
              Facsimile: (225) 709-9467

       If to the Trustee:

              Mr. Thomas Thompson
              Seaport Global Securities LLC
              600 Anton Blvd., Suite 1700
              Costa Mesa, CA 92626
              Telephone: (646) 770-8279
              Email: tthompson@seaportglobal.com

       With copies to:

              Stewart Robbins Brown & Altazan LLC
              Attn:   Paul D. Stewart, Jr.
              Email: dstewart@stewartrobbins.com
              Attn:   Brandon A. Brown
              Email: bbrown@stewartrobbins.com
              Baton Rouge, LA 70801-0016
              Telephone: (225) 231-9998
              Facsimile: (225) 709-9467

8.05    Notices if to a Beneficiary.  Subject to any transfer recognized by the Trustee as set forth in Section 3.06 of this Agreement, any notice or other communications hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office box, or transmitted by telex, facsimile or other telegraphic means, or sent by a nationally recognized overnight delivery service, addressed to the person for whom such notice is intended to the name and address set forth in the case of a Beneficiary, on such Beneficiary's proof of claim, or if no proof of claim is filed, the address listed on the

Debtors' Schedules or as listed in any other notice filed with the Bankruptcy Court and, if applicable, the Trust or such other means reasonably calculated to appraise the Beneficiary.

8.06     Headings.  The section headings contained herein are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or any term or provision hereof.

8.07     Plan.   The terms of this Agreement are intended to supplement the terms provided by the Plan and the Confirmation Order.  However, in the event of any direct conflict or inconsistency between any provision of this Agreement, on the one hand, and the provisions of the Plan and the Confirmation Order, on the other hand, the provisions this Agreement shall govern and control.

10.08     Entire Agreement.  This Agreement contains the entire agreement between the parties and supersedes all prior and contemporaneous agreements or understanding between the parties with respect to the subject matter hereof.

10.09     Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first written above.

**CASTEX ENERGY 2005 HOLDCO, LLC**
**CASTEX ENERGY 2005, LLC**
**CASTEX ENERGY PARTNERS, LLC**
**CASTEX OFFSHORE, INC.**

Signature:_____

Name:  Douglas J. Brickley_____

As its:  Chief Restructuring Officer_____


Thomas Thompson, Trustee

Signature:_____

**EXHIBIT E**

## <u>SETTLEMENT TERM SHEET</u>

**SETTLEMENT TERM SHEET**

*May 26, 2021*

This term sheet ("***Term Sheet***") describes the material terms of a global agreement (a "***Settlement***") between the Parties identified below to resolve the material issues arising in and related to the jointly-administered chapter 11 bankruptcy cases captioned as *In re Castex Energy 2005 Holdco, LLC.*, Case No. 21-30710, (collectively, the "***Bankruptcy Cases***") that are pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***") in connection with confirmation of the Debtors' *Second Amended Joint Chapter 11 Plan* [ECF # 205] (as amended [ECF # 294], and to be further amended pursuant to the terms of this Settlement the "***Plan***").[1]  This Term Sheet is protected by Rule 408 of the Federal Rules of Evidence and any other applicable statutes, rules, or doctrines protecting the use or disclosure of confidential compromise and settlement discussions.  Nothing herein shall be deemed to be an admission of fact or liability by any Party.  It is further understood that any compromise and settlement described herein is subject to documentation agreeable to each Party. This Term Sheet has been prepared for settlement purposes only and does not constitute (nor shall it be construed as) an offer or solicitation of votes for or against any chapter 11 plan.

| | |
|---|---|
| **Parties** | 1. The Debtors<br><br>2. The Prepetition Agent and the Prepetition Lenders<br><br>3. Talos Production Inc., Talos Energy, Inc. and Talos Third Coast LLC (together, "***Talos***")<br><br>4. Walter Oil & Gas Corporation ("***Walter***")<br><br>5. Texas Petroleum Investment Company ("***TPIC***")<br><br>6. The Official Committee of Unsecured Creditors (the "***Committee***") |
| | **RESOLUTION OF ISSUES REGARDING STATUTORY P&A OBLIGATIONS** |
| **Walter Operated Properties** | 1. With respect to the following properties, the Debtors will resign as operator and the Debtors, Walter, and Talos agree that Walter will be designated operator (collectively, the "***Walter New Operated Properties***"):<br><br>   a.  Vermilion BLK 253<br><br>   b.  Vermilion BLK 252<br><br>   c.  Vermilion BLK 271<br><br>   d.  South Marsh Island BLK 87<br><br>   e.  High Island BLK 176<br><br>   f.  Main Pass BLK 270B<br><br>   g.  High Island BLK 116<br><br>   h.  High Island BLK 117<br><br>   i.  South Pelto BLK 018<br><br>   j.  WC 73[2]<br><br>2. For the avoidance of doubt, Walter agrees to be designated operator only for the aliquots and depths necessary to cover the wells and related infrastructure it intends to operate on the Walter New Operated Properties and for which it has a present |

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Plan.

[2] Subject to further definitive agreement, including, but not limited to, the agreement of Walter and other joint interest owners to the designation of Walter as: (i) designated operator; (ii) an approved agent of the Designated Operator; or (iii) contractual operator, provided, however, that to the extent that no agreement is reached between Walter and the required other joint interest owners, the Liquidating Trust shall be responsible for Maintenance and Monitoring Obligations regarding WC 73 for a period six (6) months following the Effective Date.

| | |
|---|---|
| | ownership interest and corresponding decommissioning liability. With regard to High Island BLK 116, High Island BLK 117, and South Pelto BLK 18 (the "***Debtor Terminated Leases***"), Walter shall be designated as operator solely for the purposes of performing the requisite plugging and abandonment and related decommissioning work for the wells, pipelines, and/or infrastructure located on said leases, in accordance with the applicable regulations. |
| | 3. For the avoidance of doubt, Walter will not acquire the Debtors' working interest in the Operated Properties and Debtors or the Post-Effective Date Debtors, as applicable, will seek to assume all contracts associated with the properties covered hereby as requested by Walter, provided, however, that Walter shall be responsible for any and all Cure Costs attributable to the Debtors whatsoever relating to, arising from, or on account of, such assumption. Nothing contained herein shall be deemed or construed to be an assumption by Walter of any of Debtor's or Post-Effective Date Debtors' obligations and liabilities associated with the Walter New Operated Properties and/or the Debtor Terminated Leases. |
| | 4. The Debtors shall execute and deliver to Walter any and all documentation sufficient to direct all of its production revenues from both the Walter New Operated Leases and Walter Present Operated Leases, effective as of April 1, 2021, to Walter to allow Walter, as operator, to offset all joint interest billing expenses attributable to the Debtors' working interest share thereof and to escrow any revenue payable to the Debtors exceeding such expenses for the eventual decommissioning of such assets. |
| | 5. For the avoidance of doubt, the Liquidating Trust shall have no liability or obligation arising from or related to the Debtors' or the Post-Effective Date Debtors' assumption of any contracts assumed under this Term Sheet, other than those associated with, and limited to, the Funded Statutory P&A Obligation Escrow. |
| **Walter Release of Claims** | 1. Without prejudice to Walter's rights against Debtors' predecessors and any other co-liable and/or jointly and severally liable parties, Walter agrees to release and waive any and all claims or causes of action against (i) the Debtors or their estates; (ii) each Debtors' current directors, managers, officers, advisors, and consultants; (iii) and the Liquidating Trust, including any claim for plugging and abandonment obligations with respect to the Walter New Operated Properties, and the following properties (collectively defined as "***Walter Present Operated Properties***"): ST 72, GC 6, GC 243, and SS 189, each as may be applicable, against the Debtors and the Liquidating Trust; provided, however, that Walter shall retain their right to net Debtors' JIB obligations against any working interest revenue otherwise due to Debtors or Liquidating Trust, as applicable. |
| | 2. Nothing contained herein shall be deemed or construed to be a release or discharge of any liability or obligations of any third parties, including without limitation any decommissioning liabilities of Debtors' predecessors and any other co-liable and/or jointly and severally liable parties with respect the Walter New Operated Properties and/or the Debtor Terminated Leases. Walter expressly reserves any and all claims and causes of action against any such third parties. |
| | 3. The Debtors and Walter agree that all amounts due and owing to each other on account of JIBs or revenue related to the Walter New Operated Properties, the Debtor Terminated Leases, or the Walter Present Operated Properties through March 31, 2021 have been reconciled and satisfied with no further amounts owing to or by either Party. |
| **Release of Walter** | The Debtors shall amend the Plan to include Walter as a Released Party and an Exculpated Party. |
| **Establishment of the Funded** | In exchange for the transfers of operatorship contemplated hereby and as additional consideration for all agreements included herein, the Debtors shall amend the Plan to provide |

| Statutory P&A Obligation Escrow | for the establishment of a funded escrow account for the purposes of performing the Debtors' plugging and abandonment obligations with respect to the Walter New Operated Properties and Debtor Terminated Leases. The Funded Statutory P&A Obligation Escrow shall solely consist of the right to receive the proceeds from or the right to receive the proceeds of 412,786 shares of Escrowed Talos Stock, which shall be allocated on a property by property basis in proportion to the Debtors' plugging and abandonment obligations on the Walter New Operated Properties and Debtor Terminated Leases or as agreed upon by Walter and Talos. |
|---|---|
| Regulatory Approvals / Cooperation | As soon as practicable, the Debtors will take all necessary steps, including obtaining, to the extent applicable, any requisite regulatory, co-interest owner(s), DOI, and/or Bankruptcy Court approvals, to designate Walter as operator of record for Walter New Operated Properties and Debtor Terminated Leases and to designate Talos Third Coast LLC operator of record for Main Pass BLK 270A. |

| RESOLUTION OF ISSUES RELATING TO THE ESCROWED TALOS SHARES | |
|---|---|
| Release of the Escrowed Talos Shares | Talos shall waive any claims against the Debtors with respect to the PSA and Escrowed Talos Shares and on the Effective Date will instruct the escrow agent to release the shares to the Liquidating Trust. The Debtors, the Liquidating Trust, the Prepetition Agent, and Prepetition Lenders agree that they will not settle the Apache Litigation in any manner which permits Apache to pursue a recovery against Talos or any of the Acquired Assets (as defined in the Talos PSA) through foreclosure or otherwise with respect to the claims and/or damages at issue in, or which gave rise to, the Apache Litigation. |
| Talos Release of Claims | Talos agrees to release and waive any further claims or causes of action against (i) the Debtors or their estates; (ii) each Debtors' current directors, managers, officers, advisors, and consultants; (iii) and the Liquidating Trust (other than the Talos Consideration). |
| Sale of MP270A | Pursuant to section 363 of the Bankruptcy Code, the Debtors shall sell and transfer, in exchange for the consideration set forth herein, to the designee of Talos all of the Debtors' interests in MP270A, as is, with no warranties, except that Debtors represent that they have not disposed of or transferred any of their interests therein, with an Effective Time to be the closing, with all revenues, expenses, and obligations accruing or existing as of closing to be transferred by the Debtors, with no adjustments to price or consideration.<br><br>The Debtors and the Liquidating Trust, as applicable, will assume and assign all contracts associated with the properties covered hereby as requested by Talos, provided, however, that Talos shall be responsible for any Cure Costs related to such assumption, subject to government approval of the assignment of any Federal Lease. |
| Sale Free and Clear | Pursuant to section 363(f) of the Bankruptcy Code, the sale of the in MP270A shall be free and clear of all liens, claims, encumbrances and other interests, including the liens, claims and interests of the Prepetition Lenders (as defined in the Plan), including without limitation any Adequate Protection Claims as defined in the Plan. |
| Release of Talos | The Debtors shall amend the Plan to include Talos as a Released Party and an Exculpated Party. |
| Talos Consideration | Talos shall be entitled to receive $2,000,000.00 in cash proceeds from the monetized Escrowed Talos Shares free and clear of all liens, claims, encumbrances and other interests, including the liens, claims and interests of the Prepetition Lenders (as defined in the Plan), including without limitation any Adequate Protection Claims as defined in the Plan. |

| RESOLUTION OF TPIC'S OBJECTION TO CONFIRMATION | |
|---|---|
| TPIC Released Claims | TPIC shall waive and release the Debtors from:<br><br>1. any claims and causes of action against the Debtors arising from or related to the Debtors' interest in the TPIC Transferred Interests (defined herein), including, but not limited to any claims arising from or under any of the TPIC Transferred Interests JOAs (defined herein), except as otherwise set forth herein. |

| | |
|---|---|
| **Debtor Released Claims** | The Debtors shall release TPIC, its officers, directors, employees and agents (the "***TPIC Released Parties***") from:<br><br>1. any and all claims and causes of action against the TPIC Released Parties arising under or related to the Transferred Interests (defined herein) and Transferred Interests JOAs (defined herein); and<br><br>2. any avoidance or recovery action against TPIC under Chapter 5 of the Bankruptcy Code. |
| **Sale of the Transferred Interests** | Pursuant to section 363 of the Bankruptcy Code, the Debtors shall sell and transfer, in exchange for the consideration set forth herein, to the designee of TPIC all of the Debtors' interests in (a) the property set forth on **Exhibit 1** hereto, and (b) all personal property and servitudes regarding, relating to, or used in connection with the Plant Related Agreements (defined below) (collectively the "***TPIC Transferred Interests***"), as is, with no warranties, except that Debtors represent that they have not disposed of or transferred any of the Transferred Interests or Transferred Interests JOAs, with an Effective Time to be the closing, with all revenues, expenses, and obligations accruing or existing as of closing to be transferred by the Debtors, with no adjustments to price or consideration. For the avoidance of doubt, the Transferred Interest shall not include the Apache Claims or the Talos Shares (as defined in the Plan). TPIC shall acquire all the Debtors' right, title and interest and assume the Debtors' obligations arising under the Transferred Interests. Notwithstanding the foregoing sentence, the Transferred Interests shall be transferred free and clear of the liens, claims and interests of the Prepetition Lenders (as defined in the Plan), including without limitation any Adequate Protection Claims as defined in the Plan, as set forth below. |
| **Assumption and Assignment of Transferred Interests JOAs** | Pursuant to section 365 of the Bankruptcy Code, the Debtors shall, subject to reasonable agreement regarding the amount and payment of any cure costs, assume and assign any joint operating agreement ("***JOA***") relating the Transferred Interests (the "***Transferred Interests JOAs***"). TPIC shall acquire all the Debtors' right, title and interest in the Transferred Interests JOAs and assume the agreed cure costs. Notwithstanding the foregoing sentence, the Transferred Interests JOAs shall be transferred free and clear of the liens, claims and interests of the Prepetition Lenders (as defined in the Plan), including without limitation any Adequate Protection Claims as defined in the Plan, as set forth below. |
| **Purchase Price for Transferred Assets** | For the avoidance of doubt, and in addition to the release of TPIC Released Claims provided above, as consideration for the transfer of the Transferred Interests, TPIC agrees to assume any and all P&A Obligations of the Debtors existing and arising in relation to the Transferred Interests and the Transferred Interests JOAs only. |
| **Sale Free and Clear** | Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Transferred Interests shall be free and clear of all liens, claims, encumbrances and other interests (other than those specifically assumed by TPIC). |
| **Allowed General Unsecured Claim** | TPIC shall be granted an allowed unsecured non-priority claim against the Debtors in the amount of $1,750,000. TPIC shall be deemed to have voted to accept the Debtors' Plan. |
| **Plant Related Agreements** | Pursuant to § 365 of the Bankruptcy Code, the Debtors shall assume and assign the Plant Related Agreements (as defined in **Exhibit 2** hereto) to TPIC, including any and all amendments and modifications thereto and other agreements described in Exhibit 2 hereto (collectively the "***Plant Related Agreements***") but without the payment of any cure costs. TPIC shall acquire all of the Debtors' right, title and interest in the Plant Related Agreements, and any and all rights, and property interests regarding or relating to the Plant Related Agreements. Notwithstanding the foregoing sentence, the Plant Related Agreements and all of Debtors' rights regarding or relating thereto shall be transferred free and clear of the liens, claims and interests of the Prepetition Lenders (as defined in the Plan), including without limitation any Adequate Protection Claims as defined in the Plan, as set forth below. For clarity, the Plant Related Agreements shall be included within the term of "JOA" herein and any rights regarding or relating thereto shall be included within the defined term "Transferred |

| | |
|---|---|
| | Interests" and "Transferred Interests JOAs." |
| **Withdrawal of Plan Objection** | TPIC shall withdraw TPIC's objection [ECF # 257] to confirmation of the Debtors' Plan. |
| **All Other Disputes Reserved** | Except as expressly set forth in this Term Sheet, all other rights of the Parties shall be reserved. Such reservation includes, but it is not limited to, the following: 1. All claims and causes of action not expressly included in the TPIC Released Claims or the Debtor Released Claims, shall be retained and preserved by all Parties. 2. As to any property including a Transferred Interest, and any JOA including the Transferred Interests JOAs, TPIC shall be entitled to continue to net JIBs against revenue and cross net to reduce shortfalls under and regarding such JOAs under which TPIC is operator covering such properties including the Transferred Interests, and all prior netting, recoupment and/or offsetting is hereby approved and unavoidable. |
| **RESOLUTION OF COMMITTEE OBJECTION TO CONFIRMATION AND CHALLENGES[3]** | |
| **Releases and Exculpation provisions of the Plan** | The Committee agrees to withdraw and/or waive any objections to the scope or effectiveness of the Release and Exculpation provisions of the Plan. |
| **Liquidating Trust Cash Reserve** | The Liquidating Trust Cash Reserve shall be used first to fund (i) Administrative Claims, including Professional Compensation Claims; and (ii) Priority Tax Claims, with the (iii) remainder reserved to the Liquidating Trust for performance of the Trust's Maintenance and Monitoring Obligations and distribution to Unsecured Creditors in accordance with the Plan and the Liquidating Trust Agreement. |
| **Escrowed Talos Shares** | The Plan shall be amended to delete all references to "Excess Escrowed Talos Shares" and provide that the Escrowed Talos Shares shall be Liquidating Trust Assets, subject to the Liquidating Trust's obligation to fund the Funded Statutory P&A Obligation Escrow. |
| **Payment of Fees and Expenses Under Cash Collateral Order** | Notwithstanding any provision of the Plan or the Cash Collateral Order, the Prepetition Agent and Prepetition Lenders agree to look solely to the Lender NewCo for the payment of any fees, expenses, and disbursements owed by the Debtors under the Cash Collateral Order to the extent that such amounts exceed the Budget (as defined in the Cash Collateral Order). |
| **Treatment of Adequate Protection Claims and Deficiency Claims of the Lenders** | The Lenders agree to waive (i) any and all claims and liens provided as adequate protection under the Cash Collateral Order; and (ii) any Deficiency Claim. |
| **Committee Challenge Period / Claims Against the Lenders** | Upon the execution of this Term Sheet, the Committee Challenge Period (as defined in the Cash Collateral Order) shall be extended until five (5) days following: (a) the date upon which the Confirmation Order becomes final and not subject to appeal, or (b) such time as confirmation of Debtors' amended Chapter 11 Plan is denied by the Court or otherwise resolved without confirmation of a plan.  To the extent that the Confirmation Order becomes final and is not subject to a timely appeal, the Committee agrees that no challenge shall be filed and the Debtors' Stipulations and any related releases provided in the Cash Collateral Order shall become binding upon the Committee and its constituents. |

---

[3]      As defined in the Cash Collateral Order

| MISCELLANEOUS ITEMS | |
|---|---|
| **Escrowed Share Mechanics** | After the Escrowed Talos Shares are released to the Liquidating Trust, the Liquidating Trustee shall sell the Escrowed Talos Shares in a manner that maximizes their value for all parties. After all the Escrowed Talos Shares are monetized, the blended proceeds shall be distributed ratably per share as contemplated in this Term Sheet. |
| **Liquidation Trustee** | The Liquidation Trustee shall be Thomas Thompson, as selected by the Committee with the agreement of Talos and Walter. |
| **Definitive Documentation** | The Parties shall prepare as expeditiously as possible definitive, binding, written agreements in respect of such transaction(s) contemplated hereby. |
| **Mutual Cooperation** | The Debtors shall file a Fourth Amended Joint Chapter 11 Plan reflecting and incorporating the material terms of this Term Sheet and the Parties agree to support confirmation of such amended Plan.  The Parties agree to cooperate as is reasonably necessary to prepare and execute all such notices or other related documents necessary to effectuate the provisions of this Agreement. |
| **Plan Effective Date** | Unless otherwise noted in this Term Sheet, all transactions contemplated by this Term Sheet shall occur as of the Effective Date of the Plan. |

**[Signature pages follow]**

APPROVED AS TO FORM AND SUBSTANCE BY:

**OKIN ADAMS LLP**

By:  /s/ *Matthew S. Okin*
Matthew S. Okin
Texas Bar No. 00784695
Email: mokin@okinadams.com
David L. Curry, Jr.
Texas Bar No. 24065107
Email: dcurry@okinadams.com
Ryan A. O'Connor
Texas Bar No. 24098190
Email: roconnor@okinadams.com
1113 Vine St., Suite 240
Houston, TX 77002
Tel:  713.228.4100
Fax:  888.865.2118

**COUNSEL FOR THE DEBTORS**

**LOOPER GOODWINE P.C.**

By: */s/ Paul J. Goodwine (with permission)*
Paul J. Goodwine (La. Bar No. 23757)
SDTX Federal ID No. 437800
Lindsey M. Johnson (La. Bar No. 34610)
SDTX Federal ID No. 2127344
650 Poydras Street, Suite 2400
New Orleans, Louisiana 70130
Telephone: (504) 503-1500
Facsimile: (504) 503-1501
Email: pgoodwine@loopergoodwine.com
Email: ljohnson@loopergoodwine.com

**Attorneys for Walter Oil & Gas
Corporation**

**VINSON & ELKINS LLP**

By:  */s/ Steven Zundell (with permission)*
Paul E. Heath (Texas Bar No. 09355050)
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Tel:  713.758.2222
Fax:  713.758.2346
pheath@velaw.com

-and-

Steven Zundell (admitted pro hac vice)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036-7708
Tel:  212.237.0000
Fax:  212.237.0100
szundell@velaw.com

**COUNSEL FOR TALOS THIRD COAST
LLC, TALOS PRODUCTION INC., AND
TALOS ENERGY INC.**

**GRAY REED**

By:  /s/ *Micheal W. Bishop (with permission)*
Micheal W. Bishop
Texas Bar No. 02354860
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email:  mbishop@grayreed.com

**COUNSEL TO TEXAS PETROLEUM
INVESTMENT COMPANY**

**KING & SPALDING LLC**

By:  /s/ Matthew L. Warren (with permission)
Matthew L. Warren
110 N. Wacker Dr., Suite 3800
Chicago, IL 60606
Telephone: (312) 762-6921
Email: mwarren@kslaw.com


**Counsel for Capital One, National Association**

**STEWART ROBBINS BROWN & ALTAZAN, LLC**

By: /s/ P. Douglas Stewart, Jr. (with permission)
Paul D. Stewart, Jr. (LA. Bar # 24661, admitted SDTX)
William S. Robbins (TX Bar # 24100894)
Brandon A. Brown (TX Bar # 24104237)
Baton Rouge, LA 70801-0016
Telephone: (225) 231-9998
Facsimile: (225) 709-9467
Email:  dstewart@stewartrobbins.com
wrobbins@stewartrobbins.com
bbrown@stewartrobbins.com

-And-

Tom A. Howley (TX Bar # 24010115)
Eric Terry (TX Bar # 00794729)
**HOWLEY LAW PLLC**
Pennzoil Place – South Tower
711 Louisiana St., Suite 1850
Houston, Texas 77002
Telephone: 713-333-9125
Facsimile: 713-659-9601
Email: tom@howley-law.com
Email: eric@howley-law.com

**Counsel for the Official Committee of Unsecured Creditors of Castex Energy 2005 Holdco, L.L.C.**

**EXHIBIT 1**
**P&A and Assets Proposed to be Transferred to and Assumed by TPIC**

| Field Assumed by TPIC | Net CEP P&A (Est.) |
|---|---|
| Belle Isle | $1,797,950 |

The Transferred Interests and the Transferred Interests JOA's include three separate component sections: (i) LEASES AS TRANSFERRED INTERESTS; (ii) WELLS AS TRANSFERRED INTERESTS; (iii) AGREEMENTS TO BE ASSUMED (including Transferred Interests JOAs). The following additionally described related property interests are included within the terms Transferred Interests and Transferred Interests JOAs:

(a) THE LEASES AS TRANSFERRED INTERESTS described in Annex I Part A - Company Leases, attached hereto ("*Leases*") include all leasehold interests in and to the leasehold estates created thereby, including all working interests, net revenue interests, overriding royalties, net profits interests, and other Hydrocarbon interests of any kind or character created thereby, derived therefrom or attributable thereto; all drilling, spacing and/or production units (and the lands covered thereby) that include any lands covered by any Lease included; all surface interests, easements, leases, use agreements, water rights and rights of way appurtenant to or used or held for use in connection with the Leases or the Wells (See Wells defined below and within (ii)); and all oil, natural gas, casinghead gas, condensate, natural gas liquids, and other hydrocarbons and combinations or constituents thereof ("*Hydrocarbons*") in, on, under or produced from or attributable to the lands covered by the Leases and the proceeds thereof.

(b) The WELLS AS TRANSFERRED INTERESTS described in Annex I Part B - Company Wells (the "*Wells*"), include all tangible personal property, inventory, equipment, fixtures and improvements owned or held for use in connection with the Leases or the Wells; and

(c) All AGREEMENTS TO BE ASSUMED AND RETPICVED described in Annex I Part C - Company Contracts C (the "*Transferred JOA's, Related Agreements and Other Property Interests*") include all of Debtors' rights in, to and under, and obligations arising from, all Transferred JOAs, Related Agreements and Other Property Interests relating to the Leases or Wells, including, but not limited to, joint operating agreements, unitization agreements, pooling agreements, farmout agreements, drilling agreements, exploration agreements, oil or gas product purchase and sale contracts, gas processing or transportation agreements, leases, permits, rights-of-way, easements, licenses, options, orders and decisions of state and federal regulatory authorities establishing units; and all of Debtors' files, records and data (including electronic data) to the extent related to the Leases and Wells, including but not limited to lease files, land files, division order files, abstracts, title files, maps, well files, well logs, well tests, mud logs, directional surveys, core reports, machinery and equipment files, engineering and/or production files, regulatory files, environmental and health and safety files, contracts and related files, and production, accounting and tax records.

ANNEX I
PART A - COMPANY LEASES

| LeaseNo. | Lease Name | Lessee | Lease Date | Unit |
|---|---|---|---|---|
| BEL00001 | STATE OF LOUISIANA 2366 | SUN OIL COMPANY | 8/20/1953 | BI N VUA |
| BEL00002 | STATE OF LOUISIANA 2585 | SUN OIL COMPANY | 8/19/1954 | BI N VUA |
| BEL00003 | STATE OF LOUISIANA 3586 | SUN OIL COMPANY | 9/26/1959 | BI N VUA |
| BEL00004 | STATE OF LOUISIANA 3185 | SUN OIL COMPANY | 4/17/1957 | BI N VUA |
| BEL00005 | STATE OF LOUISIANA 3184 | SUN OIL COMPANY | 4/17/1957 | BI N VUA |
| BEL00006 | STATE AGENCY LEASE 64842 GONSOULIN HEIRS | SUN OIL COMPANY | 8/16/1957 | BI N VUA |
| BEL00007 | STATE AGENCY 65987 GONSOULIN HEIRS | SUN OIL COMPANY | 3/4/1959 | BI N VUA |
| BEL00008 | STATE OF LOUISIANA 3909 | SUN OIL COMPANY | 4/23/1962 | BI N VUA |
| BEL00009 | MIAMI CORPORATION | SUN OIL COMPANY | 5/27/1957 | BI N VUA |
| BEL00010 | ST MARY PARISH LAND COMPANY | SUN OIL COMPANY | 6/26/1961 | BI N VUA |
| BEL00011 | ST MARY PARISH LAND COMPANY | SUN OIL COMPANY | 10/6/1958 | BI N VUA |
| BEL00012 | ST MARY PARISH LAND COMPANY | ATLANTIC RICHFIELD COMPANY | 4/2/1950 | BI N VUA |
| BEL00013 | ST MARY PARISH LAND COMPANY | SUN OIL COMPANY | 4/23/1962 | BI N VUA |
| BEL00014 | ST MARY PARISH LAND COMPANY | SUN OIL COMPANY | 10/6/1958 | BI N VUA |
| BEL00017 | BELLE ISLE CORPORATION | SUN OIL COMPANY | 5/1/1936 | BI N VUA |

ATTACHED TO AND MADE PART OF THE CASTEX 2014 (GOME 1271 LLC) PSA
ANNEX I
PART B - COMPANY WELLS

| API Number | Well Name | State | County | Field | WI, % | NRI, % |
|---|---|---|---|---|---|---|
| 1710101542000000 | BELLE ISLE CORP #10 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 19.140625% |
| 1710101557000000 | BELLE ISLE CORP #2 SWD | LA | ST. MARY | BELLE-ISLE | 21.875000% | 19.140625% |
| 1710122420000000 | BELLE ISLE CORP #52 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 19.140625% |
| 1710122372000000 | SL 340 #44 | LA | ST. MARY | BELLE-ISLE | 19.687500% | 17.901041% |
| 1710122392000000 | BELLE ISLE CORP #14 ALT | LA | ST. MARY | BELLE-ISLE | 19.687500% | 19.140625% |
| 1710121946000000 | SL 340 #1 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710121999000000 | SL 340 #42 ATCHAFALAYA BAY | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.901041% |
| 1710101542000000 | BI N VUA #10D | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710102055000000 | BI N VUA #10-3 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101546000000 | BI N VUA #1-33 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710102172000000 | BI N VUA #1-69 ST | LA | ST. MARY | BELLE-ISLE | 16.406250% | 17.691752% |
| 1710120940000000 | BI N VUA #1-73 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710121512000000 | BI N VUA #1-82 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710122344000000 | BI N VUA #1-90 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710122349000000 | BI N VUA #1-91 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101524000000 | BI N VUA #2-3 - SL2585-03 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101510000000 | BI N VUA #3-1 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101511000000 | BI N VUA #3-2 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101512000000 | BI N VUA #3-3 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101513000000 | BI N VUA #3-4 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101515000000 | BI N VUA #3-6 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710121948000000 | BI N VUA #3-10 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101669000000 | BI N VUA #4-1 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101670000000 | BI N VUA #4-2D | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101673000000 | BI VUA #4-3 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710120602000000 | BI N VUA #4-4 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101672000000 | BI N VUA #5-2 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710121934000000 | BI N VUA #5-7 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101704000000 | BI N VUA #7-2 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101519000000 | BI N VUA #8-1 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101520000000 | BI N VUA #8-2 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101521000000 | BI N VUA #8-3 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710101518000000 | BI N VUA #8-5 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710121077000000 | BI N VUA #8-6 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 1710102055000000 | BI N VUA #10-03 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691748% |
| 1710120053000000 | BI N VUA #10-4 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |

ATTACHED TO AND MADE PART OF THE CASTEX 2014 (GOME 1271 LLC) PSA

ANNEX I

PART B - COMPANY WELLS

| API Number | Well Name | State | County | Field | WI, % | NRI, % |
|---|---|---|---|---|---|---|
| 17101015060000 | BI N VUA #11-1 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 17101220120000 | BI N VUA #11-4 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 17101219890000 | BI N VUA #11-5 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 17101220270000 | BI N VUA #11-6 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 17101221020000 | BI N VUA #11-7 | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691752% |
| 17101206020000 | BI N VUA #4-4 B (DUAL COMP) | LA | ST. MARY | BELLE-ISLE | 21.875000% | 17.691748% |

ATTACHED TO AND MADE PART OF THE CASTEX 2014 (GDOME 1271 LLC) PSA
ANNEX I
PART C - COMPANY CONTRACTS

| AGREEMENT TYPE | PROSPECT | DATE | PARTIES |
|---|---|---|---|
| Farmout Agreement | Belle Isle Revere | 6/1/2009 | Castex Energy 2005, LP and Phoenix Exploration Louisiana C |
| Joint Operating Agreement | Belle Isle Revere | 6/1/2009 | Phoenix Louisiana C, Operator and CL&F Resources, LP, Castex Energy 2005, LP and Castex Energy 2008 covering L RA SUA |
| Participation Agreement | Belle Isle Revere | 6/1/2009 | Phoenix Exploration Louisiana C and CL&F Resources, LP |
| Production Handling Agreement | Belle Isle | 5/3/2013 | Apache Corporation and Castex Energy Partners, L.P., Processor and Apache Corporation, Castex Energy Partners, et al, Producers |
| Processing Facility Agreement | Belle Isle | 5/1/2012 | Apache Corporation and Castex Energy Partners, L.P. |
| Participation Agreement | Belle Isle | 4/15/2000 | Cabot Oil & Gas Corporation and Palace Exploration |
| Voluntary Unit Agreement | Belle Isle | 2/25/1960 | Sun Oil Company, St Mary Parish Land Company, The Atlantic Refining Company, Miami Corporation and the State of Louisiana |

Castex, 333 Clay St., Ste. 2000, Houston, Tx 77002
Phoenix - No longer owns an interest in the field
CL& F - No longer owns an interest in the field
Apache - No longer owns an interest in the field
Cabot & Palace - No longer wons interest in the field
Sun - No longer owns an interest in the field
St. Mary Parish Land Company, 1775 Sherman St., Ste 1200, Denver, Colorado 80203
Miami Corporation, 309 La Rue France, Lafayette, Louisiana 70508
State of Louisiana, PO Box 2827, Baton Rouge, Louisiana 70821-2827
ARCO - No longer owns an interets in the field

ATTACHED TO AND MADE PART OF THE CASTEX 2014 PSA
ANNEX I
PART D-1 - COMPANY RIGHTS-OF-WAY

| Agreement Number | Agreement Name | Original Lessee | ROW Date | Recordation Date | Book | Page | Entry | State | County/Parish |
|---|---|---|---|---|---|---|---|---|---|
| BEL00001RW | STATE OF LOUISIANA - 193 | SUN OIL COMPANY | 6/15/1962 | 1/4/1999 | 41-Z | 684 | 264273 | Louisiana | St Mary |
| BEL00001SL | MORGAN CITY FUND | SUN OPERATING LIMITED PARTNERSHIP | 7/18/1988 | 7/28/1988 | 31-0 | 169 | 223782 | Louisiana | St Mary |
| BEL00002RW | STATE OF LOUISIANA - 194 | SUN OIL COMPANY | 6/15/1962 | | | | | Louisiana | St Mary |
| BEL00003RW | STATE OF LOUISIANA - 685 | SUN OIL COMPANY | 6/16/1966 | | 14H | | 129745 | Louisiana | St Mary |
| BEL00004RW | STATE OF LOUISIANA - 686 | SUN OIL COMPANY | 6/16/1966 | 6/22/2006 | 14H | | 129746 | Louisiana | St Mary |
| BEL00005RW | ST MARY PARISH LAND COMPANY | CABOT OIL & GAS COPRORATION | 11/1/1973 | | 18J | | 158099 | Louisiana | St Mary |
| BEL00007RW | ST MARY PARISH LAND COMPANY | SUN OIL COMPANY | 1/13/1967 | 1/25/1967 | 14P | 33 | 132196 | Louisiana | St Mary |

State of Louisiana, PO Box 2827, Baton Rouge, La. 70821

Morgan City Fund (now H&B Young Foundation, PO Box 869, Morgan City, La. 70381

St. Mary Parish Land Company, 1775 Sherman St., Ste. 1200
   Denver, Co. 80203

Cabot & Sun ... No longer own an interest in the field

**EXHIBIT 2**

**Belle Isle Processing Facility Agreement, May 1, 2012, between Apache Corporation and Castex Energy Partners, LP and the following Exhibits and other documents (collectively the "Plant Related Agreements"):**

A: Plat or diagram of the facility.

B: Map of Atchafalaya Bay Field via two 12-inch pipelines and a 20-inch to Belle Isle Processing Facility.

C: Amendment of Grant of Servitude, May 1, 2012, between Belle Isle Corporation as Grantor and Apache Corporation and Castex Energy, Inc. as Grantees; Amendment of Grant of Servitude dated September 22, 1961, between Belle Isle Corporation as Grantor and Sun Oil Company as Grantee; Grant of Servitude dated December 30, 1958, between Belle Isle Corporation as Grantor and Sun Oil Company as Grantee; Third Amendment to Grant of Servitude, March 15, 2016, between Belle Isle Corporation as Grantor and Apache Corporation; Texas Petroleum Investment Corporation; and Castex Energy Partners, L.P. as Grantees.

C-1: Servitude for Pipeline Right-of-Way dated May 3, 2012, from the State of Louisiana as Grantor to Apache Corporation as Grantee.

D: Production Handling Agreement between Apache Corporation and Castex Energy Partners, LP as Processors and Apache Corporation; Castex Energy Partners, LP; Castex Energy 2005, LP; Castex Energy 2008, LP; Castex Energy Development Fund, LP and Gome 1271, LLC as Producer, effective May 3, 2013.

E: Form of Production Handling Agreement between Apache Corporation and Castex Energy Partners, LP as Processor and unnamed producers.

F: Accounting Procedure Joint Operations.

G1 and G2: Forms of Mortgage, Security Agreement and Financing Statement.

G3: Memorandum of Belle Isle Processing Facility Agreement.

H: Form of Assignment and Bill of Sale.

I: Insurance Schedule

J: Form of Production Handling Agreement between "_____ as processor and _____ as producer".